IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKY A. SHAW, :
    Plaintiff : No. 1:09-CV-359
:
    v. : (JUDGE CONNER)
: (MAGISTRATE JUDGE PRINCE)
CUMBERLAND TRUCK EQUIPMENT :
CO., :
    Defendant :

# **REPORT AND RECOMMENDATION**

## **I. Procedural Background**

Pursuant to an Order entered on August 3, 2010 (Doc. 32), the Honorable Christopher C. Conner referred the Defendant's pending Motion for Summary Judgment to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiff initiated this action on February 26, 2009 asserting federal and state law claims regarding his termination of employment from Cumberland Truck Equipment Company ("CTE"). (Doc. 1). Specifically, the complaint alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, along with additional claims of harassment and retaliation. Named as Defendant

is his former employer, CTE.

On March 5, 2010, Defendant filed a Motion for Summary Judgment (Doc. 21) along with a Brief in Support (Doc. 22), and thereafter filed a Statement of Facts on March 8, 2010 (Doc. 23). Plaintiff filed a Brief in Opposition (Doc. 26) along with Exhibits (Doc. 25) and an Answer to the Statement of Facts (Doc. 27) on March 19, 2010. A Reply Brief was filed by Defendants on April 1, 2010. (Doc. 29). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendant's Motion for Summary Judgment be denied.

**II. Factual Background**

Viewing the facts in a light most favorable to Plaintiff reveals the following background: Plaintiff was hired as warehouse receiver in July, 2000. This position involves unloading trucks and putting away stock, and it requires sitting, standing walking and bending, as well as lifting up to approximately 50 lbs.. Plaintiff received favorable annual reviews of his performance in this position. In late 2006, Plaintiff began experiencing knee pain, as a result of which Defendant sent Plaintiff for a medical exam. On February 26, 2007, Plaintiff was examined at Concentra Medical Center ("CMC") by a physician's assistant. This exam included evaluating Plaintiff relative to the physical requirements of Plaintiff's

position as indicated by the Job Analysis information provided to CMC by the Defendant. Following the examination, Dr. Andrew Walker concluded that Plaintiff was unable to perform the duties of his position. Thereafter Plaintiff informed Defendant that he disagreed with the findings of CMC, although he admitted his impaired abilities to squat, stand, walk and climb stairs.

A subsequent evaluation at CMC in April, 2007 determined that Plaintiff continued to be unable to perform the duties of his position, noting his limited abilities to lift, stand, squat and bend. Plaintiff applied for, and received, short-term disability benefits. After a third examination at CMC was conducted in September, 2007, Plaintiff remained uncleared to return to work. Defendant advised Plaintiff on September 17, 2007 that his condition rendered him unable to perform his position at CTE and terminated his employment. Throughout this period of time, Plaintiff did not consider himself to be disabled.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that

3

the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. *See* Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**IV. Discussion**

*(A) Prima Facie Case*

Plaintiff asserts disability discrimination in violation of the ADA and the PHRA. The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of

5

employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112. The PHRA prohibits similar discrimination based on disability. *See* 43 P.S. § 955.[1]

To establish a prima facie case of discrimination under the ADA, a plaintiff must present evidence that: (1) he has a "disability" within the meaning of the ADA; (2) he was qualified for the position, with or without accommodation; and (3) he suffered an adverse employment decision as a result of the discrimination. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir.2000); Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d Cir.1998)(*en banc*). A "disability" is defined by the ADA as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "Accordingly, to fall within this definition, one must have an actual disability (subsection A), have a record of a disability (subsection B), or

---

[1] The court will analyze Plaintiffs' ADA and PHRA claims under the same standards inasmuch as courts generally have interpreted the PHRA's parallel provisions in Title VII, the ADA, or the ADEA in accordance with its federal counterparts. Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

6

be regarded as having one (subsection C)." Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999).

A "physical or mental impairment," for purposes of the ADA, has been defined to include a "physiological disorder or condition ... affecting one or more of the following systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), [and] cardiovascular...." 29 C.F.R. § 1630.2(h)(1). Further, "substantially limits" has been defined as, among other things, an inability "to perform a major life activity the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). "Major life activities" include "walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(I).

While conceding there is sufficient evidence to meet the second and third criteria of a prima facie case of disability discrimination, *to wit.*, that Plaintiff was otherwise qualified to perform the essential function of the job, with or without accommodation and that he suffered an adverse employment action, Defendant asserts that Plaintiff cannot establish the first element of a prima facie case

7

inasmuch as he does not consider himself to be disabled. Plaintiff maintains, however, that the he can meet this prong through evidence that, irrespective of his self-perception, the Defendant regarded him as disabled in the major life activities of walking and working.[2] A person is "regarded as" having a disability if:

> "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or
>
> (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities."

Sutton, 527 U.S. at 489 (1999). This requires that a defendant "entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton, *supra* at 489.

