## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICKY A. SHAW,** | : | **CIVIL ACTION** |
| | : | **(Judge Connor)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CUMBERLAND TRUCK** | : | **ELECTRONICALLY FILED** |
| **EQUIPMENT CO.,** | : | |
| | : | |
| **Defendant.** | : | **NO.  09-359** |

## DEFENDANT CUMBERLAND TRUCK EQUIPMENT CO.'S POST-VERDICT MOTIONS FOR ENTRY OF JUDGMENT AS A MATTER OF LAW, FOR A NEW TRIAL, TO ALTER OR AMEND THE JUDGMENT AND FOR A STAY OF JUDGMENT

Veronica W. Saltz, Esquire
Attorney I.D. No.: 52931
SALTZ POLISHER P.C.
993 Old Eagle School Road, Ste. 412
Wayne, PA 19087
(610) 964-3333

Attorney for Defendant
Cumberland Truck Equipment Co.

Dated: August 1, 2011

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... iii-vii

I.   PERTINENT PROCEDURAL HISTORY AND
     STATEMENT OF FACTS ........................................................... 1

     A.   Pertinent Procedural History ............................................... 1

     B.   Statement of Facts ............................................................. 2

II.  STATEMENT OF QUESTIONS ............................................... 10

III. ARGUMENT ........................................................................ 11

     A.   CTE Is Entitled To Entry Of Judgment
          As A Matter Of Law ........................................................ 11

          1.   Plaintiff has failed to establish a claim
               under the ADA .......................................................... 11

               a.   Prima facie case of disability
                    discrimination ..................................................... 12

               b.   Plaintiff has failed to establish that
                    CTE "regarded" him as disabled ........................... 13

                    (i)    Providing FMLA and short-term
                           disability benefits does not establish
                           that CTE regarded Plaintiff as disabled ........... 14

                    (ii)   Plaintiff presented no evidence that
                           CTE regarded Plaintiff substantially
                           impaired in major life activities of
                           working and walking .................................... 16

                    (iii)  Request for medical exam is
                           insufficient to establish "regarded as"
                           disabled .................................................... 17

                    (iv)   Mere fact employer is aware of an
                           employee's impairment insufficient to
                           establish employer "regarded" employee
                           as disabled ................................................ 19

i

        c.  Plaintiff was not a "qualified" individual
           under the ADA .................................................. 23

        d.  Plaintiff presented no evidence that he was
           subjected to an adverse employment decision
           as a result of disability discrimination ..................... 29

    2.     CTE is entitled to entry of judgment as a matter
         of law on Plaintiff's failure to accommodation
         claim ............................................................ 30

    3.     CTE is entitled to entry of judgment as a matter
         of law on Plaintiff's claim of retaliation ..................... 34

    4.     There is no basis for the jury's award for
         punitive damages ............................................... 37

  B.     CTE is Entitled to a New Trial ........................................ 40

    1.     The Verdict is against the great weight of
         evidence, constitutes a miscarriage of justice
         and shocks the conscience ..................................... 41

    2.     The Court erred in failing to properly instruct
         the jury on the law of "regarded as" disabled ............... 42

    3.     The Court improperly instructed the jury on the
         law as to Plaintiff's retaliation claim and an
         award of compensatory damages ............................. 43

  C.     Motion To Amend or Alter Judgment ............................... 44

    1.     No basis for jury's award of back pay
         or front pay ..................................................... 45

    2.     No basis for jury's award of punitive
         damages ........................................................ 47

    3.     The award for compensatory
         damages must be stricken ..................................... 47

  D.     Request for Stay of Proceedings on Enforcement
       of any Judgment Entered Pursuant to Federal Rule
       of Civil Procedure No. 62(b) ....................................... 47

IV.    CONCLUSION ............................................................. 48

# **TABLE OF AUTHORITIES**

**Page**

CASES

*Baker v. PPL Corp.,* 2010 U.S. Dist. LEXIS 7591
    (M.D. Pa. Jan. 5, 2010) ……………………………………………..……… 43

*Barnhart v. Walton,* 535 U.S. 212 (2002) …………………………………………… 27

*Benko v. Portage Area School District,* 241 Fed.
    Appx. 842 (3d Cir. 2007) ………………………………………..……………… 15

*Bhaya v. Westinghouse Elec. Co.,* 832 F.2d 258
    (3d Cir. 1987) ………………………………………………..……………….. 45

*Bialko v. Quaker Oats,* 2010 U.S. Dist. LEXIS 30723
    (M.D. Pa. 2010) ……………………………………………..………………. 11, 15

*Buskirk v. Appollo Metals,* 307 F.3d 160
    (3d Cir. 2002) ……………………………………………...…………….. 12, 13, 25

*Chandler v. City of Dallas,* 2 F.3d 1385
    (5th Cir. 1993), cert. denied 114 S. Ct. 1386 (1994) …………………….……………… 22

*Cleveland v. Policy Mgmt. Systems Corp.,*
    526 U.S. 795 (1999) ……………………………………………………. 25, 26

*Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.,*
    674 F.2d 1252 (9th Cir. 1982), cert. denied,
    45 U.S. 1227 (1983) ………………………………………………...……………… 45

*Cody v. CIGNA Healthcare of St. Louis, Inc.,*
    139 F.3d 595 (8th Cir. 1998) ……………………………………………………….. 18

*Crenshaw v. Sun Microsystems, Inc.,* 2007 U.S. Dist.
    LEXIS 32440 (N.D. Ca. 2007) ……………………………………..……………… 47

*Dehne v. Med. Shoppe Int'l, Inc.,* 261 F. Supp.
    2d 1142 (E.D. Mo. 2003) ……………………………………………………… 45

*Detz v. Greiner Indus., Inc.,* 346 F.3d 109 (3d Cir. 2003) ………………...……………….. 26, 29

*Eck v. Whirley Industries, Inc.,* 2011 U.S. Dist. LEXIS 8372
    (W.D. Pa. Jan. 28, 2011) …………………………………………………….. 29

*Ellis v. McHugh,* 2011 U.S. Dist. LEXIS 38507
    (M.D. Pa. March 18, 2011) ……………………………..……………….. 17

*Endres v. Techneglas, Inc.,* 139 F. Supp. 2d 624
    (M.D. Pa. 2001) ……………………………………………………… 14, 23, 36

*Farrell v. Planters Lifesavers Co.,* 206 F.3d 271
    (3d Cir. 2000) ……………………………………………….…………… 34, 36

*Flowers v. Komatsu Mining Sys., Inc.,* 165 F.3d 554
    (7th Cir. 1999) ………………………………………………..…………… 46

*Fredenburg v. Contra Costa County Dept. of Health Servs.,*
    172 F.3d 1176 (9th Cir. 1999) ……………………………..……………… 47

*Fuentes v. Perskie,* 32 F.3d 759 (3d Cir. 1994) …………………………………… 37

*Hobson v. St. Luke's Hospital and Health Network,*
    735 F. Supp. 2d 206 (E.D. Pa. 2010) ……………………….……………… 16

*Hoskins v. Oakland County Sheriff's Dept.,*
    44 F. Supp. 2d 882 (E.D. Mich. 1999) …………………………………… 15

*Jalil v. Avdel Corp.,* 873 F.2d 701 (3d Cir. 1989) ………………………………… 36

*Jones v. Southcentral Employment Corp.,* 2007 U.S.
    Dist. LEXIS 37579 (M.D. Pa. 2007) …………………………… 24, 25, 29

*Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir. 1996) ………………………… 14, 17, 22

*Kozempel v. Grand View Hospital,* 2011 U.S. Dist.
    LEXIS 34843 (E.D. Pa. Mar. 30, 2011) …………………………………… 44

*Krouse v. Am. Sterilizer Co.,* 126 F.3d 494
    (3d Cir. 1997) …………………………………………..…………………… 35, 36

*Lee v. City of Columbus,* 2009 U.S. Dist. LEXIS 78151
    (S.D. Ohio 2009) ……………………………………………..…..………… 15

*Lee v. City of Salem,* 259 F.3d 667 (7th Cit. 2001) ………………………………… 26

*Lightnning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153
    (3d Cir. 1993) …………………………………………………..……………… 12

*Lorde v. City of Philadelphia,* 2000 U.S. Dist. LEXIS
    17196 (E.D. Pa. 2000) ........................................................................ 25

*Loubrido v. Hull Dobbs Co.,* 526 F. Supp. 1055
    (D.P.R. 1981) ...................................................................................... 46

*Martinez v. Coatings Inc.,* 286 F. Supp. 2d 107
    (D. P.R. 2003) ..................................................................................... 47

*McDonald v. Cmwlth. Of Pennsylvania,* 62 F.3d 92
    (3d Cir. 1995) ..................................................................................... 12

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ........................................................................... 34

*McLaughlin v. Sanofi-Aventis U.S. Inc.,* 2011 U.S. Dist.
    LEXIS 19977 (E.D. Pa. Mar. 1, 2011) ......................................... 29, 37

*Mengine v. Runyon,* 114 F.3d 415 (3d Cir. 1997) .................................. 32

*Miller v. Pilgrim's Pride Corp.,* 2007 U.S. Dist.
    LEXIS 48971 (W.D. Va. 2007) ......................................................... 47

*Murphy v. United Parcel Serv., Inc.,*
    527 U.S. 516 (1999) ........................................................................... 16

*N. River Ins. Co. v. CIGNA Reinsurance Co.,*
    52 F.3d 1194 (3d Cir. 1995) .............................................................. 45

*National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,*
    414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) .................... 44

*Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375
    (3d Cir. 2002) ..................................................................................... 22

*Robinson v. Lockheed Martin Corp.,* 212 Fed. Appx. 121
    (3d Cir. 2007) ..................................................................................... 14

*Rush v. Scott Specialty Gases, Inc.,* 930 F. Supp. 194
    (E.D. Pa. 1996) ................................................................................... 41

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,*
    81 F.3d 355 (3d Cir. 1995) ................................................................ 24

*Shapiro v. Twp. Of Lakewood,* 292 F.3d 356 (3d Cir. 2002) .................. 33

*Smith v. Wade,* 461 U.S. 30 (1985) ............................................................... 38

*Snyder v. Norfolk Southern Railway Corp.,* 271 Fed.
    Appx. 150 (3d Cir. 2008) ..................................................... 23

*Sulima v. Tobyhanna Army Depot,* 602 F.3d 177
    (3d Cir. 2010) ........................................................... 12, 13

*Sullivan v. Raytheon Co.,* 262 F.3d 41 (1st Cir. 2001) .................................. 47

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999) ........................... 16

*Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180
    (3d Cir. 1999) ............................................................... 17

*Taylor v. Phoenixville School District,* 184 F.3d 296
    (3d Cir. 1999) ........................................... 12, 30, 31, 32, 33

*Tex. Dep't of Cmty. Affairs v. Burdine,*
    450 U.S. 248 (1981) ........................................................ 35

*Thomas v. Town of Hammonton,* 351 F.3d 108
    (3d Cir. 2003) ............................................................... 36

*Tice v. Center Area Transportation Authority,*
    247 F.3d 506 (3d Cir. 2001) ....................................... 16, 17, 18

*U.S. Airways, Inc. v. Barnett,* 535 U.S. 391 (2002) ................................. 12

*Vincent v. Wells Fargo Guard Servs., Inc. of Fla.,*
    3 F. Supp. 2d 1405 (S.D. Fla. 1998) ................................... 14

*Williams v. Phila. Housing Authority,* 380 F.3d 751
    (3d Cir. 2004) ............................................. 32, 34, 35, 36

*Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344
    (3d Cir. 1991) ............................................................... 41

*Wisbey v. City of Lincoln,* 2009 U.S. Dist. LEXIS 30819
    (D. Neb. 2009) ............................................................. 15

*Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2
    (3d Cir. 1997) ............................................................... 35

STATUTES

Fed. R. Civ. P. 50(b) ………………………………………………………..………… 1

Fed. R. Civ. P. 59 ………………………………………………………..……………... 1

Fed. R. Civ. P. 59(e) ……………………………………………………………… 1, 45

Fed. R. Civ. P. 62(b) …………………………………………...……………… 48

29 C.F.R. § 85.702(b) ………………………………………………… 15

29 C.F.R. § 1630.2(1) ………………………………………………… 13

29 C.F.R. § 1630.2(j)(2) ………………………………………...……………… 12

29 C.F.R. §1630.2(j)(3)(i) ……………………………………………………... 16

42 U.S.C. § 1981a(b)(1) ……………………………………………..…………… 38

42 U.S.C. § 12102 ………………………………………………………… 13

42 U.S.C. § 12181 *et seq.* …………………………………………..…………… 1

Defendant Cumberland Truck Equipment Co. ("CTE") has moved this Honorable Court for post-judgment relief in the form of the entry of judgment as a matter of law on Plaintiff Ricky A. Shaw's Americans With Disability Act claim pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, a new trial on that claim pursuant to Fed. R. Civ. P. 59, or to alter or amend the verdict pursuant to Fed. R. Civ. P. 59(e) and for a stay of judgment.