---

[2] In the absence of direct evidence of discrimination, cases are examined under the evidentiary framework first set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas analysis, a plaintiff must show, by a preponderance of the evidence, a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If the employee is able to do this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions against the employee. Id. If the employer can meet this burden, then the burden shifts back to the employee to prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually a pretext for discriminatory practices. Id. at 804. Inasmuch as Plaintiff seeks to establish a prima facie case of disability discrimination through direct evidence, evaluation of the case through the burden-shifting framework of McDonnell Douglas is unnecessary.

8

The analysis "focuses not on [plaintiff] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him." Kelly v. Drexel University, 94 F.3d 102, 108-09 (3d Cir. 1996). Moreover, the question is not whether the employer harbored some unsubstantiated bias with respect to the employee's actual or perceived impairment, but rather whether the employer "treated plaintiff adversely because it regarded him as having an impairment that substantially limits one or more major life activities." Weber v. Strippit, Inc., 186 F.3d 907, 915 (8th Cir. 1999), *cert. denied*, 528 U.S. 1078 (2000). "Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment ... are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job." Sutton, 527 U.S. at 490-91.

Therefore, to meet his burden of establishing a prima facie case of disability discrimination, Plaintiff must present some evidence supporting a rational inference that CTE regarded his physical impairments as substantially limiting a major life activity which, Plaintiff suggests, to be both walking and working. Although Defendant claims that Plaintiff has not identified any facts that support a proposition that CTE regarded him as being disabled in the major life activity of

9

walking, Plaintiff has identified such evidence to corroborate this claim. First, Bryan Sheldon, CTE's Corporate Controller, testified that he was informed by Chuck Hoffman, CTE's Director of Parts Operation, that the latter had observed Plaintiff crossing a parking lot with great difficulty, that Plaintiff had to take several breaks while traversing the 150 yard parking lot and that he relied on a cane to do so. Hoffman testified that Plaintiff was "struggling to do his job." (Doc. 25, Ex. C, 17:8-9). Further, in a meeting to discuss Plaintiff's physical limitations, Parts Logistic Manager Pat Whitmyer also stated that Hoffman told Sheldon that Plaintiff could barely walk across the lot.

Clearly such statements encapsulate the observations and perceptions of those working around Plaintiff. Based on such testimony, Plaintiff has established sufficient evidence to allow a reasonable person to conclude that Defendant regarded Plaintiff as substantially limited in his ability to walk. Although Plaintiff asserts that his physical impairments are not as limiting as Defendant believes them to be, he has pointed to evidence demonstrating that Defendant believes his ability to walk to be substantially limited. Consequently, Plaintiff has stated a prima facie case of disability discrimination, precluding summary judgment for

Defendant on this issue.[3]

## *(B) Reasonable Accommodation*

"Under the ADA, once an individual is unable to perform the essential functions of the position . . . the inquiry shifts to whether reasonable accommodations can be made which would allow the individual to perform those essential functions." Freeman v. Rollins Envtl. Servs. of New Jersey, No. Civ. A. 94-1871, 1996 WL 451317, at *6 (D.N.J. Aug. 5, 1996) (citing Milton v. Scrivner, 53 F.3d 1118, 1123 (10th Cir. 1995)). An employee can demonstrate that an employer breached its duty to provide a reasonable accommodation because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 772 (3d Cir. 2004) (internal citation and quotations omitted).

---

[3] Having concluded Plaintiff has put forth sufficient evidence that a fact finder could conclude that Defendant regarded him as substantially limited in his ability to walk, the court need not examine whether he was also regarded as substantially limited in the major life activity of working.

The complaint asserts that CTE has failed to reasonably accommodate Plaintiff. Specifically, he claims that CTE failed to accommodate him in revising his job description to match his actual duties, which, Plaintiff argues, were more reflective of the true duties he was performing and which he was and remained able to perform.[4] Defendant maintains that Plaintiff cannot establish his claim that CTE failed to provide him with a reasonable accommodation, contending that Plaintiff is unable to show the first element of a prima facie case – establishing that he has a disability. Based on Plaintiff's repeated statements that he did not consider himself to be disabled, Defendant argues there is no disability that needed to be accommodated.

However, as noted above, the existence of a disability is not the only circumstance in which a person can be consider to be disabled within the meaning of the ADA. Having concluded that, regardless of whether he was disabled, Plaintiff has put forth sufficient evidence to establish that the Defendant regarded him as such, the issue of accommodation is not without merit. Moreover, Plaintiff has established that CTE knew of his limitations and that he twice requested modification of his job description via correspondence to CTE, to which he

---

[4] Plaintiff contends the job description Defendant provided to CMC overstated the duties of his position.

received no reply. Whether such accommodation was possible had a dialogue between the parties occurred is unknown. Nevertheless, inasmuch as Plaintiff testified that his actual job duties were less physically-extensive than the summary of tasks provided to CMC and that he continued to be able to perform these actual duties, a fact-finder could determine that the accommodation requested by Plaintiff was reasonable and could be accomplished. Plaintiff has, therefore, articulated facts sufficient to support his claim that he was denied a reasonable accommodation by the Defendant. Consequently, summary judgment on this issue is not warranted.