## I.   PERTINENT PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.   Pertinent Procedural History

Plaintiff commenced this action on February 26, 2009 seeking relief pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*. only on the basis that his employer, CTE "regarded" him as disabled. (Doc. 1).[1]  Mr. Shaw does not claim an actual disability.  Trial was held before the Court and a jury from May 16, 2011 through May 19, 2011 on Plaintiff's claims under the ADA.  On May 19, 2011, Plaintiff's ADA claim was submitted to the jury.  That same day, the jury returned a verdict in favor of Plaintiff, and against CTE, finding that:  (1) Plaintiff had a "disability" within the meaning of the ADA; (2) Plaintiff could perform the essential functions of his job, with or without reasonable accommodation; (3) Plaintiff's "disability" was a motivating factor in CTE's decision to engage in an adverse employment action against him; (4) CTE was aware of the need for an accommodation for Plaintiff, and that CTE failed to provide a reasonable accommodation to him; (5) Providing an accommodation to Plaintiff would not cause an undue hardship on CTE's business; (6) Plaintiff engaged in conduct protected by the ADA in requesting an accommodation; and (7) At the time the protected conduct took place, or thereafter, CTE engaged in an adverse employment action against Plaintiff because of the protected conduct.

---

[1] In his Complaint, Plaintiff asserted causes of action for Count I-Discrimination 'Regarded As,' Count II- Failure to Provide a Reasonable Accommodation, Count III-Harassment, and Count IV-Retaliation.  Count II was subsequently dismissed on February 25, 2010.  (Docs. 17, 18).

The jury awarded Plaintiff compensatory damages in the amount of $30,000, back pay damages in the amount of $98,500 and front pay damages in the amount of $175,000. The jury further found that a management official of CTE personally acted with malice or reckless indifference to Plaintiff's rights and that CTE did not make a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Plaintiff, awarding punitive damages in the amount of $50,000. On May 19, 2011, the Court entered judgment in favor of Plaintiff and against CTE.

On June 16, 2011, CTE filed its Motion for Entry of Judgment as a Matter of Law or, in the Alternative, a New Trial, or to Alter or Amend the Verdict and For a Stay of Judgment. (Doc. 82). The Court issued an Order on July 12, 2011 (Doc. 93) which required CTE to submit its Brief in support of this Motion on or before August 1, 2011.[2]

### B.    Statement of Facts

A summary of the salient facts as supported by the trial record are provided herein with additional facts relevant to this Motion discussed below in greater detail.

Plaintiff commenced his employment with CTE on July 10, 2000 in the position of a warehouse worker in CTE's heavy duty truck parts warehouse. (Doc. 1, ¶9; D-36 attached hereto as Ex. "A"). With the exception of a work related injury in 2000 for which Plaintiff was on medical leave and subsequently returned to full duty that same year, Plaintiff never disclosed to CTE that he had any type of a medical condition or requested any accommodation in performing his duties as a warehouse worker. (Record at **T1** 69:15-25, 70:1, 109:5-7, 162:17-25,

---

[2] A subsequent Order was issued on July 12, 2011 permitting CTE to file its Brief in support of post-trial relief on August 1, 2011.  (Doc. 93).

163:1-21; **T2** 21:13-14, 114:25, 115:1-16, 116:5-9, 10-12, 121:18-24, 122:2-5, 151:15-25, 152:1-2; **T3** 86:20-25, 87:12-14, 89-22-25, 90:1-8).[3]

In the winter of 2006, Plaintiff's knee pain was getting worse. (**T2** 121:25, 122:1-2). By February 2007, CTE's management began to observe that Plaintiff was having difficulty walking, walking slower then usual with a limp and at times using a cane. (**T1** 50:1-10, 52:19-23, 53:1-4, 8-9, 14-15, 93:8-10, 107:16-25, 108:1; **T2** 13:18-25, 14:7-13, 16:8-10; Kline Depo. attached hereto as Ex. "B", 26:5-7, 26:14-17, 20-22). CTE became concerned because it wasn't typical for Plaintiff who had never seemed to have had any difficulties prior to 2007. (**T2** 14:18-21). Because CTE did not know if Plaintiff's difficulty was a "short-term thing," CTE took no action and simply observed Plaintiff for a couple of weeks. (**T1** 53:21-24; **T2** 15:11-16, 16:21-22, 18:5-10, 19:10-19, 28:9-14). CTE didn't know the extent of Plaintiff's difficulties, believing that it could be that Plaintiff injured himself at home, he could have been dealing with any number of things, such as gout or whatever that would cause him to limp, and only when it appeared that whatever Plaintiff was dealing with, he wasn't recovering from it, it wasn't changing and it wasn't improving did CTE take action. (**T1** 66:17-25, 67:1-12, 161:18-25, 162:1-10; **T2** 24:18-25, 25:1-3). CTE's management had a least one meeting to discuss Plaintiff's situation. (**T2** 25:17-19, 22-23). After a couple of weeks, because it didn't appear that Plaintiff was making any improvement and "for his safety and well being [CTE] felt it was time that [CTE] found out if he was capable of performing" his job duties. (**T1** 54:7-14, 67:14-25, 68:1-3, 180:5-9; **T2** 18:24-25, 19:1-3, 29:21-25).

---

[3] There are four volumes comprising the trial transcript with each volume designated by the day of the trial. For ease of reference in citing to the record, the abbreviations "T1, T2, T3, T4" refer to Day 1, Day 2, Day 3 and Day 4 of the trial, followed by the transcript page and lines.

CTE, never encountering this type of situation with an employee, sought the advice of an attorney. (**T2** 31:11-12). After conferring with CTE's counsel, Mr. Sheldon (CTE's Controller) decided it was in Plaintiff's best interest to send him for an independent medical exam to determine if he could continue to do his job as a warehouse worker and if any accommodations would be required since CTE had no "idea what was going on," whether Plaintiff's condition was temporary or a permanent one or whether he would come back to work or not after the exam. (**T1** 70:4-10, 111:8-11, 151:18-21, 163:25, 164:1-6, 11-12, 166:2-12; **T2** 26:17-20, 27:1-2, 32:1-4).

On February 26, 2007, after Ms. Hoffman prepared an authorization form for Plaintiff to take with him to Concentra (an independent medical facility) along with the job analysis as to the physical requirements for the warehouse worker position, Ms. Hoffman told Plaintiff that he was being sent for a medical exam, explaining to Plaintiff "that he had been observed having difficulty walking, we wanted to make sure he wasn't at risk of injury to himself or to anyone else." (**T2** 35:5-8, 37:12-16, 38:8-11, 152:3-16; D-1 attached hereto as Ex. "C"). The medical exam was a fit for duty exam which Ms. Hoffman explained

> "[w]e fit for duty for several reasons. If somebody is returning from an injury or illness they receive a fit for duty physical before coming back to work. In this situation with Ricky and a couple of other situations we've had we sent someone for a fit for duty to find out if they were capable of performing their job."

(**T2** 36:15-21).

**Plaintiff testified that up until the medical exam on February 26, 2007, Plaintiff did not know whether anybody at the company considered him disabled or not and further admitted that he never believed or felt that anybody had discriminated against him.** (**T3** 90:9-19). (emphasis added).

4

After the medical exam and based on Concentra's medical opinion that Plaintiff was not able to perform the job duties that he had been assigned, Plaintiff was placed on a medical leave until he was able to come back to work "with restrictions or else-wise." (**T1** 167:1-5; **T2** 45:9-16, 24-25, 46:1, 56:19-24; D-4 attached hereto as Ex. "D"). Ms. Hoffman explained that putting Plaintiff on medial leave meant "that he isn't able to perform his job given his *current* medical condition." (**T2** 56:17-18) (emphasis added). Plaintiff admits that it was Concentra's physician, Dr. Walker's opinion that he could not perform his job in his present physical condition, not CTE's. (**T3** 106:15-25, 107:1-7). Upon being placed on medical leave, CTE provided Plaintiff with paperwork for Family Medical Leave ("FMLA") and company sponsored short-term disability benefits. (**T1** 158:1-11; **T2** 19:24-25, 20:1-10, 14-15, 38:22-25, 39:1, 55:21-25, 56:1-6; **T3** 118:6-20). CTE provides all of its employees with a company paid short-term disability benefit. (**T1** 160:17-21). FMLA is unpaid but runs concurrently with disability benefits which are paid. (**T2** 62:3-5). While it is a benefit offered by the company, CTE could not force Plaintiff to ask for short-term disability. (**T1** 158:9-11; 160:5-16; **T3** 118:6-20).

Ms. Hoffman testified that CTE did not regard Plaintiff as disabled. (**T2** 57:15-19). At the time that Plaintiff was provided with FMLA paperwork, CTE did not know if Plaintiff had a serious medical condition. (**T2** 65:13-15). After the medical exam, CTE never found out what Plaintiff's medical condition was and did not know whether it was temporary or how long it would take to resolve or when Plaintiff would be able to come back to work. (**T1** 70-17-19, 168:12-20).

Despite being placed on a medical leave on February 26, 2007, Plaintiff without CTE's authorization and without a medical release to return to work, showed up for work on February 28, 2007. (**T1** 157:12-16, 158:12-15; **T2** 52:2-9). Upon CTE becoming aware that Plaintiff had

5

returned to work, Plaintiff was taken off the floor and met with CTE's management.  (**T1** 169:2-6; **T2** 166:1-9).  At that meeting, Plaintiff did not ask for accommodations and said "that he felt as though he was doing his job and that [CTE was] being ridiculous for taking him off work." (**T1** 171:4-6).  What Plaintiff wanted was for CTE to ignore medical opinion that he could not perform certain duties of his job because he believed Dr. Walker was wrong.  (**T3** 111:25, 112:1-10).  CTE offered Plaintiff the opportunity to be reevaluated "at any point where he thought he would be able to pass the physical exam enough to even give [CTE] restrictions that [CTE] could work within."  (**T1** 171:22-25, 172:1-13).  At the meeting, Plaintiff was also provided with a copy of Concentra's evaluation.  (**T2** 51:6-8).

CTE also offered Plaintiff to look at the physical requirements of his job and if Plaintiff felt the requirement was "prohibitive" or "unreasonable," CTE was willing to go through each requirement and modify it not based solely on Plaintiff's opinion but in a group setting with everyone so an agreement could be reached as to modifying the restriction.  (**T1** 173:2-25).  As to modifying the physical requirements of the job, Plaintiff admitted that there "wouldn't be any too much change to the physical requirements to change my job description.  There would be just less of anything that I had to do."  (**T2** 165:2-7).  Plaintiff also admitted that there was nothing to modify in his job description.  (**T3** 114:18-21).  Plaintiff also admitted that he did not ask CTE to modify any of the physical requirements of his job.  (**T3** 115:3-6).  At the end of the meeting, CTE advised Plaintiff "that after he felt as though he could pass the physical exam, you know, he could certainly take another physical exam that the company would pay for."  (**T1** 174:10-15).