## *(C) Retaliation*[5]

The anti-retaliation provision of the ADA provides, in pertinent part, that:

> "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

42 U.S.C. § 12203(b). To establish a claim of illegal retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the

---

[5] Assuming that an employee has established entitlement to a reasonable accommodation refused by the employer, a disability claim, rather than a retaliation claim, has been shown. *See* Supinski v. UPS, Civ. No. 3:06-CV-793, 2009 WL 113796, *8 (M.D. Pa. January 16, 2009) (Vanaskie, J.). Consequently, a claim for retaliation is brought alternatively.

13

employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231-32 (3d Cir. 2007) (citing Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006)); Williams, *supra* at 761; *see* Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). The court must analyze a retaliation claim under the ADA using the same framework employed for retaliation claims arising under Title VII. Krouse v. American Sterilizer Co., 126 F.3d 494 (3d Cir. 1997). The McDonnell Douglas burden-shifting framework applies to ADA retaliation claims. Id. at 760 n. 3.

Defendant contends that Plaintiff's retaliation claim must fail because, it asserts, Plaintiff did not engage in any protected activity. Plaintiff claims that he requested that his job description be modified to reflect different job duties, for which he believed he would be cleared to perform. A request for a reasonable accommodation is a protected activity under the ADA. *See* Williams, 380 F.3d at 759 n. 2 (requesting an accommodation under the ADA is a protected employee activity as long as a plaintiff demonstrates that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 190-91 (3d

14

Cir.2003) (holding that the ADA protects an employee who makes a good faith request for an accommodation). Accordingly, the court concludes that Plaintiff has met the first prong of a prima facie case of retaliation.

Defendant further contends that the letters sent by Plaintiff on February 28, 2007 and May 17, 2007 are too attenuated in time from his termination on September 17, 2007 to meet the second prong. The requirement, though, is that the adverse employment action occurred contemporaneously with, or *after,* the employee engaged in the protected activity. Considering that a subsequent termination can be categorized as an adverse employment action occurring *after* the Plaintiff engaged in protected activity, i.e., requested an accommodation, the present facts evidence that this second prong of retaliation has been met.

As to the third and final factor of a prima facie case of retaliation, a plaintiff can demonstrate a causal connection by showing temporal proximity between the protected activity and the adverse employment action; however, the timing of the allegedly retaliatory action must be "very close" or "unusually suggestive" of retaliatory motive before a causal link will be inferred. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); Shellenberger, 318 F.3d at 189 n. 9 (citation omitted). Conversely, the "mere passage of time is not legally conclusive proof against retaliation." Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892,

894 (3d Cir. 1993).

The United States Court of Appeals for the Third Circuit articulated two main factors that are relevant with respect to establishing a causal link to satisfy a prima facie case of retaliation: (1) timing or (2) evidence of ongoing antagonism. Abramson v. William Paterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001) ("Temporal proximity ... is sufficient to establish the causal link. [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period"); *see also* Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000) (a plaintiff may present "other types of circumstantial evidence," such as evidence of a "pattern of antagonism" occurring between the protected activity and the adverse action to support the inference of a causal relationship); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). It should be observed that there are no hard and fast rules governing the minimum showing required to establish an inference of causation; rather, the focus is on the totality of the circumstances. Farrell, *supra*.

Whether the time between Plaintiff's correspondence to CTE and his discharge from employment are sufficiently proximate to raise and inference that the two are causally related is a question of fact to be determined by the trier of

fact. *See* Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp. 2d 419, 437 (W.D. Pa. 2009) ("The degree of suggestiveness of the time span [between protected activity and the employment decision] depends on the particular facts of the situation.") (citing Emerick v. Norfolk Southern Ry. Co., No. Civ. A. 3:03-266, 2006 WL 3692595, at *13 (W.D. Pa. Dec. 12, 2006); Zelinski v. Pa. State Police, 108 Fed. Appx. 700, 706 (3d Cir. 2004) ("When there may be a valid reason why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation."). However, when paired with the allegations raised in his claim for harassment (*See* Doc. 1, Count III), the temporal proximity of the protected activity to Plaintiff's termination could suggest a causal link between the two. Plaintiff has, therefore, demonstrated facts to establish the third element of a retaliation claim. Accordingly, summary judgment should be denied on this issue as well.

**V. Recommendation**

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 21) be denied.

Date: August 20, 2010            s/ William T. Prince
                                 William T. Prince
                                 United States Magistrate Judge