CTE did provide Plaintiff with two different opportunities to be re-examined which examinations Plaintiff attended.  (**T1** 172:15-19; **T2** 70:14-25, 71:1-25, 72:1-2, 11-25, 73:19-25, 74:1-3, 75:24-25, 76:1-12, 170:14-18).  After each time Plaintiff was re-examined, he "wasn't

6

able to pass the exam." (**T2** 71:5-8). Plaintiff was also provided with the job analysis "to take to his own physician to see if his physician would certify him to return to work." (**T2** 71:15-18). Plaintiff never provided CTE with anything from his own physician. (**T2** 71:19-20). Plaintiff testified that the second exam with Dr. Walker of Concentra on April 5, 2007 was "a thorough exam" and that he agreed with the assessment of the medical examination. (**T2** 170:23-25, 173:7-13; D-14 attached hereto as Ex. "E"). Plaintiff also applied for short-term disability benefits in April 2007.[4] (**T2** 180:1-6). Within days after the independent medical exam on April 5, 2007, Plaintiff's own orthopedic surgeon, Dr. Oplinger, completed an Attending Physician Statement on April 12, 2007 in which he opined that Plaintiff could not lift, carry, walk and that he could only do sedentary employment – "sit down work only." (**T3** 114:5-10; D24 attached hereto as Ex. "F"). Plaintiff never disclosed Dr. Oplinger's opinion to CTE. Plaintiff also disagreed with Dr. Oplinger's opinion. (**T3** 120:4-7). CTE set up with Plaintiff a third medical exam on September 17, 2007. (**T2** 174:23-25, 175:1-4, D-22 attached hereto as Ex. "G"). At this third and final independent medical evaluation, Dr. Walker again opined that Plaintiff was not able to perform all required duties. (D-22, Ex. "G").

After Plaintiff went out on medical leave, Plaintiff still had a job and it was CTE's intent "[t]o get him back as quickly as possible because he was a good employee." (**T1** 72:8-19, 151: 7-17, 167:19-25, 168:1). CTE did not replace Plaintiff. (**T1** 72-25, 73-1-2). In fact, CTE hoped Plaintiff would return to work. (**T1** 73:15-18; **T2** 68:13-15). Plaintiff admits that CTE told him that once his condition improved he could come back to work but that he told CTE that his

---

[4] Although Plaintiff testified that he didn't think he needed short-term disability, Plaintiff believed the problem should be considered a worker's comp issue. (**T2** 169:1-6). Plaintiff did file a worker's comp claim which was denied. (**T2** 169:7-25, 170:1-13).

condition would never improve. (**T3** 121:1-5). Plaintiff's job was left open for more then six months. (**T1** 73:5-10, 176:10-12). Even upon termination, Plaintiff admits that CTE invited him to reapply when his condition improved. (**T1** 176:25, 177:1-3; **T3** 123:6-9). In the September 17, 2007 letter of termination, CTE wrote to Plaintiff: "… As you are aware, Dr. Walker has stated that your current medical condition prohibits you from meeting the requirements of the warehouse position. At any point your condition improves we invite you to reapply with Cumberland Truck Equipment…." (**T2** 76:24-25, 77:13-23).

On November 21, 2007, Plaintiff applied for Social Security benefits. (**T3** 130:16-20). Plaintiff admitted that he applied for Social Security benefits because his knees were getting worse and because he could not find a job in his "present condition." (**T2** 184:8-16). On January 11, 2008, Plaintiff completed a Function Report for Social Security. (D-36, Ex. "A"; **T2** 185:5-12; **T3** 131:18-22, 151:8-10). In the Function Report, in response to Question 10: "What were you able to do before your illnesses, injuries, or conditions that you can't do now," Plaintiff responded "Working in a heavy duty truck parts warehouse – see attached statement." (D-36, Ex. "A"). Question 20a. asked Plaintiff to "Check any of the following items that your illnesses, injuries, or conditions affect." (D-36). In response, Plaintiff checked off: Lifting, Squatting, Bending, Standing, Walking, Sitting, Kneeling, Stair Climbing, Seeing." (D-36, Ex. "A"). In the written section directly below the list, Plaintiff wrote: "Bad knees prevent me from squating [sic], kneeling, standing for long periods or walking very far. Bad back prevents me from bending, standing for long periods. Comb. Prevents me from lifting per OSHA and stair climbing…." (D-36, Ex. "A").

Plaintiff also provided a typed attachment expanding on his responses to the questions because, as Plaintiff stated "As with any government form you don't give enough space for the

8

answers you want or need." (D-36, Ex. "A").  In expanding his answer to Section B, Question

10, Plaintiff wrote:  Prior to my condition I worked in a heavy-duty parts warehouse. I could lift

and toss 140+ lb brake drums from one pallet to another. Because I cannot bend my knees I

cannot lift properly per OSHA standards, which is why I lost my job...(D-36).  Plaintiff also

represented that he has had back and knee pain in varying degrees since 1986 and that his level

of pain has increased in the past 5 years.  (D-36, Ex. "A").  As to medication, Plaintiff admitted

to taking Lodine as of August 2007 and Percocet as of October 2007.  Social Security in

awarding Plaintiff SSDI benefits determined under its rules that Plaintiff was disabled as of

February 27, 2007, coinciding with the first day of his medical leave of absence.  (**T3** 142:16-

22).

In June of 2008, Plaintiff had a right knee replacement and in August 2008, Plaintiff had

a left knee replacement.  (**T3** 122:2-7).  Plaintiff admitted that even after the knee replacements,

he was not doing great.  (**T3** 122:8-10).  After his knee replacements, Plaintiff never reapplied to

CTE for a job because according to Plaintiff "[e]ven after having gotten two knee replacements I

could have not have passed it.  I would not have passed it as a preemployment physical.  So there

was no need to reapply."  (**T3** 123:6-15, 150:2-7).

Plaintiff testified that the only basis for believing that CTE considered him disabled was

because "They asked me – correction.  They told me to apply for disability insurance.  So yes, I

do believe they considered me disabled" and because CTE would not let him work.  (**T3** 148:12-

16, 155:10-19).

9

## II.    STATEMENT OF QUESTIONS

A.    Whether Plaintiff has established a prima facie case of disability discrimination under the ADA as a matter of law.

Suggested Answer:  No.

B.    Whether Plaintiff has established that CTE failed to provide a reasonable accommodation as a matter of law.

Suggested Answer:  No.

C.    Whether Plaintiff established a prima facie case of retaliation as a matter of law.

Suggested Answer:  No.

D.    Whether the evidence supports an award of punitive damages as a matter of law.

Suggested Answer:  No.

E.    Whether CTE is entitled to a new trial because the verdict is against the great weight of the evidence, constitutes a miscarriage of justice and shocks the conscience.

Suggested Answer:  Yes.

F.    Whether CTE is entitled to a new trial because the Court erred in failing to properly instruct the jury on the law of "regarded as" disabled.

Suggested Answer:  Yes.

G.    Whether CTE is entitled to a new trial because the Court improperly instructed the jury on the law as to Plaintiff's retaliation claim and compensatory damages.

Suggested Answer:  Yes.

H.    Whether the jury's award for back and front pay should be stricken because of Plaintiff's receipt of SSDI benefits.

Suggested Answer:  Yes.

I.      Whether the jury's award of punitive damages should be stricken because of insufficient evidence to support such award.

Suggested Answer:  Yes.

J.      Whether the jury's award of compensatory damages should be stricken because such award is not sanctioned in ADA anti-retaliation claims.

Suggested Answer:  Yes.

K.      Whether CTE is entitled to a stay of proceedings on enforcement of any judgment entered pending resolution of all post trial proceedings and/or appeals.

Suggested Answer:  Yes.

## III.   ARGUMENT

### A.     CTE Is Entitled To Entry Of Judgment As A Matter Of Law

#### 1.      Plaintiff has failed to establish a claim under the ADA.

Plaintiff brought this action solely on the basis that his employer CTE "regarded" him as disabled.  In a direct evidence case such as this one, plaintiff must prove that the employer's decision was motivated by discrimination.  *See Bialko v. Quaker Oats,* 2010 U.S. Dist. LEXIS 30723 *20 (M.D. Pa. 2010).  The burden is on Plaintiff to produce direct evidence of the alleged discriminatory attitudes of his employer CTE.  Plaintiff, by choosing to proceed on direct evidence, cannot rely on circumstantial evidence.  Based on the record, Plaintiff has failed to produce any direct evidence from which it is possible to infer that CTE "regarded" Plaintiff as a disabled person or direct evidence that CTE relied on erroneous beliefs in making employment decisions or treated Plaintiff differently because of such beliefs.  Nor has Plaintiff produced any direct evidence from which it may be inferred that Plaintiff's undisclosed medical condition was considered a substantial impairment in the major life activity of walking or working.  Rather, the

11

evidence establishes that CTE knew nothing as to Plaintiff's medical condition, the extent or severity of the condition, or whether Plaintiff would return to work. CTE's conduct in affording Plaintiff additional opportunities to undergo independent medical exams was with the hope that Plaintiff would be returned to work, and kept his job opened for nearly seven months. Upon termination, CTE invited Plaintiff to reapply. This evidence shows that CTE perceived Plaintiff's condition as a temporary impairment which does not constitute a disability under the ADA. *See* 29 C.F.R. § 1630.2(j)(2); *McDonald v. Cmwlth. Of Pennsylvania,* 62 F.3d 92, 96 (3d Cir. 1995). Even viewing the evidence in the light most favorable to Plaintiff and giving it the advantage of every fair and reasonable inference as this Court must do, there is insufficient evidence from which a reasonable jury could find liability. *See Buskirk v. Appollo Metals,* 307 F.3d 160, 165-66 (3d Cir. 2002) citing *Lightnning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir. 1993).

### a.   Prima facie case of disability discrimination

The primary purpose of the ADA is "to diminish or to eliminate the stereotypical thought processes, the thoughtless actions, and the hostile reactions that far too often bar those with disabilities from participating fully in the Nation's life, including the workplace." *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 602 (2002). In order to make out a prima facie case of disability discrimination, a plaintiff must establish that he: (1) has a "disability" within the meaning of the ADA; (2) is otherwise qualified for the job; and (3) was subjected to an adverse employment decision as a result of the discrimination. *Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 185 (3d Cir. 2010) citing *Taylor v. Phoenixville School District,* 184 F.3d 296, 306 (3d Cir. 1999). The ADA defines "disability," the first requirement of a discrimination case, as, (A) a physical or mental impairment that substantially limits one or more of the major life activities of such

12

individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102.  Because Plaintiff makes no claim of an actual disability or record of impairment, the focus is solely on the third category of disability, that of being "regarded as" having an impairment that substantially limits a major life activity.

**b.**      **Plaintiff has failed to establish that CTE "regarded" him as disabled**

Plaintiff has failed to make the required preliminary showing that he is a "disabled" person under the ADA thus warranting the grant of judgment in favor of CTE, as a matter of law.

The Regulations of the Equal Employment Opportunity Commission ("EEOC") provide that an individual is regarded as being disabled if he or she:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

> (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or

> (3) has none of the impairments . . . but is treated by a covered entity as having a substantially limiting impairment.

*Buskirk,* 307 F.3d at 166-167 citing 29 C.F.R. § 1630.2(1) (2001).  In other words, for Plaintiff to prevail on a "regarded as" claim under the ADA, Plaintiff must show that the employer either mistakenly believed that he has a physical impairment that substantially limits one or more major life activities or mistakenly believed that an actual non-limiting impairment substantially limited one or more major life activities.  *See Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 188 (3d Cir. 2010).  The key is "substantial limitation of a major life activity."

In a "regarded as" disabled claim, the Third Circuit instructs that "[t]he analysis under this definition focuses **not on [the plaintiff] and his actual abilities, 'but rather on the**

13

reactions and perceptions of the persons interacting or working with him.'" *Robinson v.*

*Lockheed Martin Corp.,* 212 Fed. Appx. 121, 125 (3d Cir. 2007) quoting *Kelly v. Drexel Univ.,*

94 F.3d 102, 109 (3d Cir. 1996) (citations omitted) (emphasis added); *see also Endres v.*

*Techneglas, Inc.,* 139 F. Supp. 2d 624, 635-636 (M.D. Pa. 2001) (focus is on how the employer

perceived the plaintiff and not on the plaintiff's actual condition).  Thus, Plaintiff had to prove by

competent evidence that CTE perceived Plaintiff as substantially limited in his ability to walk

and to work.  Yet, in his case-in-chief, Plaintiff produced substantial evidence as to the physical

requirements of his job and his actual ability to perform his job, but produced no evidence as to

how CTE perceived him or the "reactions and perceptions of the persons interacting or working

with him" in establishing his claim of discriminatory disability by direct evidence.

     In fact, up until the time that CTE provided Plaintiff with paperwork for FMLA and

short-term disability benefits, Plaintiff testified that he did not know whether anybody at the

company considered him disabled or not and further testified that he never believed or felt that

anybody had discriminated against him.  (T3 90:9-19).  **Plaintiff's only basis for believing that**

**CTE considered him disabled was because "They asked me – correction.  They told me to**

**apply for disability insurance.  So yes, I do believe they considered me disabled" and**

**because CTE would not let him work. (T3 148:12-16, 155:10-19).**

           (i)     <u>Providing FMLA and short-term disability benefits does not</u>
                    <u>establish that CTE regarded Plaintiff as disabled.</u>

     The fact that an employer suggests that an employee apply for FMLA does not establish

that the employer regarded the employee as disabled.  *Robinson,* 212 Fed. Appx. at 125 relying

on *Vincent v. Wells Fargo Guard Servs., Inc. of Fla.,* 3 F. Supp. 2d 1405, 1420 (S.D. Fla. 1998)

("noting that 'disability' under the ADA and 'serious health condition' under the FMLA are

different concepts that must be analyzed separately and that the leave portions of FMLA are distinct from the reasonable accommodations obligations under the ADA) (citations omitted); also citing 29 C.F.R. § 85.702(b).

Likewise, the fact that CTE provided Plaintiff with information relating to the company's sponsored short term disability benefits "bears no logical relationship to the question of whether [CTE] regarded Plaintiff as substantially impaired in a major life activity." *See Bialko v. Quaker Oats,* 2010 U.S. Dist. LEXIS 30723 at *39 (M.D. Pa. 2010). Further, an employer's belief that an employee may qualify for employer-provided disability benefits, "does not raise an inference that the employer perceived the employee to have an impairment that substantially limited the ability to perform a major life activity." *Id.* at *37 citing *Lee v. City of Columbus,* 2009 U.S. Dist. LEXIS 78151 at *10 (S.D. Ohio 2009) (Employer supplying insurer of disability benefits with requested information does not indicate employer regarded employee as disabled); *Wisbey v. City of Lincoln,* 2009 U.S. Dist. LEXIS 30819 at *10 (D. Neb. 2009) (Employer suggesting long-term disability to employee  does not show that employer perceived employee as disabled); *Hoskins v. Oakland County Sheriff's Dept.,* 44 F. Supp. 2d 882, 891 (E.D. Mich. 1999) (Issuance of disability benefits does not show that employer regarded employee as having a disability substantially limiting one or more life activities) (parentheticals added). *See also Benko v. Portage Area School District,* 241 Fed. Appx. 842, 847 (3d Cir. 2007) (Employer's willingness to grant employer sabbatical for health reasons or response to insurance company's request for information in connection with disability benefits establishes nothing more than employer's awareness of impairment). The fact that CTE provided Plaintiff with paperwork for FMLA and company sponsored short-term disability benefits after placing Plaintiff on a medical leave is insufficient, as a matter of law, in establishing that CTE regarded Plaintiff as disabled.

(ii)   Plaintiff presented no evidence that CTE regarded Plaintiff substantially impaired in major life activities of working and walking.

Plaintiff's claim that CTE "regarded" him as disabled because it would not let him return to work in his particular job as a warehouse worker also fails to establish that CTE regarded him as substantially limited in the major life activity of working.  As it concerns the major life activity of working, "the term 'substantially limits' means 'significantly restricted in the ability to perform either a broad class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training.'"  *Hobson v. St. Luke's Hospital and Health Network,* 735 F. Supp. 2d 206, 219 (E.D. Pa. 2010) (citations omitted).  Thus, to prevail, Plaintiff had to demonstrate that CTE *believed* he was limited in his ability to work in "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491 (1999) quoting 29 C.F.R. §1630.2(j)(3)(i).  In other words, to be "regarded as" substantially limited in the major life activity of working, "one must be regarded as precluded from more than a particular job."  *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 523 (1999).

At trial, Plaintiff offered no evidence whatsoever that CTE perceived him as unable to work in "either a class of jobs or a broad range of jobs in various classes."  Rather, Plaintiff only established that CTE would not let him return to his particular job after failing a fit for duty medical exam, thus conceding that CTE did not regard him as being substantially limited in the major life activity of working.  *See, e.g. Tice v. Center Area Transportation Authortiy,* 247 F.3d 506, 516 (3d Cir. 2001) (Plaintiff argued employer believed his impairment precluded him from working only as a bus driver thus conceding that employer did not regard him as being substantially limited in major life activity of working).

As it concerns the major life activity of walking, Plaintiff presented no evidence in this regard. Based on the testimony of CTE's managers (which Plaintiff did not rebut), there is absolutely no evidence that anyone at CTE regarded Plaintiff as disabled in the major life activity of walking. Plaintiff testified that he never disclosed his medical condition to CTE, never sought any type of accommodation, and denied needing assistance in doing his job. The fact that CTE observed Plaintiff limping, walking slowly and occasionally using a cane is not evidence of substantially limiting the major life activity of walking. *See Ellis v. McHugh,* 2011 U.S. Dist. LEXIS 38507 (M.D. Pa. March 18, 2011) (Employee who conceded she did not mention any alleged impairment to anyone, denied needing assistance to perform duties and stated her cerebral palsy was mild was unable to establish that employer regarded her as disabled and employer's knowledge of employee's slight limp was anything more than a moderate restriction on her ability to walk). *See also Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180 (3d Cir. 1999) (Employee with ankle problem who could carry out most regular activities of walking and standing found not disabled under ADA); *Kelly v. Drexel University,* 94 F.3d 102 (3d Cir. 1996) (comparatively moderate restriction on ability to walk not disability).

      (iii)    <u>Request for medical exam is insufficient to establish "regarded as" disabled.</u>

Although Plaintiff raises no claims that CTE's request that he undergo a medical exam was improper or evidence that CTE regarded him as disabled, such claim too would fail, as a matter of law. The issue of whether a plaintiff can establish the he is "regarded as" disabled by his employer solely by virtue of the employer's request for a medical exam was addressed by the Third Circuit Court of Appeals in *Tice v. Center Area Transportation Authortiy,* 247 F.3d 506 (3d Cir. 2001). The Third Circuit concluded "that an employer's request for a medical

17

examination, standing alone, is not sufficient to establish that the employer 'regarded' the employee as disabled, and thus cannot itself form the basis for establishing membership in the protected class under the ADA." *Tice v. Center Area Transportation Authortiy,* 247 F.3d 506, 508-509 (3d Cir. 2001); *see also Cody v. CIGNA Healthcare of St. Louis, Inc.,* 139 F.3d 595 (8th Cir. 1998) cited with approval in *Tice,* 247 F.3d at 516 (rejecting plaintiff's argument that employer regarded plaintiff as disabled because she was requested to undergo a mental health examination).   The Third Circuit in *Tice* further stated that: "A request for such an appropriately-tailored examination only established that the **employer harbors doubts (not certainties) with respect to an employee's ability to perform a particular job.** Doubts alone do not demonstrate that the employee was held in any particular regard [citation omitted], and as we have explained, inability to perform a particular job is not a disability within the meaning of the [ADA] [citation omitted]" citing Accord *Wright, 204 F.3d at 732-33* (request for an examination does not establish that an employer regarded an employee as disabled where all evidence suggested that the employer merely had doubts about the employee's abilities solely with respect to the physical demands of a single job); *Cody v. Cigna Healthcare of St. Louis, Inc., 139 F.3d 595, 599 (8th Cir. 1998)* (request for a mental examination of an employee who had exhibited strange behaviors does not establish that the employer 'regarded' the employee as disabled because 'employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims'). 247 F.3d at 515 (italics in original, bold emphasis added).

(iv)     <u>Mere fact employer is aware of an employee's impairment</u>
<u>insufficient to establish employer "regarded" employee as</u>
<u>disabled.</u>

The overwhelming and unrebutted evidence shows that no employee of CTE regarded

Plaintiff as disabled under the definition of the ADA to afford Plaintiff membership in the

protected class under the ADA.  Plaintiff called to testify in his case-in-chief the following

employees of CTE:  Bryan Sheldon, Controller, Brenda Hoffman, Director of Human Relations,

Charles Hoffman, Director of Parts Operations, John Whitmire, Parts and Logistics Manager and

Tim Kline (by deposition), Warehouse Manager.

Each of these managers had observed Plaintiff on separate occasions as having difficulty

walking, limping and/or using a cane at times.  (**T2** 13:18-25; 14:7-13; 16:8-10; Kline Depo.

26:14-17, Ex. "B").  According to Mr. Kline, Plaintiff was walking slower than at other times

that he had seen him.  (Kline Depo. Ex. "B", 26:20-22).  Mr. Hoffman whose window faced the

parking lot observed Plaintiff a few times walking slowly with a limp, taking a long time to come

across the parking lot, stopping every once in awhile.  (**T1** 53:1-4, 8-9 14-15).  Mr. Whitmire

testified that he observed Plaintiff having difficulty walking describing that "He just looked like

it labored for him to walk.  It was hard for him to walk at times.  It wasn't a constant thing." (**T1**

93:8-10).

Because it wasn't typical for Plaintiff who had never seemed to have had any difficulties

prior to 2007, CTE's management became concerned.  (**T2** 14:18-21).  Initially, CTE's

management did nothing but observe Plaintiff for a couple of weeks because they did not know if

Plaintiff's difficulties were a "short-term thing…."  (**T2** 15:11-16; 16:21-22).  Ms. Hoffman

testified that:

If you see an individual come in to [sic] work after not having

19

> had any issues and all of a sudden, you know, they're using a
> cane, they're struggling, do you know right away that they have
> a condition? Or is it, you know, a sports injury? It could be any
> number of things. So do you jump on that right away or do you
> see if the individual is going to recover from that? It appears that
> Ricky wasn't, whatever he was dealing with he wasn't recovering
> from it.

(**T2** 19:10-19). Ms. Hoffman again and again testified that CTE did not know what Plaintiff was

dealing with, didn't know if it was a situation that CTE ended up finding out that Plaintiff wasn't

able to perform certain duties or if it was a temporary situation. (**T2** 28:9-14). Ms. Hoffman

stated "We didn't know. We're not medical doctors." (*Id.*) Ms. Hoffman also testified that CTE

didn't know the extent of Plaintiff's difficulties and that it could have been that he had injured

himself at home, he could have been dealing with any number of things, such as gout or

whatever that would cause him to limp. (**T2** 24:18-25; 25:1-3).

Mr. Hoffman testified that "...every once in a while we all have problems, so it's, you

know, the first time I saw him I didn't go asking questions." (**T1** 53:21-24). Mr. Hoffman too

waited to say anything until after observing Plaintiff having difficulty five or six times walking

across the parking lot. (**T1** 66:21). Mr. Hoffman testified that he first spoke with Mr. Whitmire

about Plaintiff saying something to the effect "that I think Ricky is having some difficulty and

we better found out what's going on." (**T1** 68:18-21). Mr. Hoffman then went to Mr. Sheldon

with his concerns which were "whether or not Ricky would hurt himself, and secondly whether

or not he would hurt somebody else if he was on the forklift, and whether or not he could

actually do what needed to be done in the warehouse position." (**T1** 69:8-14; 148:11-16).

Based on this information, Mr. Sheldon testified that "I wasn't sure what Ricky was

dealing with, but it would seem to me that somebody who was using a cane to traverse a parking

lot would certainly have trouble carrying objects in our warehouse []." (**T1** 148:21-25). Mr.

20

Sheldon testified that the situation with Plaintiff was "an unsual circumstance," explaining "I mean, we have an employee who's been a long-term employee, a respected member of our organization, and he's obviously having physical difficulties. At that point how do you deal with that? You know, he's – it's not something that happened immediate and we weren't sure what he was dealing with. I mean is he dealing withy a bout of gout or is he dealing with something more serious? (**T1** 161:18-25; 162:1-10). After a couple of weeks, it didn't appear that Plaintiff was making any improvement and "for his safety and well being [CTE] felt it was time that [CTE] found out if he was capable of performing" his job duties. (**T2** 18:24-25; 19:1-3).

Because the situation with Plaintiff was one not previously encountered by CTE, CTE sought the advice of an attorney. (**T2** 31:11-12). After conferring with CTE's attorney, Mr. Sheldon decided it was in Plaintiff's best interest to send him for a medical examination to determine if he could continue to do his job as a warehouse worker. (**T1** 70:4-10; 111:8-11; 151:18-21; 163:25; 164:1-6, 11-12; **T2** 26:17-20; 27:1-2). Ms. Hoffman testified that "[w]e sent him to Concentra [for a medical exam] it was to find out what his situation was, what if there were any accommodations we could make for him. We didn't have any idea what was going on." (**T2** 32:1-4). Ms. Hoffman further testified that CTE did not regard Plaintiff as disabled. (**T2** 57:15-19). At the time Plaintiff was sent for a medical examination, Mr. Sheldon testified that: "...I observed [Plaintiff] using a cane to walk. So I had some idea that he was dealing with a medical issue or he wouldn't have gone [for a medical exam]. Aside from that I didn't know what he was dealing with. I had no indication of whether he was dealing with a temporary situation or a permanent one." (**T1** 166:2-8). Mr. Sheldon also had no idea whether Plaintiff would be able to come back to work after the exam. (**T1** 166:9-12).

After the medical exam and based on the evaluation that Plaintiff was not able to perform the job duties that he had been assigned, Mr. Sheldon instructed Ms. Hoffman to place Plaintiff on "medical leave until he was able to come back with restrictions or else-wise." (**T1** 167:1-5). Plaintiff admits that it was the physician at Concentra, Dr. Walker's opinion that he could not perform his job in his present physical condition and not CTE. (**T3** 106:15-25, 107:1-7). Ms. Hoffman explained that putting Plaintiff on medial leave meant "that he isn't able to perform his job given his current medical condition." (**T2** 56:17-18). Ms. Hoffman also testified that the decision to put Plaintiff on medical leave was based on Dr. Walker's report. (**T2** 56:19-24).

It is well established that "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir. 1996); *see also Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 381 (3d Cir. 2002) ("[T]o be covered under the 'regarded as' prong of the ADA[,] the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled") (citations and quotations omitted) and *Endres,* 139 F. Supp. 2d at 636 citing; *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir. 1996). Even an employer's belief that a plaintiff could not perform particular task safely does not establish that employer regarded plaintiff as disabled. *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir. 1993), cert. denied 114 S. Ct. 1386 (1994) cited with approval in *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir. 1996).

After Plaintiff went out on medical leave, Plaintiff still had a job and it was CTE's intent "[t]o get him back as quickly as possible because he was a good employee." (**T1** 167:19-25, 168:1). CTE did not replace Plaintiff. (**T1** 72-25; 73-1-2). In fact, CTE hoped Plaintiff would

return to work. (**T2** 68:13-15). Plaintiff admits that CTE told him that once his condition improved he could come back to work. (**T3** 121:1-5). CTE's conduct further demonstrates that CTE did not "regard" Plaintiff as disabled. CTE did provide Plaintiff with two different opportunities to be re-examined which examinations Plaintiff attended. (**T1** 172:15-19; **T2** 70:14-25, 71:1-25, 72:1-2, 11-25, 73:19-25, 74:1-3, 75:24-25, 76:1-12, 170:14-18). Only after the third and final medical exam where Dr. Walker again opined that Plaintiff was not able to perform all required duties of his job, CTE could no longer hold Plaintiff's job open, a job it held open from February 26, 2007 until September 17, 2007. Even upon termination, Plaintiff admits that CTE invited him to reapply when his condition improved. (**T1** 176:25, 177:1-3; **T2** 76:24-25, 77:13-23; **T3** 123:6-9). CTE's actions show that it believed Plaintiff's condition limited him but did not substantially limit him in a major life activity. *See, e.g., Snyder v. Norfolk Southern Railway Corp.,* 271 Fed. Appx. 150, 153 (3d Cir. 2008) (Employer's actions demonstrate that employer did not believe impairment substantially limited employee since suspension letter stated employee would be reinstated to his position if his condition improved). *See Endres,* 139 F. Supp. 2d at 636 (Offer of work from employer indicates that it did not perceive plaintiff to be disabled). Plaintiff has failed to produce any competent evidence that CTE regarded him as disabled under the definition of the ADA. Accordingly, Plaintiff is not entitled to the protections under the ADA and his claim must fail, as a matter of law.

### c.     Plaintiff was not a "qualified" individual under the ADA.

Plaintiff also failed to present any competent evidence that he was a "qualified" individual under the second prong of the elements of a prima facie case under the ADA. Plaintiff advised CTE that his condition would never improve to return to work, thus conceding he was unable to perform the essential functions of his job. (**T3** 121:4-5). Moreover, Plaintiff went out

on a medical leave of absence on February 26, 2007.  By April 12, 2007, he was aware that his

own orthopedic surgeon, Dr. Oplinger, had opined that Plaintiff could not lift, carry, walk and

that he could only do sedentary employment – "sit down work only." (**T3** 114:5-10).  Plaintiff,

however, never disclosed to CTE that Dr. Oplinger restricted him to sedentary employment.

Despite Plaintiff disagreement with Dr. Oplinger's opinion and Dr. Walker's opinion, two

medical doctors has determined that Plaintiff could not perform his job as a warehouse worker

for CTE.  (**T3** 106:15-25, 107:1-7, 120:4-7).

Plaintiff is also judicially estopped from asserting that he was a "qualified" individual

because he failed to reconcile the inconsistencies between his representations to the Social

Security Administration ("SSA") that he was totally disabled which, according to Plaintiff, was

the reason he lost his job with CTE and his later assertion in this litigation that he could perform

the essential functions of his job, with or without accommodation.

"Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting

a position inconsistent with one that she has previously asserted in the same or in a previous

proceeding." *Jones v. Southcentral Employment Corp.,* 2007 U.S. Dist. LEXIS 37579 at * 12

(M.D. Pa. 2007) citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358

(3d Cir. 1995) (internal quotation marks omitted).  "The basic principle…is that absent any good

explanation, a party should not be allowed to gain an advantage in litigation on one theory, and

then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* quoting 18 Charles

A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4477 (1981).

As the court in *Jones supra* noted "[a]s one district court has explained, 'The potential for

inconsistency arises where…a plaintiff applies for and receives SSDI [Social Security Disability

Income] benefits under the theory that she is totally disabled and therefore unable to work yet

24

subsequently sues her former employer under the ADA alleging that she could have worked but for some discriminatory act or policy." *Id.* at 13 quoting *Lorde v. City of Philadelphia,* 2000 U.S. Dist. LEXIS 17196, at *4 (E.D. Pa. 2000).

To show that he was a "qualified individual" under the ADA, Plaintiff was required to proffer admissible evidence that he was able to perform the essential functions of his position as a heavy truck parts warehouse worker, with or without reasonable accommodation. *See Buskirk v. Appollo Metals,* 307 F.3d 160, 168 (3d Cir. 2002). Where, as in this case, a plaintiff in an ADA case applies for and receives SSDI benefits for total disability, plaintiff cannot establish a prima facie case unless plaintiff can "proffer a sufficient explanation" for "the apparent contradiction that arises out of the earlier SSDI total disability claim." *Cleveland v. Policy Mgmt. Systems Corp.,* 526 U.S. 795, 806 (1999). The burden is on plaintiff to demonstrate the consistency of his assertions and he cannot simply contradict his previous indication that he is unable to work. *Id.* Plaintiff's "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of her job, with or without accommodation." *Id.* at 807 (internal quotation marks omitted). As the *Cleveland* court noted, there are "many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id.* at 803. "[A]n individual might qualify for SSDI under the SSA's rules and yet, due to special individual circumstances, remain capable of 'perform[ing] the essential functions' of her job." *Id.* at 804. Thus, "[t]he result is that an ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) without it." *Id.* at 803.

After *Cleveland,* the Seventh Circuit explained what is required of a plaintiff proceeding

on an ADA claim after being awarded SSDI benefits

> *Cleveland's* analysis suggests that an ADA plaintiff may not,
> simply by disavowing a prior claim of total disability, perform an
> about-face and assert that he is a "qualified individual" who is
> capable of working.  Rather, ...the plaintiff must proceed from the
> premises that his previous assertion of an inability to work was true,
> or that he in good faith believed it to be true, and he must demonstrate
> that the assertion was nonetheless consistent with his ability to
> perform the essential functions of his job. Explanations of the sort
> *Cleveland* requires are, in short, contextual - -they resolve the
> seeming discrepancy between a claim of disability and a later claim
> of entitlement to work not by contradicting what the plaintiff told
> the Social Security Administration, but by demonstrating that those
> representations, understood in light of the unique focus and
> requirements of the SSA, leave room for the possibility that the
> plaintiff is able to meet the essential demands of the job to which
> he claims a right under the ADA. *Lee v. City of Salem*, 259 F.3d 667,
> 674-75 (7th Cit. 2001) (cited with approval in *Detz v. Greiner Indus.,
> Inc.,* 346 F.3d 109, 118 (3d Cir. 2003)).

On November 21, 2007, Plaintiff applied for SSDI.  (**T3** 130:16-20).  Plaintiff admitted

that he applied for SSDI because his knees were getting worse and because he could not find a

job in his "present condition." (**T2** 184:8-16).  On January 11, 2008, Plaintiff completed a

Function Report for SSA. (D-36, Ex. "A"; **T2** 185:5-12; **T3** 131:18-22, 151:8-10).  In the

Function Report, in response to the question "What were you able to do **before** your illnesses,

injuries, or conditions that you can't do now," Plaintiff responded **"Working in a heavy duty

truck parts warehouse – see attached statement."** (D-36, Q. 10) (emphasis added).  Question

20a. asked Plaintiff to "Check any of the following items that your illnesses, injuries, or

conditions affect" to which Plaintiff checked off:  **Lifting, Squatting, Bending, Standing,

Walking, Sitting, Kneeling, Stair Climbing,** seeing." (D-36) (emphasis added).  In the written

section just below the Checklist, Plaintiff explained, "**Bad knees prevent me from squating**

[sic], **kneeling, standing for long periods or walking very far.  Bad back prevents me from bending, standing for long periods.  Comb. Prevents me from lifting per OSHA and stair climbing....**" (D-36) (emphasis added).

Plaintiff also provided a typed attachment expanding on his responses to the questions because, as he stated "As with any government form you don't give enough space for the answers you want or need."  (D-36).  In expanding his answer to Section B, Question 10, Plaintiff stated "**Prior** to my condition [SSA disability date -- February 27, 2007] **I worked in a heavy-duty parts warehouse.  I could lift and toss 140+ lb brake drums from one pallet to another. Because I cannot bend my knees I cannot lift properly per OSHA standards, which is why I lost my job....** (D-36) (emphasis added).  In providing a more detailed explanation to SSA, Plaintiff did not represent to SSA that he could perform his job in a "heavy-duty parts warehouse" with accommodation.  Rather, Plaintiff stated to the SSA that he lost his job because he could not bend his knees and could not lift properly.

In awarding Plaintiff SSDI benefits, SSA determined that Plaintiff was "disabled" within the meaning of the Social Security Act since February 27, 2007, coinciding with the first day of Plaintiff's medical leave with CTE.  In determining that Plaintiff was statutorily "disabled" as of February 27, 2007, the SSA necessarily concluded that Plaintiff's inability to work had lasted (or had been expected to last) for a period of at least 12 months from that date.  *See Barnhart v. Walton,* 535 U.S. 212, 214-222 (2002).  At trial on his ADA claim, Plaintiff offered absolutely **no** explanation as to why SSA found him disabled as of February 27, 2007, the date his medical leave began at CTE.  Likewise, Plaintiff offered no explanation as to why he represented to the SSA that he had lost his job "[b]ecause I cannot bend my knees I cannot lift properly per OSHA standards...." Plaintiff also offered no explanation as to why he checked off all the items his

condition prevented him from performing (i.e. lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing....) explaining only that: "**Bad knees prevent me from squating [sic], kneeling, standing for long periods or walking very far. Bad back prevents me from bending, standing for long periods. Comb. Prevents me from lifting per OSHA and stair climbing...."** (D-36) (emphasis added). Nowhere in his statement to the SSA did Plaintiff state that his condition worsened after his termination of employment on September 17, 2007 or that up until the time he could perform his job with accommodation. The reason is because Plaintiff, by April 2007, knew that his own doctor had restricted him to sedentary employment regardless of whether Plaintiff agreed or disagreed with this medical opinion.

In fact, the only testimony elicited to reconcile the inconsistencies came from Plaintiff's counsel who asked Plaintiff if it was "Fair to say everything within D-36 was [his] assessment of [his] abilities at that time in January 2008" to which Plaintiff responded "Yes, sir," with no further elaboration. (**T3** 152:10-13). And, according to Plaintiff, the reason he did not indicate that he could have done his job at CTE with accommodation is because SSA never asked him about it, despite the fact that Plaintiff took it upon himself to include an additional typed statement because the government form did not leave him enough room. (**T3** 152:19-21). Plaintiff's only other explanation was that he got worse between 2007 and 2008 because he was not working. (**T3** 144:23-25, 145:1-10). Yet, he failed to so indicate as much in his representations to the SSA.

While Plaintiff's explanations suggest that Plaintiff may have misrepresented his disability to the SSA, it does not provide a reasonable explanation for the inconsistency. Even in viewing the facts in a light most favorable to Plaintiff, as a matter of law, Plaintiff failed to establish that he was a "qualified individual." Moreover, Plaintiff presented no testimony in an

attempt to reconcile the conflict on the basis that he was denied a reasonable accommodation. The fact remains that Plaintiff's present position in his ADA case is manifestly inconsistent with his previous statement to the SSA that he could not perform his job duties as of February 27, 2007.

The SSA's findings, coupled with Plaintiff's representations in support thereof, cannot be squared away with his assertion that he was, in fact, capable of performing his job duties with or without accommodation. Because of his disabling condition as described in great detail to the SSA, no reasonable juror could assume the truth of his representations to the SSA and nevertheless conclude that he was "qualified" for his position within the meaning of the ADA. *See Detz v. Greiner Industries, Inc.,* 346 F.3d 109, 120 (3d Cir. 2003); *see also McLaughlin v. Sanofi-Aventis U.S. Inc.,* 2011 U.S. Dist. LEXIS 19977 (E.D. Pa. Mar. 1, 2011) (Plaintiff unable to provide reasonable explanation for inconsistency between representations to SSA and ADA claim); *Eck v. Whirley Industries, Inc.,* 2011 U.S. Dist. LEXIS 8372 (W.D. Pa. Jan. 28, 2011) (No reasonable juror could assume the truth of plaintiff's representation to the SSA and nevertheless conclude that plaintiff was "qualified" for her position within meaning of ADA); *Jones v. Southcentral Employment Corp.,* 2007 U.S. Dist. LEXIS 37579 (M.D. Pa. 2007) (same).

### d. Plaintiff presented no evidence that he was subjected to an adverse employment decision as a result of disability discrimination.

Plaintiff produced no evidence that he was subjected to an adverse employment decision as a result of disability discrimination. Although Plaintiff never identified the purported adverse employment decision to which he was subjected, based on the record, their can be only one of three possibilities: (1) CTE placing him on medical leave based on medical opinion; (2) CTE refusing to allow him to return to work based on medical opinion; and (3) terminating his

employment nearly seven months after he was on medical leave and after failing three fit for

duty medical exams. Again, this is not a case where Plaintiff is claiming an actual disability.

Plaintiff claims only that CTE regarded him as disabled. However, the uncontroverted evidence

shows that CTE's decision to put Plaintiff on a medical leave until his condition improved was

not due to discrimination but based solely on an independent medical opinion that Plaintiff could

not perform his job duties. Plaintiff even admitted that CTE told him he could return to work

upon his condition improving. Because Plaintiff failed the fit for duty medical exams, CTE

could not return him to work. As to the final, possible adverse employment action, Plaintiff's

termination, CTE never replaced Plaintiff while he was on medical leave and held his position

open for nearly seven months. When Plaintiff failed the third and final medical exam, CTE had

no choice but to terminate Plaintiff's employment. CTE nevertheless offered Plaintiff to reapply

to CTE upon his condition improving. It was Plaintiff's burden to show, by direct evidence, that

the adverse employment to which Plaintiff allegedly subjected was due to disability

discrimination. There is no such evidence on this record.

Because Plaintiff has failed to establish a prima facie case of discrimination, CTE is

entitled to judgment as a matter of law on his ADA claim. Should the Court find that Plaintiff

failed to establish a prima facie case of disability discrimination, as a matter of law, then

Plaintiff's failure to accommodate claim too must fail.

### 2.      CTE is entitled to entry of judgment as a matter of law on Plaintiff's failure to accommodation claim

Under the law, an employer must know of both the disability and the employee's desire

for accommodation for that disability. *Taylor v. Phoenixville School District,* 184 F.3d 26, 38

(3d Cir. 1999). "Employers cannot assume employees are disabled and need accommodations."

*Id.* In this case, Plaintiff's lack of an actual disability as defined by the ADA vitiates his claims

for failure to accommodate. Plaintiff's entire case is based on his claim that CTE "regarded"

him as disabled. If Plaintiff is not disabled (as he claimed at trial), then logically it must follow

that Plaintiff had no need for a reasonable accommodation to perform his job duties. This is

supported by the fact that prior to Plaintiff failing the fit for duty medical exam on February 26,

2007, Plaintiff admitted he never requested any accommodation to do his job. In fact, after

Plaintiff was placed on a medical leave on February 26, 2007, he returned to work two days later

without seeking any accommodation on February 28, 2007, and went to work in the warehouse

albeit without CTE's authorization. (**T1** 157:12-16; 158:12-15; **T2** 52:2-9). Plaintiff testified

that although he did not need accommodation his claim of accommodation was to "modify my

job." In any event, even if one assumes that Plaintiff can seek an after-the-fact accommodation

in a situation where he claims he is not disabled, the evidence showed that CTE on its own

initiative engaged in good faith in an interactive process with Plaintiff. Plaintiff, however,

wanted only one accommodation: to return to work against medical opinion, an accommodation

that was not reasonable. (**T2** 166:1-9).

Even if the Court considers Plaintiff's failure to accommodate claim, there is no

competent evidence from which a reasonable jury could conclude that CTE failed to

accommodate Plaintiff's disability. Employers must make reasonable accommodations to

*known* physical or mental limitations of an otherwise qualified employee *with a disability* unless

the employer can demonstrate the accommodation would impose an undue hardship on the

operation of the employer's business. 42 U.S.C.A. §12112(a). In this case, by the time Plaintiff

sought an accommodation, he was not a "qualified" employee having been found medically

unable to perform the essential functions of his job.

31

Yet, CTE still made attempts to accommodate Plaintiff which evidence Plaintiff did not rebut. To establish that an employer breached its duty to engage in the interactive process, the employee must demonstrate that: (1) the employer knew of the disability; (2) the employee requested accommodations; and (3) the employer did not make a good faith effort to assist and that the employee could have been reasonably accommodated but for the employer's lack of good faith. *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 312 (3d Cir. 1999). Plaintiff presented no evidence that CTE knew of a disability particularly since Plaintiff denied that he was disabled. As such, Plaintiff as failed as a matter of law to establish the first element of his prima facie case. As to the second element, what Plaintiff wanted was for CTE to ignore medical opinion that he could not perform certain duties of his job because he believed Dr. Walker was wrong and to let him return to work against medical opinion. (**T3** 111:25, 112:1-10). Although Plaintiff testified that he wanted CTE to "modify his job," Plaintiff admitted at trial that there "wouldn't be any too much change to the physical requirements to change my job description. There would be just less of anything that I had to do." (**T2** 165:2-7; D-1). Plaintiff also admitted that there was nothing to modify in his job description. (**T3** 114:18-21). And further admitted that he did not ask CTE to modify any of the physical requirements of his job, the ones he was medically deemed unable to perform. (**T3** 115:3-6).

Where an employee cannot be reasonably accommodated in his previous position, the employee must identify another position that is vacant and funded, at or below his level, for which he is qualified to perform the essential functions. *Williams v. Phila. Housing Auth. Police Dept.,* 380 F.3d 751, 770 (3d Cir. 2004). An employee is not required to identify an open position before the employer's duty to engage in the interactive process attaches. *Mengine v. Runyon,* 114 F.3d 415, 420-21 (3d Cir. 1997). Plaintiff presented no evidence of any other

position into which he could have transferred and in fact testified that he only wanted to return to his job in the warehouse.  *See Shapiro v. Twp. Of Lakewood,* 292 F.3d 356, 360 (3d Cir. 2002) (After an opportunity for discovery, if the employee still has not identified a position into which he could have transferred, then the court must grant judgment for the employer).

In demonstrating that an employer acted in good faith, the Third Circuit instructs that "Employers can show their good faith in a number of ways, such as taking steps like the following:  meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." *Taylor,* 184 F.3d at 51.

At trial, testimony was elicited which Plaintiff failed to rebut that CTE did in fact attempt to work with Plaintiff in finding some type of accommodation.  Mr. Sheldon testified that Plaintiff did not ask for accommodations and said "that he felt as though he was doing his job and that we were being ridiculous for taking him off work." (**T1** 171:4-6).  What Plaintiff wanted was for CTE to ignore medical opinion that he could not perform certain duties of his job because he believed Dr. Walker was wrong.  (**T3** 111:25, 112:1-10).  During that meeting, Plaintiff admitted to Mr. Sheldon that he had problems with mobility which would only get worse if he were not allowed to work." (**T1** 171:12-16).  Mr. Sheldon offered Plaintiff to be reevaluated "at any point where he thought he would be able to pass the physical exam enough to even give [CTE] restrictions that [CTE] could work within." (**T1** 171:22-25).  Mr. Sheldon also offered Plaintiff to look at the physical requirements of his job and if Plaintiff felt the requirement was "prohibitive" or "unreasonable," Mr. Sheldon was willing to go through each requirement and modify it not based solely on Plaintiff's opinion but in a group setting with

everyone so an agreement could be reached as to modifying the restriction.  (**T1** 173:2-25).  Mr. Sheldon testified that …I was willing to discuss not modifying the job description itself because his job was what his job was, but actually modifying his duties in order that he would be able to perform them with accommodations.  There's a big difference to just modifying a job description to try to make paperwork look good as opposed to doing what in reality you have to do, and that is make sure that your worker can do the job that he's suppose to be doing. (**T1** 190:24-25, 191:1-8).

Mr. Sheldon testified that he had again met with Plaintiff at a later date.  According to Mr. Sheldon, "[w]e discussed what Ricky would be able to do for the company, if he wasn't able to do the warehouse position were there other jobs that could be done, and Ricky put his hands out to me and he said 'Look at these hands.  These are not hands that can do desk work.' He said, 'I want my warehouse job back.'  (**T1** 175:9-16).

Based on the record, no reasonable juror could have found that CTE did not act in good faith and/or failed to accommodate Plaintiff, as a matter of law.

### 3. CTE is entitled to entry of judgment as a matter of law on Plaintiff's claim of retaliation

ADA retaliation claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 759 n. 3 (3d Cir. 2004).  In order to establish an action for retaliation, the Plaintiff must show that:  (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action at the same time or after the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's action.  *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir. 2000).  If a

plaintiff establishes a prima facie case, the burden then shifts to defendant to articulate a legitimate, nonretaliatory reason for the adverse action. *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997). Defendant's burden is a light one and satisfied if the defendant articulates any legitimate reason for the adverse action but need not prove that the articulated reason actually motivated the action. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2 (3d Cir. 1997).

Once defendant articulates such reason, the burden shifts to Plaintiff to prove that defendant's proffered explanation was false, and that retaliation was the real reason for the adverse action. *Krouse.,* 126 F.3d at 501. Although the burden of production shifts, the ultimate burden of proving that defendant retaliated against plaintiff remains at all times with the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

A Plaintiff in an ADA retaliation case need not establish that he is a qualified individual with a disability. *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997). But Plaintiff must show that he had a reasonable good faith belief that he was entitled to request the reasonable accommodation. *See Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 759 n. 2 (3d Cir. 2004). Based on the record, Plaintiff did not establish a good faith belief to request an accommodation because Plaintiff did not claim a disability and because Plaintiff admitted he needed no accommodations. As such, Plaintiff's claim for retaliation must fail as a matter of law in the first instance.

After February 26, 2007, when Plaintiff was placed on a medical leave of absence, Plaintiff returned to work two days letter on February 28, 2007, without a request for accommodation albeit without authorization from CTE. It was on this day that Plaintiff claims he requested accommodation. The only adverse employment action which occurred following

35

this date was Plaintiff's termination of employment, nearly seven months later, on September 17, 2007. In the period between February 28, 2007 and Plaintiff's termination on September 17, 2007, the uncontroverted evidence establishes that Plaintiff's job was held open, Plaintiff was not replaced and Plaintiff was afforded the opportunity to undergo two additional independent medical exams. Based on the evidence, Plaintiff cannot establish a causal link between the protected activity of asking for an accommodation and his termination of employment.

The Third Circuit has held that in the ADA retaliation context, "temporal proximity between the protected activity and the termination can be itself sufficient to establish the causal link... [but] the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a casual link will be inferred." *Williams,* 380 F.3d at 760 (internal quotation marks and brackets omitted); *Endres,* 139 F. Supp. 2d at 637 citing *Farrell,* 206 F.3d at 279; *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989) (two days can establish a casual link). However, when the temporal relationship is not "usually suggestive," temporal proximity alone is insufficient to establish the necessary causal connection. *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 997) (Nineteen months too attenuated). *See also Endres,* 139 F. Supp. 2d at 637 (finding "nine month delay coupled with the complete lack of any other indicia of retaliation is too attenuated for a jury to conclude that retaliation was the cause of the adverse employment decision). In *Williams supra,* the court found that the fact that over two months elapsed between the time that plaintiff requested an accommodation and the time that he was terminated was too long to be unusually suggestive of relaliatory motive. 380 F.3d at 760.

Where, as in this case, the temporal proximity is not so close as to be unduly suggestive, "timing plus other evidence may be an appropriate test." *Id.* (internal quotation marks omitted, citing *Thomas v. Town of Hammonton,* 351 F.3d 108, 114 (3d Cir. 2003)). Based on the law of

36

the Third Circuit, the alleged retaliation was too remote to be unduly suggestive, entitling CTE to

judgment, as a matter of law. *See McLaughlin v. Sanofi-Aventis U.S., Inc.,* 2011 U.S. Dist.

LEXIS 19977 at *25 (E.D. Pa. Mar. 1, 2011) (Five months after filing first EEOC Complaint and

two months after filing second EEOC complaint and termination of employment too remote to be

unduly suggestive).  Nor did Plaintiff produce any other evidence of retaliation for a reasonable

juror to conclude that the retaliation was the cause of the adverse employment action.

Moreover, CTE articulated a legitimate reason for Plaintiff's termination, namely, that

Plaintiff, based on medical opinion, was found unable perform his duties as a warehouse worker.

After nearly seven months, CTE could no longer keep Plaintiff job open.  Having met its burden,

Plaintiff was required to present evidence of pretext.  To establish pretext, Plaintiff must point to

"some evidence, direct or circumstantial, from which a fact finder could reasonably either (1)

disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). It is not enough for

plaintiff to show that the employer's reason was wrong or mistaken. *Id.* at 765.  Rather, the

plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions

in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could

rationally find them 'unworthy of credence'…." *Id.* (citation omitted).  Plaintiff, in this case,

presented absolutely no evidence of pretext.

### 4.   There is no basis for the jury's award for punitive damages as a matter of law

The purpose of punitive damages is to punish the defendant for outrageous conduct and

deter it and others from similar conduct in the future.  *Smith v. Wade,* 461 U.S. 30 (1985).  In this

case, punitive damages could only have been awarded if CTE acted with malice or reckless

indifference to Plaintiff's federally protected rights.  42 U.S.C. § 1981a(b)(1).  The evidence is

entirely insufficient to support a finding of punitive damages.  Plaintiff presented absolutely no

evidence that any management official acted with malice or reckless indifference to Plaintiff's

federally protected rights.  As the Court instructed the jury, "[a]n action is done with malice if a

person knows that it violates the federal law prohibiting discrimination and does it any way,"

while "[a]n action is done with reckless indifference if a person knows that it may violate the law

and does it anyway."  (**T4** 118:8-13).

     At the outset, Plaintiff admits that prior to the medical exam on February 26, 2007, he did

not know if anyone at CTE considered him disabled and did not believe or felt that anybody

discriminated against him.  (**T3** 90:9-19).   Thus, looking at CTE's conduct, the overwhelming

evidence which Plaintiff never sought to rebut was the concern that CTE had for a long term

employee who suddenly appeared to have difficulties walking not previously exhibited.  Plaintiff

as well as CTE's managers all admitted that Plaintiff received excellent performance reviews and

CTE's management all agreed that Plaintiff was an exemplary employee.  Plaintiff also testified

that he was never disciplined or prohibited from using his cane.  The testimony of Messrs. Kline

and Whitmire establish that while Plaintiff may have mentioned problems with his knees, their

concern was for Plaintiff telling him to take it easy and not to over do it.  (**T1** 108:2-14 **T2**

117:14-23; Kline Depo. 27:11-15).  Mr. Whitmire never told Plaintiff to stop working because he

had difficulty walking.  (**T1** 109:1-4).

     After CTE observed Plaintiff for a couple of weeks and realizing that his condition was

not improving, CTE did not jump to any conclusion but rather discussed it, sought the advice of

counsel and not knowing Plaintiff's condition or the underlying cause for Plaintiff's difficulties

did exactly what an employer is permitted to do, sent Plaintiff for a fit for duty medical exam. All of CTE's managers testified as to their concern for Plaintiff and what was in Plaintiff's best interest. Moreover, CTE did not rely on its own judgment as to Plaintiff's ability to perform his job, but instead relied on an independent medical opinion that Plaintiff could not perform his job duties. In fact, Plaintiff admitted that it wasn't CTE who was wrong but Dr. Walker who was wrong in finding he could not perform his job. After placing Plaintiff on medical leave, CTE provided Plaintiff with information on FMLA and the company sponsored short term disability benefits as it is required to do by law and policy in the event Plaintiff's condition required either or both. CTE then afforded Plaintiff the opportunity to undergo additional medical exams to determine when he could return to work.

CTE also held Plaintiff's job open for nearly seven months in the hope his condition would improve and he would return to work. Even upon termination, CTE invited Plaintiff to reapply upon his condition improving. Plaintiff admitted that CTE told him during his medical leave and upon termination that he could come back to CTE when his condition improved. CTE also engaged in discussions with Plaintiff as to accommodating him in some other way except for returning him to his former job against medical advice – testimony that again Plaintiff did not rebut. The only thing CTE did not do was what Plaintiff wanted – ignore medical opinion and let him just work. Such action does not rise to the level of malice or reckless disregard of Plaintiff's federally protected rights.

The Court further instructed the jury that "you cannot award punitive damages if CTE proves by a preponderance of the evidence that it made a good faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Mr. Shaw." (**T4** 118:16-22). CTE did prove by a preponderance of the evidence

39

that it made a good faith attempt to comply with the law, evidence which Plaintiff again did not

rebut. Mr. Sheldon testified that the situation with Plaintiff was "an unsual circumstance,"

explaining

> I mean, we have an employee who's been a long-term employee,
> a respected member of our organization, and he's obviously
> having physical difficulties. At that point how do you deal
> with that? You know, he's – it's not something that happened
> immediate and we weren't sure what he was dealing with. I
> mean is he dealing withy a bout of gout or is he dealing with
> something more serious? There are lots of rules out there,
> HIPAA and FMLA and all kinds of medical rules, and even
> the owners of our company are not allowed to have employee
> medical records at this date, you know you can't discriminate
> against anybody based on medical records and so on. So that
> information is held very tightly and it's very secretive in today's
> employment process.

(**T1** 161:18-25; 162:1-10). Ms. Hoffman also testified that she never asked Ricky about his

struggling to walk because, according to Ms. Hoffman, CTE is "very restricted in what the

company can ask an employee." (**T2** 14:25; 15:1-6). Even after CTE made the decision to send

Plaintiff for a medical exams, Ms. Hoffman testified she did not advise Plaintiff that CTE had

concerns about his physical abilities because CTE is restricted in what it can talk to employees

about. (**T2** 27-13-15).

Plaintiff produced no evidence that would support the jury's award for punitive damages,

as a matter of law.

### B.   CTE Is Entitled to a New Trial[5]

If the Court declines to enter judgment as a matter of law in favor of CTE, the Court

should award CTE a new trial because the verdict is against the great weight of the evidence,

---

[5] CTE respectfully moves to supplement its Motion for New Trial and Motion to Amend or Alter Judgment as it relates to the jury's award of compensatory damages based on the inconsistency of the verdict sheet and the law as further argued *infra*.

constitutes a miscarriage of justice and shocks the conscience. *See Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).   Additionally, a new trial may be granted if the verdict was the result of erroneous jury instructions, was excessive or clearly unsupported by the evidence, or was influenced by extraneous matters such as passion, prejudice, sympathy or speculation. *Rush v. Scott Specialty Gases, Inc.*, 930 F. Supp. 194, 197 (E.D. Pa. 1996) (citations omitted).

<strong>1. The verdict is against the great weight of evidence, constitutes a<br>miscarriage of justice and shocks the conscience</strong>

The jury's verdict finding that CTE "regarded" Plaintiff as disabled and that such perceived disability was a determinative factor in CTE's decision to put Plaintiff on medical leave was against the great weight of the evidence presented at trial.   There was no direct evidence from which a reasonable jury could infer that CTE perceived Plaintiff to be substantially limited in the major life activities of walking and working.   Rather, the substantial evidence produced established that CTE did not "regard" Plaintiff as disabled for the reasons previously stated in this Brief and relied on medical opinion in making its employment decisions as it concerned Plaintiff.   Plaintiff's only basis for believing that CTE considered him disabled was based on the fact that CTE provided him with information on FMLA and company sponsored disability benefits.   The nature of the Jury's verdict clearly suggests that they departed from the instructions on the law and/or misunderstood the instructions and were guided by sympathy and bias for the Plaintiff.   For all of the reasons set forth in CTE's Motion and this Brief, the verdict – both on liability and on damages – is against the great weight of the evidence, constitutes a miscarriage of justice and shocks the conscience.   As a result, a new trial is necessary.

2. **The Court erred in failing to properly instruct the jury on the law of "regarded as" disabled**

CTE contends that the trial court should have instructed the jury as it requested that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regards the employee as disabled or that perception caused the adverse employment action." (**T4** 26:1-11). In a "regarded as" case such as this one, as argued *supra* in Section A1b, the focus is not on the Plaintiff's condition and actual abilities but rather on the perceptions of the employees interacting with the employee. Thus, in refusing to instruct the jury on the law as requested, the jury clearly misunderstood Plaintiff's burden of proof in a "regarded as" ADA case and instead treated this case as a case of actual disability. The trial record overwhelmingly establishes that not one employee of CTE regarded Plaintiff as disabled. Rather, the unrebutted evidence shows that CTE merely observed an impairment with no knowledge of Plaintiff's condition, the severity, the cause, whether it was permanent or temporary and whether Plaintiff would or would not be able to assume his duties as a warehouse worker. This error resulted in jury confusion and a misapplication of the law to the facts as established by the evidence.

Although the Court permitted defense counsel to argue such point to the jury (**T4** 31:22-25, 32: 1-13), the Court's instructions to the jury that "If there is any difference between the law as stated by the lawyers and the law as stated in these instructions, you are governed by the instructions given to you by the Court" (**T4** 86:14-20), thus allowing and in fact requiring the jury to disregard the law as argued by defense counsel. The charge, taken as a whole and viewed in light of the evidence, did not fairly and adequately submit the issues in the case to the jury who clearly failed to comprehend the distinction between a person with an actual disability and

the claim that the employer "regarded" an employee as disabled.  Accordingly, a new trial is

warranted in this case to correct this prejudicial error.

> **3.**   **The Court Improperly Instructed the Jury On the Law as to Plaintiff's Retaliation Claim and an Award of Compensatory Damages**

The jury awarded compensatory damages in the amount of $30,000 based on the Court's

Jury Instructions that "[t]he award of compensatory damages is meant to put Mr. Shaw in the

position he would have occupied if the discrimination and/or retaliation had not occurred."  (**T4**

111:13-21).  The Verdict Sheet did not distinguish if the award of compensatory damages was

awarded on Plaintiff's ADA claim or his retaliation claim.  However, the law does not provide

for the recovery of compensatory damages from an employer who is found to have retaliated

against an employee who sought reasonable accommodation for his disabilities.  Congress has

not authorized such sanctions in ADA anti-retaliation claims.  Accordingly, the award of

compensatory damages must be stricken to correct a clear error of law.

In *Baker v. PPL Corp.*, 2010 U.S. Dist. LEXIS 7591 (M.D. Pa. Jan. 5, 2010) adopted

2010 U.S. Dist. LEXIS 7589 (M.D. Pa. Jan. 29, 2010) (Connor J.), the court undertook an

examination of the relevant statutes and case law, summarizing the consistent result by numerous

courts that have held:

> [T]he 1991 Civil Rights Act does not expand the remedies
> available to a party brining an ADA retaliation claim against an
> employer and therefore compensatory and punitive damages
> are not available.  A close reading of the plain language of *§
> 1981a(a)(2)* makes it clear that the statute does not contemplate
> compensatory and punitive damages for a retaliation claim
> under the ADA. *Section 1981a(a)(2)* permits recovery of
> compensatory and punitive damages (and thus expands the
> remedies available under *§ 2000e-f(g)(1)*) only for those claims
> listed therein. With respect to the *ADA, § 1981a(a)(2)* only lists

43

claims brought under *§§ 12112 or 12112(b)(5)*. Because claims
of retaliation under the ADA (*§ 12203*) are not listed,
compensatory and punitive damages are not available for such
claims. Instead, the remedies available for ADA retaliation
claims against an employer are limited to the remedies set forth
in *§ 2000e-5(g)(1)*.  See *National R.R. Passenger Corp. v.
National Ass'n of R.R. Passengers, 414 U.S. 453, 458, 94 S.Ct.
690, 38 L.Ed.2d 646 (*18] (1974)* ("A frequently [*18] stated
principle of statutory construction is that when legislation
expressly provides a particular remedy or remedies, courts
should not expand the coverage of the statute to subsume other
remedies.").

*Baker,* 2010 U.S. Dist. LEXIS 7591 at 16-17.  In following the majority and based on statutory

construction, the *Baker* court held that compensatory damages are not permitted under the anti-

retaliation provisions of the ADA.  Accordingly, the award for compensatory damages should be

stricken or a new trial granted.  *See also Kozempel v. Grand View Hospital,* 2011 U.S. Dist.

LEXIS 34843 (E.D. Pa. Mar. 30, 2011) (Anti-retaliation provisions of ADA do not authorize

award of compensatory damages) (citations omitted).

### C.   Motion To Amend or Alter Judgment

A motion to amend or alter judgment under Federal Rue of Civil Procedure 59(e)

is appropriate to, *inter alia,* "correct a clear error of law or prevent manifest injustice." *N. River

Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995).  Rule 59(e) provides an

efficient mechanism by which a trial judge can correct an otherwise erroneous judgment, and

reconsider the validity of a judgment and alter it as the judge determines.  *Clipper Express v.

Rocky Mountain Motor Tariff Bureau, Inc.,* 674 F.2d 1252, 1260 (9th Cir. 1982), cert. denied, 45

U.S. 1227 (1983).  The trial court has broad discretion in such determination.  *Dehne v. Med.

Shoppe Int'l, Inc.,* 261 F. Supp. 2d 1142, 1144 (E.D. Mo. 2003).  The trial court, should only

uphold a verdict if there is a reasonable basis after examining the trial record and drawing all

justifiable inferences in Plaintiff's favor. *Bhaya v. Westinghouse Elec. Co.,* 832 F.2d 258, 259

(3d Cir. 1987). Even in drawing all justifiable inferences in Plaintiff's favor, the trial record and

the law will not support the jury's award of back pay, front pay, punitive damages and

compensatory damages.

### 1.   No basis for jury's award of back pay or front pay

Given Plaintiff's successful representations to SSA that he has been disabled since

February 27, 2007, Plaintiff admitted that he was unable to perform the essential functions of his

job as a warehouse worker for CTE as of February 27, 2007. Plaintiff's own orthopedic surgeon

in April 2007 opined that Plaintiff could only perform sedentary (sit down) employment and thus

could not perform the essential functions of his job as a warehouse worker which required lifting,

carrying and walking. Moreover, Plaintiff admitted that that at the time he was deemed by Dr.

Walker not fit for duty in performing his warehouse workers' position, his condition would never

improve. Based on the trial record including Plaintiff's own admissions and representations, it

would be a clear error of law and manifestly unjust for the Court to uphold the jury's award of

backpay.

As to front pay, Plaintiff who is still receiving SSDI benefits presented no evidence at

trial that he was fit to return to gainful employment. To the contrary, Plaintiff admitted at trial

that even after his knee replacement surgeries in June and August 2008, his condition wasn't any

better and that even with the knee replacements he could not return to his former job as a

warehouse worker with CTE. He further admitted that his failure to reapply for any position

with CTE after his termination of employment was due to his commencing a lawsuit.

Accordingly, Plaintiff should not be rewarded by an award of front pay where Plaintiff has no

intent and has presented no evidence of seeking to obtain gainful employment at any time in the

future.  In short, Plaintiff has not worked since his termination on September 17, 2007 to the present, nearly four years.

Plaintiff represented to SSA that he was totally disabled and made no suggestion that his condition was temporary or that he would be able to work with reasonable accommodation. Moreover, Plaintiff presented no evidence that he sought alternate employment or took steps to enable him to return to the labor market. *See Flowers v. Komatsu Mining Sys., Inc.,* 165 F.3d 554, 557-58 (7th Cir. 1999) (concluding that court must consider ability of plaintiff to work, including qualification for receipt of SSDI in deciding plaintiff's entitlement to back pay). It is manifestly inconsistent for an ADA plaintiff to allege total disability on the one hand, make no effort to seek employment and then request back pay or front pay. *See Loubrido v. Hull Dobbs Co.,* 526 F. Supp. 1055, 1061 (D.P.R. 1981) (excluding period in which ADEA plaintiff was disabled and receiving SSDI from back pay award because plaintiff could not have worked during that period).

The First Cirucit excluded from an award of back pay, the time an ADA plaintiff was disabled under the Social Security Act, reasoning that the plaintiff could not have worked for the defendant or for anybody else during that period. *Sullivan v. Raytheon Co.,* 262 F.3d 41, 47 (1st Cir. 2001) cited with approval in *Martinez v. Coatings Inc.,* 286 F. Supp. 2d 107, 116 (D. P.R. 2003) (denying back and front pay because plaintiff receiving SSDI for disability precluding her from engaging in gainful employment and no evidence to prove Plaintiff fit to return to work). *See also Fredenburg v. Contra Costa County Dept. of Health Servs.,* 172 F.3d 1176, 1181 (9th Cir. 1999) (Plaintiff not entitled to double recovery in retaining SSDI benefits and at same time recover back pay for same period on claim employer violated ADA); *Crenshaw v. Sun Microsystems, Inc.,* 2007 U.S. Dist. LEXIS 32440 (N.D. Ca. 2007) (Plaintiff precluded from

recovering back pay for same periods on claim employer violated ADA); *Miller v. Pilgrim's Pride Corp.,* 2007 U.S. Dist. LEXIS 48971 (W.D. Va. 2007) (Because plaintiff qualified for SSDI, award of back pay would be inconsistent, granting employer partial summary judgment on back pay claim).

Thus, based on the record and the law, Plaintiff is not entitled to a double recovery and the jury's award of back pay and front pay should be striken and the judgment amended accordingly.

### 2.    No basis for jury's award of punitive damages

Because there is absolutely no evidence on this record as argued *supra* in Section A4 to support an award of punitive damages, such award should and must be stricken.

### 3.    The award for compensatory damages must be stricken

The law does not provide for the recovery of compensatory damages from an employer who is found to have retaliated against an employee who sough reasonable accommodation for his disabilities.  Congress has not authorized such sanctions in ADA anti-retaliation claims. Accordingly, the award of compensatory damages must be stricken to correct a clear error of law as argued in *supra* in Section B3.

### D.    REQUEST FOR STAY OF PROCEEDINGS ON ENFORCEMENT OF ANY JUDGMENT ENTERED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE NO. 62(B)

Pursuant to Federal Rule of Civil Procedure No. 62 CTE is entitled to a Stay of all proceedings to enforce the judgment until the conclusion of all appeals to which it is entitled. CTE further asserts that any enforcement actions taken prior to the exhaustion of any and all post-verdict and/or appeals would severely prejudice CTE herein in that it would be compelled to make any payments of money and may be successful in its appeals which might negate the

amount awarded.  Plaintiff, however, would not be prejudiced by a Stay of Enforcement of

Judgment pending the resolution of any post-verdict matters or appeals.

Accordingly, CTE respectfully requests that this Honorable Court grant its request for a

stay pursuant to federal Rule of Civil Procedure No. 62(b) until such time as all post-verdict

motions and/or appeals are resolved.

## IV.   CONCLUSION

For all of the foregoing reasons, CTE respectfully requests that the Court enter judgment

as a matter of law in its favor on Plaintiff's ADA and retaliation claims.  In the alternative, the

Court should grant CTE's Motion for a new trial and/or Motion to amend or alter the judgment

as well as its Motion to stay and respectfully requests that the Court grant any further post trial

relief as is it deems just and proper.

Respectfully submitted,

_____s/Veronica W. Saltz_____
Veronica W. Saltz, Esquire
Attorney I.D. No.: 52931
SALTZ POLISHER P.C.
993 Old Eagle School Road, Ste. 412
Wayne, PA 19087
(610) 964-3333

Attorney for Defendant
Cumberland Truck Equipment Co.

Dated:  August 1, 2011

## CERTIFICATE OF SERVICE

I, Veronica W. Saltz, attorney for Defendant Metropolitan Life Insurance Company do hereby certify that on August 1, 2011, I caused a true and correct copy of the foregoing *Brief in Support of its Post-Verdict Motions for Entry of Judgment as a Matter of Law, For a New Trial, To Alter or Amend the Judgment and For a Stay of Judgment* to be filed via the Official Court Electronic Document Filing System, and that said document is therefore available for viewing and downloading from the ECF system.  By virtue of this filing, service upon the following counsel, being an Electronic Case Filing User, is complete upon counsels' receipt of the Court's e-mail notification of the Notice of Electronic Filing:

Michael J. Crocenzi, Esquire
320 Market Street, P.O. Box 1268
Harrisburg, PA 17108


Peter J. Russo, Esquire
500 East Trindle Road
Suite 100
Mechanicsburg, PA 17050


s/Veronica W. Saltz
Veronica W. Saltz, Esquire

49