```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
                    HARRISBURG DIVISION

RICKY A. SHAW,            : CASE NO.
              Plaintiff   : 1:09-CV-00359
        vs.               :
CUMBERLAND TRUCK          :
EQUIPMENT COMPANY,        : Harrisburg, PA
              Defendant   : 19 May 2011
........................: 9:05 a.m.


        TRANSCRIPT OF CIVIL JURY TRIAL, DAY 4
    BEFORE THE HONORABLE CHRISTOPHER C. CONNER
            UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Plaintiff:

    Michael J. Crocenzi, Esq.
    Goldberg Katzman, P.C.
    320 Market Street
    Harrisburg, PA 17101
    (717) 234-4161

    Peter J. Russo, Esq.
    Law Offices of Peter J. Russo, P.C.
    5006 East Trindle Road, Suite 100
    Mechanicsburg, PA 17050
    (717) 591-1755

For the Defendant:

    Veronica Winter Saltz, Esq.
    Saltz Polisher, P.C.
    993 Old Eagle School Road, #412
    Wayne, PA 19087
    (610) 964-3333

Court Reporter:

    Wesley J. Armstrong, RMR
    Official Court Reporter
    U.S. Courthouse
    228 Walnut Street
    Harrisburg, PA 17108
    (717) 542-5569

**I N D E X**
**Ricky Shaw vs. Cumberland Truck Equipment Co.**
**1:09-CV-00359**
**Civil Jury Trial, Day 4**
**19 May 2011**

**<u>PROCEEDINGS</u>**

Page

**<u>DEFENSE WITNESSES</u>**

Video deposition of Dr. Oplinger          3

Charge conference                         7

Closing argument by Mr. Russo            44

Closing argument by Ms. Saltz            63

Rebuttal by Mr. Russo                    82

Jury charge                              85

Question by the jury                    132

Return of verdict                       136

### P R O C E E D I N G S

1

2      THE COURT: Good morning.  Please be seated.

3      MS. SALTZ: Good morning, Your Honor.

4      THE COURT: Good morning.  Ladies and

5  gentleman of the jury, we have a fairly

6  definitive schedule for you this morning.  We

7  have one additional witness who will be

8  testifying by video tape.  It is Dr. Oplinger

9  testifying on behalf of the defendants in this

10  case.  Then we'll take a break of about a half

11  an hour while I meet with counsel to go over

12  closing arguments and the charge, and then

13  we'll return, have closing arguments with you

14  presented by counsel, followed by my

15  instructions on the law.  All of this will take

16  some time, but I anticipate that this case will

17  be in your hands around lunchtime.  All right?

18  Ms. Saltz, at this time if you want to present

19  Dr. Oplinger's testimony?

20      MS. SALTZ: I do, Your Honor, thank you.

21      (Video deposition of Dr. Oplinger played

22  from 9:05 to 9:54 a.m.)

23      THE COURT: Ladies and gentlemen, that

24  concludes the deposition video taped deposition,

25  Ms. Saltz, do you have any additional evidence?

1          MS. SALTZ: Yes, Your Honor.  I would like

2    to move in certain exhibits at this time.

3          THE COURT: Certainly.

4          MS. SALTZ: These are the exhibits that were

5    referenced with Dr. Oplinger.  Defendant's 26,

6    they're out of order here, Defendant's 25.

7    Defendant's 27, Defendant's 24, 28, 29, 30, 31,

8    32, 33, and 34.

9          THE COURT: Any objections?

10         MR. CROCENZI: I have one objection, and

11   that is to Exhibit 24.  Relevancy, Your Honor,

12   I raised during the deposition.

13         THE COURT: Counsel, would you approach?

14         (Side bar at 9:54 a.m.)

15         THE COURT: The nature of your objection?

16         MR. CROCENZI: Relevancy, Your Honor,

17   because first of all relevance because the legal

18   standard is could he do the essential functions

19   in February when CTE told him to stop working on

20   2-26-07.  This is April 12th of 2007.  And

21   furthermore the short-term disability process

22   only started because Cumberland Truck engaged in

23   what we believe is discriminatory acts, put him

24   out of work, we've already had a bunch of

25   testimony that he felt that he had no choice at

1    that point but to begin the short-term

2    disability aspect.  So to take a phrase from

3    criminal procedures, the fruit of the poisonous

4    tree.

5          THE COURT: All right.  Ms. Saltz?

6          MS. SALTZ: On this one the company was not

7    aware of this document.  However, Mr. Shaw was

8    aware and testified to the restrictions based on

9    this document.  This is relevant because it's

10   relevant to the fact of Mr. Shaw's physician

11   regarding accommodation, the company continued

12   to send him for evaluations to return him back

13   to work.  At any point in time based on this he

14   could have sought different accommodations, he

15   chose not to, and the reason being is that he

16   knew that the reason he could not seek

17   accommodations is because his own doctor stated

18   that he could not do the work.  I think it's

19   extremely relevant in this case.

20         THE COURT: I'm going to admit the exhibit.

21   My concern about this is that there may be some

22   jury confusion with respect to what it is

23   exactly that Dr. Oplinger was certifying in this

24   document, and it goes back to that whole idea of

25   the whole concept of disability under the ADA

1   versus social security.  This is short-term

2   disability.  So I'm disinclined to send it out

3   with the jury.

4        MS. SALTZ: That's fine.

5        THE COURT: But I do think it should be

6   admitted for purposes of the record, and that

7   doesn't preclude you if you need to to refer to

8   it in your closing arguments.

9        MS. SALTZ: That's agreeable, Your Honor.

10  Thank you.

11       THE COURT: All right?  We're going to take

12  a break.  I'm going to send the jury out.  Do

13  you have anything else?

14       MS. SALTZ: I just have one more exhibit I

15  need to move in.

16       THE COURT: Oh, all right.

17       (Side bar concluded at 9:57 a.m.)

18       THE COURT: Ladies and gentlemen, I've

19  overruled the objections and Exhibit 24 is

20  admitted.

21       MS. SALTZ: Just one last housekeeping

22  matter, Your Honor.  After Mr. Staller's

23  testimony I just would like to admit for the

24  record his report, which is D-44.

25       THE COURT: All right.  Any objection?

1      MR. CROCENZI: No objection for the record.

2      THE COURT: For the record it is admitted.

3   Ms. Saltz, do you have any additional witnesses?

4      MS. SALTZ: No, Your Honor.  That concludes

5   the defense case.

6      THE COURT: All right.  And is there any

7   rebuttal?

8      MR. CROCENZI: No, Your Honor.

9      THE COURT: All right.  The record is

10  closed.  Ladies and gentlemen, at this time as I

11  indicated we'll take a recess for approximately

12  one half hour so that I can review the closing

13  arguments and the instructions on the law with

14  counsel.  It may be a bit more than that in

15  terms of our timing, but obviously we'll be

16  working in here as quickly and getting the case

17  to you as quickly as we can.  We're in recess

18  with the jury at this time.  Ms. McKinney, you

19  may escort the jury.  Again please recall all of

20  my earlier instructions and do not engage in any

21  conversations until you have received the

22  closing arguments and my instructions on the

23  law.  Ms. McKinney?

24      (Jury recessed at 9:54 a.m.)

25      THE COURT: Please be seated.  If the

```
 1   parties would like to take a break you certainly
 2   can.  I'd like counsel to stay so we can go over
 3   the charge, but feel free, Mr. Shaw and Ms.
 4   Hoffman, to walk in and out at your leisure.  I
 5   presented counsel last evening with the court's
 6   proposed charge.  Again my apologies, I am under
 7   the weather, and under the circumstances I'm
 8   going to allow the jury to continue
 9   deliberations this afternoon, but only until
10   about 5:00.
11        I think I need to call it a day at 5:00, so
12   that if they have not concluded their
13   deliberations by that time I'm going to bring
14   them back tomorrow morning.  I just want to give
15   you that heads up, but I'm also going to alert
16   the jury to that time frame, recognizing of
17   course that I'm going to emphasize to them that
18   it is not intended in any way, shape, or form as
19   a restriction on the length of their
20   deliberations.
21        All right, counsel, you've had an
22   opportunity to review the court's proposed
23   charge.  As I indicated the elements of the
24   claim and the defenses are set forth really in
25   the twenty pages between page 12 and page 32.
```

1    There is one issue that I would like to address

2    with counsel before I hear from counsel about

3    your concerns, and that is the defense of

4    undue hardship.  You've asked for that charge,

5    Ms. Saltz, it is on page 38 of your proposed

6    instructions, but I'm not sure I heard anything,

7    I'm not sure that that's really a defense that

8    you're relying on in this case.

9         I know it's a fairly standard, almost

10   boilerplate defense that is presented in the

11   form of jury instructions in cases under the

12   Americans With Disabilities Act, but your

13   defense seems to be related to other issues and

14   I don't believe that undue hardship, really your

15   defense is he's not a qualified individual among

16   other things.

17        MS. SALTZ: Right.

18        THE COURT: But I don't believe that undue

19   hardship is something that you've attempted to

20   develop in the record, is that correct?

21        MS. SALTZ: That is correct.  I think the

22   problem with that is that because our position

23   has been he never sought accommodation, so if

24   you don't seek accommodation you can't really

25   address undue hardship in that regard.

```
 1          THE COURT: Exactly.

 2          MS. SALTZ: And I found some, as we go

 3     through these suggestions I found something

 4     along those lines as well and a couple of

 5     variants as well.

 6          THE COURT: It would be inconsistent with

 7     your defense if we were to keep your undue

 8     hardship instruction in these proposed

 9     instructions, and I wanted to give you the

10     opportunity to ask for it to be withdrawn or

11     alternatively tell me that you have in fact

12     presented it and point to the record where

13     you've attempted to develop that defense.

14          MS. SALTZ: No, Your Honor, I agree with

15     you, because in reviewing them last night as

16     well I realized that in terms as to what the

17     defense is.

18          THE COURT: All right, very good.  We will

19     make that change.

20          MS. SALTZ: What page is that?

21     MR. RUSSO: 26.

22     MS. SALTZ: 26?

23     (Brief pause.)

24          THE COURT: I believe if we eliminated all

25     but the first paragraph on page 26 and page 27
```

 1    we will essentially extricate the undue hardship

 2    instruction, but there may be other references

 3    to it, and I'll double check these pages to make

 4    sure that it isn't referenced in more

 5    introductory language elsewhere in the

 6    instructions.  All right?

 7         MS. SALTZ: Thank you, Your Honor.

 8         THE COURT: Now, if I could hear from

 9    counsel -- oh, one other thing I'm going to

10    incorporate simply because I think it's a good

11    instruction, and I didn't want to catch you off

12    guard, I am going to incorporate the defendant's

13    instruction on the purpose of the Americans With

14    Disabilities Act, and that is on page 21, it's

15    instruction, proposed defendant's instruction

16    15.  I am going to incorporate that, it's a

17    fairly minor point, but I thought it provided a

18    nice overview of the purpose of the Americans

19    With Disabilities Act, and that was lacking in

20    the instructions until I saw that from defense

21    counsel.  Now, let me hear first from

22    Mr. Crocenzi with respect to any concerns that

23    the plaintiffs may have with the proposed

24    instructions.

25         MR. CROCENZI: Just a couple, Your Honor.

```
 1   The first one would be on page 17, last
 2   paragraph.
 3        THE COURT: All right.
 4        MR. CROCENZI: I suggest that the first
 5   sentence should read, "However, Mr. Shaw cannot
 6   be regarded as disabled if the perceived
 7   impairment is temporary and minor."
 8        THE COURT: "If his perceived impairment is
 9   temporary or minor"?
10        MR. CROCENZI: Or "if the perceived,"
11   because again it's a regarded as standard, so
12   we're talking about CTE's perception of
13   Mr. Shaw's condition as of February of 2007.  I
14   don't want the jury to be confused that Mr. Shaw
15   had to have, this was not a disabled case.  It's
16   a regarded as case, and I think that --
17        THE COURT: Understood.  Ms. Saltz?
18        MS. SALTZ: Your Honor, addressing that I
19   also had an issue with that, too.  My position
20   was that there hasn't been any testimony to that
21   regard, and I don't think it really applies
22   based on the evidence that's been produced in
23   this case because it is a regarded as case, and
24   I think it's confusing to the jury to even
25   reference something that's temporary and minor.
```

1  It just doesn't seem to fit the fact pattern of

2  what we had come out here on this case.

3      THE COURT: Actually, Mr. Crocenzi, I'm not

4  sure if you would have a problem if we just

5  eliminated that paragraph.

6      MR. CROCENZI: We could.  I think it's

7  confusing, too.

8      THE COURT: All right, very good.  We will

9  eliminate the last paragraph on page 17.  Next?

10     MR. CROCENZI: Page 22.

11     THE COURT: Yes?

12     MR. CROCENZI: The last sentence regarding

13 the social security disability issue, my reading

14 of the Cleveland case is that the analysis of

15 the statements in application for social

16 security disability only applies when the

17 plaintiff has made the application prior to a

18 lawsuit or I mean contemporaneously at the time

19 that they go off work, and that's basically what

20 the facts were in Cleveland, that the plaintiff

21 made the application and around that same time

22 was told to, was basically terminated in that

23 case, and so --

24     THE COURT: And this application was made

25 in, after the position was eliminated?

1        MR. CROCENZI: That's exactly right.  It was

2   made in November -- well, the representations

3   that are in evidence were made in January of

4   2008, eleven months after the incident where CTE

5   told him to go home.  So I object to the last

6   sentence and I think as we discussed earlier at

7   side bar conversation that the January `08

8   representations go to mitigation, and whether

9   Mr. Shaw at that point gave up looking for work

10  as the expert testified and was, said to social

11  security, "I have these problems, I can't work

12  anymore," and therefore Ms. Saltz can make the

13  argument to the jury his damages should end at

14  that point based on that representation.

15        THE COURT: Actually that's an interesting

16  point.  In other words what you're suggesting is

17  that we extricate that sentence and plug it in

18  in the mitigation --

19        MR. CROCENZI: Yes.

20        THE COURT: -- section?

21        MR. CROCENZI: Yes, I do, Your Honor,

22  because I think that's what the cases indicate.

23  I think that makes more sense to the jury the

24  way the evidence came out in this case, and

25  frankly if you look at the first paragraph on

 1   that page you're indicating to the jury that

 2   they need to assess whether he was qualified to

 3   perform the essential functions as they existed

 4   in February `07 when CTE placed Mr. Shaw on

 5   leave, which again I think that's a correct

 6   statement of the law in the EEOC regulations.

 7   If you read then the last sentence after going

 8   through the social security disability analysis

 9   I think that will be confusing and it's a better

10   fit in the mitigation section of the

11   instructions.

12       THE COURT: All right.  Ms. Saltz?

13       MS. SALTZ: I disagree, Your Honor.  I think

14   that first of all one cannot apply for

15   disability benefits when one is, when they're

16   working.  I mean, you have to be disabled, you

17   have to be out of work to be able to apply for

18   disability benefits.  So there would never be an

19   instance that anyone would be able to, you know,

20   apply for social security prior to.  The issues

21   always come up after the fact.  Second of all I

22   also am concerned that the purpose of it is the

23   social security --

24       THE COURT: But, but it could occur during

25   the FMLA leave time frame where the job would

1   then be guaranteed, but in this case it occurred

2   after Mr. Shaw was literally terminated by

3   Cumberland Truck Equipment.

4       MS. SALTZ: But the problem with that is

5   it's the individuals that decide when they want

6   to apply for the disability benefit, and it's

7   really not the matter of his applying for the

8   disability benefit, but rather the

9   representation to social security, which is

10  where the judicial estoppel comes in, because

11  with the conflict between the social security

12  and the potential conflicts there and the ADA,

13  the only distinction that was made that someone

14  would be able to be entitled to ADA protection

15  if they were able to perform their job with

16  accommodation.

17      Social security doesn't take that into

18  account.  They don't care whether they can

19  perform the job with or without accommodations.

20  They just look at it as far as the individual

21  being disabled.  So the instruction goes to that

22  effect that if you make representation to the

23  Social Security Administration that you're

24  disabled from your job, that you cannot perform

25  the essential functions of your job, you know,

1    because this case involves whether or not there

2    could have been accommodation, but if you can,

3    if you admit that you cannot perform your job,

4    the essential functions, which he did in this

5    case, and he only, and he took it a step

6    further, too.

7        In this case he admitted that he lost his

8    job because he could not bend per OSHA

9    requirements and went through all of the

10   physical requirements that he could not perform,

11   which were the same requirements of his job.  So

12   I think that my concern was the instruction as

13   it stands, I only had two additions to it, and

14   that was in the last sentence that social

15   security filing concerning his condition, which

16   limits it to the condition, and you may but are

17   not required to infer that Mr. Shaw was not a

18   qualified individual on the basis of the

19   statements in the filing, and that's under the

20   model jury instruction, and the purpose of that

21   is again it goes back to whether or not he's a

22   qualified individual being able to perform the

23   essential functions of his job.  So I would

24   certainly say that this, you know, for that

25   purpose of what this instruction, the purpose of

1    this is, it does apply.

2        MR. CROCENZI: Your Honor, again this is a

3    judicial estoppel issue which Ms. Saltz just

4    admitted, and again I think even reading

5    Cleveland and the rest of the cases on this

6    issue, that's an issue for the court to decide

7    rather than the jury, and again that goes to my

8    argument about it's confusing for the jury to

9    make a legal decision on estoppel, that it's

10   better in the mitigation issue, and secondly you

11   have a case where a guy made the application

12   several months later.

13       There's been testimony that there was a

14   change as he indicated in direct and cross

15   examination, which again affects the whole

16   estoppel issue.  Because of the time gap and

17   testimony that there was some changes in his

18   condition I believe it better fits in mitigation

19   where a jury can make that determination rather

20   than having them figure out an estoppel issue.

21       MS. SALTZ: Your Honor, if I could just

22   briefly address that, too, Your Honor.  First of

23   all there would be more weight to the argument

24   that counsel is giving but for the fact that

25   Mr. Shaw himself admitted that he lost his job,

1   and the other part of it is that he was deemed

2   disabled as of February 27th, 2007 because he

3   could not perform the essential functions of the

4   job.  So the question then goes back to could he

5   have performed the essential functions with

6   accommodation.  I also disagree with counsel's

7   reading of the Cleveland opinion.

8         THE COURT: Well, I'm thinking of a

9   compromise here.  I agree with Ms. Saltz that

10  because in this particular case Mr. Shaw has

11  made representations that he lost his job

12  because he could not perform the essential

13  functions per OSHA.  I remember that as being

14  part of either his application or in some other

15  manner prior to the receipt of disability

16  benefits, so I think I'm going to leave this

17  statement in but maybe we could refer to it in a

18  more general fashion.

19        Instead of "However, you may consider

20  Mr. Shaw's statements in the social security

21  filing, you may consider Mr. Shaw's statements

22  in support of disability benefits in determining

23  whether he was a qualified individual."

24        MS. SALTZ: That would be acceptable.

25        MR. CROCENZI: I'm trying to process what

1   you're saying, judge.  How would you have that,

2   you're saying the last sentence would read -- I

3   don't know if your court reporter got that.

4       THE COURT: Mr. Shaw's statements in support

5   of disability benefits in determining whether he

6   was a qualified individual.

7       MR. CROCENZI: I still think it's confusing.

8   I'm going to stand by my objection, Your Honor,

9   with all due respect to your means of trying to

10  reach a compromise in the issue.

11      THE COURT: I understand.

12      MR. CROCENZI: It's an important issue for

13  my client and one that I think we need to just

14  continue to object on that issue.

15      THE COURT: All right.  That's language that

16  I'll just need to work on during the course of

17  closing, but I understand the issue.  You both

18  have objections preserved for purposes of the

19  record and any appellate action, but I'm going

20  to try to massage this into a fashion that works

21  a compromise between your respective positions.

22  Next, Mr. Crocenzi?

23      MR. CROCENZI: No, that was it.

24      THE COURT: All right.  Ms. Saltz, anything

25  else?

1    MS. SALTZ: I have more than he does.  On

2    page 12, I'm trying to keep consistent in

3    reading these instructions the terminology that

4    we're using.  This area of the law is so complex

5    to begin with, especially for a lay jury to

6    understand, and what I've attempted to do here

7    is keep within the terms that we've, you know,

8    the court has used throughout.  So at the bottom

9    of page 12, "to perform the essential functions

10   of the job," it reads now, "with reasonable

11   accommodation if necessary," I would just change

12   that to "with or without reasonable

13   accommodation."

14       THE COURT: All right.  This comes directly

15   from the model Third Circuit instructions.  So

16   I'm going to stick with that.

17       MS. SALTZ: On page 13.

18       THE COURT: Yes?

19       MS. SALTZ: I guess my concern is that some

20   of the wording in some of these instructions,

21   this is a regarded as.  Mr. Shaw has to

22   establish that the company regarded him as

23   disabled, and if you use the word perceived, it

24   perceived him, it sounds like an end conclusion

25   that he's already been perceived as disabled by

1   the company as opposed to being regarded as

2   disabled.  My suggested change would be in the

3   last paragraph, "Specifically Mr. Shaw alleges

4   that CTE didn't allow him to work because it

5   regarded him as disabled, failed to accommodate

6   him, and retaliated against him for requesting

7   accommodations."

8       THE COURT: Maybe it would just simply be

9   easier for me to plug in the word "purportedly"

10  before "perceived," that it purportedly

11  perceived him as having.  Is that all right?

12      MS. SALTZ: That would work, too, Your

13  Honor.

14      THE COURT: All right.

15      MS. SALTZ: On the top of page 14 where it

16  says, "CTE denied Mr. Shaw's claim.  Further,

17  CTE asserts that Mr. Shaw," and it goes on to,

18  "would have posed a threat to himself," well,

19  CTE is also asserting that he could not perform

20  the essential functions of his job and would

21  have posed a threat to himself and others.

22      THE COURT: All right.

23      MS. SALTZ: In the second paragraph --

24      THE COURT: Hold on one second.

25      MS. SALTZ: I'm sorry.

1          (Brief pause.)

2          THE COURT: All right.

3          MS. SALTZ: Again with the second paragraph

4     if the word "purported" is to be inserted before

5     "perceived disability."

6          THE COURT: Certainly.

7          MS. SALTZ: On page 15?

8          THE COURT: Please speak up if you have any

9     angst or objections.

10          MR. CROCENZI: I will.  Thank you.

11          MS. SALTZ: Again just purported, as to the

12    second paragraph, that Mr. Shaw purported --

13    wait a second.  That doesn't make sense.  My

14    change of the third element was, "and third,

15    that Mr. Shaw, CTE discriminated against

16    Mr. Shaw because of disability by engaging," and

17    the disability being in parentheses as the court

18    did throughout, "by engaging in an employment

19    action that was adverse to Mr. Shaw."

20          THE COURT: All right.  Again this is a

21    Third Circuit model instruction.  I think this

22    is clear, so I'm going to reject that

23    suggestion, with respect.

24          MS. SALTZ: My concern with regard to the

25    remainder of page 15 into the top of page 16 is

1    I compared it to the model jury instructions and

2    I just feel that the third element is better

3    expressed under the, no offense to Your Honor

4    certainly in the writing of this, but I was

5    uncomfortable with the way that this was set

6    forth as opposed to the way it's set forth under

7    the model instruction.  I would just make a

8    request that Defendant's 31 be substituted for

9    this instruction.

10        THE COURT: And this is not the instruction

11   that either party requested with respect to

12   this element or this claim, and let me just ask

13   Ms. Manzullo, is this the Third Circuit model

14   instruction? Page 15?

15        MS. MANZULLO: My pages changed a little

16   bit, as I have the top of 16 now, I think it's

17   the same showing his disability was a motivating

18   factor, if that's the paragraph we're looking

19   at.

20        MS. SALTZ: It begins with, "Mr. Shaw must

21   prove that CTE acted with the intent."

22        THE COURT: It's the paragraph just before

23   that.

24        MS. MANZULLO: Oh, okay.  That is from the

25   Third Circuit model instructions.

1    MR. CROCENZI: Yes, 9.1.1.

2    THE COURT: Yes, that's what I thought.  So

3    we'll stick with this.

4    MS. SALTZ: The only question that I have,

5    Your Honor, though on page 16, and I haven't

6    looked at the Third Circuit model on that, but

7    the very last sentence, "Mr. Shaw is not

8    entitled to damages if CTE proves by a

9    preponderance of the evidence that they would

10   have treated Mr. Shaw the same even if his

11   disability had played no role in the employment

12   decision," I'm not sure how that exactly fits

13   into this case, and it's a little confusing to

14   me because I think the whole issue is, you know,

15   whether or not CTE regarded him as disabled and

16   then took action.

17   THE COURT: All right.  I can take that

18   sentence out.  I agree.  I don't know that

19   Mr. Crocenzi has a problem with that.  Do you

20   have any problem with that, Mr. Crocenzi?  It

21   does appear to be inapplicable.

22   MR. CROCENZI: I agree.  I don't think it's

23   going to add or take away anything for the jury.

24   THE COURT: All right.  We'll take out that

25   last sentence.

1      MS. SALTZ: With regard to page 17, I would

2  ask that at the end of that instruction that

3  defendant's number 20 be included in that, which

4  is the one that addresses, "The mere fact that

5  an employer is aware of an employee's impairment

6  is insufficient to demonstrate either that the

7  employer regards the employee as disabled or

8  that perception caused the adverse employment

9  action," and I'm relying on Kelly vs. Drexel,

10  the Third Circuit opinion Kelly vs. Drexel, and

11  the purpose of --

12      THE COURT: Hold on.  Before you go any

13  further let me make sure I have the right

14  instruction.  I have 20 as based on Toyota

15  Manufacturing.  You're -- I'm looking your

16  proposed instructions.

17      MS. SALTZ: Yeah, wait a second.  I might

18  have lost my place on that.  I was working late

19  last night, I apologize.

20      THE COURT: Maybe you mean page 20.  No,

21  that's not it.

22      MS. SALTZ: No, this is a new one.  This is

23  from last night looking at the Kelly case in

24  trying to balance out these instructions, so I

25  am presenting this as an additional instruction.

1        THE COURT: All right.

2        MS. SALTZ: The reason for that --

3        THE COURT: Before you give me the reason I

4   need to see the instruction.  Do you have a copy

5   of it?

6        MS. SALTZ: No, I've written it out, so I

7   can certainly put that in my copy or read it

8   again slower, much slower.

9        THE COURT: All right.

10       MS. SALTZ: Do you want me to read it again,

11  Your Honor?

12       THE COURT: Yes, please.

13       MS. SALTZ: "The mere fact that an employer

14  is aware of an employee's impairment is

15  insufficient to demonstrate either that the

16  employer regarded the employee as disabled or

17  that the perception caused the adverse

18  employment action."

19       MR. CROCENZI: Your Honor, I don't believe

20  that is anywhere in the model Third Circuit jury

21  instructions, and frankly I think that's more of

22  a standard on a motion for summary judgment

23  rather than a jury instruction in this case.

24       THE COURT: The first part of that

25  instruction, "The mere fact that an employer

 1    is aware of an employee's impairment," doesn't

 2    speak to a regarded as case.

 3         MS. SALTZ: That came out of all of, that

 4    came out of the regarded as section of the Third

 5    Circuit's decision in Kelly vs. Drexel.  In all

 6    the cases I reviewed as to the regarded as

 7    there's a fine distinction, and here's where the

 8    balance comes in and certainly I would, you

 9    know, be welcome to any instruction that the

10    court would come up with.  What I'm trying to

11    accomplish here is that the fact that the

12    company observed him -- the testimony was that

13    he was walking, struggling to walk with a limp,

14    walking slowly.

15         The mere fact that the employer observed

16    him doing that doesn't mean that they regarded

17    him as disabled.  There has to be more than

18    that, and that's where that distinction comes in

19    in terms of regarding him as having a

20    substantial limitation versus just, you know,

21    you can observe someone walking with a limp and

22    you're not going to necessarily regard him as

23    disabled.

24         THE COURT: I agree, but I thought we

25    addressed that elsewhere in the instructions

1   when we got to the definition of regarded as

2   just prior to that.

3        MS. SALTZ: Your Honor may be thinking of

4   right below number 2, which I have also put a

5   question mark with because I found that that's,

6   if that's a part of it --

7        THE COURT: Well, I don't see it in these

8   draft instructions, so it does seem to be an

9   appropriate addition to me.  Mr. Crocenzi?

10       MR. CROCENZI: I'm sorry, appropriate or

11   inappropriate?

12       THE COURT: An appropriate.  It's simply a

13   balance of the fact that the employer doesn't

14   automatically regard somebody as disabled if

15   they merely perceive them as having an

16   impairment, whether temporary or permanent.

17       MR. CROCENZI: Well, I think the language is

18   observed rather than perceived, Your Honor.

19       THE COURT: All right.  Observed?

20       MS. SALTZ: Whatever Your Honor would like

21   to do.  I'm just more concerned ensuring that

22   there's a balance to create the facts, that the

23   jury doesn't think just because they heard the

24   testimony that they saw him struggling to walk

25   across the parking lot, suddenly that falls

1    within the court's definition of his being

2    regarded as disabled.

3        THE COURT: All right.

4        MR. CROCENZI: Again I think she just, I

5    think she's making a closing argument statement.

6    I think when you read the balance of these

7    instructions in the definitions she can make

8    that argument to the jury rather than having it

9    spelled out specifically in the jury

10   instructions.  I agreed with your earlier

11   statement, Your Honor, that when you look at the

12   balance of your instructions with definitions,

13   that point can be made.

14       Ms. Saltz can certainly get up to the jury

15   and say they didn't regard him as, didn't

16   perceive him as disabled.  They just watched him

17   and observed him, and that's all they did.  So I

18   think it's covered and I think that's something

19   she can make in closing arguments based on the

20   instructions you already have written.

21       MS. SALTZ: And I certainly disagree with

22   that, Your Honor, because obviously the court

23   will be giving the instruction, and my making a

24   statement that's not part of the instructions is

25   not going to be what they will focus on.

1    THE COURT: Here's what we'll do.  We'll

2    incorporate where you have suggested on the

3    bottom of page 17, "the mere fact that an

4    employer observes an employee's, observes or

5    believes that it observes an employee's

6    impairment is insufficient to demonstrate that

7    the employer regarded the employee as disabled

8    or that the observation caused the adverse

9    employment action," but then I think there needs

10   to be a concluding sentence there that says --

11   MR. CROCENZI: If that's the case then we

12   add another one which I would have to say, "if

13   the employer takes some action based on an

14   observation," then that can be, that's the

15   problem when we start getting into so much

16   detail in the instructions if you want to try to

17   balance it.  She has that and then I have to say

18   well, Your Honor, that's not fair, I need to

19   have an instruction and say well, if they took

20   some action on the observation then we have to

21   figure out some wording on that.

22   THE COURT: All right.  All right, I agree

23   with Mr. Crocenzi on this, Ms. Saltz.  You may

24   argue this to the jury.  This is the whole

25   purpose of a charge conference, for us to try to

1    work together to come up with a fair and

2    balanced charge.  You're certainly entitled to

3    argue that to the jury, but as I have worked

4    through this and while I'm editing this draft

5    it's apparent to me that the balance is already

6    present in the Third Circuit model instructions,

7    and if I added that suggested language I'm going

8    to have to conclude with something on the other

9    side about what it is that Mr. Shaw can do to

10   meet his burden of proving he was perceived as

11   regarded as disabled.  So for those reasons that

12   request is denied and your request is preserved

13   for the record.

14        MS. SALTZ: Thank you, Your Honor.

15        THE COURT: Next?

16        MS. SALTZ: Next is I had a question with

17   regard to the last paragraph of 18, and again

18   it's a question of whether or not it applied

19   under the evidence of this case, and that's the

20   last paragraph on page 18, in light of the fact

21   that this is a regarded as case.

22        THE COURT: That may be a good point.

23   Mr. Crocenzi?

24        MR. CROCENZI: I have no objection of that

25   coming out.

1      THE COURT: All right.  The last paragraph

2  of page 18 is eliminated.

3      MS. SALTZ: On page 19, after the first

4  sentence, second sentence, "I instruct you that

5  walking and working are both major life

6  activities within the meaning of the ADA,"

7  here's my concern that in order for Mr. Shaw to

8  be considered subject to the ADA he has to

9  establish that he was disabled within the

10  meaning of the ADA by showing that he had been

11  reported as disabled.  That's his burden of

12  proof.

13      I'm just going to read what I'm suggesting

14  as an addition to it for the court's

15  consideration.  At the end of that I just wrote

16  that, "If Mr. Shaw cannot establish that CTE

17  regarded him as disabled, then Mr. Shaw has not

18  established that he is disabled within the

19  meaning of the ADA," and I cite to the

20  regulation 29 CFR 1630.2-L and also <u>Kelly vs.</u>

21  <u>Drexel</u>.

22      THE COURT: And that is rejected.  It has

23  been addressed.  It's later on on page 19,

24  middle of the second paragraph, "If Mr. Shaw

25  cannot establish that he is qualified to perform

1   the essential functions of the warehouse worker

2   position even with reasonable accommodation,

3   then Mr. Shaw is not a qualified individual

4   under the ADA.  If that is the case, then you

5   must return a verdict for the CTE, even if the

6   reason why Mr. Shaw is not qualified is solely

7   as a result of his disability."  I'm confident

8   that that's covered, and these are the model

9   Third Circuit instructions, so that request is

10  rejected.

11      MS. SALTZ: And I'd just note my objection

12  for the record.  At the bottom of 19, "In this

13  case Mr. Shaw claims he was able to perform the

14  essential functions of the warehouse position

15  if it was modified, and then CTE contends that

16  Mr. Shaw was unable to occasionally lift and

17  carry up to 150 pounds," follow to the end of

18  that sentence.

19      THE COURT: Yes.

20      MS. SALTZ: I believe that this is

21  inappropriate for an instruction for the reason

22  being that there is a lot of facts in dispute

23  with regard to this.  I think the jury needs to

24  decide whether or not he requested an

25  accommodation and what that accommodation was,

1    and that CTE's position was not that he could

2    not lift and carry up to 150 pounds and up to

3    seventy pounds, but rather that he was unable to

4    walk, stand, squat, bend, which were all of the

5    essential functions of the job that were

6    required to be performed frequently.  So my

7    request would be that the last, the beginning of

8    the two sentences on page 19 to the end where it

9    says "warehouse position" be removed and let the

10   jury determine what those facts are.

11       THE COURT: I don't have a problem with

12   that.  I agree with you that that is intended as

13   a summary, and if you want to argue more detail

14   to the jury I don't have a problem with that.

15   I don't see why we need to eliminate the last

16   sentence at page 19 and just incorporate that as

17   the first sentence in the paragraph beginning,

18   "it is Mr. Shaw's burden to prove."

19       MS. SALTZ: "It is Mr. Shaw's burden to

20   prove that he was able to perform the essential

21   function"?

22       THE COURT: Yes.

23       MS. SALTZ: And then as far as --

24       THE COURT: In other words we're just

25   eliminating the first sentence on page 20.

1     MS. SALTZ: That's fine, Your Honor.  Thank

2  you.

3     THE COURT: Not a problem.  Anything else?

4     MS. SALTZ: On page 24, the fourth element

5  that providing the accommodation at issue in

6  this case, that is modifying Mr. Shaw's job

7  would have been reasonable, again I think that's

8  for the jury to decide what his accommodation

9  was and what he had requested since there were

10  certain things that had come out on testimony.

11  I would just have it read that providing the

12  accommodation would have been reasonable.

13     MR. CROCENZI: I think that's an appropriate

14  statement and provides some guidance to the

15  jury, Your Honor, based on what the evidence has

16  occurred in this case.

17     THE COURT: Yes, I think that's a harmless

18  innocuous clarification and provides some

19  direction, so that request is rejected.

20     MS. SALTZ: On page 26, Your Honor, the

21  first paragraph.

22     THE COURT: Yes?

23     MS. SALTZ: I'm unsure about that.  I'm not

24  sure why I'm unsure about that to be quite

25  honest with you.  It just --

1          THE COURT: You know, it's funny that you

2     would say that, Ms. Saltz, because when I read

3     that I had the exact same reaction.  I thought

4     that cooperation in the interactive process was

5     a requirement, but let me ask Ms. Manzullo, is

6     that part of the model instructions from the

7     Third Circuit?

8          MS. MANZULLO: I believe it is although, I

9     don't remember the exact chapter number, but I'm

10    sure I can find it in a moment.

11         MS. SALTZ: That's about the only thing.

12    There's nothing more I can say about that, Your

13    Honor.  Just my initial reaction when I read it

14    I was just --

15         THE COURT: I had the exact same reaction,

16    so I understand where you're coming from.

17         MS. SALTZ: I will leave that one to the

18    wisdom of the court.

19         THE COURT: Let me put it to you this way.

20    If it's part of the Third Circuit model

21    instructions we'll keep it in.  If it's not,

22    I'll take it out.

23         MR. CROCENZI: It's in 9.1.3.

24         MS. MANZULLO: I just found it.  I think the

25    reason it's phrased that way is because the

1    other party's failure to participate in the

2    interactive process wouldn't necessarily entitle

3    their opponent to a verdict.  For instance, you

4    know, you could say plaintiffs find that the

5    defendant failed to engage in the interactive

6    process but still find that the plaintiff

7    doesn't have a disability or something like

8    that.

9        THE COURT: I agree.  I agree.  That is

10   logical in that context.  So we'll keep it in.

11       MS. SALTZ: I believe the only -- oh, I did

12   have defendant's instruction 41.

13       THE COURT: All right.  Does that address

14   all that you have with respect to the draft?

15       MS. SALTZ: On page 43 I believe it's the

16   last one, I think we need an instruction on

17   expert witnesses that I did not find in here.

18       THE COURT: I agree.  We'll put the expert,

19   the model instruction in on expert witnesses.

20       MS. SALTZ: And then on page 43 I would make

21   a request that defendant's instruction 41 be

22   included after that first full paragraph which

23   is a good faith effort of reasonable

24   accommodation.

25       MR. CROCENZI: You're on 43 of the draft?

1          MS. SALTZ: It's on page 50 of my

2     instructions.

3          MR. CROCENZI: No, but you want it

4     incorporated in 43?

5          MS. SALTZ: No, no -- right, on page 43.

6          MR. CROCENZI: Of the draft?

7          MS. SALTZ: Of the draft, of the court's

8     draft, after the first paragraph where fixing

9     the amount of such damages, period, and then I

10    would request that however the court would want

11    to rephrase it, but something along those lines.

12    There was testimony there that certain

13    accommodations were discussed with Mr. Shaw

14    and that he, you know, that we made attempts and

15    that he rejected those attempts.

16         THE COURT: I'm not sure I recall that

17    testimony.

18         MS. SALTZ: It was with Mr. Sheldon when he

19    had that meeting with Mr. Shaw and they were

20    discussing possibly a new position for him.

21         THE COURT: These hands.

22         MS. SALTZ: He said --

23         THE COURT: "These hands are not made for a

24    typewriter."

25         MS. SALTZ: "I just want to work in a

1    warehouse."

2        MR. CROCENZI: You want the whole

3    instruction 41 to come in, your proposed 41?

4        MS. SALTZ: My proposed 41 or anything the

5    court would deem falls within, you know, taking

6    the tenure of what that instruction reads.

7        MR. CROCENZI: Your Honor, I think that's

8    already been covered in these instructions in

9    your reasonable accommodation section.

10       MS. SALTZ: This goes to the damages, Your

11   Honor.  That's why I put it on 43.

12       MR. CROCENZI: I'm not sure why it would

13   apply here.

14       THE COURT: All right.  We need to move

15   along here.  I'll take a look at this.  I'm not

16   sure if I'm going to incorporate it or not.

17   I'll see whether or not I consider it to be

18   repetitive, but we need to move along.  Anything

19   else, Ms. Saltz?

20       MS. SALTZ: No, other than we need expert

21   witness instructions, I think that covers

22   everything on the part of the defense.

23       THE COURT: All right, and the verdict form

24   is materially different from what either side

25   provided, but it is something of a hybrid which

1  I find addresses in chronological -- not

2  chronological, excuse me, in logical fashion the

3  each of the claims.  Question 1 is about

4  disability.  Question 2 is about qualified

5  individual, and then question 3 and 4 get to the

6  two, first two claims, discrimination and

7  failure to accommodate.  Question 5 then goes to

8  the third claim, retaliation.  And then you only

9  get to the instructions on damages, question 6,

10  7, 8, and 9 if there are appropriate responses

11  to the first five questions.  Any concerns with

12  respect to those, to the verdict form?

13       MR. CROCENZI: No, Your Honor.

14       MS. SALTZ: No, Your Honor.

15       THE COURT: All right.  Very good.  Counsel,

16  let's take a short break.  Let's reconvene at

17  10:55 and we'll have closing arguments.  You

18  have an opportunity for rebuttal, Mr. Russo.

19  Would you like to reserve five minutes for

20  rebuttal?

21       MR. RUSSO: Yes, Your Honor.

22       THE COURT: All right.  Very good. We're in

23  recess until 10:55.

24       MR. RUSSO: Your Honor, how long -- is there

25  a limitation on our closings?

1          THE COURT: No, but I'll start to fidget if

2     you go past forty minutes.

3          MR. RUSSO: Okay.

4          (Recess taken from 10:45 to 11:02 a.m.)

5          THE COURT: Just two quick matters that I

6     wanted to address before we brought the jury in.

7     One, Ms. Saltz, I am going to incorporate your

8     proposed instruction 41.  I think it is

9     pertinent to the facts of the case and I don't

10    believe that it is covered elsewhere in the

11    instructions and I think it's a reasonable

12    request.  So I am going to incorporate that.

13          Second, and this, you may have already

14    anticipated this, but the jury verdict on the

15    front pay and back pay is advisory only, but I

16    am asking for the jury to, if they get to that

17    question, to render a verdict on front pay and

18    back pay in an advisory fashion.  Obviously I'll

19    take the jury's verdict into consideration if I

20    need to exercise discretion on those two aspects

21    of the claim.  All right?  Any questions about

22    either of those matters?

23          MR. RUSSO: No, sir.

24          THE COURT: All right.  Ms. McKinney, you

25    may escort the jury.

1          MR. CROCENZI: Your Honor, is it okay if we

2     have those exhibits facing this way or do you

3     want them --

4          THE COURT: No, that's fine.  Don't worry.

5          MR. RUSSO: Your Honor, a preference on how

6     they're put up, just once we start just go

7     ahead?

8          THE COURT: Not a problem.  Ms. Saltz, if

9     you would like to move you certainly can.  I

10    don't think, I think it's a little more

11    distracting in closing arguments for the court

12    to move so I'll remain seated, but don't feel

13    like you need --

14         MR. RUSSO: Okay.

15         THE COURT: -- to present that so that I can

16    see it.  I'll stay seated.

17         MR. RUSSO: Okay.

18         THE COURT: And we have a sign up indicating

19    that there's no entrance during closing

20    arguments and the charge, so hopefully there

21    will be no interruption.  Just check your cell

22    phones.

23         (Jury seated at 11:05 a.m.)

24         THE COURT: Ladies and gentlemen, please be

25    seated.  This is the time for the closing

1    arguments of counsel.  The party with the burden

2    of proof in this case, the plaintiff, will

3    present first.  Then the defendant's counsel

4    will present her closing argument, and then

5    finally Mr. Russo will have an opportunity for

6    brief rebuttal, and at this time the court

7    recognizes attorney Peter Russo for purposes of

8    closing argument, and, Mr. Russo, you may

9    address the jury.

10        MR. RUSSO: Thank you, Your Honor.  May it

11   please the court, counsel, ladies and gentlemen

12   of the jury.  Good morning.  On behalf of Ricky

13   Shaw and Michael Crocenzi I want to thank you

14   for your time and attention to this matter.

15   Mr. Crocenzi told you on Monday that this case

16   was about a man who is a hard working employee,

17   who one day CTE said go home.  Ms. Saltz told

18   you that Cumberland did that because they were

19   concerned about Ricky.  We think by now we have

20   shown to you that nothing could have been

21   further from the truth.

22        I'm going to try and paint for you a

23   picture rather than go through testimony detail

24   by detail, a picture of what was going on.  What

25   we'll kind of see in a Norman Rockwell that

1   later gets disturbed.  Here's Ricky, a 21-year

2   veteran of the Army, who when he was retired

3   jumped from job to job to job.  He doesn't find

4   anything that quite fits, and then he finds

5   Cumberland Truck.  In an otherwise average world

6   Ricky finds a job as big as him.  Standing 6'

7   9", we'll call him 400 pounds, he gets a job in

8   a warehouse that's gigantic.  Big trucks, big

9   parts, big guy.

10       In fact, you heard him talk about when he

11  got to the smaller parts warehouse, bull in a

12  china shop, couldn't do it.  Get him into the

13  big shop.  He takes that job and he starts to

14  shine.  He's there for about two years, and then

15  he tells you, "My duties start to evolve.  I'm

16  doing well.  I start taking on new duties."  In

17  fact, he starts to take on some of those duties,

18  and as you saw in his evaluation they're good.

19  They're very good.  Here is his evaluation the

20  year before he was separated from his

21  employment, and again a good evaluation.

22       He is focused on the fact that he's doing

23  good things.  He's telling you at this point

24  he's working that forklift, he's doing all the

25  things he needs to do.  All is going great until

1    Chuck Hoffman sees him laboring across the

2    parking lot.  Chuck Hoffman at that point sees

3    him do something that raises concerns for Chuck.

4    So what does Chuck do?  He takes action.  Not

5    just the perception that he sees this, but he

6    does something else.  They do a lot of things

7    else.  They start meetings.  They bring in the

8    management team.  You heard that Brenda Hoffman

9    says that she saw this struggle going on for

10   weeks, whether it was a couple of weeks or

11   several weeks.  Pat Whitmire says, "I knew about

12   his needs."  Tim Kline says, "I knew about it

13   for six months."

14        So they get together not once, but at least

15   twice, to talk about Ricky, to talk about what

16   to do with Ricky.  Interestingly if you remember

17   the opening arguments, or the opening statement,

18   I'm sorry, here's where I need Ricky.  I'll take

19   it off that way.  Ms. Saltz posed this question

20   to you.  In essence what do we, CTE, do with an

21   employee that we like when we see them struggle?

22   Well, let's talk about things that we talked

23   about.  We like Ricky, so we're worried about

24   him struggling, worry about him being a danger

25   to himself or others.  Surely they can point to

1   examples of how Ricky was a danger to himself or

2   someone else.

3       I don't remember that, and you shouldn't

4   either because they really couldn't point to

5   anything.  You'd think at least this valued

6   employee, the one that they called honest and

7   hardworking, they'd sit down with him and say

8   hey, Ricky, what's going on.  They didn't do

9   that either.  Well, if they're not going to do

10  that, they tell you that they have a safety

11  committee.  Let's refer him to the safety

12  committee.  It wasn't really time for that.

13      Now we're seeing that Tim Kline has seen

14  him struggling for six months, Brenda has seen

15  him for two or three, several weeks, whichever

16  it was, but we don't do that.  We don't even

17  offer him FMLA because we're concerned, even

18  though they offered Ricky FMLA when his wife

19  passed away.  So what do we do?  We send him to

20  Concentra.  That Norman Rockwell, the job that

21  Ricky had that he loved, the job that fit him,

22  the job that he needed and the job that he

23  thought needed him, was now in question.

24      That Norman Rockwell is knocked off the

25  wall by Chuck Hoffman and the management team's

1    actions to get together, discuss Ricky, and now

2    sen him to Concentra.   To Concentra they send

3    him with that job analysis.  Do you remember

4    that thing?  Let's put that back up for you

5    guys.  And remember that job analysis is

6    something that nobody really took credit for

7    creating.  Tim Kline says, "I didn't do it."

8    Pat Whitmire says no involvement.  Brenda

9    Hoffman says no real involvement.  Chuck says no

10   real involvement.  This is created for a

11   worker's comp type case, a fitness for duty

12   worker's type comp test that you're sending

13   Ricky out because somebody sees him struggling

14   through a parking lot.

15        Let's look at this.  Guys, I went to law

16   school because I was bad at math.  Could have

17   been a doctor but couldn't add too well.  But I

18   want you when you get back to the jury room to

19   look at this thing, carefully.  Ms. Saltz is

20   going to tell you that this document showed that

21   Ricky can't do the essential job functions of

22   this worker position.  The judge is going to

23   instruct you later on what that means, and

24   listen to the instructions because there are

25   several about what constitutes an essential job

1    function, but I want you to count them.

2         There are sixteen categories on that list,

3    and look at them.  Think about them.  There's

4    three things that are missing from that

5    category: breathing, blood pumping, and thinking

6    maybe.  Other than that it's everything the

7    world, the human being can do.  Are those really

8    the essential job functions of a warehouse

9    worker?  On top of it look at the last page.  On

10   the last page at the bottom, if you can see it,

11   they have percentages of time that are supposed

12   to be spent on these things, on these individual

13   duties.

14        First we have the occasional says 1 to 33

15   percent of the time.  Okay?  Double check my

16   math again.  I gave him the benefit of the

17   doubt.  For every job duty that they list I used

18   a lower scale.  So for something that was said

19   to be done frequently, it says it's the range is

20   34 to 65 percent.  He's at 34 percent.  Added

21   them up.  381 percent of the time Ricky is

22   supposed to be doing those job duties.  I know

23   we're all trying to cram a lot of hours into a

24   day, folks, but they've got 381 percent of the

25   time Ricky is doing these different job duties.

1    Which ones are essential?  Which ones aren't?

2        This evaluation you heard testimony about.

3    Dr. Walker, who Brenda Hoffman says she talked

4    to, and based on her conversation with Dr.

5    Walker she had a follow-up conversation with the

6    management team, and then the management team

7    decided to tell Ricky time to go home, but

8    Dr. Walker said, "I didn't talk to her.  It

9    wasn't me."  Dr. Walker didn't even do this

10   exam.

11       Dr. Walker couldn't even explain to you why

12   these things are on this form, and this is what

13   they relied on to tell Ricky to go home.  After

14   six and a half years of doing the job that he

15   had been doing as well as he had been doing,

16   they tell him to go home because Chuck Hoffman

17   saw him struggle, had meetings, sent him to a

18   physical which is a return to work worker's comp

19   physical, had a physician's assistant do an

20   evaluation, and then the doctor signs off on it,

21   and by the way, did you ever see Dr. Walker or

22   the PA say here are the accommodations that

23   Ricky could do this job with?  No.

24       What was the physical?  Ricky told you

25   about it.  "I walked in, touched the ground."

1     Ricky told you he hasn't touched the ground

2     in a couple of decades.  Squats.  He squatted

3     two to four inches.  Apparently not enough.

4     Mr. Crocenzi questioned him and says where does

5     it say how far you got to squat?  Where does it

6     say how far you got to walk, or climb, or stand,

7     or any of these things?  It doesn't.  You're

8     going to hear some testimony that Ricky Shaw

9     himself said, "I can't bend per OSHA standards,"

10    and Ms. Saltz is going to tell you that.  I want

11    you to challenge her, challenge her to show you

12    one single solitary piece of evidence that says

13    Ricky Shaw had to bend per OSHA standards.

14         They haven't showed you a manual.

15    Dr. Walker didn't know it because it doesn't

16    say it here.  There's no requirement that you

17    have to bend per OSHA standards.  What Ricky

18    tried to explain to everybody, including us, to

19    the doctors, to his employer, "The reason why

20    Dr. Walker and the PA said I couldn't lift or

21    perform 150 pounds wasn't because I couldn't

22    pick it up and move it," because Ricky told you,

23    "I can do anything I want to do."

24         What Ricky couldn't do was, "I can't do it,

25    bend down in a squat, catcher's squat stance,

1    and pick up 150 pounds."  He wasn't even given

2    the opportunity to do that.  So Ricky goes back

3    to CTE with this analysis in hand, hands it to

4    Brenda.  Brenda had already completed the FMLA

5    form.  Time to go.  Go take short-term

6    disability.  Get out.  Now, again I'm going to

7    point to you and show you that Ricky at that

8    point was doing his job, so much so that his

9    evaluation just prior, and remember, January

10   10th, 2007, thirty something days earlier,

11   thumbs up.  You're the man, Ricky.  You're doing

12   what you got to do.

13         Now, Ricky is being told that somehow he

14   can't do the job he's been doing for six and a

15   half years.  He can't do this job, these evolved

16   duties that have been going on for four years.

17   Brenda tells you those weren't job duties, they

18   weren't evolving, those weren't it.  Wait a

19   minute.  The two men that rely on Ricky day in

20   and day out to get his job done, Tim Kline and

21   Pat Whitmire, never have a problem with his

22   change of duties.  Chuck Hoffman says he spent a

23   lot of time on the forklift, but doesn't do

24   anything about it.

25         There's never a discipline, there's never

1   an instruction to stop, there's nothing. They

2   let him do his job.  They made and accommodated

3   him at that point.  They let him just do what it

4   was that he was doing.  Without issue.  Without

5   discipline.  And now because they send him to

6   Concentra for this exam, and remember, an exam

7   that he didn't have to take to get the job, it

8   didn't exist, didn't have to take when he had

9   his leg turned to hamburger in a comp injury,

10  didn't have to even take it when they created

11  it, and Ricky told you again, "If you had given

12  it to me when I first started I couldn't even do

13  the job and I expect couldn't do that squat

14  down.  Nonetheless I got my job done every

15  single day.  You gave me raises every single

16  year.  You never did anything to tell me I'm not

17  doing a good job."

18       So now Ricky goes home after being sent and

19  told take short-term disability.  Befuddled and

20  shocked, this is my home, what am I going to do?

21  He sits there and he's frustrated.  So what does

22  he do?  He goes home and he writes a letter.  He

23  writes a letter to Brenda Hoffman and passes it

24  out to the entire staff and says, "I disagree.

25  I completely disagree."  He tells you again,

1    explains in this letter, "It's not that I can't

2    do my job.  I just can't do it the way

3    Dr. Walker thinks I have to do it."  Dr. Walker,

4    you have an entire management team that sees him

5    every day and nobody questioned it, but

6    Dr. Walker, who has never been -- again let's

7    remember this, it isn't even Dr. Walker.  It's

8    the PA.  Never been to the place, doesn't really

9    know what's going on there, but somehow he says

10   he can't do it.  Ricky says it best again, "You

11   can modify my job description as warehouse

12   receiver to fit what I really do.  You can leave

13   the situation as it is and has been for a very

14   long time."

15        Ms. Saltz is going to come up here and tell

16   you that Ricky never asked for any

17   accommodations.  There it is, folks.  He asked.

18   He talks to them about it, because after he

19   hands this letter and he goes in and he clocks

20   in and starts to work, they have to call him

21   back in and say come on, you can't work, you're

22   supposed to be on disability.  Ricky explains to

23   them, "I'm doing it.  Where and why do I need to

24   go somewhere?"  And they say, "Pass this test

25   and you can come back to work."  How about the

1   epitome of a no win situation?  He knows this

2   isn't a reasonable test.  He knows this is

3   inaccurate.  While he says from the stand, "I

4   can lift 150 pounds because I can do it.  I can

5   literally pick it up and move it.  I can do

6   everything on that list.  It's not necessarily

7   in my job duties, but I'm not going to be able

8   to lift the way Dr. Walker wants me to."  So

9   Ricky sits and he starts thinking, "What am I

10   going to do?  What am I going to do?  What am I

11   going to do?"  He doesn't want to, he fights, he

12   struggles with the idea of short-term

13   disability, but eventually he succumbs because

14   "I don't have any more money, I'm running out."

15       He goes to Dr. Walker, hey, you filled this

16   stuff out, disable me.  Dr. Walker won't do it.

17   He goes to Dr. Oplinger, and here's an important

18   point for you guys to think about.  He goes and

19   sees Dr. Oplinger on the 4th of March 2007.

20   Dr. Oplinger at that point doesn't say, "Ricky,

21   you're disabled.  Ricky, there's a problem.

22   Ricky," anything.  He says, "Ricky, your knees

23   are bad," something Ricky says has been the case

24   for a really, really, really long time.

25   Dr. Oplinger doesn't say, "Ricky, don't go back

1    to work.  Just know that at some point in the

2    future you're probably going to need a knee

3    replacement because we're eventually getting

4    down to the point where it's slowing up, it's

5    not going to go any further." Okay.  Days later,

6    days later Ricky writes a letter to Dr. Walker

7    and says, "I can't get anyone to do my

8    disability for me, would you do it?"  Dr. Walker

9    fills this paperwork out.

10         THE PLAINTIFF: Oplinger.

11         MR. RUSSO: Oplinger.  I'm sorry,

12   Dr. Oplinger fills out the paperwork.  Hmm, a

13   couple of days later, no problems, no issues.  A

14   couple of days later he fills it.  Now, again

15   you guys can infer what you want from that, but

16   it seems odd.  Ricky nonetheless is still trying

17   to figure out how he can get back to Cumberland

18   and he goes back for a second evaluation with

19   Dr. Walker, and during that second evaluation he

20   actually does meet with Dr. Walker, and if you

21   remember Dr. Walker, Dr. Walker even notes in

22   this that the patient Ricky says that it really

23   doesn't correspond with his true job

24   description, and Dr. Walker says that his

25   evaluation and final determination is made

1    solely on the job description, but then remember

2    Dr. Walker couldn't remember what else played a

3    role.  That's why you write things down, Doc.

4    That's why we have notes, his notes said solely

5    on the job description.  Interestingly the last

6    page of that, which is really important to us,

7    this time he actually said the word

8    accommodation, and he wants you to look at those

9    things.  Unable to carry up to 150 pounds

10   occasionally.  Number one, you heard testimony

11   from Ricky's direct supervisor, Tim Kline, that

12   said that isn't even required.  75 to 100

13   pounds.  Maybe.

14        Then you heard it from Tim Kline's

15   supervisor that 65 pounds unassisted was all he

16   needed to do, but somehow Ricky has to do 150,

17   and Dr. Walker says if you can accommodate that

18   he can go back to work.  The accommodation was

19   already in place, folks.  It was already there.

20   Same thing with the carrying requirement.  It's

21   already there.  Tim Kline testified nobody

22   should carry anything.  That's why we have the

23   cart.  Pat Whitmire said assisted.  Squatting at

24   all, Tim Kline his supervisor testified that you

25   could do the job without squatting at all.  His

1   deposition testimony said you can do the job

2   without squatting at all.  He doesn't need to

3   bend frequently, stand or -- stand or bend.

4   Ricky told you already he wasn't doing a whole

5   lot of that anyway in his evolved position.

6       What's interesting is Tim Kline, who isn't

7   here to defend himself, is the person that

8   everybody was saying was an ineffective

9   supervisor.  He let these things go, but

10  remember Pat Whitmire, the superstar, approved

11  all these things, let these things happen.  Tim

12  Kline, the ineffective manager, was a manager

13  for nine and a half years.  For somebody that's

14  ineffective I would think they would have gotten

15  rid of him a lot sooner, which also goes back to

16  something that Brenda said.  Ricky couldn't do

17  the job.  He wasn't doing the job requirements.

18  These weren't his duties.  Why did you give him

19  good evaluations all the way through?  Why did

20  you give him good evaluations 35, 37 days before

21  you told him to go home?  Why?

22      They talked about this condition, we're

23  worried about this condition.  What is his

24  condition?  His condition seems to be fear.

25  Fear that Ricky, you know, might create some

1    liability to the company.  Not necessarily for

2    him, for the company.  We, Ricky again, you

3    know, Ricky filed for social security

4    disability.  At some point later on after

5    everything happened Ricky got gown to the point

6    where he was truly, truly struggling, and again

7    this morning you heard Dr. Oplinger's testimony.

8    In October of 2008 Ricky went to go see

9    Dr. Oplinger, and at that point Dr. Oplinger

10   said, "You might need a knee replacement."

11        Things are painful.  Dr. Oplinger agrees

12   pain is a variable.  If you can deal with it you

13   deal with it.  He didn't even know how long

14   Ricky had end stage bone on bone issues.  He

15   just knew that at some point Ricky is going to

16   need a knee replacement.  Ricky waits until June

17   of 2008.  Now, what's interesting again, social

18   security disability is in the middle of that.

19   In January of 2008 Ricky fills out his

20   functional form, and at that point he told you

21   he had gained sixty plus pounds.

22        At that point life was dramatically

23   different.  Life was dramatically different, and

24   now he couldn't do a lot of the things he could

25   do before, and in fact even at this point he

1    didn't necessarily need the knee replacement.

2    He waited.  He was still able to get around, not

3    as well, and he even explained in that document

4    that, "I can't do the lifting the way somebody

5    else tells me to lift."  Ricky goes and

6    basically tries to find other employment and he

7    learns that it's just not there for him.  CTE

8    would have you believe that Ricky had an

9    opportunity for a job opened for him, that here

10   was this job that was going to be open for him

11   if he could just get back.

12        You heard Mr. Sheldon testify from the

13   stand that while he's going to blame his

14   lawyers, but there were no jobs available for

15   Ricky.  There was nothing available in that time

16   period even though they wanted to say there was.

17   Ladies and gentlemen, Ricky was viewed as

18   disabled by his employer.  They perceived him as

19   being disabled when Chuck Hoffman saw him walk

20   across that parking lot and then engage in a

21   course of action to start to put Ricky out the

22   door.  He met with management, they sent him to

23   a doctor for an exam that made no sense, which

24   was inaccurate and inapplicable, and then

25   basically said when you can pass this exam we'll

1   let you come in.  We'll let you come back.

2       Interestingly, ladies and gentlemen, Brenda

3   talked or everyone talked about how there was

4   opportunities for Ricky.  More letters, come on

5   back.  There's something there maybe.  But I

6   want to show you Ricky's wage statement that

7   Brenda Hoffman testified to us was accurate.

8   We'll see only page 1.  This is the wage

9   statement.  I want you to take a look at the run

10  date and time.  September 19th, 2007.  This is

11  the day that they say was Ricky's last day.

12  This statement was a statement that Brenda told

13  us from that very chair was accurate and

14  correct.

15      How about this, folks?  Ricky's termination

16  date on their own internal document it said

17  2-28-07. Tell me this.  If they didn't plan to

18  get rid of him, why is that date on this sheet?

19  On 2-28-07 they knew Ricky was no longer going

20  to be an employee at Cumberland Truck.  They put

21  it on their own internal document, a document

22  that was created months later but still

23  maintained the date that they got rid of him and

24  knew they were getting rid of him.  We all do

25  things with self preservation on our minds, and

1   an employer is free to make some self

2   preservation arguments and have some thoughts,

3   but when self preservation violates the law,

4   fairness and justice needs to prevail. Ricky

5   Shaw was put out of work. Ricky Shaw lost

6   money. Ricky Shaw's expert showed to you in

7   essence this summary exhibit, showed you the

8   dollars that Ricky would have lost. Now, again

9   Ms. Saltz is going to come up and tell you that

10  number is dramatically wrong, that number needs

11  to be limited, that number has to be reduced, it

12  has to be reduced by the social security

13  disability money that Ricky has gotten. The

14  judge is going to give you some instructions on

15  how that applies in this case.

16       What I want you to remember is that the

17  only reason why we're talking about social

18  security disability benefits and the short-term

19  disability benefits is because of the actions of

20  Cumberland Truck. But for them telling Ricky he

21  couldn't do this it wouldn't be there. Again

22  challenging to show me an OSHA anywhere

23  reference. It doesn't exist. It doesn't exist.

24  The only personal that had OSHA in their mind

25  was Dr. Walker for some unknown reason, because

1   it's not a part of the description, and Ricky,

2   who understood why Dr. Walker was doing this.

3   All Ricky wanted to do was, "Let me do what I'm

4   doing.  Let me do what I've done.  Why would you

5   stop me?  Again, I'm a good employee.  You admit

6   that."  Because they're concerned, because

7   they're afraid, and again self preservation.

8   When self preservation violates the law, justice

9   and fairness needs to prevail.  In order for

10  justice and fairness to prevail, ladies and

11  gentlemen, you need to bring a verdict back for

12  Ricky.  I thank you for your time and your

13  attention again on behalf of Michael and Ricky.

14  Thank you.

15      THE COURT: Thank you, Mr. Russo.  If you

16  would just move those to the side?  Thank you,

17  Mr. Crocenzi.  Ladies and gentlemen, it's now

18  time for the closing arguments from defense

19  counsel, and at this time the court recognizes

20  Ms. Saltz.  Ms. Saltz, you my address the jury.

21      MS. SALTZ: Thank you, Your Honor.  Good

22  morning.  Mr. Shaw, you heard him testify for a

23  very long time here in court.  He's a very proud

24  man.  He's a good man.  He is a hard working

25  man.  He's a man who lived his job at Cumberland

1    Truck and did his job well.  Took on

2    assignments, organized it, color coding appeals

3    to me because I'm a color coder, you know.  I

4    like sharing that that he was able to color code

5    the shelves.  Ricky Shaw was the only one that

6    really knew what was going on.  His heart was

7    there.  His spirit was there.  His soul was

8    there.  Physical, part not so much.  As human

9    beings we have to feel for that, we have to feel

10   for this man who loved his job, and then one day

11   was told after an exam that he couldn't meet

12   those physical requirements, and that's okay,

13   because as human beings we should feel, but

14   having said that because I do feel, Cumberland

15   feels, I'm sure all you do, but when you came

16   into this courtroom and you took your oath as

17   jurors, you took the oath to decide this case on

18   the evidence, on the facts as you decide them,

19   on the law as Judge Conner will give it to you,

20   putting sympathy and bias aside.

21       So I'm going to ask you all to do something

22   very, very hard right now.  I'm going to ask

23   that you take whatever sympathy that you feel

24   and put it over here and then shut the door to

25   it, because only then can you truly give a fair

1   impartial verdict based on the evidence, based

2   on the facts as you find them, based on the law

3   as the judge gives it to you.  Now it's time for

4   me to finish working so that I can let all of

5   you begin your job.  Going back in time to

6   February of `07, one of the things that Mr. Shaw

7   has to prove in this case is that Cumberland

8   regarded him as disabled, and the judge will

9   give you, there's lots of definition, the law is

10  very complex in this area, and I'm not going to

11  go through that law since the judge will be

12  going through that law with you, but I'm going

13  to give you some terms that you will hear in

14  those instructions.

15      Regarded as disabled.  That's what he has

16  to prove that Cumberland did.  Now, the fact

17  that several managers observed him struggling to

18  walk, observed the limp, that doesn't mean they

19  regarded him as disabled.  They had an

20  observation.  So what did they know at that

21  time?  You heard Mr. Shaw.  He never told anyone

22  at Cumberland that he had a back problem.  Never

23  told them that he had knee problems.  Didn't

24  tell them that he was taking pain medication,

25  antiinflammatory medication.  That at the end of

1   the day he needed his walking stick or cane,

2   sometimes in the mornings he needed his walking

3   cane.  Sometimes throughout the day he needed

4   his walking cane.  He never told anyone

5   anything.  He never told them or asked for any

6   kind of accommodation.  He kept that all to

7   himself, and because of his will power and

8   because he cared for a job, he kept on pushing

9   himself physically to do that job.

10       Well, you heard in October is when his knee

11  really started getting worse, and that's when he

12  went to see Dr. Oplinger, and that progressed.

13  Yes, that last performance evaluation, perhaps

14  all his performance evaluations were great, but

15  in that last one when you look at it, he was

16  doing the physical job as best as he could. That

17  was in December of `06.  Come into January he's

18  still doing his job.  Chuck Hoffman sees him

19  half a dozen times now walking a span of about

20  eighty feet from the warehouse to the main

21  office.

22       Even seeing him walking slower, struggling

23  a little bit with walking.  Ms. Hoffman saw him

24  come in, he would sit down as he first came in,

25  rested, and then continued on his way.  This is

1    a company that cares about their employees.

2    They didn't know what was going on with

3    Mr. Shaw.  He never told them what was going on,

4    and there are laws that prevent them from asking

5    employees, but they knew that something wasn't

6    right.  They've known Mr. Shaw since 2000.

7    Something wasn't right.  What was happening

8    here, Ricky wasn't coming to them.  So what did

9    they do?  They did a reasonable thing to me and

10   say hey, you know what, we're concerned.  What's

11   happening to Mr. Shaw, what's happening to

12   Ricky.  They are not doctors.  You've heard

13   them, you heard Ms. Hoffman, they're not medical

14   doctors.  They didn't know whether he had a

15   condition or not.  They didn't know whether it

16   was temporary or not.  They didn't know what was

17   causing him to slow down, to struggle walking

18   now at this point.

19        So what they did was a very reasonable

20   thing, and that reasonable thing was say send

21   him to an independent medical facility for an

22   examination based on his physical requirements

23   of his job.  Now, there has been a lot back and

24   forth about, you know, was this the physical

25   requirements, weren't they the physical

1   requirements, 65 pounds, 70 pounds.  You know

2   what?  It doesn't matter, because the one thing

3   that you're not asked when you do sit in this

4   box and serve as jurors is to leave your common

5   sense at the door.  You're not asked to forget

6   about your life experiences.  So let's take a

7   step back for a moment and take a look at what

8   was that warehouse job.  That warehouse job was

9   a Chevy truck parts warehouse.  Mr. Shaw gave a

10  wonderful description of the day-to-day

11  activities.  Mr. Shaw sat up there and to my

12  question admitted that those assigned duties

13  were his duties, that those physical

14  requirements were the job were the physical

15  requirements for the job.

16      Even in his statement to social security he

17  said, "Hey, one time I was able to pick up 140

18  plus pound brake drum from one pallet and toss

19  it onto another pallet," but think about what

20  the job entailed.  This is not a sedentary job.

21  A sedentary job is what I do.  I sit behind a

22  desk.  Do I sit behind a disk for eight, ten

23  hours a day?  No, of course not.  I get up, I

24  move around.  Here this is a warehouse job.

25  You're on your feet all day long, eight hours a

1  day.  Sure, do you sit down occasionally?  Of

2  course you do.  You sit down to eat lunch, you

3  sit down to maybe count something, but you're on

4  your feet eight hours a day.  You're standing,

5  you're walking, you're unloading trucks, you're

6  putting product on shelves, you're claiming

7  stairs.  What's involved with lifting products?

8  I don't care if it's you heard about the coffin

9  box that was filled with miscellaneous types of

10  parts.  Do they fly up to you into your hands?

11  No.  Of course not.  The common sense, the

12  reality is that you need to bend to pick up the

13  parts.  You need to squat.  You need to bend.

14  You need to walk over to a shelf.  You need to

15  put it up on a shelf.  You need to reach to take

16  it down off of a shelf.

17       The essential functions of Mr. Shaw's job

18  were walking, standing, bending, squatting, and

19  with that comes carrying and lifting.  I don't

20  care if we're talking 25 pounds of lifting.  You

21  still have to lift, you still have to bend,

22  squat, pick it up, lift, carry it, walk over and

23  put it on a shelf.  Those are the essential

24  functions of the job.  It's not a sit down job.

25  It is a moving on your feet all day long job

1    with a lot of heavy stuff coming in.  You heard

2    Mr. Shaw.  Look, forty trucks sometimes a day

3    would come into that facility.  Sometimes three

4    or four, sometimes twenty.  He was unloading

5    those trucks.  You heard him testify, he didn't

6    just sit on a forklift.  He took that forklift,

7    he had to go, take it off a pallet, put it on

8    another pallet.  That's strenuous hard work.

9    That's what was being on that job, those are the

10   physical requirements, those are the essential

11   duties, and that's what you're going to have to

12   decide.  Could he have done those essential

13   duties.

14        Well, by the time he went to Concentra, he

15   walked in there, he was examined.  It wasn't

16   just fill out a form.  He underwent a medical

17   examination that Dr. Walker discussed and

18   concurred with.  He walked in there with knee

19   pain and swollen legs.  He couldn't squat.  He

20   couldn't bend.  Bending wasn't easy for him. So

21   carrying and lifting is not the upper body.

22   It's the effect that it has on the body to

23   carry.  Whenever you carried anything that's

24   heavy, whatever you carried that or lifted,

25   that's the effect.  Now, again Cumberland had no

idea what was going on with Mr. Shaw at that
time, but what they did was they relied on a
medical facility to tell them can he do his job,
can he do these physical requirements.  Why?
Because they were concerned for Mr. Shaw.  They
were concerned that they needed to know what was
going on here.  Could he do that job so that he
wouldn't hurt himself or hurt someone else.  And
you push, you push, your push yourself
physically, physically, physically, what if it
was the day that we had to wait for, the day
that he dropped something heavy on himself, the
day that he's lifting with someone else and
can't handle it, unbalanced, or his knee gives
out and drops that pallet and hurts the person
that he's lifting with?  Is that what we wait
for?  An incident?

So he came, the report came back.  He can't
do the physical, the essential functions of that
job.  Cumberland didn't want Ricky Shaw to leave
his job.  They didn't want to lose him.  They
wanted him.  If Cumberland Truck wanted to
discriminate against Ricky Shaw they had two
other opportunities to do it.  When he came in
for employment and it was found that he had

1  little vision in the left eye and no depth

2  perception.  Hey, that's a disability, or it

3  could be perceived as a disability.  They didn't

4  say no, we don't want you.  They hired him.

5  When he went out on worker's comp medical leave,

6  not much different than what happened in this

7  instance when they said that he couldn't perform

8  those functions.  They didn't know what his

9  condition was.  They could have done it then.

10  But instead Ricky knew what it took, he went out

11  on medical leave, he got a doctor's release, he

12  came back to work, they got him back up to full

13  duty, he was working, working, working again.

14      What was different this time?  They relied

15  on a medical judgment that he could not perform

16  those essential elements of his job.  Now, if

17  they wanted to discriminate against him, and

18  this is where I would like you to ask yourself

19  the questions when you do go back into

20  deliberation, Chuck Hoffman saw him struggling

21  to walk across the parking.  If they wanted to

22  get rid of Mr. Shaw why not just say hey, looks

23  like you obviously have a problem, you're on

24  medical leave, here's some forms.

25      They didn't do that.  Ask yourself another

1  question.  If they thought that he, if they

2  regarded him as disabled, why did they send him

3  to another evaluation at their cost?  Why did

4  they send him for a third evaluation?  Because

5  they wanted Mr. Shaw to come back to work.  They

6  wanted him to come back to work.  They did not

7  know what was going on.  They did not know what

8  Dr. Oplinger wrote in April of `07, that he

9  couldn't carry or lift or stand or walk for

10 prolonged periods.  You heard Dr. Oplinger this

11 morning, repetitive function with someone that

12 had the condition that Mr. Shaw had, which only

13 Mr. Shaw knew, would make it worse.  But

14 Cumberland didn't know that.  All they knew is

15 they had a valued, liked, respected employee

16 that a medical facility found could not meet

17 those functions, and then gave him the benefits

18 that he could have should he choose to have or

19 need to have them.

20      Where is Mr. Shaw's responsibility in all

21 of this?  You know, I listened to Mr. Russo talk

22 to you and I'm thinking to myself wait a minute,

23 okay, if you disagree with those findings, again

24 keep in mind the only one that knew the

25 condition was Mr. Shaw.  Cumberland didn't know

1  what his condition was.  So if you disagree with

2  those findings, go to Dr. Oplinger and say hey,

3  they send me to some guy here, I had to do this,

4  you know, I can't squat, this is about as low as

5  I can do, I can do the job, doctor, can you

6  check me out, doctor, tell me what I can do,

7  tell me what I can't do, tell me what the

8  company can do to help me do my job.  Mr. Shaw

9  didn't do that.  Why didn't he do that?  Ask

10  yourself, because Dr. Oplinger would never,

11  would never have cleared him to carry, lift,

12  stand, and walk for prolonged periods of time

13  based on his condition.

14      That's why he didn't do that.  If Mr. Shaw

15  disagreed with the physical requirements and

16  said, "Hey, I can do my job, but I need a little

17  bit of assistance right now here,"  All right,

18  what do you need.  Well, you know, I can't

19  climb.  I can't climb those stairs.  It really

20  bothers my knee.  Okay, we can accommodate that.

21  You don't have to climb.  But when you go back

22  into deliberations ask yourself how do you

23  accommodate walking eight hours a day?  How do

24  you accommodate standing eight hours a day?

25  How do you accommodate bending?  How do you

1    accommodate squatting?  That's the job.  That's

2    what everyone else is doing.  An employer

3    doesn't have to change the physical requirements

4    of a job for one employee.  An employer doesn't

5    have to reassign those duties to another

6    employee.  The purpose of accommodation is to

7    help that employee do their job, and that's the,

8    next part of this, that's the next part.  That's

9    the next part of this is the accommodation.

10   It's up to Mr. Shaw to give notice to the

11   company that he wanted an accommodation.

12        Now, you heard, you saw the letter, you'll

13   see some of these exhibits.  Modify my job to

14   what I really do.  At the end of the testimony

15   with Mr. Shaw he admitted that there's nothing

16   to modify.  Those were the assigned duties.

17   Those were the physical requirements.  What's to

18   modify at this point?  Now, Mr. Sheldon

19   testified that he wanted to do something with

20   Mr. Shaw.  What Mr. Shaw wanted was he was

21   stubborn, he wanted his job, he wanted the

22   situation left alone, he wanted to work the way

23   he was working.  He didn't want any interference

24   from anybody telling him he can't do the job

25   that he's been doing.  That's not the right

1  answer.  If there's obviously something that's

2  causing an employee some kind of difficulty and

3  it comes back to that employee can't do the

4  essential functions of the job, are you as an

5  employer going to turn a blind eye to a medical

6  opinion and use judgment on your own and say

7  okay, you know, just keep on going, Ricky, keep

8  on going until one day we have to call in an

9  ambulance to take you out of there or until you

10  drive that forklift and you hit someone because

11  your reflexes are slower, or until a pallet

12  drops or until you drop a pallet.

13      Those were their concerns.  It's for him

14  primarily and also for the people that he had an

15  obligation to, but his stubbornness wouldn't

16  even let him see that he had an obligation to

17  other people.  So when you deliberate ask

18  yourself what did he ask for an accommodation?

19  What kind of accommodation?  But Mr. Sheldon

20  tried to offer him.  Now, I know in the cross

21  examination, and cross examination can be tough

22  and, you know, it's certainly not a comfortable

23  position to be in, and then there were a couple

24  of times when Mr. Shaw had an outburst, and that

25  was okay.  I mean, that's what happens

1    sometimes.  But that outburst made me see that

2    day that I could hear him talking to Mr. Sheldon

3    when Mr. Sheldon was saying to him, you know,

4    how about doing something else, and he said,

5    "With these hands?"  Well, what more could the

6    company do?  I mean, they would be willing to do

7    anything to keep this employee if that employee

8    doesn't want it and only wants what he can't

9    currently have at that moment.

10        Well, that's not an accommodation.  That's

11   not reasonable.  He wanted them to fire him, lay

12   him off, leave the situation alone.  That's not

13   reasonable.  What's reasonable is work with us,

14   tell us what you need, go to your doctor, bring

15   the forms to your doctor, have your doctor talk

16   to Walker, have Walker and your doctor come up

17   with a third doctor that everyone agrees on and

18   have them examine you.  We want you back.

19   Cumberland, if they wanted to discriminate

20   against Ricky Shaw, would they have kept his job

21   open for almost seven months beyond Family

22   Medical Leave Act?  They're only required to

23   keep it open for twelve weeks.

24        They kept that job for seven months, and

25   not only that, but when they did send a letter

1   to him, and it apparently crossed in the mail,

2   that was earlier than September 17th, they still

3   brought him back for an evaluation on September

4   17th.  Why would they want to continue putting

5   this man through evaluations, for what purpose

6   if they were going to try to get rid of him?

7   They wanted to save him.  It makes no sense, and

8   that's what common sense is.  Retaliation.  Ask

9   yourself what have you heard about retaliation?

10  Retaliation is that Mr. Shaw asked for an

11  accommodation and the company retaliated against

12  him and from that there was an adverse

13  employment action, tell you about an adverse

14  employment action.  Where's the evidence of

15  that?  What did they do?  What did Cumberland

16  do?

17      The only thing that Cumberland did was they

18  saw an employee, a valued employee whom they

19  hadn't seen struggling before.  They used

20  judgment.  They sought advice.  They sent him to

21  someone that could then tell them could he do

22  his job.  They didn't know.  You heard the

23  testimony.  They didn't know whether it was

24  going to come back that he could or he couldn't.

25  They waited for those results.  The results came

1    back.  Now, you heard Mr. Russo talk about OSHA.

2    Nobody said anything about OSHA, but you know

3    something.  What's telling in those social

4    security documents that you'll be able to look

5    at is Mr. Shaw knew, he wrote this himself, "I

6    lost my job because I could not bend per OSHA

7    requirements, because of the combination of my

8    bad knee and my bad back."  That's what happened

9    here.  Now, if Cumberland didn't want Mr. Shaw

10   and was discriminating against him, would they

11   have sent him that final letter with the "we

12   have to terminate the employment, but please, we

13   invite you to reapply, come back to us," and he

14   could have come back to Cumberland.

15        You heard every witness testify they would

16   have taken, except for Mr. Kline, they would

17   have taken him back today even with this

18   lawsuit.  Why?  Because he's a great employee.

19   Now, you heard Dr. Oplinger.  By April we're

20   looking at knee replacement.  Yes, it is

21   Mr. Shaw's decision to delay that, and that's

22   fine.  He could have had it then and probably

23   gotten back to work sooner with probably

24   accommodation.

25        You heard Dr. Oplinger, he wasn't walking

1   with a cane, he was doing great, he was doing

2   well, he was able to climb stairs, something

3   that Mr. Shaw told you he hasn't been able to do

4   in that period of time.  So he delayed it.

5   Okay, so he delayed it, but he had it done in

6   `08, and by July of `09 he was doing great.

7   When I asked him why didn't you go back, what

8   was his answer?  He had already filed a lawsuit

9   and he didn't feel comfortable to.  So he could

10  have mitigated his damages by coming back.  The

11  company would have taken him back, but for

12  Mr. Shaw, who knew what his condition was, knew

13  what his limitations were, knew that he couldn't

14  perform the essential functions of that job and

15  just wanted to push through it until when, until

16  who knows, until he hurt himself or someone

17  else?

18      That's on him.  That's not on Cumberland.

19  Cumberland never regarded him disabled.  If they

20  had they would not have sent him for that

21  evaluation, they would not have kept his job

22  open for seven months.  They would not have

23  invited him to reapply at the end to come back.

24  You'll have all of the exhibits in front of you,

25  you'll be able to go through them all and make

1  your own determination based on what you recall

2  of the testimony and of the evidence.  I have

3  always since I started practicing have really

4  believed in the jury system, and I believe in

5  the jury system because as hard as it is as

6  you're sitting there wondering whether you're

7  going to get picked or not, you honestly answer

8  questions, you know it's a commitment of your

9  time that you're giving up to hear a case and

10  decide a case between two people, and this is

11  what this is about.  This one is a corporation,

12  makes no difference.  It's about two people.

13      Your attention to this case has been

14  unbelievable.  It has just restored in me the

15  belief that our system is not the best system,

16  but it's, you know what, it's better than any

17  other system in this world, and I truly believe

18  and Cumberland believes that you will do what is

19  the right thing when you go back into

20  deliberation and come up with your verdict.

21      I would like to thank you on my own behalf

22  and on behalf of Cumberland Truck Equipment

23  Company for the attention and the time and the

24  days that you have given to this case, and I

25  wish you a great weekend and a great summer.

1    Thank you.

2          THE COURT: Thank you very much, Ms. Saltz.

3          MR. RUSSO: Now I get to say good afternoon.

4    This will be quick.  Chuck Hoffman saw Ricky,

5    who as Ricky testified was walking slowly at

6    that time.  The mere fact that they believe he

7    was more disabled than he was is a perceived

8    disability.  When Ricky goes and asks for his

9    accommodation, this again, Ms. Saltz is right,

10   don't leave your common sense at the door.  We

11   all probably have been in a situation where we

12   do what we have to do to get a job done, and his

13   job changed and Ricky simply said again let me

14   do what I'm doing and have been for the last

15   four and a half years without incident,

16   discipline, or anybody stopping me, open and

17   noticeable, to everyone's notice, and

18   interestingly they didn't even respond.  They

19   didn't respond in writing to him.  They had a

20   conversation, but then she says we sent him for

21   a second evaluation.

22       I want you to remember self preservation

23   again.  Remember that first evaluation that

24   they relied on and went back to management to

25   discuss?  It wasn't even done by a doctor.

1   They did a second evaluation so they could kind

2   of get real authority for what they were doing,

3   but by now, by now, by now Ricky said, "Let me

4   do what I want to do.  Let me do what I've been

5   doing," we don't like that.  We don't want to

6   buck the system.  The accommodation, the judge

7   is going to tell you what reasonable

8   accommodation is, and think about those

9   elements.  What did I ask Cumberland to do?

10  Just let me do what I'm doing.

11       How unreasonable is that?  But they had

12  already made their mind up by this point.  By

13  the time Ricky said, "Let me do what I want to

14  do and what I've been doing," and what Tim and

15  Pat had been with him doing, that you all saw

16  him do, they made a decision, you're out of

17  here. This is their own document, folks, dated

18  allegedly the same date after they sent out that

19  termination letter, the internal document says

20  we terminated him on the day he asked for

21  accommodation.

22       All the disability testimony you've heard?

23  Months, months, months after the evaluation.

24  So again could Ricky do that job on that day?

25  I think the record is pretty clear with that.

1  Dr. Oplinger said, if you remember the

2  testimony, he wouldn't have recommended that

3  Ricky go back to CTE after his leave, that that

4  was kind of the thing, it probably wasn't

5  something he'd recommend.  So again this idea

6  that his job was open for him is more self

7  preservation than anything else, and again we

8  think that when I asked and you make a decision

9  that quick, you've retaliated against me.  Thank

10  you.

11       THE COURT: Thank you very much, Mr. Russo.

12       MR. RUSSO: Thank you, Your Honor.

13       THE COURT: Ladies and gentlemen -- actually

14  if you don't mind taking that down.

15       MR. RUSSO: I'm sorry, Your Honor.

16       THE COURT: Not a problem.  I prefer not to

17  move around during closing arguments because I

18  don't want to distract you from the attention

19  that I know you're giving both counsel.  Ladies

20  and gentlemen, at this time we'll take a short

21  break so that we can all use the restroom, and

22  let's reconvene at 12:15 for my instructions on

23  the law, and I believe your lunch orders have

24  been placed or are being placed.  All right?

25  We're in recess.  Ms. McKinney, would you escort

1    the jury?  And again let's keep this as brief as

2    possible.

3            (Recess taken at 12:06 p.m.)

4            (Jury charge began at 12:23 p.m.)

5            THE COURT: Please be seated.  Ladies and

6    gentlemen, now that you have heard all of the

7    evidence that is to be received in this trial

8    and each of the arguments of counsel, it is my

9    duty to instruct you about the applicable law.

10   We have written instructions that we will

11   distribute to you at this time.  You can follow

12   with me page by page, or you can put the

13   instructions to the side and just listen to me

14   give them to you, but at this time I'll ask that

15   the instructions be distributed, the written

16   instructions be distributed to the members of

17   the jury.

18           (Brief pause.)

19           THE COURT: Ladies and gentlemen, you have

20   two duties as a jury.  Your first duty is to

21   decide the facts from the evidence in this case.

22   This is your job and yours alone.  Your second

23   duty is to apply the law as I will state it and

24   to apply it to the facts as you find them from

25   the evidence in the case.  Do not single out one

1  instruction as stating the law, but consider the

2  instructions as a whole.  You are not to be

3  concerned about the wisdom of any rule of law

4  stated by me.  You must follow and apply the

5  law, regardless of any opinion you may have as

6  to what the law ought to be.  It would be a

7  violation of your sworn duty to base any part of

8  your verdict upon any view or opinion of the law

9  other than that given in these instructions of

10 the court, just as it would be a violation of

11 your sworn duty as the judges of the facts to

12 base your verdict upon anything but the evidence

13 received in the case.

14      Counsel have quite properly referred to

15 some of the governing rules of law in their

16 arguments.  If there is any difference between

17 the law as stated by the lawyers and the law as

18 stated in these instructions, you are to be

19 governed by the instructions given to you by the

20 court.  Nothing I say in these instructions and

21 nothing I said or did during the trial is meant

22 to indicate any opinion on my part about what

23 the facts are or about what your verdict should

24 be.  You, not I, have the duty to determine the

25 facts and the verdict in this case.  You must

1    perform your duty as jurors without bias or

2    prejudice as to any party.

3        The law does not permit you to be

4    controlled by sympathy, prejudice, or public

5    opinion.  The parties expect that you will

6    carefully and impartially consider all of the

7    evidence, follow the law as it is now being

8    given to you, and reach a just verdict

9    regardless of the consequences.  The law shows

10   no favoritism to parties in any court

11   proceeding.  This case is to be considered and

12   determined by you in the same impartial way as

13   you would consider a case, consider and

14   determine a case between two private

15   individuals.

16       In this case CTE is a corporation, and as

17   such it can only act through its officers,

18   employees, and agents.  However, that fact

19   should have no bearing on your verdict in this

20   case, and in the eyes of the law both

21   individuals and corporations are equal and both

22   are entitled to be judged by the same standards

23   of fairness and impartiality.  Unless you are

24   otherwise instructed the evidence in the case

25   consists of the following: the testimony of the

1   witnesses, regardless of who called the witness;

2   and documents and other things received as

3   exhibits regardless of who may have produced

4   them.  The mere fact that the plaintiff has

5   brought this lawsuit is not in any way evidence

6   that the defendant is liable.  The following

7   things are not evidence: statements, arguments,

8   and questions of the lawyers for the parties in

9   this case; objections by the lawyers; any

10  testimony I tell you to disregard; and anything

11  you may see or hear about this case outside the

12  courtroom.

13      If a witness is asked a question that

14  contains an assertion of fact, you may not

15  consider the assertion as evidence of that fact.

16  However, when both sides stipulate or agree on

17  the existence of a fact, you must, unless

18  otherwise instructed, accept the stipulation and

19  regard that agreed upon fact as proved.  Any

20  evidence to which I have sustained an objection

21  and evidence that I have ordered stricken must

22  be entirely disregarded.  You are to base your

23  verdict only on the evidence received in the

24  case.  In your consideration of the evidence

25  received, however, you are not limited to the

1   bald statements of the witnesses or to the bald

2   assertions in the exhibits.  In other words, you

3   are not limited solely to what you see and hear

4   as the witnesses testify or as the exhibits are

5   admitted.  You are permitted to draw from the

6   facts which you find have been proved such

7   reasonable inferences as you feel are justified

8   in light of your experience and common sense.

9       There is nothing particularly different in

10  the way that a juror should consider the

11  evidence in a trial from that in which any

12  reasonable and careful person would deal with

13  any very important question that must be

14  resolved by examining facts, opinions, and

15  evidence.  You are expected to use your good

16  sense in considering and evaluating the evidence

17  in the case.  Use the evidence only for those

18  purposes for which it has been received, and

19  give the evidence a reasonable and fair

20  construction in light of your common knowledge

21  of the natural tendencies and inclinations of

22  human beings.

23      There are two types of evidence that you

24  may use in reaching your verdict, direct

25  evidence and circumstantial evidence.  An

example of direct evidence is when a witness
testifies about something that the witness knows
through his or her own senses, something the
witness has seen, felt, touched, heard, or did.
If a witness testified that he saw it raining
outside and you believed him, that would be
direct evidence that it was raining.

Circumstantial evidence is proof of one or
more facts from which you could find another
fact.  If someone walked into this courtroom
wearing a raincoat, covered with drops of water,
and carrying a wet umbrella, that would be
circumstantial evidence from which you could
conclude that it was raining.  You should
consider both kinds of evidence that are
presented to you.  The law makes no distinction
in the weight to be given either direct or
circumstantial evidence.  You are to decide how
much weight to give any evidence.

In deciding what the facts are you may have
to decide what testimony you believe and what
testimony you do not believe.  You are the sole
judges of the credibility of the witness.
Credibility means whether a witness is worthy of
belief.  You may believe everything a witness

says, only part of it, or none of it.  In deciding what to believe you may consider a number of factors, including:  1) the opportunity and ability of the witness to see hear or know the things the witness testified to; 2) the quality of the witness's understanding and memory; 3) the witness's appearance and manner while testifying; 4) whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice; 5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; 6) how reasonable the witness's testimony is when considered in light of other evidence that you believe; and 7) any other factors that bear on believability.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.  In weighing the effect of a discrepancy always consider whether it pertains to a matter of importance or an unimportant

detail and whether the discrepancy results from innocent error or intentional falsehood.  After making your own judgment you will give the testimony of each witness such weight, if any, that you may think it deserves.

In short, you may accept or reject the testimony of any witness in whole or in part. A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something that is inconsistent with the witness's present testimony.  If a witness is shown to have knowingly testified falsely about any material matter, you have a right to distrust the witness's other testimony and you may accept or reject the testimony of that witness in whole or in part.  An act or omission is knowingly done if it was done voluntarily and intentionally and not because of mistake, accident, or other innocent reason.

Some of the testimony before you is presented in the form of a deposition, which is the sworn testimony of a witness taken before trial.  The witness is placed under oath and

1   swears to tell the truth, and lawyers for each

2   party may ask questions.  A court reporter is

3   present and records the questions and answers.

4   This is part of the pretrial discovery, and each

5   party is entitled to take depositions.

6   Deposition testimony is entitled to the same

7   consideration and is to be judged insofar as

8   possible in the same way as if the witness had

9   been present to testify.  In other words, you

10  may consider testimony given at a deposition

11  according to the same standards you would use to

12  evaluate testimony given at trial.

13       You have heard testimony containing

14  opinions from two economists, actually an

15  economist and an accountant, Mr. Kern and

16  Mr. Staller.  In weighing this opinion testimony

17  you may consider their qualifications, the

18  reasons for their opinions, and the reliability

19  of the information supporting those opinions, as

20  well as the factors I have previously mentioned

21  for weighing the testimony of any other witness.

22  The opinions of Mr. Kern and Mr. Staller should

23  receive whatever weight and credit, if any, you

24  think appropriate, given all the other evidence

25  in the case.  In deciding whether to accept or

1   rely upon the opinions of Mr. Kern and/or

2   Mr. Staller you may consider any bias that they

3   may have, including any bias that may arise from

4   evidence that they have been or will be paid for

5   reviewing the case and testifying.

6       Your decision on the facts of this case

7   should not be determined by the number of

8   witnesses testifying for or against another

9   party.  You may find that the testimony of a

10  small number of witnesses as to any fact is more

11  credible than the testimony of a larger number

12  of witnesses to the contrary.  What is more

13  important is how believable the witnesses were

14  and how much weight you think their testimony

15  deserves.  You should consider all the facts and

16  circumstances in evidence to determine which of

17  the witnesses you choose to believe or not

18  believe.

19      As I have told you, you, the jury, are the

20  sole judges of the facts of this case.  This is

21  a civil case.  Mr. Shaw has accused Cumberland

22  Truck Equipment Company of discriminating

23  against him on the basis of a perceived

24  disability, failing to accommodate the

25  disability that it perceived him as having, and

1  retaliating against him for requesting

2  accommodation.  Cumberland Truck Equipment

3  Company denies Mr. Shaw's accusations and it

4  raises various additional allegations in its

5  defense.  Mr. Shaw has the burden to prove his

6  claim by a preponderance of the evidence.  If

7  Mr. Shaw should fail to establish any essential

8  element of his claim by a preponderance of the

9  evidence, then you should find for CTE.

10       Established by a preponderance of the

11  evidence means to prove that something is more

12  likely so than not so.  To say it differently,

13  if you were to put the evidence favorable to

14  Mr. Shaw and the evidence favorable to CTE on

15  opposite sides of the scales of justice,

16  Mr. Shaw would have to make the scales tip

17  somewhat on his side.  If Mr. Shaw fails to meet

18  this burden the verdict must be for the CTE.  If

19  you find after considering all the evidence that

20  a claim or fact is more likely so than not so,

21  then that claim or fact has been proved by a

22  preponderance of the evidence.

23       In deciding whether any fact has been

24  proved by a preponderance of the evidence in

25  this case you may, unless otherwise instructed,

1    consider the testimony of all witnesses,

2    regardless of who may have called them, and all

3    exhibits received in evidence, regardless of who

4    may have produced them.  You may have heard of

5    the term proof beyond a reasonable doubt.  That

6    is a stricter standard that applies in criminal

7    cases.  It does not apply in civil cases such as

8    this.  You should therefore put it out of your

9    minds.

10       The Americans With Disabilities Act.  In

11   this case Mr. Shaw has made a claim of

12   disability based discrimination under a federal

13   law known as the Americans With Disabilities

14   Act, or ADA for short.  The purpose of the

15   Americans With Disabilities Act is to provide a

16   clear and comprehensive national policy to

17   eliminate discrimination in the work place

18   against individuals with disabilities.  Under

19   the ADA an employer may not discriminate against

20   a person with a disability if that person is

21   able to perform the essential functions of the

22   job with reasonable accommodation if necessary.

23       The ADA's definition of disability includes

24   not only those persons who are actually

25   disabled, but also those who are regarded as

1  having a disability by their employer.  As you

2  listen to my instructions keep in mind that some

3  of the terms I will use and you will need to

4  apply, including disability, have special

5  meanings under the ADA.  I will explain how

6  these terms are defined by the ADA, so please

7  remember to consider the specific definitions I

8  give you rather than using your own opinion of

9  what these terms mean.

10       Mr. Shaw claims that CTE violated the ADA

11  by engaging in employment decisions that were

12  adverse to him because it regarded him as

13  disabled.  Specifically Mr. Shaw alleges that

14  CTE didn't allow him to work on the basis of a

15  purportedly perceived disability, failed to

16  accommodate that disability, the disability that

17  it perceived him as having and retaliated

18  against him for requesting accommodation.  CTE

19  denies Mr. Shaw's claims.  Further, CTE asserts

20  that Mr. Shaw was not able to perform the

21  essential functions of his job and that he would

22  have posed a threat to himself or others in the

23  work place if he had continued working.  CTE

24  also claims that Mr. Shaw failed to mitigate his

25  damages.  I will now provide you with more

detailed instructions on Mr. Shaw's first claim,
that CTE prevented him from working because it
regarded him as disabled.

In order for Mr. Shaw to recover on this
claim he must prove that CTE intentionally
discriminated against him.  This means that he
must prove by a preponderance of the evidence
that his perceived disability was a motivating
factor in CTE's decision to engage in employment
actions that were adverse to Mr. Shaw.  To
prevail on this claim Mr. Shaw must prove all of
the following by a preponderance of the
evidence.  First, that he had a disability
within the meaning of the ADA.  I remind you
that the ADA's definition of having a disability
includes being regarded as having a disability
by one's employer.

Second, that he was a qualified individual,
able to perform the essential functions of the
job.  I will provide you with more explicit
instructions on the meaning of the term
"qualified" in a moment.  And third, that
Mr. Shaw's perceived disability was a motivating
factor in CTE 's decision to engage in
employment action that was adverse to Mr. Shaw.

1   Mr. Shaw must prove that CTE acted with the

2   intent to discriminate on the basis of a

3   disability.  However, Mr. Shaw is not required

4   to prove that CTE acted with the particular

5   intent to violate his federal rights under the

6   ADA.  In showing that his disability was a

7   motivating factor for CTE's action Mr. Shaw is

8   not required to prove that his disability was

9   the sole motivation or even the primary

10  motivation for CTE's decision.

11      Mr. Shaw need only prove that the

12  disability played a motivating part in CTE's

13  decision, even though other factors may also

14  have motivated CTE.  As used in this instruction

15  the perceived disability was a motivating factor

16  if it played a part or played a role in CTE's

17  decision to engage in employment action, in an

18  employment action that was adverse to Mr. Shaw.

19  If you find that CTE's treatment of Mr. Shaw was

20  motivated by both discriminatory and lawful

21  reasons, you must decide whether Mr. Shaw is

22  entitled to damages.

23      I will now provide you with further

24  instructions on ADA's definition of disability,

25  which as I have already told you applies not

only to individuals who are actually disabled, but also to individuals who are regarded as having a disability by their employer.  Mr. Shaw is regarded as disabled within the meaning of the ADA if he proves any of the following by a preponderance of the evidence: 1) Mr. Shaw had a physical or mental impairment that did not substantially limit his ability to perform a major life activity such as walking or working but was treated by CTE as having an impairment that did so limit his ability; or 2) Mr. Shaw did not have any impairment, but CTE treated him as having an impairment that substantially limited his ability to perform a major life activity such as walking or working.

Also, Mr. Shaw can meet the requirement of being regarded as disabled if he was discriminated against because of an actual or perceived impairment even if the impairment was not or was not perceived to limit a major life activity.  I will now define some of the other terms I have just used in more detail.  Again I remind you to consider the specific definitions I give you and not to use your own opinions as to what these terms mean.  The term "physical

impairment" means any condition which prevents
the body from functioning normally.  An
impairment substantially limits a person's
ability to perform a major life activity such as
walking if it prevents or restricts him from
performing that activity, walking, such as
walking, compared to the average person in the
general population.  An impairment substantially
limits a person's ability to work if it
significantly prevents or restricts him from
performing a broad class or range of jobs, not
just one particular job, as compared to the
average person with comparable training, skills,
and ability.

        Major life activities are activities that
are of central importance to everyday life.  I
instruct you that walking and working are both
major life activities within the meaning of the
ADA.  Finally, to prove that he was a qualified
individual means that Mr. Shaw must show that he
had the skill, experience, education, and other
requirements for the warehouse worker position,
and that he could do the job's essential
functions, either with or without reasonable
accommodations.  If Mr. Shaw cannot establish

1   that he is qualified to, that he is qualified to

2   perform the essential functions of the warehouse

3   worker position even with reasonable

4   accommodations, then Mr. Shaw is not a qualified

5   individual under the ADA.  If that is the case

6   then you must return a verdict for CTE even if

7   the reason why Mr. Shaw is not qualified is

8   solely as a result of his disability.

9        The ADA does not require an employer to

10  hire or retain an individual who cannot perform

11  the job with or without an accommodation.  In

12  this case Mr. Shaw claims that he was able to

13  perform the essential functions of the warehouse

14  position if it was modified.  It is Mr. Shaw's

15  burden to prove by a preponderance of the

16  evidence that he was able to perform the

17  essential functions of the job.  If Mr. Shaw

18  could not perform certain functions, then it is

19  Mr. Shaw's burden to show that these certain

20  functions were not essential to the warehouse

21  position.

22       In determining whether Mr. Shaw could

23  perform the essential functions of the warehouse

24  job you should keep in mind that not all job

25  functions are essential.  The term "essential

1   functions" does not include the marginal

2   functions of the position.  Essential functions

3   are a job's fundamental duties.  In deciding

4   whether a function is essential to the warehouse

5   position at CTE some factors that you may

6   consider include the following:  1) whether the

7   performance of the function is the reason that

8   the job exists; 2) the amount of time spent on

9   the job performing the function; 3) whether

10  there are a limited number of employees

11  available to do the function; 4) whether the

12  function is highly specialized; 5) whether an

13  employee in the job is hired for his or her

14  expertise or ability to perform the function; 6)

15  CTE's judgment about what functions are

16  essential to the job; 7) written job

17  descriptions for the job; 8) the consequences of

18  not requiring an employee to perform the

19  function; 9) whether others who held the same

20  position performed the same function; 10) the

21  experience of Mr. Shaw and other employees who

22  have held or currently hold the same or similar

23  positions.

24       No one factor is necessarily controlling.

25  You should consider all of the evidence in

1   deciding whether any particular function is
2   essential to the job.  In assessing whether
3   Mr. Shaw was qualified to perform the essential
4   functions of the warehouse worker position you
5   should consider Mr. Shaw's abilities as they
6   existed in February 2007 when CTE placed
7   Mr. Shaw on leave.  There has been evidence in
8   this case that in filing for social security
9   disability benefits Mr. Shaw represented that he
10  was disabled and unable to work.  The fact that
11  a person is unable to work for purposes of
12  receiving social security disability benefits
13  does not necessarily mean that he is not a
14  qualified individual under the Americans With
15  Disabilities Act.
16       Unlike the ADA, social security does not
17  take into account whether a person may be able
18  to perform the essential functions of a job with
19  reasonable accommodations.  However, to the
20  extent relevant in the context of these
21  instructions you may consider Mr. Shaw's
22  statements in support of disability benefits in
23  determining whether he was a qualified
24  individual.  I remind you that a qualified
25  individual can perform the essential functions

1   of the job either with or without reasonable

2   accommodations.  Hence, if you find that

3   Mr. Shaw was otherwise qualified but was not

4   able to fulfill all of the essential functions

5   of job without accommodation, then you must

6   consider whether there were reasonable

7   accommodations which CTE could have made which

8   would have been enabled Mr. Shaw to fulfill the

9   essential functions that he could not otherwise

10  fulfill.

11       I will explain the term "reasonable

12  accommodation" more fully in my instructions on

13  Mr. Shaw's second claim.  Mr. Shaw's second

14  claim is that CTE failed to provide a reasonable

15  accommodation for the disability that it

16  perceived.  The ADA provides that an employer

17  may not deny employment opportunities to a

18  qualified individual with a disability if that

19  denial is based on the need of the employer to

20  make reasonable accommodations to that

21  individual's disability.  To prevail on this

22  claim Mr. Shaw must prove all of the following

23  by a preponderance of the evidence.

24       First, that he has a disability within the

25  meaning of the ADA.  Second, that he is a

1  qualified individual able to perform the

2  essential functions of the job.  Third, that CTE

3  was informed of the need for an accommodation

4  for Mr. Shaw due to a disability.  There is no

5  requirement that a request be made for a

6  specific accommodation.  It is enough to satisfy

7  this element that CTE was informed of Mr. Shaw's

8  basic need for an accommodation.  Fourth, that

9  providing the accommodation at issue in this

10  case, that is modifying Mr. Shaw's job, would

11  have been reasonable, meaning that the costs of

12  that accommodation would not have clearly

13  exceeded its benefits.  And fifth, that CTE

14  failed to provide the accommodation or any other

15  reasonable accommodation.

16      Under the ADA a reasonable accommodation

17  may include, but is not limited to, the

18  following: 1) reallocating or redistributing

19  marginal job functions that an employee with a

20  disability is unable to perform; 2) altering

21  when and how, when and/or how a job function is

22  performed.  Note, however, that a reasonable

23  accommodation does not require an employer to do

24  any of the following: 1) change or eliminate any

25  essential job function; 2) shift any essential

1    job function to other employees; 3) create a new

2    position for an employee with a disability.  The

3    intent of the ADA is that there be an

4    interactive process between the employer and the

5    employee in order to determine whether there is

6    a reasonable accommodation that would allow the

7    employee to perform the essential functions of a

8    job.  Both the employer and the employee must

9    cooperate in this interactive process in good

10   faith once the employer has been informed of the

11   employee's request for a reasonable

12   accommodation.  Neither party can win this case

13   simply because the other did not cooperate in

14   the interactive process, but you may consider

15   whether a party cooperated in this process in

16   good faith in evaluating the merits of that

17   party's claim that a reasonable accommodation

18   did or did not exist.

19       Mr. Shaw's third claim is that CTE

20   retaliated against him because he engaged in

21   conduct that is protected by the ADA,

22   specifically asking for an accommodation.  To

23   prevail on this claim Mr. Shaw must prove all

24   of the following by a preponderance of the

25   evidence.  First, that Mr. Shaw engaged in an

1  activity protected by the ADA such as requesting

2  an accommodation for a disability.  Second, that

3  CTE subjected Mr. Shaw to a materially adverse

4  employment action at the time or after the

5  protected conduct took place.  And third, that

6  there was a causal connection between CTE's

7  adverse employment action and Mr. Shaw's

8  protected activity.  Concerning the first

9  element, Mr. Shaw need not prove the merits of

10  his request for an accommodation.  He merely

11  needs to prove that he was acting under a good

12  faith belief that his right to be free to

13  request an accommodation was violated.

14      Concerning the second element, the term

15  "materially adverse" means that Mr. Shaw must

16  show that the employment action was serious

17  enough that it well might have discouraged a

18  reasonable worker from engaging in protected

19  activity.  Concerning the third element, causal

20  connection, that connection may be shown in many

21  ways.  For example, you may or may not find that

22  there is a sufficient connection through timing,

23  if CTE's action followed shortly after CTE

24  became aware of Mr. Shaw's protected activity.

25  Causation is, however, not necessarily ruled out

by a more extended passage of time.  As another
example, causation may or may not be proven by
antagonism shown toward Mr. Shaw or a change in
demeanor toward Mr. Shaw.  Mr. Shaw can recover
for retaliation even if he did not have a
disability within the meaning of the ADA.  With
respect to his retaliation claim the question is
not whether there was a disability, but whether
CTE retaliated against him for engaging in
protected conduct.  Ultimately you must decide
whether Mr. Shaw's protected activity had a
determinative effect on CTE's employment action.

          Determinative effect means that if not for
Mr. Shaw's protected activity CTE would not have
decided to engage in the employment action that
was adverse to Mr. Shaw.  In this case CTE
claims that it prevented Mr. Shaw from working
because he would have created a significant risk
of substantial harm to himself and to others in
the work place.  Your verdict must be for CTE if
CTE has proven both of the following elements by
a preponderance of the evidence.  First, that
CTE prevented Mr. Shaw from working because he
posed a direct threat to the health or safety of
himself and/or others in the work place, and

1     second, that this direct threat could not be

2     eliminated by providing a reasonable

3     accommodation as I have previously defined that

4     term for you.

5        A direct threat means a significant risk of

6     substantial harm to the health or safety of the

7     person or other persons that cannot be

8     eliminated by a reasonable accommodation.  The

9     determination that a direct threat exists must

10    have been paced on a specific personal

11    assessment of Mr. Shaw's ability to safely

12    perform the essential functions of the job.

13    This assessment of Mr. Shaw's ability must have

14    been based on either a reasonable medical

15    judgment that relied on the most current medical

16    knowledge or on the best available objective

17    evidence.

18       In determining whether Mr. Shaw would have

19    created a significant risk of substantial harm

20    you should consider the following factors:  1)

21    how long any risk would have lasted; 2) the

22    nature of the potential harm and how severe the

23    harm would be if it occurred; 3) the likelihood

24    that the harm would have occurred; and 4)

25    whether the harm would be likely to recur. I am

1  now going to instruct you on damages.  The fact

2  that I am instructing you on how to award

3  damages does not mean that I have any opinion on

4  whether or not CTE should be held liable.  If

5  you find by a preponderance of the evidence that

6  CTE violated Mr. Shaw's rights under the ADA by

7  making an adverse employment decision on the

8  basis that it regarded him as disabled or by

9  failing to accommodate his disability or by

10  retaliating against him for engaging in

11  protected conduct, then you must consider the

12  issue of compensatory damages.

13      You must award Mr. Shaw an amount that will

14  fairly compensate him for any injury he actually

15  sustained as a result of CTE's conduct.  The

16  damages that you award must be fair

17  compensation, no more and no less.  The award of

18  compensatory damages is meant to put Mr. Shaw in

19  the position he would have occupied if the

20  discrimination and/or retaliation had not

21  occurred.  Mr. Shaw has the burden of proving

22  damages by a preponderance of the evidence

23  Mr. Shaw must show that the injury would not

24  have occurred without CTE's actions.  Mr. Shaw

25  must also show that CTE's actions played a

1   substantial part in bringing about the injury

2   and that the injury was either a direct result

3   or a reasonably probable consequence of CTE's

4   actions.

5        This test, a substantial part in bringing

6   about the injury, is to be distinguished from

7   the test that you must employ in determining

8   whether CTE's actions were motivated by

9   discrimination.  In other words, even assuming

10  that the CTE's actions were motivated by

11  discrimination, Mr. Shaw is not entitled to

12  damages for an injury unless CTE's

13  discriminatory actions actually played a

14  substantial part in bringing about that injury.

15       In determining the amount of any damages

16  that you decide to award you should be guided by

17  common sense.  You must use sound judgment in

18  fixing an award of damages, drawing reasonable

19  inference from the facts in evidence.  You may

20  not award damages based upon sympathy,

21  speculation, or guess work.  You may award

22  damages for any pain, suffering, inconvenience,

23  mental anguish, or loss of enjoyment of life

24  that Mr. Shaw experienced as a consequence of

25  CTE's allegedly unlawful actions.  No evidence

of the monetary value of such intangible things

as pain and suffering has been or need be

introduced evidence.  There is no exact standard

for fixing the compensation to be awarded for

these elements of damage.  Any award you make

should be fair in light of the evidence

presented at the trial.

     I instruct you that in awarding

compensatory damages you are not to award

damages for the amount of wages that Mr. Shaw

would have earned either in the past or in the

future if he had continued in employment with

CTE.  These elements of recovery of wages that

Mr. Shaw would have received from CTE are called

back pay and front pay.  Back pay and front pay

are to be awarded separately under instructions

I will soon give you, and any amounts for back

pay and front pay are to be entered separately

on the verdict form.  You may award damages for

monetary losses that Mr. Shaw may suffer in the

future as a result of CTE's allegedly unlawful

conduct.

     Where a victim of discrimination has been

terminated by an employer and has sued that

employer for discrimination, he may find it more

1  difficult to be employed in the future or may

2  have to take a job that pays less than the

3  amount he would have earned if the act of

4  discrimination had not occurred.  That element

5  of damages is distinct from front pay, the

6  amount of wages Mr. Shaw would have earned in

7  the future from CTE if he had retained his job.

8  As I instructed you previously, Mr. Shaw has the

9  burden of proving damages by a preponderance of

10  the evidence, but the law does not require that

11  Mr. Shaw prove the amount of his losses with

12  mathematical precision.  It requires only as

13  much definiteness and accuracy as circumstances

14  permit.

15       You are instructed that Mr. Shaw has a duty

16  under the law to mitigate his damages.  That

17  means that Mr. Shaw must take advantage of any

18  reasonable opportunity that may have existed

19  under the circumstances to reduce or minimize

20  the loss or damage caused by CTE.  It is CTE's

21  burden to prove that Mr. Shaw has failed to

22  mitigate.  So if CTE persuades you by a

23  preponderance of the evidence that Mr. Shaw

24  failed to take advantage of an opportunity that

25  was reasonably available to him, then you must

1    reduce the amount of Mr. Shaw's damages by the

2    amount that could have been reasonably obtained

3    if he had taken advantage of such an

4    opportunity.

5         In assessing damages you must not consider

6    attorney's fees or the costs of litigating this

7    case.  Attorney's fees and costs, if relevant at

8    all, are for the court and not the jury to

9    determine.  Therefore attorney's fees and costs

10   should play no part in your calculation of any

11   damages.  I will now instruct you on back pay

12   and front pay.  You may award as actual damages

13   an amount that reasonably compensates Mr. Shaw

14   for any lost wages and benefits, taking into

15   consideration any increases in salary and

16   benefits, including pension, that Mr. Shaw would

17   have received from CTE had he not been the

18   subject of CTE's complaint of conduct.  Back pay

19   damages, if any, apply from the time CTE told

20   Mr. Shaw that he had to stop working until the

21   date of your verdict.

22        If you award back pay you are instructed to

23   deduct from the back pay figure whatever wages

24   Mr. Shaw has obtained from other employment

25   during this period.  However, please note that

1  you should not deduct social security benefits,

2  unemployment compensation, and pension benefits

3  from an award of back pay.  I remind you that as

4  I have already explained, Mr. Shaw has a duty to

5  mitigate his damages.  So if CTE persuades you

6  by a preponderance of the evidence that Mr. Shaw

7  failed to obtain substantially equivalent job

8  opportunities that were reasonably available to

9  him, you must reduce the awarded damages by the

10  amount of wages that he reasonably would have

11  earned if he had obtained those opportunities.

12  You may determine separately a monetary amount

13  equal to the present value of any future wages

14  and benefits that Mr. Shaw would have

15  reasonably, would reasonably have earned from

16  CTE had he not been prevented from working for

17  the period from the date of your verdict through

18  a reasonable period of time in the future.

19      From this figure you must subtract the

20  amount of earnings and benefits Mr. Shaw will

21  receive from other employment during that time.

22  Mr. Shaw has the burden of proving these damages

23  by a preponderance of the evidence.  If you find

24  that Mr. Shaw is entitled to recovery of future

25  earnings from CTE, then you must reduce any

1   award by the amount of the expenses that

2   Mr. Shaw would have incurred in making those

3   earnings.  You must also reduce any award to its

4   present value by considering the interest that

5   Mr. Shaw could earn on the amount of the award

6   if he made a relatively risk free investment.

7        The reason you must make this reduction is

8   because an award of an amount representing

9   future loss of earnings is more valuable to

10  Mr. Shaw if he receives it today than if it were

11  received at the time in the future when it would

12  have been earned.  It is more valuable because

13  Mr. Shaw can earn interest on it for the period

14  between the date of the award and the date he

15  would have earned the money.  Thus you should

16  decrease the amount of any award for loss of

17  future earnings by the amount of interest that

18  Mr. Shaw can earn on that amount in the future.

19       I will now instruct you on punitive

20  damages.  Mr. Shaw claims that the acts of CTE

21  were done with malice or reckless indifference

22  to his federally protected rights and that as a

23  result there should be an award of damages that

24  are called punitive damages.  A jury may award

25  punitive damages to punish a defendant or to

1    deter the defendant and others like the
2    defendant from committing similar conduct in the
3    future.  An award of punitive damages is
4    permissible in this case only if you find by a
5    preponderance of the evidence that a management
6    official of CTE personally acted with malice or
7    reckless indifference to Mr. Shaw's federally
8    protected rights.  An act is done with malice if
9    a person knows that it violates a federal law
10   prohibiting discrimination and does it anyway.
11   An act is done with reckless indifference if a
12   person knows that it may violate the law and
13   does it any way, but even if you make a finding
14   that there has been an act of discrimination
15   with malice or reckless disregard of Mr. Shaw's
16   federal rights, you cannot award punitive
17   damages if CTE proves by a preponderance of the
18   evidence that it made a good faith attempt to
19   comply with the law by adopting policies and
20   procedures designed to prevent unlawful
21   discrimination such as that suffered by
22   Mr. Shaw.
23        An award of punitive damages is
24   discretionary.  In other words, if you find that
25   the legal requirements for punitive damages are

satisfied, then you may decide to award punitive
damages or you may decide not to award them. I
will now discuss some considerations that should
guide your exercise of this discretion.  If you
have found the elements permitting punitive
damages as discussed in this instruction, then
you should consider the purposes of punitive
damages.  The purposes of punitive damages are
to punish a defendant for a malicious or
reckless disregard of federal rights or to deter
a defendant and others like the defendant from
doing similar things in the future or both.

Thus you may consider whether to award
punitive damages to punish CTE.  You should also
consider whether actual damages, standing alone,
are sufficient to deter or prevent CTE from
again performing any wrongful acts it may have
performed.  Finally, you should consider whether
an award of punitive damages in this case is
likely to deter others from performing wrongful
acts similar to those that you find CTE has
committed.  If you decide to award punitive
damages then you should also consider the
purpose of punitive damages in deciding the
amount of punitive damages to award.  That is

1    in deciding the amount of punitive damages you

2    should consider the degree to which CTE should

3    be punished for its wrongful conduct and the

4    degree to which an award of one sum or another

5    will deter CTE or others from committing similar

6    wrongful acts in the future.

7         The extent to which a particular amount of

8    money will adequately punish a defendant and the

9    extent to which a particular amount will

10   adequately deter or prevent future misconduct

11   may depend upon the defendant's financial

12   resources.  Therefore if you find that punitive

13   damages should be awarded against CTE, you may

14   consider the financial resources of CTE in

15   fixing the amount of such damages.  I have

16   instructed you that Mr. Shaw is seeking damages

17   for front and back pay, for emotional suffering,

18   and for punitive damages.  You may not award

19   Mr. Shaw damages for front pay, emotional

20   suffering, or for punitive damages if CTE proves

21   by a preponderance of the evidence the following

22   elements.  First, that CTE knew that an

23   accommodation was needed, and second, that CTE

24   made a good faith effort in consultation with

25   Mr. Shaw to identify and make a reasonable

1  accommodation that would allow Mr. Shaw to

2  fulfill the essential functions of the position

3  in question and would not constitute an undue

4  hardship on the operation of CTE's business.

5       Such a good faith effort is not a defense

6  to an award of damages for back pay.  If you

7  return a verdict for Mr. Shaw, but Mr. Shaw has

8  failed to prove actual injury and therefore is

9  not entitled to compensatory damages, then you

10 must award nominal damages of one dollar.  A

11 person whose federal rights were violated is

12 entitled to a recognition of that violation even

13 if he suffered no actual injury.  Nominal

14 damages of one dollar are designed to

15 acknowledge the depravation of a federal right

16 even when no actual injury occurred.  However,

17 if you find actual injury you must award

18 compensatory damages as I instructed you rather

19 than nominal damages.

20      Ladies and gentlemen, I want to reiterate

21 that my instructions as to the measure of

22 damages are given only for your guidance in the

23 event that you should find in favor of Mr. Shaw

24 on the question of discrimination or retaliation

25 by a preponderance of the evidence and in accord

1   with the other instructions.  These instructions

2   should not be considered as any indication of

3   which party is entitled to your verdict.  When

4   you retire to the jury room to deliberate you

5   may take with you these instructions, your

6   notes, and the exhibits that the court has

7   admitted into evidence.  You should select one

8   member of the jury as your foreperson.  That

9   person will preside over the deliberations and

10  speak for you here in open court.

11       You have two main duty as jurors.  The

12  first one is to decide what the facts are from

13  the evidence that you saw and heard here in

14  court.  Your second duty is to take the law that

15  I have given you, apply it to the facts, and

16  decide if, under the appropriate burden of

17  proof, the parties have established their

18  claims.  It is my job to instruct you about the

19  law and you are bound by the oath that you took

20  at the beginning of the trial to follow the

21  instructions that I give you, even if you

22  personally disagree with them.  This includes

23  the instructions that I gave you before and

24  during the trial, and these instructions.

25       All the instructions are important and you

should consider them together as a whole.
Perform these duties fairly.  Do not let any
bias, sympathy, or prejudice that you may feel
toward one side or the other influence your
decision in any way.  As jurors you have a duty
to consult with each other and to deliberate
with the intention of reaching a verdict.  Each
of you must decide the case for yourself, but
only after a full and impartial consideration of
all of the evidence with your fellow jurors.
Listen to each other carefully.

     During the course of your deliberations you
should feel free to reexamine your own views and
to change your opinion based upon the evidence,
but you should not give up your honest
conviction about the evidence just because of
the opinions of your fellow jurors, nor should
you change your minds just for the purpose of
obtaining enough votes for a verdict.  Remember
at all times that you are not partisans.  You
are the judges, judges of the facts.  Your sole
interest is to seek the truth from the evidence
in the case.  Your verdict must be based solely
upon the evidence received in the case.  Nothing
you have seen or read outside of court may be

1    considered.  Nothing that I have said or done

2    during the course of this trial is intended in

3    any way to suggest to you what I think your

4    verdict should be.  What the verdict shall be is

5    the exclusive duty and responsibility of the

6    jury.

7         Remember, if you elected to take notes

8    during the trial, your notes should be used only

9    as memory aids.  You should not give your notes

10   greater weight than your independent

11   recollection of the evidence.  You should rely

12   upon your independent, your own independent

13   recollection of the evidence or lack of evidence

14   and you should not be unduly influenced by the

15   notes of other jurors.  Notes are not entitled

16   to any more weight than the memory or impression

17   of each juror.

18        Your verdict must represent the considered

19   judgment of each juror.  In order for you as a

20   jury to return a verdict each juror must agree

21   to the verdict.  You verdict must be unanimous.

22   A verdict form has been prepared for your

23   convenience.  At this time, Ms. McKinney, would

24   you please pass out the verdict form?

25        (Brief pause.)

1          THE COURT: Ladies and gentlemen, this

2    verdict form is a series of questions.  You

3    should address these questions in the order that

4    they are provided, without skipping questions

5    unless the instructions in the verdict form

6    directs you to do so, and the answer to each

7    question must be the unanimous answer of the

8    jury.  The first question deals with disability,

9    the second deals with qualified individual, and

10   the third question is discrimination, which is

11   the first claim in the case.

12          The second -- or the fourth question,

13   failure to accommodate, is the second claim in

14   the case, and question 5 is retaliation, and

15   that is the third question in the case.

16   Questions 1 and 2 are preliminary to the first

17   two claims, discrimination and failure to

18   accommodate.  You'll note that if you answer

19   "no" to the first question you then proceed to

20   question 5 which, the retaliation claim which

21   applies regardless of whether you -- which must

22   be answered regardless of whether you respond in

23   the affirmative to question number 1.

24          Then questions 6, 7, 8, and 9 deal with the

25   issue of damages, which you should answer if you

1    reach those questions in accordance with the

2    instructions.  Your foreperson will write the

3    unanimous answer of the jury in the space

4    provided by each question.  When you have

5    reached unanimous agreement as to your verdicts

6    you will have your foreperson date and sign the

7    form and seal it in an envelope that will be

8    provided to you.  Then you will inform the

9    bailiff that you have reached a unanimous

10   verdict.  You should retain the sealed envelope

11   until you return to the courtroom and your

12   foreperson will deliver the sealed envelope here

13   in open court.

14        Now, you now have seven copies of the

15   verdict form.  Please only put one signed form

16   in the envelope.  Only one.  When you start

17   deliberating do not talk to the bailiff, to me,

18   or to anyone but each other about the case.  If

19   it becomes necessary during your deliberations

20   to communicate with the court you may send a

21   note signed by your foreperson or by one or more

22   members of the jury through the bailiff.  The

23   bailiff will give the note to me and I will

24   respond as soon as I can.  Please keep in mind

25   that we will be unable to give you an immediate

1  response to any written questions that you

2  present.

3       First I have to discuss it with the, we

4  have to assemble, I have to discuss it with the

5  attorneys and determine whether or not we can in

6  fact provide you with a substantive response to

7  your question.  There are certain questions that

8  we may simply not be able to answer for you.  So

9  as I say here I may have to talk to the lawyers

10  about what you have asked, and so it may take

11  some time to get back to you.  So please

12  recognize there will be a delay between when you

13  submit a question and when we will be able to

14  get back to you.

15       No member of the jury should ever attempt

16  to communicate with the court by any means other

17  than a signed writing, and the court will never

18  communicate with any member of the jury

19  concerning the evidence, your opinions, or the

20  deliberations other than in writing or orally

21  here in open court.  Bear in mind that you are

22  never to reveal to any person, not even to the

23  court, how the jury stands, numerically or

24  otherwise, on the verdict until after you have

25  reached a unanimous verdict.  You will note from

1    the both about to be taken by the plaintiffs

2    that they, too, as well as all other persons are

3    forbidden to communicate in any way or manner

4    with any member of the jury concerning the

5    evidence, your opinions, or the deliberations.

6        Keep in mind that the dispute between the

7    parties is for them a most serious matter.  They

8    and the court rely upon you to give full and

9    conscientious deliberation and consideration to

10   the issues and evidence before you.  Consider

11   all the surrounding circumstances, the

12   probabilities or improbabilities of the

13   testimony, and what counsel and the court have

14   said.  You should try to reach what is a just,

15   true, and correct solution of the controversy

16   submitted to you.

17       In reaching your conclusion you should be

18   guided solely by the evidence which has been

19   presented to you, the inferences drawn from the

20   evidence, and the instructions of the court on

21   the law.  You should not be influenced by fear,

22   favor, prejudice, or sympathy.  All of the

23   parties stand equally before the court, and each

24   is entitled to the same fair and impartial

25   treatment at your hands.  At this time the court

1  asks counsel beyond what we have discussed

2  during the course of our charge conference

3  whether there has been a failure to charge on

4  any substantial matter of law.

5      MR. CROCENZI: No, Your Honor.

6      MS. SALTZ: No, Your Honor.

7      THE COURT: All right.  Ladies and

8  gentlemen, let me confess the obvious to you,

9  and that is that I'm under the weather and as a

10 result of that we will take deliberations today

11 until 5:00.  I have to call it a day at 5:00.

12 That is in no way, shape, or form intended to

13 limit the time you spend deliberating on this

14 matter.  The parties deserve your full and

15 complete attention to all the issues presented,

16 and to the extent that you are unable to reach a

17 verdict by 5:00 we'll simply return tomorrow

18 morning and you will continue your

19 deliberations.

20     At this time would the bailiffs please step

21 forward so that I may administer the oath?  If

22 you will please raise your right hand?  Do you

23 swear or affirm to keep this jury in some

24 private and convenient place and that you will

25 not suffer anyone to speak to them or speak to

1  them yourself without leave of court, except to

2  ask them if they have agreed upon their verdict?

3  Do you so swear or affirm?  If so, please say,

4  "I do."

5      (Bailiffs answered affirmatively.)

6      THE COURT: All right, thank you very much.

7  Ladies and gentlemen, I now invite you back to

8  the jury deliberation room so that you may

9  consume your lunch and begin your deliberations.

10  It will be a few minutes before we can get all

11  of the exhibits back to you, but they'll come

12  back to you shortly.  Ms. McKinney, you may

13  escort the jury.

14      (Jury deliberations began at 1:25 p.m.)

15      THE COURT: Counsel, please be seated.

16  Mr. Russo, Mr. Crocenzi, Mr. Saltz, I just want

17  to say that it was a pleasure having you in the

18  courtroom.  You performed admirably on behalf of

19  your respective client.  It's not a complement I

20  always give.  I want you to understand that I

21  really appreciate the professionalism that you

22  exhibited during the course of the court

23  proceedings, and I apologize to the extent that

24  I interrupted the proceedings with my own

25  coughing, but it's always a pleasure to try a

1   case with attorneys who know what they're doing,

2   and you clearly do.  So I very much appreciate

3   the efforts that you have extended on behalf of

4   your clients.  They were very well represented

5   in today's proceeding.

6        MS. SALTZ: Thank you, Your Honor.

7        THE COURT: So thank you for that.  Have you

8   been able to agree on the exhibits to be

9   submitted to the jury?

10        MS. SALTZ: I think we're doing to do that

11   very quickly.

12        MR. CROCENZI: When Ms. McKinney gets back.

13        MS. SALTZ: She wants us to just quickly run

14   through and giver her the originals.

15        THE COURT: All right, and with the issue of

16   the expert reports, have we addressed how that's

17   going to -- how do you agree that that will be

18   handled?

19        MS. SALTZ: Well, it's part of the record

20   that's not going out to the jury.

21        MR. CROCENZI: That's in there as one

22   defense exhibit, the short-term disability.

23        MS. SALTZ: Right, that's not going out to

24   the jury as well.

25        MR. CROCENZI: The rest of it is going back.

1      THE COURT: All right.  Very good.  Just

2  meet with Ms. McKinney and give her that

3  information.  If we do get a question, and this

4  is one of those cases where because of the

5  complex nature of the instructions and the law

6  there may be some questions, please give Ms.

7  McKinney a cell phone number where you can be

8  reached and try to be within five minutes of the

9  courthouse so that we can quickly get back to

10  the jury.  They know that it's going to take a

11  little while to get back to them, but please

12  give a cell phone, you don't have to stay in the

13  courtroom, go get some lunch, walk around, but

14  give us a place where, give us a number where we

15  can reach you.  All right?

16      MS. SALTZ: Your Honor, thank you.

17      THE COURT: Thank you very much.  We are in

18  recess.

19      (Recess taken at 1:26 p.m.)

20      (Question from the jury at 3:35 p.m.)

21      THE COURT: Please be seated.  As counsel is

22  aware we have a question from the jury.  It

23  appears as though they are on an issue of

24  damages.  Specifically the question reads, "What

25  expenses are we responsible for reducing from

1   front pay?  Please clarify expenses."  And the

2   reference is to page 37 of the instructions, and

3   I'm wondering if counsel have had an opportunity

4   to review the question in context of the

5   instructions and if you have any proposed

6   response to this question.

7       MR. CROCENZI: I'm sorry, Your Honor, I'm

8   still thinking about whether --

9       THE COURT: Let's go off the record.

10      (Discussion held off the record.)

11      THE COURT: While we were off the record

12  counsel agreed that there are no expenses, there

13  is no evidence of expenses in the record that

14  should be deducted from an award of future

15  earnings based upon an expense that Mr. Shaw

16  would have incurred in making those earnings.

17  Obviously there are other instructions that

18  apply to mitigation among other issues, and so

19  for those reasons we'll bring the jury in and

20  the court will so instruct the jury.

21      (Brief pause.)

22      (Jury seated at 3:38 p.m.)

23      THE COURT: Ladies and gentlemen, please be

24  seated.  You presented a question, and the

25  question is, "What expenses are we responsible

1    for reducing from front pay?"   And the reference

2    is to the top of page 37 of the instructions,

3    and that reads as follows, "If you find that

4    Mr. Shaw is entitled to recovery of future

5    earnings from CTE, then you must reduce any

6    award by the amount of the expenses that

7    Mr. Shaw would have incurred in making those

8    earnings."   That is an instruction for

9    circumstances that are actually not applicable

10   to this case and so I've discussed this with

11   counsel and they agree that there really are,

12   there is no evidence in the record of any

13   expenses from which you must reduce the award,

14   and by that I mean specifically the expenses

15   that Mr. Shaw would have incurred in making

16   those earnings, those future earnings from CTE.

17        There's simply no evidence in the record of

18   any such expenses and in essence that reduction

19   element is inapplicable in this case.   To speed

20   things up we thought it would be easier if we

21   just brought you in and I explained that to you

22   on the record.   I believe I've responded to your

23   question and so I'll simply ask you to return to

24   the deliberation room and complete your

25   deliberations in due course.   Thank you very

1  much, ladies and gentlemen.  Ms. McKinney, you

2  may escort the jury.

3       (Deliberations continued at 3:39 p.m.)

4       THE COURT: Please be seated.  Ladies and

5  gentlemen, I was reasonably certain that I had

6  accurately instructed the jury with respect to

7  what we discussed prior to their returning to

8  the courtroom and I didn't call you to side bar

9  in part because I didn't want to give you what

10 cold I have, but to the extent that you have any

11 concerns with the court's instructions to the

12 jury I want to give you an opportunity to put it

13 on the record.  Do you have any concerns?

14      MR. CROCENZI: No, Your Honor.

15      MR. RUSSO: No, Your Honor.

16      MS. SALTZ: No, Your Honor.

17      THE COURT: All right.  Thank you very much.

18 Again just be in cell phone range.  It appears

19 as though the jury is working their way through

20 the form pretty well.  We are in recess.

21      (Recessed taken from 3:40 to 4:24 p.m.)

22      THE COURT: Please be seated.  The court has

23 been advised that the jury has a verdict.  I

24 would just encourage the parties to, and I know

25 you will abide by our rule of courtroom decorum

1   when the verdict comes in and discuss and

2   address the issues created by the verdict

3   outside the courtroom.  Ms. McKinney, would you

4   escort the jury?

5          (Jury seated at 4:26 p.m.)

6          THE COURT: Good afternoon, ladies and

7   gentlemen.  Please be seated. Ms. Schoffstall,

8   you are the foreperson, is that correct?

9          JURY FOREPERSON: Yes.

10          THE COURT: If you would please remain

11   standing?  I have two questions for you.  First,

12   has the jury reached a verdict?

13          JURY FOREPERSON: We have.

14          THE COURT: And is that verdict unanimous?

15          JURY FOREPERSON: It is.

16          THE COURT: Would you please hand the

17   envelope to the courtroom deputy?  And you may

18   be seated.

19          (Brief pause.)

20          THE COURT: All right.  The form, the

21   verdict form is in order, and now, ladies and

22   gentlemen, I'm just simply going to publish your

23   verdict, which means I'm simply going to read

24   each question and the answer provided by the

25   jury.  With respect to the first question, do

1    you find by a preponderance of the evidence that

2    Mr. Shaw had a disability within the meaning of

3    the ADA, the jury has indicated yes.  Question

4    2, do you find by a preponderance of the

5    evidence that Mr. Shaw, with or without

6    reasonable accommodations, could perform the

7    essential functions of his job, the jury has

8    answered yes.  Question 3, do you find by a

9    preponderance of the evidence that Mr. Shaw's

10   disability was a motivating factor in CTE's

11   decision to engage in an adverse employment

12   action against Mr. Shaw, the jury has indicated

13   yes.

14        Question 4-A, do you find by a

15   preponderance of the evidence that CTE was aware

16   of the need for an accommodation for Mr. Shaw

17   and that CTE failed to provide a reasonable

18   accommodation to Mr. Shaw, the jury has answered

19   yes.  "B", do you find by a preponderance of the

20   evidence that providing an accommodation to

21   Mr. Shaw would cause an undue hardship on CTE's

22   business, the jury has indicated no.  Question

23   5-A, do you find by a preponderance of the

24   evidence that Mr. Shaw engaged in conduct

25   protected by the ADA, e.g. requesting an

1   accommodation, the jury has indicated yes.  "B",

2   do you find by a preponderance of the evidence

3   that at the time the protected conduct took

4   place or thereafter CTE engaged in an adverse

5   employment action against Mr. Shaw because of

6   the protected conduct, the jury has checked yes.

7       Question 6, damages.  Do you find by a

8   preponderance of the evidence that Mr. Shaw

9   suffered damages as a result of CTE's actions,

10  the jury has indicated yes.  Question 7, do you

11  find by a preponderance of the evidence that

12  Mr. Shaw failed to mitigate his damages, the

13  jury has indicated no.  Question 8, compensatory

14  damages, back pay, front pay, what amount of

15  compensatory damages, if any, do you award to

16  Mr. Shaw, the jury has indicated $30,000.  What

17  amount of back pay, if any, do you award to

18  Mr. Shaw, the jury has indicated $98,500.  What

19  amount of front pay, if any, do you award to

20  Mr. Shaw, the jury has indicated $175,000.

21      Question 9, do you find by a preponderance

22  of the evidence that a management official of

23  CTE personally acted with malice or reckless

24  indifference to Mr. Shaw's rights, the jury has

25  indicated yes.  Do you find by a preponderance

1   of the evidence -- do you find by a

2   preponderance of the evidence that CTE made a

3   good faith attempt to comply with the law by

4   adopting policies and procedures designed to

5   prevent unlawful discrimination such as that

6   suffered by Mr. Shaw, there is no space in the

7   verdict form for an answer to that question.  C,

8   what amount of punitive damages if any do you

9   award to Mr. Shaw, the answer to that question

10  is $50,000, and it is duly signed by the jury

11  foreperson.

12      There appears to have been an error in my

13  part with respect to question 9-B.  Because

14  there is no response to question 9-B there

15  should be a space for yes or no.  Although it

16  may be obvious what your answer is to that

17  question I would like to have the jury respond

18  to it appropriately and make sure that they have

19  complied with that portion of the verdict form.

20  Counsel, would you please approach?

21      (Side bar at 4:32 p.m.)

22      THE COURT: I think the answer is pretty

23  obvious but I do want to give them the

24  opportunity to respond in the affirmative with

25  respect to the --

1          MS. SALTZ: Absolutely, Your Honor.

2          THE COURT: Then I'm going to handwrite in

3     on this verdict form "yes or no" and ask that

4     the jury complete the form and answer question B

5     before they answer question C.

6          MS. SALTZ: Okay.

7          THE COURT: All right?  Is that acceptable?

8          MS. SALTZ: Yes, it is.  Thank you.

9          THE COURT: All right.  Very good.

10         (Side bar concluded at 4:33 p.m.)

11         THE COURT: Ladies and gentlemen, as I

12    indicated while I was reading the verdict form

13    the error is ours.  There was no space for an

14    answer to question 9-B, and again that reads,

15    "Do you find by a preponderance of the evidence

16    that CTE made a good faith attempt to comply

17    with the law by adopting policies and procedures

18    designed to prevent unlawful discrimination such

19    as that suffered by Mr. Shaw," and you proceed

20    then to the amount of punitive damages, which is

21    section C, only if you answer "No" to that

22    question.  If you answer "Yes" then you proceed

23    to the final instruction.  So with that in mind

24    I'm going to leave the form in its current

25    position but ask that you go back, answer

1   question 9-B first, it may or may not change

2   your answer to question 9-C, and we will return

3   the verdict form in the envelope provided to the

4   jury foreperson and ask that that question be

5   answered and the form be completed.  Counsel,

6   anything further at this juncture?

7        MS. SALTZ: No, Your Honor.

8        MR. CROCENZI: No.

9        THE COURT: Ladies and gentleman, please

10  retire to the jury deliberation room and take

11  care of that extra matter.  Thank you.

12        (Jury recessed at 4:34 p.m.)

13        THE COURT: Please be seated.  I would ask

14  that you stay in the courtroom.  Counsel, I'll

15  be asking either of you if you would like a poll

16  of the jury.

17        MS. SALTZ: I will, Your Honor.

18        THE COURT: All right.

19        (Jury seated at 4:38 p.m.)

20        THE COURT: Ms. Schoffstall, I do have two

21  questions for you.  It just so happens the same

22  two questions I asked you before.  Have you

23  reached a unanimous verdict?

24        JURY FOREPERSON: Yes.

25        THE COURT: And Have you been able to

1    complete the entire form?

2         JURY FOREPERSON: Yes.

3         THE COURT: All right, thank you.  Would you

4    please hand the envelope to Ms. McKinney?

5         (Brief pause.)

6         THE COURT: All right.  The verdict form is

7    in order as amended, and again my apologies for

8    not providing an appropriate yes or no space

9    below question 9-B.  The answers to the

10   questions are the same until we get to question

11   9-B, do you find by a preponderance of the

12   evidence that CTE made a good faith attempt to

13   comply with the law by adopting policies and

14   procedures designed to prevent unlawful

15   discrimination such as that suffered by

16   Mr. Shaw, the answer the jury has provided is

17   no.

18         What amount of punitive damages, if any, do

19   you award to Mr. Shaw, the amount is $50,000,

20   and the form is duly signed by the foreperson

21   and appropriately dated.  The court finds that

22   the verdict form is in order and at this time

23   I'll ask counsel if they would like a poll of

24   the jury.

25         MR. CROCENZI: No, Your Honor.

1     MS. SALTZ: Yes, Your Honor.

2     THE COURT: All right.  Ms. McKinney,

3  defense counsel has requested a poll of the

4  jury.  Ladies and gentlemen, counsel has

5  exercised the right to poll the jury.  During

6  the poll the courtroom deputy will ask each of

7  you to affirm individually each aspect of the

8  verdict.  So when called please stand and when

9  asked by the courtroom deputy state your verdict

10 with respect to the questions set forth on the

11 verdict form.  Ms. McKinney?

12     COURTROOM DEPUTY: Okay, in the matter of

13 the United States District Court for the Middle

14 District of Pennsylvania, in the matter of Ricky

15 A. Shaw v. Cumberland Truck Equipment Company,

16 civil action number 1:09-CV-0359, you have heard

17 the verdict as published by the court, and I ask

18 you, juror number 1, do you agree with the

19 verdict form question number 1, answer yes --

20 you'll have to stand, ma'am, I'm sorry.

21 Question number 1, do you agree with the answer

22 yes?

23     JUROR 1: Yes.

24     COURTROOM DEPUTY: Thank you.  Question 2,

25 do you agree with the answer yes?

```
 1            JUROR 1: Yes.

 2            COURTROOM DEPUTY: Question 3, do you agree

 3    with the answer yes?

 4            JUROR 1: Yes.

 5            COURTROOM DEPUTY: Question 4, do you agree

 6    with the --

 7            THE COURT: 4-A.

 8            COURTROOM DEPUTY: 4-A, do you agree with

 9    the answer yes?

10            JUROR 1: Yes.

11            COURTROOM DEPUTY: Question 4-B, do you

12    agree with the answer no?

13            JUROR 1: That is correct.

14            COURTROOM: Thank you.  Question 5-A, do you

15    agree with the answer yes.

16            JUROR 1: Yes.

17            COURTROOM DEPUTY: 5-B, do you agree with

18    the answer yes.

19            JUROR 1: Yes.

20            COURTROOM DEPUTY: Thank you.  Question 6,

21    do you agree with the answer yes?

22            JUROR 1: Yes.

23            COURTROOM DEPUTY: Thank you.  Question 7,

24    do you agree with the answer no.

25            JUROR 1: That is correct.
```

1       COURTROOM DEPUTY: Thank you.  Question 8,

2  compensatory damages of $30,000, do you agree.

3       JUROR 1: Yes.

4       COURTROOM DEPUTY: Amount of back pay

5  $98,500, do you agree?

6       JUROR 1: Yes.

7       COURTROOM DEPUTY: Front pay $175,000, do

8  you agree?

9       JUROR 1: Yes.

10       COURTROOM DEPUTY: Question number 9, do you

11  agree, 9-A, do you agree with the answer yes?

12  Punitive damages?

13       JUROR 1: Yes.

14       COURTROOM DEPUTY: 9-B, the answer no?

15       JUROR 1: That is correct.

16       COURTROOM DEPUTY: And 9-C, punitive damages

17  in the amount of $50,000, do you agree?

18       JUROR 1: Yes.

19       COURTROOM DEPUTY: Great, thank you.  Juror

20  number 2, would you please stand?  Do you agree

21  with the answer yes to question number 1?

22       JUROR 2: I agree.

23       COURTROOM DEPUTY: Do you agree with the

24  answer yes to two question number 2?

25       JUROR 2: I agree.

1        COURTROOM DEPUTY: Do you agree with the

2   answer yes to question number 3?

3        JUROR 2: I agree.

4        COURTROOM DEPUTY: Do you agree with the

5   answer yes to question number 4-A?

6        JUROR 2: I agree.

7        COURTROOM DEPUTY: Do you agree with the

8   answer no to question number 4-B?

9        JUROR 2: I agree.

10        COURTROOM DEPUTY: Do you agree with the

11   answer yes to question number 5-A?

12        JUROR 2: I agree.

13        COURTROOM DEPUTY: And the answer yes to

14   question number 5-B?

15        JUROR 2: I agree.

16        COURTROOM DEPUTY: The answer yes to

17   question number 6?

18        JUROR 2: I agree.

19        COURTROOM DEPUTY: The answer no to question

20   number 7?

21        JUROR 2: I agree.

22        COURTROOM DEPUTY: The amount of

23   compensatory damages under question 8 of

24   $30,000?

25        JUROR 2: I agree.

1      COURTROOM DEPUTY: The amount of back pay

2  $98,500?

3      JUROR 2: I agree.

4      COURTROOM DEPUTY: Thank you.  $175,000 for

5  front pay?

6      JUROR 2: I agree.

7      COURTROOM DEPUTY: Thank you.  Question

8  number -- I'm sorry, there's just a little bit

9  more.  Question number 9-A, do you agree with

10  the answer yes?

11      JUROR 2: I agree.

12      COURTROOM DEPUTY: Punitive damages,

13  question number 9-B do you agree with the

14  answer no?

15      JUROR 2: I agree.

16      COURTROOM DEPUTY: Okay.  Question 9-C, do

17  you agree with the punitive damages in the

18  amount of $50,000?

19      JUROR 2: I agree.

20      COURTROOM DEPUTY: Thank you, sir.  You may

21  be seated.  Juror number 3, question number 1,

22  do you agree with the answer yes?

23      JUROR 3: I agree.

24      COURTROOM DEPUTY: Question number 2, do you

25  agree with the answer yes?

1       JUROR 3: I agree.

2       COURTROOM DEPUTY: Question number 3, do you

3    agree with the answer yes?

4       JUROR 3: I agree.

5       COURTROOM DEPUTY: Question 4-A, do you

6    agree with the answer yes?

7       JUROR 3: I agree.

8       COURTROOM DEPUTY: Question 4-B, do you

9    agree with the answer no?

10       JUROR 3: I agree.

11       COURTROOM DEPUTY: Question number 5-A, do

12    you agree with the answer yes?

13       JUROR 3: I agree.

14       COURTROOM DEPUTY: Question number 5-B, do

15    you agree with the answer yes?

16       JUROR 3: I agree.

17       COURTROOM DEPUTY: Thank you.  Question

18    number 6, do you agree with the answer yes?

19       JUROR 3: I agree.

20       COURTROOM DEPUTY: Question number 7, do you

21    agree with the answer no?

22       JUROR 3: I agree.

23       COURTROOM DEPUTY: Question number 8,

24    compensatory damages of $30,000, do you agree?

25       JUROR 3: I agree.

1      COURTROOM DEPUTY: Amount of back pay

2   $98,500, do you agree?

3      JUROR 3: I agree.

4      COURTROOM DEPUTY: Amount of front pay,

5   $175,000, do you agree?

6      JUROR 3: I agree.

7      COURTROOM DEPUTY: Question 9-A, do you

8   agree with the answer yes?

9      JUROR 3: I agree.

10      COURTROOM DEPUTY: Question 9-B, do you

11   agree with the answer no?

12      JUROR 3: I agree.

13      COURTROOM DEPUTY: Question 9-C, do you

14   agree with the $50,000 punitive damages?

15      JUROR 3: I agree.

16      COURTROOM DEPUTY: Thank you.  Juror number

17   4, question number 1, do you agree with the

18   answer yes?

19      JUROR 4: Yes.

20      COURTROOM DEPUTY: Question number 2, do you

21   agree with the answer yes?

22      JUROR 4: Yes.

23      COURTROOM DEPUTY: Question number 3, do you

24   agree with the answer yes?

25      JUROR 4: Yes.

1        COURTROOM DEPUTY: Question number 4, do you

2   agree with the answer yes?

3        JUROR 4: Yes.

4        COURTROOM DEPUTY: That was 4-A, excuse me.

5   Do you agree 4-A?

6        JUROR 4: Yes.

7        COURTROOM DEPUTY: Question 4-B, do you

8   agree with the answer no?

9        JUROR 4: Yes.

10        COURTROOM DEPUTY: Question number 5-A, do

11   you agree with the answer yes?

12        JUROR 4: Yes.

13        COURTROOM DEPUTY: Question number 5-B, do

14   you agree with the answer yes?

15        JUROR 4: Yes.

16        COURTROOM DEPUTY: Question number 6, do you

17   agree with the answer yes?

18        JUROR 4: Yes.

19        COURTROOM DEPUTY: Question number 7, do you

20   agree with the answer no?

21        JUROR 4: Yes.

22        COURTROOM DEPUTY: Question number 8,

23   compensatory damages of $30,000, do you agree?

24        JUROR 4: Yes.

25        COURTROOM DEPUTY: Question number 8, the

1   amount of back pay, $98,500, do you agree?

2        JUROR 4: Yes.

3        COURTROOM DEPUTY: I'm sorry, question 8,

4   front pay in the amount of $175,000, do you

5   agree?

6        JUROR 4: Yes.

7        COURTROOM DEPUTY: Question number 9-A, do

8   you agree with the answer yes?

9        JUROR 4: Yes.

10       COURTROOM DEPUTY: Question number 9-B, do

11   you agree with the answer no?

12       JUROR 4: Yes.

13       COURTROOM DEPUTY: Question number 9-C,

14   punitive damages in the amount of $50,000, do

15   you agree?

16       JUROR 4: Yes.

17       COURTROOM DEPUTY: Thank you.  Juror number

18   5, if you would please stand?  Question number

19   1, do you agree with the answer yes?

20       JUROR 5: Yes I agree.

21       COURTROOM DEPUTY: Thank you.  Question 2,

22   do you agree with the answer yes?

23       JUROR 5: Yes.

24       COURTROOM DEPUTY: Question 3, do you agree

25   with the answer yes?

1          JUROR 5: Yes.

2          COURTROOM DEPUTY: Question 4-A, do you

3     agree with the answer yes?

4          JUROR 5: Yes.

5          COURTROOM DEPUTY: Question 4-B, do you

6     agree with the answer no?

7          JUROR 5: I do agree.

8          COURTROOM DEPUTY: Question 5-A, do you

9     agree with the answer yes?

10         JUROR 5: Yes.

11         COURTROOM DEPUTY: Question 5-C, do you

12    agree with the answer yes?

13         JUROR 5: Yes.

14         COURTROOM DEPUTY: Question 6, do you agree

15    with the answer yes?

16         JUROR 5: Yes.

17         COURTROOM DEPUTY: Question 7, do you agree

18    with the answer no?

19         JUROR 5: Yes.

20         COURTROOM DEPUTY: Question 8, compensatory

21    damages in the amount of $30,000, do you agree?

22         JUROR 5: Yes, I do.

23         COURTROOM DEPUTY: Back pay in the amount of

24    $98,500, do you agree?

25         JUROR 5: I do.

1        COURTROOM DEPUTY: Front pay in the amount

2    of $175,000, do you agree?

3        JUROR 5: Yes.

4        COURTROOM DEPUTY: Question 9-A, do you

5    agree with the answer yes?

6        JUROR 5: Yes.

7        COURTROOM DEPUTY: 9-B, do you agree with

8    the answer no?

9        JUROR 5: Yes.

10       COURTROOM DEPUTY: And 9-C, the amount of

11   punitive damages of $50,000, do you agree?

12       JUROR 5: Yes.

13       COURTROOM DEPUTY: Thank you.  Juror number

14   6, question number 1, do you agree with the

15   answer yes?

16       JUROR 6: Yes.

17       COURTROOM DEPUTY: Question number 2, do you

18   agree with the answer yes?

19       JUROR 6: Yes.

20       COURTROOM DEPUTY: Question number 3, do you

21   agree with the answer yes?

22       JUROR 6: Yes.

23       COURTROOM DEPUTY: Question number 4-A, do

24   you agree with the answer yes?

25       JUROR 6: Yes.

1    COURTROOM DEPUTY: Question number 4-B, do

2    you agree with the answer no?

3    JUROR 6: Yes.

4    COURTROOM DEPUTY: Question number 5-A, do

5    you agree with the answer yes?

6    JUROR 6: Yes.

7    COURTROOM DEPUTY: Question number 5-B, do

8    you agree with the answer yes?

9    JUROR 6: Yes.

10    COURTROOM DEPUTY: Question number 6, do you

11    agree with the answer yes?

12    JUROR 6: Yes.

13    COURTROOM DEPUTY: Question number 7, do you

14    agree with the answer no?

15    JUROR 6: Yes.

16    COURTROOM DEPUTY: Question 8, compensatory

17    damages in the amount of $30,000, do you agree?

18    JUROR 6: Yes.

19    COURTROOM DEPUTY: Back pay in the amount of

20    $98,500 under question 8, do you agree?

21    JUROR 6: Yes.

22    COURTROOM DEPUTY: And then amount of front

23    pay of $175,000 do you agree?

24    JUROR 6: Yes.

25    COURTROOM DEPUTY: Question 9-A, do you

1   agree with the answer yes?

2        JUROR 6: Yes.

3        COURTROOM DEPUTY: Do you agree to the

4   answer no for 9-B?

5        JUROR 6: Yes.

6        COURTROOM DEPUTY: And 9-C, the amount of

7   punitive damages of $50,000 do you agree?

8        JUROR 6: Yes.

9        COURTROOM DEPUTY: Great, thank you.  And

10   juror number 7, question number 1, do you agree

11   with the answer yes?

12        JUROR 7: Yes.

13        COURTROOM DEPUTY: Question number 2, do you

14   agree with the answer yes?

15        JUROR 7: Yes.

16        COURTROOM DEPUTY: Question number 3, do you

17   agree with the answer yes?

18        JUROR 7: Yes.

19        COURTROOM DEPUTY: Question number 4-A, do

20   you agree with the answer yes?

21        JUROR 7: Yes.

22        COURTROOM DEPUTY: Question number 4-B, do

23   you agree with the answer no?

24        JUROR 7: Yes.

25        COURTROOM DEPUTY: Question number 5-A, do

1   you agree with the answer yes?

2        JUROR 7: Yes.

3        COURTROOM DEPUTY: Question number 5-B, do

4   you agree with the answer yes?

5        JUROR 7: Yes.

6        COURTROOM DEPUTY: Question number 6, do you

7   agree with the answer yes?

8        JUROR 7: Yes.

9        COURTROOM DEPUTY: Question number 7, do you

10  agree with the answer no?

11       JUROR 7: Yes.

12       COURTROOM DEPUTY: Question number 8,

13  compensatory damages of $30,000, do you agree?

14       JUROR 7: Yes.

15       COURTROOM DEPUTY: The amount of back pay,

16  $98,500 do you agree?

17       JUROR 7: Yes.

18       COURTROOM DEPUTY: Front pay, the amount of

19  $175,000 do you agree?

20       JUROR 7: Yes.

21       COURTROOM DEPUTY: Question number 9-A, do

22  you agree with the answer yes?

23       JUROR 7: Yes.

24       COURTROOM DEPUTY: Question 9-B, do you

25  agree with the answer no?

1      JUROR 7: Yes.

2      COURTROOM DEPUTY: And question 9-C, the

3  amount of punitive damages of $50,000, do you

4  agree?

5      JUROR 7: Yes.

6      COURTROOM DEPUTY: Thank you.

7      THE COURT: Thank you, Ms. McKinney.  The

8  court will turn the original verdict form over

9  to Ms. McKinney.  It appearing that the jurors

10  have reached a unanimous verdict, the clerk of

11  court is directed to enter judgement in

12  accordance with the verdict.  Members of the

13  jury, I want to extend my deep appreciation to

14  you for the service that you have rendered.  By

15  participating in this process you have conferred

16  one of the most fundamental protections of our

17  democracy, the right to a fair and impartial

18  jury.

19      On behalf of the United States judicial

20  system I thank you.  Before you are excused I

21  want to speak with you briefly in the jury

22  deliberation room.  I would advise you that you

23  may be approached by counsel at some point

24  following this proceeding.  If you wish you may

25  speak with counsel and answer any questions that

1  they may have about their performance or about

2  other issues.  However, you are equally entitled

3  to refuse to answer their questions or not to

4  speak to them at all.  The choice is yours.  To

5  counsel, I would simply admonish you not to ask

6  the jurors any questions going to the

7  deliberative process.  As you know, the secrecy

8  of those proceedings represent the hallmark of

9  the jury system, and any questions that you must

10  ask of the jurors should not touch upon the

11  jury's internal deliberations.  Members of the

12  jury, as I said I would like to meet with you

13  briefly, but you are now excused with the thanks

14  of the court.  Ms. McKinney, you may escort the

15  jury.

16      (Jury excused at 4:51 p.m.)

17      THE COURT: Counsel, the parties, please be

18  seated.  I advise the parties that any post

19  trial motions for judgment as a matter of law or

20  for a new trial must be filed within 28 days of

21  this date as required by the Federal Rules of

22  Civil Procedure.  Are there any other matters

23  that the parties would like to address at this

24  time?

25      MR. CROCENZI: Your Honor, would the 28 days

1  also apply for a motion for attorney's fees and

2  costs?

3        THE COURT: That's something that -- not

4  necessarily.  In fact, that would be an issue

5  that I thought counsel could confer and agree on

6  a briefing schedule for.  I'm happy to take it

7  up immediately or within a reasonable period of

8  time.  I want to give you an opportunity to

9  decompress following this lengthy trial and then

10  present that motion.  So why don't you get

11  together and see if you can agree on an

12  appropriate briefing schedule for that.

13        MR. CROCENZI: Thank you.

14        THE COURT: Just advise my office.  If you

15  can do it in the form of a concurred in motion

16  that would be my preference, Mr. Crocenzi.

17        MR. CROCENZI: Okay.

18        THE COURT: All right?  Any other matters?

19        MS. SALTZ: Just to clarify, Your Honor, 28

20  days from today for a post trial?

21        THE COURT: Correct.

22        MS. SALTZ: Thank you, Your Honor.

23        THE COURT: Thank you.  We are adjourned.

24        (Trial concluded at 4:53 p.m.)

25

1    Ricky A. Shaw vs. Cumberland Truck Equipment Co.

2                    1:09-CV-00359

3             Jury Trial Proceedings, Day 4

4                    19 May 2011

5

6

7

8         I hereby certify that the proceedings

9    and evidence are contained fully and accurately

10   in the notes taken by me on the trial of the

11   above case, and that this copy is a correct

12   transcript of the same.

13

14

15                    s/ Wesley J. Armstrong

16                    _____

17                    Wesley J. Armstrong

18                    Registered Merit Reporter

19

20

21

22        The foregoing certification of this

23   transcript does not apply to any reproduction by

24   any means unless under the direct control and/or

25   supervision of the certifying reporter.

# #

**#412** [1] - 1:20

# $

**$175,000** [8] - 138:20, 145:7, 147:4, 149:5, 151:4, 153:2, 154:23, 156:19
**$30,000** [8] - 138:16, 145:2, 146:24, 148:24, 150:23, 152:21, 154:17, 156:13
**$50,000** [9] - 139:10, 142:19, 145:17, 147:18, 149:14, 151:14, 153:11, 155:7, 157:3
**$98,500** [8] - 138:18, 145:5, 147:2, 149:2, 151:1, 152:24, 154:20, 156:16

# 0

**06** [1] - 66:17
**07** [3] - 15:4, 65:6, 73:8
**08** [2] - 14:7, 80:6
**09** [1] - 80:6

# 1

**1** [35] - 41:3, 49:14, 61:8, 91:3, 100:6, 103:6, 106:18, 106:24, 110:20, 125:16, 125:23, 143:18, 143:19, 143:21, 143:23, 144:1, 144:4, 144:10, 144:13, 144:16, 144:19, 144:22, 144:25, 145:3, 145:6, 145:9, 145:13, 145:15, 145:18, 145:21, 147:21, 149:17, 151:19, 153:14, 155:10
**10** [1] - 103:20
**100** [2] - 1:16, 57:12
**10:45** [1] - 42:4
**10:55** [2] - 41:17, 41:23
**10th** [1] - 52:10
**11:02** [1] - 42:4
**11:05** [1] - 43:23
**12** [3] - 8:25, 21:2, 21:9
**12:06** [1] - 85:3

**12:15** [1] - 84:22
**12:23** [1] - 85:4
**12th** [1] - 4:20
**13** [1] - 21:17
**132** [1] - 2:13
**136** [1] - 2:14
**14** [1] - 22:15
**140** [1] - 68:17
**15** [4] - 11:16, 23:7, 23:25, 24:14
**150** [7] - 34:17, 35:2, 51:21, 52:1, 55:4, 57:9, 57:16
**16** [3] - 23:25, 24:16, 25:5
**1630.2-L** [1] - 33:20
**17** [4] - 12:1, 13:9, 26:1, 31:3
**17050** [1] - 1:16
**17101** [1] - 1:13
**17108** [1] - 1:25
**17th** [2] - 78:2, 78:4
**18** [3] - 32:17, 32:20, 33:2
**19** [8] - 1:5, 2:3, 33:3, 33:23, 34:12, 35:8, 35:16, 160:4
**19087** [1] - 1:20
**19th** [1] - 61:10
**1:09-CV-00359** [3] - 1:3, 2:2, 160:2
**1:09-CV-0359** [1] - 143:16
**1:25** [1] - 130:14
**1:26** [1] - 132:19

# 2

**2** [33] - 29:4, 41:4, 91:6, 100:11, 103:8, 106:20, 106:25, 110:21, 125:16, 137:4, 143:24, 145:20, 145:22, 145:24, 145:25, 146:3, 146:6, 146:9, 146:12, 146:15, 146:18, 146:21, 146:25, 147:3, 147:6, 147:11, 147:15, 147:19, 147:24, 149:20, 151:21, 153:17, 155:13
**2-26-07** [1] - 4:20
**2-28-07** [2] - 61:17, 61:19
**20** [4] - 26:3, 26:14, 26:20, 35:25
**2000** [1] - 67:6
**2007** [7] - 4:20,

**12:13**, 19:2, 52:10, 55:19, 61:10, 104:6
**2008** [4] - 14:4, 59:8, 59:17, 59:19
**2011** [3] - 1:5, 2:3, 160:4
**21** [1] - 11:14
**21-year** [1] - 45:1
**22** [1] - 13:10
**228** [1] - 1:24
**234-4161** [1] - 1:14
**24** [4] - 4:7, 4:11, 6:19, 36:4
**25** [2] - 4:6, 69:20
**26** [5] - 4:5, 10:21, 10:22, 10:25, 26:20
**27** [2] - 4:7, 10:25
**27th** [1] - 19:2
**28** [4] - 4:7, 158:20, 158:25, 159:19
**29** [2] - 4:7, 33:20

# 3

**3** [30] - 2:7, 41:5, 91:7, 103:9, 107:1, 110:23, 137:8, 144:2, 146:2, 147:21, 147:23, 148:1, 148:2, 148:4, 148:7, 148:10, 148:13, 148:16, 148:19, 148:22, 148:25, 149:3, 149:6, 149:9, 149:12, 149:15, 149:23, 151:24, 153:20, 155:16
**30** [1] - 4:7
**31** [2] - 4:7, 24:8
**32** [2] - 4:8, 8:25
**320** [1] - 1:13
**33** [2] - 4:8, 49:14
**34** [3] - 4:8, 49:20
**35** [1] - 58:20
**37** [3] - 58:20, 133:2, 134:2
**38** [1] - 9:5
**381** [2] - 49:21, 49:24
**3:35** [1] - 132:20
**3:38** [1] - 133:22
**3:39** [1] - 135:3
**3:40** [1] - 135:21

# 4

**4** [26] - 1:7, 2:2, 41:5, 91:8, 103:11, 110:24, 144:5, 149:17, 149:19, 149:22, 149:25, 150:1, 150:3, 150:6, 150:9, 150:12,

**150:15, 150:18,** 150:21, 150:24, 151:2, 151:6, 151:9, 151:12, 151:16, 160:3
**4-A** [10] - 137:14, 144:7, 144:8, 146:5, 148:5, 150:4, 150:5, 152:2, 153:23, 155:19
**4-B** [7] - 144:11, 146:8, 148:8, 150:7, 152:5, 154:1, 155:22
**400** [1] - 45:7
**41** [6] - 38:12, 38:21, 40:3, 40:4, 42:8
**43** [6] - 38:15, 38:20, 38:25, 39:4, 39:5, 40:11
**44** [1] - 2:9
**4:24** [1] - 135:21
**4:26** [1] - 136:5
**4:32** [1] - 139:21
**4:33** [1] - 140:10
**4:34** [1] - 141:12
**4:38** [1] - 141:19
**4:51** [1] - 158:16
**4:53** [1] - 159:24
**4th** [1] - 55:19

# 5

**5** [21] - 41:7, 91:11, 103:12, 125:14, 125:20, 151:18, 151:20, 151:23, 152:1, 152:4, 152:7, 152:10, 152:13, 152:16, 152:19, 152:22, 152:25, 153:3, 153:6, 153:9, 153:12
**5-A** [8] - 137:23, 144:14, 146:11, 148:11, 150:10, 152:8, 154:4, 155:25
**5-B** [6] - 144:17, 146:14, 148:14, 150:13, 154:7, 156:3
**5-C** [1] - 152:11
**50** [1] - 39:1
**5006** [1] - 1:16
**542-5569** [1] - 1:25
**591-1755** [1] - 1:17
**5:00** [5] - 8:10, 8:11, 129:11, 129:17

# 6

**6** [29] - 41:9, 45:6, 91:13, 103:14, 125:24, 138:7, 144:20, 146:17,

**148:18, 150:16,** 152:14, 153:14, 153:16, 153:19, 153:22, 153:25, 154:3, 154:6, 154:9, 154:10, 154:12, 154:15, 154:18, 154:21, 154:24, 155:2, 155:5, 155:8, 156:6
**610** [1] - 1:21
**63** [1] - 2:10
**65** [3] - 49:20, 57:15, 68:1

# 7

**7** [29] - 2:8, 41:10, 91:16, 103:16, 125:24, 138:10, 144:23, 146:20, 148:20, 150:19, 152:17, 154:13, 155:10, 155:12, 155:15, 155:18, 155:21, 155:24, 156:2, 156:5, 156:8, 156:9, 156:11, 156:14, 156:17, 156:20, 156:23, 157:1, 157:5
**70** [1] - 68:1
**717** [3] - 1:14, 1:17, 1:25
**75** [1] - 57:12

# 8

**8** [14] - 41:10, 103:17, 125:24, 138:13, 145:1, 146:23, 148:23, 150:22, 150:25, 151:3, 152:20, 154:16, 154:20, 156:12
**82** [1] - 2:11
**85** [1] - 2:12

# 9

**9** [6] - 41:10, 45:7, 103:19, 125:24, 138:21, 145:10
**9-A** [7] - 145:11, 147:9, 149:7, 151:7, 153:4, 154:25, 156:21
**9-B** [13] - 139:13, 139:14, 140:14, 141:1, 142:9, 142:11, 145:14, 147:13, 149:10, 151:10,

153:7, 155:4, 156:24
**9-C** [8] - 141:2,
145:16, 147:16,
149:13, 151:13,
153:10, 155:6, 157:2
**9.1.1** [1] - 25:1
**9.1.3** [1] - 37:23
**964-3333** [1] - 1:21
**993** [1] - 1:20
**9:05** [2] - 1:6, 3:22
**9:54** [3] - 3:22, 4:14,
7:24
**9:57** [1] - 6:17

# A

**a.m** [7] - 1:6, 3:22,
4:14, 6:17, 7:24, 42:4,
43:23
**abide** [1] - 135:25
**abilities** [1] - 104:5
**ability** [10] - 91:4,
100:8, 100:11,
100:14, 101:4, 101:9,
101:14, 103:14,
110:11, 110:13
**able** [27] - 15:17,
15:19, 16:14, 16:15,
17:22, 34:13, 35:20,
55:7, 60:2, 64:4,
68:17, 79:4, 80:2,
80:3, 80:25, 96:21,
97:20, 98:19, 102:12,
102:16, 104:17,
105:4, 106:1, 127:8,
127:13, 131:8, 141:25
**absolutely** [1] -
140:1
**accept** [4] - 88:18,
92:6, 92:16, 93:25
**acceptable** [2] -
19:24, 140:7
**accident** [1] - 92:20
**accommodate** [13] -
22:5, 41:7, 57:17,
74:20, 74:23, 74:24,
74:25, 75:1, 94:24,
97:16, 111:9, 125:13,
125:18
**accommodated** [1] -
53:2
**accommodation** [62]
- 5:11, 9:23, 9:24,
16:16, 17:2, 19:6,
21:11, 21:13, 34:2,
34:25, 36:5, 36:8,
36:12, 38:24, 40:9,
57:8, 57:18, 66:6,
75:6, 75:9, 75:11,
76:18, 76:19, 77:10,

78:11, 79:24, 82:9,
83:6, 83:8, 83:21,
95:2, 96:22, 97:18,
102:11, 105:5,
105:12, 105:15,
106:3, 106:6, 106:8,
106:9, 106:12,
106:14, 106:15,
106:16, 106:23,
107:6, 107:12,
107:17, 107:22,
108:2, 108:10,
108:13, 110:3, 110:8,
120:23, 121:1,
137:16, 137:18,
137:20, 138:1
**accommodations**
[14] - 5:14, 5:17,
16:19, 22:7, 39:13,
50:22, 54:17, 101:25,
102:4, 104:19, 105:2,
105:7, 105:20, 137:6
**accomplish** [1] -
28:11
**accord** [1] - 121:25
**accordance** [2] -
126:1, 157:12
**according** [1] - 93:11
**account** [2] - 16:18,
104:17
**accountant** [1] -
93:15
**accuracy** [1] -
114:13
**accurate** [2] - 61:7,
61:13
**accurately** [2] -
135:6, 160:9
**accusations** [1] -
95:3
**accused** [1] - 94:21
**acknowledge** [1] -
121:15
**act** [6] - 87:17, 92:18,
114:3, 118:8, 118:11,
118:14
**Act** [8] - 9:12, 11:14,
11:19, 77:22, 96:10,
96:14, 96:15, 104:15
**acted** [5] - 24:21,
99:1, 99:4, 118:6,
138:23
**acting** [1] - 108:11
**action** [25] - 20:19,
23:19, 25:16, 26:9,
27:18, 31:9, 31:13,
31:20, 46:4, 60:21,
78:13, 78:14, 98:25,
99:7, 99:17, 99:18,
108:4, 108:7, 108:16,

108:23, 109:12,
109:15, 137:12,
138:5, 143:16
**actions** [11] - 48:1,
62:19, 98:10, 111:24,
111:25, 112:4, 112:8,
112:10, 112:13,
112:25, 138:9
**activities** [5] - 33:6,
68:11, 101:15, 101:18
**activity** [11] - 100:9,
100:15, 100:21,
101:4, 101:6, 108:1,
108:8, 108:19,
108:24, 109:11,
109:14
**acts** [5] - 4:23,
117:20, 119:17,
119:21, 120:6
**actual** [7] - 100:18,
115:12, 119:15,
121:8, 121:13,
121:16, 121:17
**ADA** [30] - 5:25,
16:12, 16:14, 33:6,
33:8, 33:10, 33:19,
34:4, 96:14, 96:19,
97:5, 97:6, 97:10,
98:14, 99:6, 100:5,
101:19, 102:5, 102:9,
104:16, 105:16,
105:25, 106:16,
107:3, 107:21, 108:1,
109:6, 111:6, 137:3,
137:25
**ADA's** [3] - 96:23,
98:15, 99:24
**add** [3] - 25:23,
31:12, 48:17
**added** [2] - 32:7,
49:20
**addition** [2] - 29:9,
33:14
**additional** [5] - 3:7,
3:25, 7:3, 26:25, 95:4
**additions** [1] - 17:13
**address** [10] - 9:1,
9:25, 18:22, 38:13,
42:6, 44:9, 63:20,
125:3, 136:2, 158:23
**addressed** [3] -
28:25, 33:23, 131:16
**addresses** [2] - 26:4,
41:1
**addressing** [1] -
12:18
**adequately** [2] -
120:8, 120:10
**adjourned** [1] -
159:23

**administer** [1] -
129:21
**Administration** [1] -
16:23
**admirably** [1] -
130:18
**admit** [4] - 5:20,
6:23, 17:3, 63:5
**admitted** [10] - 6:6,
6:20, 7:2, 17:7, 18:4,
18:25, 68:12, 75:15,
89:5, 122:7
**admonish** [1] - 158:5
**adopting** [4] -
118:19, 139:4,
140:17, 142:13
**advantage** [3] -
114:17, 114:24, 115:3
**adverse** [17] - 23:19,
26:8, 27:17, 31:8,
78:12, 78:13, 97:12,
98:10, 98:25, 99:18,
108:3, 108:7, 108:15,
109:16, 111:7,
137:11, 138:4
**advice** [1] - 78:20
**advise** [3] - 157:22,
158:18, 159:14
**advised** [1] - 135:23
**advisory** [2] - 42:15,
42:18
**affects** [1] - 18:15
**affirm** [3] - 129:23,
130:3, 143:7
**affirmatively** [1] -
130:5
**afraid** [1] - 63:7
**afternoon** [3] - 8:9,
82:3, 136:6
**agents** [1] - 87:18
**agree** [151] - 10:14,
19:9, 25:18, 25:22,
28:24, 31:22, 35:12,
38:9, 38:18, 88:16,
124:20, 131:8,
131:17, 134:11,
143:18, 143:21,
143:25, 144:2, 144:5,
144:8, 144:12,
144:15, 144:17,
144:21, 144:24,
145:2, 145:5, 145:8,
145:11, 145:17,
145:20, 145:22,
145:23, 145:25,
146:1, 146:3, 146:4,
146:6, 146:7, 146:9,
146:10, 146:12,
146:15, 146:18,
146:21, 146:25,

147:3, 147:6, 147:9,
147:11, 147:13,
147:15, 147:17,
147:19, 147:22,
147:23, 147:25,
148:1, 148:3, 148:4,
148:6, 148:7, 148:9,
148:10, 148:12,
148:13, 148:15,
148:16, 148:18,
148:19, 148:21,
148:22, 148:24,
148:25, 149:2, 149:3,
149:5, 149:6, 149:8,
149:9, 149:11,
149:12, 149:14,
149:15, 149:17,
149:21, 149:24,
150:2, 150:5, 150:8,
150:11, 150:14,
150:17, 150:20,
150:23, 151:1, 151:5,
151:8, 151:11,
151:15, 151:19,
151:20, 151:22,
151:24, 152:3, 152:6,
152:7, 152:9, 152:12,
152:14, 152:17,
152:21, 152:24,
153:2, 153:5, 153:7,
153:11, 153:14,
153:18, 153:21,
153:24, 154:2, 154:5,
154:8, 154:11,
154:14, 154:17,
154:20, 154:23,
155:1, 155:3, 155:7,
155:10, 155:14,
155:17, 155:20,
155:23, 156:1, 156:4,
156:7, 156:10,
156:13, 156:16,
156:19, 156:22,
156:25, 157:4, 159:5,
159:11
**agreeable** [1] - 6:9
**agreed** [4] - 30:10,
88:19, 130:2, 133:12
**agreement** [1] -
126:5
**agrees** [2] - 59:11,
77:17
**ahead** [1] - 43:7
**aids** [1] - 124:9
**alert** [1] - 8:15
**allegations** [1] - 95:4
**allegedly** [3] - 83:18,
112:25, 113:21
**alleges** [2] - 22:3,
97:13

**allow** [5] - 8:8, 22:4, 97:14, 107:6, 121:1

**almost** [2] - 9:9, 77:21

**alone** [4] - 75:22, 77:12, 85:22, 119:15

**altering** [1] - 106:20

**alternatively** [1] - 10:11

**ambulance** [1] - 76:9

**amended** [1] - 142:7

**Americans** [7] - 9:12, 11:13, 11:18, 96:10, 96:13, 96:15, 104:14

**amount** [54] - 39:9, 103:8, 111:13, 112:15, 113:10, 114:3, 114:6, 114:11, 115:1, 115:2, 115:13, 116:10, 116:12, 116:20, 117:1, 117:5, 117:8, 117:16, 117:17, 117:18, 119:25, 120:1, 120:7, 120:9, 120:15, 134:6, 138:14, 138:17, 138:19, 139:8, 140:20, 142:18, 142:19, 145:4, 145:17, 146:22, 147:1, 147:18, 149:1, 149:4, 151:1, 151:4, 151:14, 152:21, 152:23, 153:1, 153:10, 154:17, 154:19, 154:22, 155:6, 156:15, 156:18, 157:3

**amounts** [1] - 113:17

**analysis** [5] - 13:14, 15:8, 48:3, 48:5, 52:3

**angst** [1] - 23:9

**anguish** [1] - 112:23

**answer** [102] - 76:1, 80:8, 81:7, 125:6, 125:7, 125:18, 125:25, 126:3, 127:8, 136:24, 139:7, 139:9, 139:16, 139:22, 140:4, 140:5, 140:14, 140:21, 140:22, 140:25, 141:2, 142:16, 143:19, 143:21, 143:25, 144:3, 144:9, 144:12, 144:15, 144:18, 144:21, 144:24, 145:11, 145:14, 145:21, 145:24, 146:2, 146:5, 146:8,

146:11, 146:13, 146:16, 146:19, 147:10, 147:14, 147:22, 147:25, 148:3, 148:6, 148:9, 148:12, 148:15, 148:18, 148:21, 149:8, 149:11, 149:18, 149:21, 149:24, 150:2, 150:8, 150:11, 150:14, 150:17, 150:20, 151:8, 151:11, 151:19, 151:22, 151:25, 152:3, 152:6, 152:9, 152:12, 152:15, 152:18, 153:5, 153:8, 153:15, 153:18, 153:21, 153:24, 154:2, 154:5, 154:8, 154:11, 154:14, 155:1, 155:4, 155:11, 155:14, 155:17, 155:20, 155:23, 156:1, 156:4, 156:7, 156:10, 156:22, 156:25, 157:25, 158:3

**answered** [5] - 125:22, 130:5, 137:8, 137:18, 141:5

**answers** [2] - 93:3, 142:9

**antagonism** [1] - 109:3

**anticipate** [1] - 3:16

**anticipated** [1] - 42:14

**antiinflammatory** [1] - 65:25

**anyway** [2] - 58:5, 118:10

**apologies** [2] - 8:6, 142:7

**apologize** [2] - 26:19, 130:23

**apparent** [1] - 32:5

**appeals** [1] - 64:2

**appear** [1] - 25:21

**appearance** [1] - 91:8

**APPEARANCES** [1] - 1:10

**appearing** [1] - 157:9

**appellate** [1] - 20:19

**applicable** [1] - 85:9, 134:9

**application** [6] - 13:15, 13:17, 13:21, 13:24, 18:11, 19:14

**applied** [1] - 32:18

**applies** [6] - 12:21, 13:16, 62:15, 96:6, 99:25, 125:21

**apply** [16] - 15:14, 15:17, 15:20, 16:6, 18:1, 40:13, 85:23, 85:24, 86:4, 96:7, 97:4, 115:19, 122:15, 133:18, 159:1, 160:23

**applying** [1] - 16:7

**appreciate** [2] - 130:21, 131:2

**appreciation** [1] - 157:13

**approach** [2] - 4:13, 139:20

**approached** [1] - 157:23

**appropriate** [9] - 29:9, 29:10, 29:12, 36:13, 41:10, 93:24, 122:16, 142:8, 159:12

**appropriately** [1] - 139:18, 142:21

**approved** [1] - 58:10

**April** [3] - 4:20, 73:8, 79:19

**area** [2] - 21:4, 65:10

**argue** [3] - 31:24, 32:3, 35:13

**argument** [9] - 2:9, 2:10, 14:13, 18:8, 18:23, 30:5, 30:8, 44:4, 44:8

**arguments** [17] - 3:12, 3:13, 6:8, 7:13, 7:22, 30:19, 41:17, 43:11, 43:20, 44:1, 46:17, 62:2, 63:18, 84:17, 85:8, 86:16, 88:7

**arise** [1] - 94:3

**Armstrong** [3] - 1:23, 160:15, 160:17

**Army** [1] - 45:2

**aside** [1] - 64:20

**aspect** [2] - 5:2, 143:7

**aspects** [1] - 42:20

**assemble** [1] - 127:4

**asserting** [1] - 22:19

**assertion** [2] - 88:14, 88:15

**assertions** [1] - 89:2

**asserts** [2] - 22:17, 97:19

**assess** [1] - 15:2

**assessing** [2] - 104:2, 115:5

**assessment** [2] - 110:11, 110:13

**assigned** [2] - 68:12, 75:16

**assignments** [1] - 64:2

**assistance** [1] - 74:17

**assistant** [1] - 50:19

**assisted** [1] - 57:23

**assuming** [1] - 112:9

**attempt** [5] - 118:18, 127:15, 139:3, 140:16, 142:12

**attempted** [3] - 9:19, 10:13, 21:6

**attempts** [2] - 39:14, 39:15

**attention** [6] - 44:14, 63:13, 81:13, 81:23, 84:18, 129:15

**attorney** [1] - 44:7

**attorney's** [4] - 115:6, 115:7, 115:9, 159:1

**attorneys** [2] - 127:5, 131:1

**authority** [1] - 83:2

**automatically** [1] - 29:14

**available** [6] - 60:14, 60:15, 103:11, 110:16, 114:25, 116:8

**average** [3] - 45:5, 101:7, 101:13

**award** [44] - 111:2, 111:13, 111:16, 111:17, 112:16, 112:18, 112:20, 112:21, 113:5, 113:9, 113:19, 115:12, 115:22, 116:3, 117:1, 117:3, 117:5, 117:8, 117:14, 117:16, 117:23, 117:24, 118:3, 118:16, 118:23, 119:1, 119:2, 119:13, 119:19, 119:22, 119:25, 120:4, 120:18, 121:6, 121:10, 121:17, 133:14, 134:6, 134:13, 138:15, 138:17, 138:19, 139:9, 142:19

**awarded** [4] - 113:4, 113:16, 116:9, 120:13

**awarding** [1] - 113:8

**aware** [8] - 5:7, 5:8, 26:5, 27:14, 28:1,

108:24, 132:22, 137:15

**B**

**bad** [4] - 48:16, 55:23, 79:8

**bailiff** [4] - 126:9, 126:17, 126:22, 126:23

**bailiffs** [2] - 129:20, 130:5

**balance** [8] - 26:24, 28:8, 29:13, 29:22, 30:6, 30:12, 31:17, 32:5

**balanced** [1] - 32:2

**bald** [2] - 89:1

**bar** [6] - 4:14, 6:17, 14:7, 135:8, 139:21, 140:10

**base** [3] - 86:7, 86:12, 88:22

**based** [22] - 5:8, 5:13, 12:22, 14:14, 26:14, 30:19, 31:13, 36:15, 50:4, 65:1, 65:2, 67:22, 74:13, 81:1, 96:12, 105:19, 110:14, 112:20, 123:14, 123:23, 133:15

**basic** [1] - 106:8

**basis** [5] - 17:18, 94:23, 97:14, 99:2, 111:8

**bear** [2] - 91:16, 127:21

**bearing** [1] - 87:19

**became** [1] - 108:24

**becomes** [1] - 126:19

**BEFORE** [1] - 1:8

**befuddled** [1] - 53:19

**began** [2] - 85:4, 130:14

**begin** [4] - 5:1, 21:5, 65:5, 130:9

**beginning** [3] - 35:7, 35:17, 122:20

**begins** [1] - 24:20

**behalf** [8] - 3:9, 44:12, 63:13, 81:21, 81:22, 130:18, 131:3, 157:19

**behind** [2] - 68:21, 68:22

**beings** [3] - 64:9, 64:13, 89:22

**belief** [3] - 81:15,

90:25, 108:12
**believability** [1] - 91:17
**believable** [1] - 94:13
**believes** [2] - 31:5, 81:18
**below** [2] - 29:4, 142:9
**bend** [13] - 17:8, 35:4, 51:9, 51:13, 51:17, 51:25, 58:3, 69:12, 69:13, 69:21, 70:20, 79:6
**bending** [3] - 69:18, 70:20, 74:25
**benefit** [3] - 16:6, 16:8, 49:16
**benefits** [18] - 15:15, 15:18, 19:16, 19:22, 20:5, 62:18, 62:19, 73:17, 104:9, 104:12, 104:22, 106:13, 115:14, 115:16, 116:1, 116:2, 116:14, 116:20
**best** [4] - 54:10, 66:16, 81:15, 110:16
**better** [5] - 15:9, 18:10, 18:18, 24:2, 81:16
**between** [12] - 8:25, 16:11, 20:21, 81:10, 86:16, 87:14, 91:19, 107:4, 108:6, 117:14, 127:12, 128:6
**beyond** [3] - 77:21, 96:5, 129:1
**bias** [6] - 64:20, 87:1, 91:10, 94:2, 94:3, 123:3
**big** [5] - 45:6, 45:8, 45:9, 45:13
**bit** [5] - 7:14, 24:16, 66:23, 74:17, 147:8
**blame** [1] - 60:13
**blind** [1] - 76:5
**blood** [1] - 49:5
**body** [3] - 70:21, 70:22, 101:2
**boilerplate** [1] - 9:10
**bone** [1] - 59:14
**bothers** [1] - 74:20
**bottom** [4] - 21:8, 31:3, 34:12, 49:10
**bound** [1] - 122:19
**box** [2] - 68:4, 69:9
**brake** [1] - 68:18
**break** [5] - 3:10, 6:12, 8:1, 41:16,

84:21
**breathing** [1] - 49:5
**Brenda** [12] - 46:8, 47:14, 48:8, 50:3, 52:4, 52:17, 53:23, 58:16, 61:2, 61:7, 61:12
**Brief** [7] - 10:23, 23:1, 85:18, 124:25, 133:21, 136:19, 142:5
**brief** [2] - 44:6, 85:1
**briefing** [2] - 159:6, 159:12
**briefly** [3] - 18:22, 157:21, 158:13
**bring** [5] - 8:13, 46:7, 63:11, 77:14, 133:19
**bringing** [3] - 112:1, 112:5, 112:14
**broad** [1] - 101:11
**brought** [4] - 42:6, 78:3, 88:5, 134:21
**buck** [1] - 83:6
**bull** [1] - 45:11
**bunch** [1] - 4:24
**burden** [14] - 32:10, 33:11, 35:18, 35:19, 44:1, 95:5, 95:18, 102:15, 102:19, 111:21, 114:9, 114:21, 116:22, 122:16
**business** [2] - 121:4, 137:22

## C

**calculation** [1] - 115:10
**cane** [4] - 66:1, 66:3, 66:4, 80:1
**cannot** [10] - 12:5, 15:14, 16:24, 17:3, 33:16, 33:25, 101:25, 102:10, 110:7, 118:16
**care** [4] - 16:18, 69:8, 69:20, 141:11
**cared** [1] - 66:8
**careful** [1] - 89:12
**carefully** [3] - 48:19, 87:6, 123:11
**cares** [1] - 67:1
**carried** [2] - 70:23, 70:24
**carry** [8] - 34:17, 35:2, 57:9, 57:22, 69:22, 70:23, 73:9, 74:11
**carrying** [4] - 57:20, 69:19, 70:21, 90:12

**cart** [1] - 57:23
**CASE** [1] - 1:3
**case** [85] - 3:10, 3:16, 5:19, 7:5, 7:16, 9:8, 12:15, 12:16, 12:23, 13:2, 13:14, 13:23, 14:24, 16:1, 17:1, 17:5, 17:7, 18:11, 19:10, 25:13, 26:23, 27:23, 28:2, 31:11, 32:19, 32:21, 34:4, 34:13, 36:6, 36:16, 42:9, 44:2, 44:15, 48:11, 55:23, 62:15, 64:17, 65:7, 81:9, 81:10, 81:13, 81:24, 85:21, 85:25, 86:13, 86:25, 87:11, 87:13, 87:14, 87:16, 87:20, 87:24, 88:9, 88:11, 88:24, 89:17, 91:10, 93:25, 94:5, 94:6, 94:20, 94:21, 95:25, 96:11, 102:5, 102:12, 104:8, 106:10, 107:12, 109:16, 115:7, 118:4, 119:19, 123:8, 123:23, 123:24, 125:11, 125:14, 125:15, 126:18, 131:1, 134:10, 134:19, 160:11
**cases** [7] - 9:11, 14:22, 18:5, 28:6, 96:7, 132:4
**catch** [1] - 11:11
**catcher's** [1] - 51:25
**categories** [1] - 49:2
**category** [1] - 49:5
**causal** [2] - 108:6, 108:19
**Causation** [1] - 108:25
**causation** [1] - 109:2
**caused** [4] - 26:8, 27:17, 31:8, 114:20
**causing** [2] - 67:17, 76:2
**cell** [4] - 43:21, 132:7, 132:12, 135:18
**central** [1] - 101:16
**certain** [7] - 4:2, 36:10, 39:12, 102:18, 102:19, 127:7, 135:5
**certainly** [12] - 4:3, 8:1, 17:24, 23:6, 24:4, 27:7, 28:8, 30:14, 30:21, 32:2, 43:9, 76:22

**certification** [1] - 160:22
**certify** [1] - 160:8
**certifying** [2] - 5:23, 160:25
**CFR** [1] - 33:20
**chair** [1] - 61:13
**challenge** [2] - 51:11
**challenging** [1] - 62:22
**change** [12] - 10:19, 18:14, 21:11, 22:2, 23:14, 52:22, 75:3, 106:24, 109:3, 123:14, 123:18, 141:1
**changed** [2] - 24:15, 82:13
**changes** [1] - 18:17
**chapter** [1] - 37:9
**Charge** [1] - 2:8
**charge** [12] - 2:12, 3:12, 8:3, 8:6, 8:23, 9:4, 31:25, 32:2, 43:20, 85:4, 129:2, 129:3
**check** [4] - 11:3, 43:21, 49:15, 74:6
**checked** [1] - 138:6
**Chevy** [1] - 68:9
**china** [1] - 45:12
**choice** [2] - 4:25, 158:4
**choose** [2] - 73:18, 94:17
**chose** [1] - 5:15
**CHRISTOPHER** [1] - 1:8
**chronological** [2] - 41:1, 41:2
**Chuck** [11] - 46:1, 46:3, 46:4, 47:25, 48:9, 50:16, 52:22, 60:19, 66:18, 72:20, 82:4
**chuck** [1] - 46:2
**Circuit** [11] - 21:15, 23:21, 24:13, 24:25, 25:6, 26:10, 27:20, 32:6, 34:9, 37:7, 37:20
**Circuit's** [1] - 28:5
**circumstances** [6] - 8:7, 94:16, 114:13, 114:19, 128:11, 134:9
**circumstantial** [4] - 89:25, 90:8, 90:13, 90:18
**cite** [1] - 33:19
**Civil** [2] - 2:2, 158:22
**CIVIL** [1] - 1:7

**civil** [3] - 94:21, 96:7, 143:16
**claim** [23] - 8:24, 22:16, 24:12, 41:8, 42:21, 95:6, 95:8, 95:20, 95:21, 96:11, 98:1, 98:5, 98:11, 105:13, 105:14, 105:22, 107:17, 107:19, 107:23, 109:7, 125:11, 125:13, 125:20
**claiming** [1] - 69:6
**claims** [11] - 34:13, 41:3, 41:6, 97:10, 97:19, 97:24, 102:12, 109:17, 117:20, 122:18, 125:17
**clarification** [1] - 36:18
**clarify** [2] - 133:1, 159:19
**class** [1] - 101:11
**clear** [3] - 23:22, 83:25, 96:16
**cleared** [1] - 74:11
**clearly** [2] - 106:12, 131:2
**clerk** [1] - 157:10
**Cleveland** [1] - 13:14, 13:20, 18:5, 19:7
**client** [2] - 20:13, 130:19
**clients** [1] - 131:4
**climb** [5] - 51:6, 74:19, 74:21, 80:2
**clocks** [1] - 54:19
**closed** [1] - 7:10
**closing** [16] - 3:12, 3:13, 6:8, 7:12, 7:22, 20:17, 30:5, 30:19, 41:17, 43:11, 43:19, 43:25, 44:4, 44:8, 63:18, 84:17
**Closing** [2] - 2:9, 2:10
**closings** [1] - 41:25
**Co** [2] - 2:1, 160:1
**code** [1] - 64:4
**coder** [1] - 64:3
**coding** [1] - 64:2
**coffin** [1] - 69:8
**cold** [1] - 135:10
**color** [3] - 64:2, 64:3, 64:4
**combination** [1] - 79:7
**comfortable** [2] - 76:22, 80:9

**coming** [5] - 32:25, 37:16, 67:8, 70:1, 80:10

**commitment** [1] - 81:8

**committed** [1] - 119:22

**committee** [2] - 47:11, 47:12

**committing** [2] - 118:2, 120:5

**common** [7] - 68:4, 69:11, 78:8, 82:10, 89:8, 89:20, 112:17

**communicate** [4] - 126:20, 127:16, 127:18, 128:3

**comp** [5] - 48:11, 48:12, 50:18, 53:9, 72:5

**COMPANY** [1] - 1:5

**company** [13] - 5:6, 5:11, 21:22, 22:1, 28:12, 59:1, 59:2, 67:1, 74:8, 75:11, 77:6, 78:11, 80:11

**Company** [4] - 81:23, 94:22, 95:3, 143:15

**comparable** [1] - 101:13

**compared** [3] - 24:1, 101:7, 101:12

**compensate** [1] - 111:14

**compensates** [1] - 115:13

**compensation** [3] - 111:17, 113:4, 116:2

**compensatory** [14] - 111:12, 111:18, 113:9, 121:9, 121:18, 138:13, 138:15, 145:2, 146:23, 148:24, 150:23, 152:20, 154:16, 156:13

**complaint** [1] - 115:18

**complement** [1] - 130:19

**complete** [4] - 129:15, 134:24, 140:4, 142:1

**completed** [2] - 52:4, 141:5

**completely** [1] - 53:25

**complex** [3] - 21:4, 65:10, 132:5

**complied** [1] - 139:19

**comply** [4] - 118:19, 139:3, 140:16, 142:13

**comprehensive** [1] - 96:16

**compromise** [3] - 19:9, 20:10, 20:21

**Concentra** [5] - 47:20, 48:2, 53:6, 70:14

**concept** [1] - 5:25

**concern** [5] - 5:21, 17:12, 21:19, 23:24, 33:7

**concerned** [9] - 15:22, 29:21, 44:19, 47:17, 63:6, 67:10, 71:5, 71:6, 86:3

**concerning** [6] - 17:15, 108:8, 108:14, 108:19, 127:19, 128:4

**concerns** [7] - 9:3, 11:22, 41:11, 46:3, 76:13, 135:11, 135:13

**conclude** [2] - 32:8, 90:14

**concluded** [4] - 6:17, 8:12, 140:10, 159:24

**concludes** [2] - 3:24, 7:4

**concluding** [1] - 31:10

**conclusion** [2] - 21:24, 128:17

**concurred** [2] - 70:18, 159:15

**condition** [16] - 12:13, 17:15, 17:16, 18:18, 58:22, 58:23, 58:24, 67:15, 72:9, 73:12, 73:25, 74:1, 74:13, 80:12, 101:1

**conduct** [12] - 107:21, 108:5, 109:10, 111:11, 111:15, 113:22, 115:18, 118:2, 120:3, 137:24, 138:3, 138:6

**confer** [1] - 159:5

**conference** [3] - 2:8, 31:25, 129:2

**conferred** [1] - 157:15

**confess** [1] - 129:8

**confident** [1] - 34:7

**conflict** [1] - 16:11

**conflicts** [1] - 16:12

**confused** [1] - 12:14

**confusing** [6] -

12:24, 13:7, 15:9, 18:8, 20:7, 25:13

**confusion** [1] - 5:22

**connection** [4] - 108:6, 108:20, 108:22

**CONNER** [1] - 1:8

**Conner** [1] - 64:19

**conscientious** [1] - 128:9

**consequence** [2] - 112:3, 112:24

**consequences** [2] - 87:9, 103:17

**consider** [37] - 19:19, 19:21, 40:17, 86:1, 87:6, 87:13, 88:15, 89:10, 90:15, 91:2, 91:24, 93:10, 93:17, 94:2, 94:15, 96:1, 97:7, 100:23, 103:6, 103:25, 104:5, 104:21, 105:6, 107:14, 110:20, 111:11, 115:5, 119:7, 119:13, 119:15, 119:18, 119:23, 120:2, 120:14, 123:1, 128:10

**consideration** [7] - 33:15, 42:19, 88:24, 93:7, 115:15, 123:9, 128:9

**considerations** [1] - 119:3

**considered** [6] - 33:8, 87:11, 91:15, 122:2, 124:1, 124:18

**consistent** [1] - 21:2

**consists** [1] - 87:25

**constitute** [1] - 121:3

**constitutes** [1] - 48:25

**construction** [1] - 89:20

**consult** [1] - 123:6

**consultation** [1] - 120:24

**consume** [1] - 130:9

**contained** [1] - 160:9

**containing** [1] - 93:13

**contains** [1] - 88:14

**contemporaneously** [1] - 13:18

**contends** [1] - 34:15

**context** [3] - 38:10, 104:20, 133:4

**continue** [4] - 8:8,

20:14, 78:4, 129:18

**continued** [5] - 5:11, 66:25, 97:23, 113:12, 135:3

**contradicted** [1] - 91:12

**contradictory** [1] - 92:9

**contrary** [1] - 94:12

**control** [1] - 160:24

**controlled** [1] - 87:4

**controlling** [1] - 103:24

**controversy** [1] - 128:15

**convenience** [1] - 124:23

**convenient** [1] - 129:24

**conversation** [4] - 14:7, 50:4, 50:5, 82:20

**conversations** [1] - 7:21

**conviction** [1] - 123:16

**cooperate** [2] - 107:9, 107:13

**cooperated** [1] - 107:15

**cooperation** [1] - 37:4

**copies** [1] - 126:14

**copy** [3] - 27:4, 27:7, 160:11

**corporation** [2] - 81:11, 87:16

**corporations** [1] - 87:21

**correct** [11] - 9:20, 9:21, 15:5, 61:14, 128:15, 136:8, 144:13, 144:25, 145:15, 159:21, 160:11

**correspond** [1] - 56:23

**cost** [1] - 73:3

**costs** [5] - 106:11, 115:6, 115:7, 115:9, 159:2

**coughing** [1] - 130:25

**counsel** [38] - 3:11, 3:14, 4:13, 7:14, 8:2, 8:5, 8:21, 9:2, 11:9, 11:21, 18:24, 41:15, 44:1, 44:3, 44:11, 63:19, 84:19, 85:8, 86:14, 128:13, 129:1,

130:15, 132:21, 133:3, 133:12, 134:11, 139:20, 141:5, 141:14, 142:23, 143:3, 143:4, 157:23, 157:25, 158:5, 158:17, 159:5

**counsel's** [1] - 19:6

**count** [2] - 49:1, 69:3

**couple** [7] - 10:4, 11:25, 46:10, 51:2, 56:13, 56:14, 76:23

**course** [5] - 8:17, 20:16, 60:21, 68:23, 69:2, 69:11, 123:12, 124:2, 129:2, 130:22, 134:25

**Court** [3] - 1:22, 1:23, 143:13

**court** [43] - 18:6, 20:3, 21:8, 23:17, 28:10, 30:22, 37:18, 39:10, 40:5, 43:11, 44:6, 44:11, 63:19, 63:23, 86:10, 86:20, 87:10, 93:2, 115:8, 122:6, 122:10, 122:14, 123:25, 126:13, 126:20, 127:16, 127:17, 127:21, 127:23, 128:8, 128:13, 128:20, 128:23, 128:25, 130:1, 130:22, 133:20, 135:22, 142:21, 143:17, 157:8, 157:11, 158:14

**COURT** [150] - 1:1, 3:2, 3:4, 3:23, 4:3, 4:9, 4:13, 4:15, 5:5, 5:20, 6:5, 6:11, 6:16, 6:18, 6:25, 7:2, 7:6, 7:9, 7:25, 9:18, 10:1, 10:6, 10:18, 10:24, 11:8, 12:3, 12:8, 12:17, 13:3, 13:8, 13:11, 13:24, 14:15, 14:20, 15:12, 15:24, 19:8, 20:4, 20:11, 20:15, 20:24, 21:14, 21:18, 22:8, 22:14, 22:22, 22:24, 23:2, 23:6, 23:8, 23:20, 24:10, 24:22, 25:2, 25:17, 25:24, 26:12, 26:20, 27:1, 27:3, 27:9, 27:12, 27:24, 28:24, 29:7, 29:12, 29:19, 30:3, 31:1,

31:22, 32:15, 32:22, 33:1, 33:22, 34:19, 35:11, 35:22, 35:24, 36:3, 36:17, 36:22, 37:1, 37:15, 37:19, 38:9, 38:13, 38:18, 39:16, 39:21, 39:23, 40:14, 40:23, 41:15, 41:22, 42:1, 42:5, 42:24, 43:4, 43:8, 43:15, 43:18, 43:24, 63:15, 82:2, 84:11, 84:13, 84:16, 85:5, 85:19, 125:1, 129:7, 130:6, 130:15, 131:7, 131:15, 132:1, 132:17, 132:21, 133:9, 133:11, 133:23, 135:4, 135:17, 135:22, 136:6, 136:10, 136:14, 136:16, 136:20, 139:22, 140:2, 140:7, 140:9, 140:11, 141:9, 141:13, 141:18, 141:20, 141:25, 142:3, 142:6, 143:2, 144:7, 157:7, 158:17, 159:3, 159:14, 159:18, 159:21, 159:23

**court's** [6] - 8:5, 8:22, 30:1, 33:14, 39:7, 135:11

**courthouse** [1] - 132:9

**Courthouse** [1] - 1:24

**courtroom** [13] - 64:16, 88:12, 90:10, 126:11, 130:18, 132:13, 135:8, 135:25, 136:3, 136:17, 141:14, 143:6, 143:9

**COURTROOM** [108] - 143:12, 143:24, 144:2, 144:5, 144:8, 144:11, 144:14, 144:17, 144:20, 144:23, 145:1, 145:4, 145:7, 145:10, 145:14, 145:16, 145:19, 145:23, 146:1, 146:4, 146:7, 146:10, 146:13, 146:16, 146:19, 146:22, 147:1, 147:4, 147:7, 147:12,

147:16, 147:20, 147:24, 148:2, 148:5, 148:8, 148:11, 148:14, 148:17, 148:20, 148:23, 149:1, 149:4, 149:7, 149:10, 149:13, 149:16, 149:20, 149:23, 150:1, 150:4, 150:7, 150:10, 150:13, 150:16, 150:19, 150:22, 150:25, 151:3, 151:7, 151:10, 151:13, 151:17, 151:21, 151:24, 152:2, 152:5, 152:8, 152:11, 152:14, 152:17, 152:20, 152:23, 153:1, 153:4, 153:7, 153:10, 153:13, 153:17, 153:20, 153:23, 154:1, 154:4, 154:7, 154:10, 154:13, 154:16, 154:19, 154:22, 154:25, 155:3, 155:6, 155:9, 155:13, 155:16, 155:19, 155:22, 155:25, 156:3, 156:6, 156:9, 156:12, 156:15, 156:18, 156:21, 156:24, 157:2, 157:6

**covered** [5] - 30:18, 34:8, 40:8, 42:10, 90:11

**covers** [1] - 40:21

**cram** [1] - 49:23

**create** [3] - 29:22, 58:25, 107:1

**created** [6] - 48:10, 53:10, 61:22, 109:18, 110:19, 136:2

**creating** [1] - 48:7

**credibility** [2] - 90:23, 90:24

**credible** [1] - 94:11

**credit** [2] - 48:6, 93:23

**criminal** [2] - 5:3, 96:6

**Crocenzi** [15] - 1:12, 11:22, 13:3, 20:22, 25:19, 25:20, 29:9, 31:23, 32:23, 44:13, 44:15, 51:4, 63:17, 130:16, 159:16

**cROCENZI** [1] - 159:17

**CROCENZI** [47] - 4:10, 4:16, 7:1, 7:8, 11:25, 12:4, 12:10, 13:6, 13:10, 13:12, 14:1, 14:19, 14:21, 18:2, 19:25, 20:7, 20:12, 20:23, 23:10, 25:1, 25:22, 27:19, 29:10, 29:17, 30:4, 31:11, 32:24, 36:13, 37:23, 38:25, 39:3, 39:6, 40:2, 40:7, 40:12, 41:13, 43:1, 129:5, 131:12, 131:21, 131:25, 133:7, 135:14, 141:8, 142:25, 158:25, 159:13

**cross** [3] - 18:14, 76:20, 76:21

**crossed** [1] - 78:1

**CTE** [87] - 4:19, 14:4, 15:4, 22:4, 22:16, 22:17, 22:19, 23:15, 24:21, 25:8, 25:15, 33:16, 34:5, 34:15, 44:17, 46:20, 52:3, 60:7, 84:3, 87:16, 95:9, 95:14, 95:18, 97:10, 97:14, 97:18, 97:19, 97:23, 98:2, 98:5, 98:24, 99:1, 99:4, 99:14, 100:10, 100:12, 102:6, 103:5, 104:6, 105:7, 105:14, 106:2, 106:7, 106:13, 107:19, 108:3, 108:23, 109:9, 109:14, 109:16, 109:20, 109:21, 109:23, 111:4, 111:6, 113:13, 113:14, 114:7, 114:20, 114:22, 115:17, 115:19, 116:5, 116:16, 116:25, 117:20, 118:6, 118:17, 119:14, 119:16, 119:21, 120:2, 120:5, 120:13, 120:14, 120:20, 120:22, 120:23, 134:5, 134:16, 137:15, 137:17, 138:4, 138:23, 139:2, 140:16, 142:12

**CTE's** [27] - 12:12, 35:1, 98:9, 99:7, 99:10, 99:12, 99:16, 99:19, 103:15, 108:6,

108:23, 109:12, 111:15, 111:24, 111:25, 112:3, 112:8, 112:10, 112:12, 112:25, 113:21, 114:20, 115:18, 121:4, 137:10, 137:21, 138:9

**Cumberland** [32] - 2:1, 4:22, 16:3, 44:18, 45:5, 56:17, 61:20, 62:20, 63:25, 64:14, 65:7, 65:16, 65:22, 70:25, 71:20, 71:22, 73:14, 73:25, 77:19, 78:15, 78:17, 79:9, 79:14, 80:18, 80:19, 81:18, 81:22, 83:9, 94:21, 95:2, 143:15, 160:1

**CUMBERLAND** [1] - 1:4

**current** [2] - 110:15, 140:24

## D

**D-44** [1] - 6:24

**damage** [2] - 113:5, 114:20

**damages** [91] - 14:13, 25:8, 39:9, 40:10, 41:9, 80:10, 97:25, 99:22, 111:1, 111:3, 111:12, 111:16, 111:18, 111:22, 112:12, 112:15, 112:18, 112:20, 112:22, 113:9, 113:10, 113:19, 114:5, 114:9, 114:16, 115:1, 115:5, 115:11, 115:12, 115:19, 116:5, 116:9, 116:22, 117:20, 117:23, 117:24, 117:25, 118:3, 118:17, 118:23, 118:25, 119:2, 119:6, 119:8, 119:14, 119:15, 119:19, 119:23, 119:24, 119:25, 120:1, 120:13, 120:15, 120:16, 120:18, 120:19, 120:20, 121:6, 121:9, 121:10, 121:14, 121:18, 121:19, 121:22, 125:25, 132:24, 138:7, 138:9, 138:12,

138:14, 138:15, 139:8, 140:20, 142:18, 145:2, 145:12, 145:16, 146:23, 147:12, 147:17, 148:24, 149:14, 150:23, 151:14, 152:21, 153:11, 154:17, 155:7, 156:13, 157:3

**danger** [2] - 46:24, 47:1

**date** [11] - 61:10, 61:16, 61:18, 61:23, 83:18, 115:21, 116:17, 117:14, 126:6, 158:21

**dated** [2] - 83:17, 142:21

**DAY** [1] - 1:7

**day-to-day** [1] - 68:10

**days** [10] - 52:10, 56:5, 56:6, 56:13, 56:14, 58:20, 81:24, 158:20, 158:25, 159:20

**deal** [4] - 59:12, 59:13, 89:12, 125:24

**deals** [2] - 125:8, 125:9

**decades** [1] - 51:2

**December** [1] - 66:17

**decide** [20] - 16:5, 18:6, 34:24, 36:8, 64:17, 64:18, 70:12, 81:10, 85:21, 90:18, 90:21, 99:21, 109:10, 112:16, 119:1, 119:2, 119:22, 122:12, 122:16, 123:8

**decided** [2] - 50:7, 109:15

**deciding** [8] - 90:20, 91:2, 93:25, 95:23, 103:3, 104:1, 119:24, 120:1

**decision** [15] - 18:9, 25:12, 28:5, 79:21, 83:16, 84:8, 94:6, 98:9, 98:24, 99:10, 99:13, 99:17, 111:7, 123:5, 137:11

**decisions** [1] - 97:11

**decompress** [1] - 159:9

**decorum** [1] - 135:25

**decrease** [1] - 117:16

**deduct** [2] - 115:23,
116:1
**deducted** [1] -
133:14
**deem** [1] - 40:5
**deemed** [1] - 19:1
**deep** [1] - 157:13
**defend** [1] - 58:7
**defendant** [9] - 38:5,
88:6, 117:25, 118:1,
118:2, 119:9, 119:11,
120:8
**Defendant** [2] - 1:5,
1:18
**Defendant's** [4] -
4:5, 4:6, 4:7, 24:8
**defendant's** [8] - 4:7,
11:12, 11:15, 26:3,
38:12, 38:21, 44:3,
120:11
**defendants** [1] - 3:9
**DEFENSE** [1] - 2:6
**defense** [16] - 7:5,
9:3, 9:7, 9:10, 9:13,
9:15, 10:7, 10:13,
10:17, 11:20, 40:22,
63:18, 95:5, 121:5,
131:22, 143:3
**defenses** [1] - 8:24
**define** [1] - 100:21
**defined** [2] - 97:6,
110:3
**definiteness** [1] -
114:13
**definition** [6] - 29:1,
30:1, 65:9, 96:23,
98:15, 99:24
**definitions** [2] - 30:7,
30:12, 97:7, 100:23
**definitive** [1] - 3:6
**degree** [2] - 120:2,
120:4
**delay** [1] - 79:21,
127:12
**delayed** [2] - 80:4,
80:5
**deliberate** [3] -
76:17, 122:4, 123:6
**deliberating** [2] -
126:17, 129:13
**deliberation** [7] -
72:20, 81:20, 128:9,
130:8, 134:24,
141:10, 157:22
**deliberations** [16] -
8:9, 8:13, 8:20, 74:22,
122:9, 123:12,
126:19, 127:20,
128:5, 129:10,
129:19, 130:9,

130:14, 134:25,
135:3, 158:11
**deliberative** [1] -
158:7
**deliver** [1] - 126:12
**demeanor** [1] - 109:4
**democracy** [1] -
157:17
**demonstrate** [3] -
26:6, 27:15, 31:6
**denial** [1] - 105:19
**denied** [2] - 22:16,
32:12
**denies** [2] - 95:3,
97:19
**deny** [1] - 105:17
**deposition** [9] - 2:7,
3:21, 3:24, 4:12, 58:1,
92:23, 93:6, 93:10
**depositions** [1] -
93:5
**depravation** [1] -
121:15
**depth** [1] - 72:1
**deputy** [3] - 136:17,
143:6, 143:9
**DEPUTY** [107] -
142:12, 143:24,
144:2, 144:5, 144:8,
144:11, 144:17,
144:20, 144:23,
145:1, 145:4, 145:7,
145:10, 145:14,
145:16, 145:19,
145:23, 146:1, 146:4,
146:7, 146:10,
146:13, 146:16,
146:19, 146:22,
147:1, 147:4, 147:7,
147:12, 147:16,
147:20, 147:24,
148:2, 148:5, 148:8,
148:11, 148:14,
148:17, 148:20,
148:23, 149:1, 149:4,
149:7, 149:10,
149:13, 149:16,
149:20, 149:23,
150:1, 150:4, 150:7,
150:10, 150:13,
150:16, 150:19,
150:22, 150:25,
151:3, 151:7, 151:10,
151:13, 151:17,
151:21, 151:24,
152:2, 152:5, 152:8,
152:11, 152:14,
152:17, 152:20,
152:23, 153:1, 153:4,
153:7, 153:10,

153:13, 153:17,
153:20, 153:23,
154:1, 154:4, 154:7,
154:10, 154:13,
154:16, 154:19,
154:22, 154:25,
155:3, 155:6, 155:9,
155:13, 155:16,
155:19, 155:22,
155:25, 156:3, 156:6,
156:9, 156:12,
156:15, 156:18,
156:21, 156:24,
157:2, 157:6
**description** [6] -
54:11, 56:24, 57:1,
57:5, 63:1, 68:10
**descriptions** [1] -
103:17
**deserve** [1] - 129:14
**deserves** [2] - 92:5,
94:15
**designed** [5] -
118:20, 121:14,
139:4, 140:18, 142:14
**desk** [1] - 68:22
**detail** [6] - 31:16,
35:13, 44:23, 44:24,
92:1, 100:22
**detailed** [1] - 98:1
**deter** [6] - 118:1,
119:10, 119:16,
119:20, 120:5, 120:10
**determination** [4] -
18:19, 56:25, 81:1,
110:9
**determinative** [2] -
109:12, 109:13
**determine** [8] -
35:10, 86:24, 87:14,
94:16, 107:5, 115:9,
116:12, 127:5
**determined** [2] -
87:12, 94:7
**determining** [7] -
19:22, 20:5, 102:22,
104:23, 110:18,
112:7, 112:15
**develop** [2] - 9:20,
10:13
**difference** [2] -
81:12, 86:16
**different** [9] - 5:14,
40:24, 49:25, 59:23,
72:6, 72:14, 89:9,
91:20
**differently** [2] -
91:23, 95:12
**difficult** [1] - 114:1
**difficulty** [1] - 76:2

**direct** [12] - 18:14,
57:11, 89:24, 90:1,
90:7, 90:17, 109:24,
110:1, 110:5, 110:9,
112:2, 160:24
**directed** [1] - 157:11
**direction** [1] - 36:19
**directly** [1] - 21:14
**directs** [1] - 125:6
**disabilities** [1] -
96:18
**Disabilities** [7] -
9:12, 11:14, 11:19,
96:10, 96:13, 96:15,
104:15
**disability** [77] - 4:21,
5:2, 5:25, 6:2, 13:13,
13:16, 15:8, 15:15,
15:18, 16:6, 16:8,
19:15, 19:22, 20:5,
23:5, 23:16, 23:17,
24:17, 25:11, 34:7,
38:7, 41:4, 52:6,
53:19, 54:22, 55:13,
56:8, 59:4, 59:18,
62:13, 62:18, 62:19,
72:2, 72:3, 82:8,
83:22, 94:24, 94:25,
96:12, 96:20, 96:23,
97:1, 97:4, 97:15,
97:16, 98:8, 98:13,
98:15, 98:16, 98:23,
99:3, 99:6, 99:8,
99:12, 99:15, 99:24,
100:3, 102:8, 104:9,
104:12, 104:22,
105:15, 105:18,
105:21, 105:24,
106:4, 106:20, 107:2,
108:2, 109:6, 109:8,
111:9, 125:8, 131:22,
137:2, 137:10
**disable** [1] - 55:16
**disabled** [41] - 12:6,
12:15, 15:16, 16:21,
16:24, 19:2, 21:23,
21:25, 22:2, 22:5,
25:15, 26:7, 27:16,
28:17, 28:23, 29:14,
30:2, 30:16, 31:7,
32:11, 33:9, 33:11,
33:17, 33:18, 55:21,
60:18, 60:19, 65:8,
65:15, 65:19, 73:2,
80:19, 82:7, 96:25,
97:13, 98:3, 100:1,
100:4, 100:17,
104:10, 111:8
**disagree** [8] - 15:13,
19:6, 30:21, 53:24,

53:25, 73:23, 74:1,
122:22
**disagreed** [1] - 74:15
**discipline** [3] -
52:25, 53:5, 82:16
**discouraged** [1] -
108:17
**discovery** [1] - 93:4
**discredit** [1] - 91:21
**discredited** [1] - 92:8
**discrepancies** [1] -
91:18
**discrepancy** [2] -
91:24, 92:1
**discretion** [2] -
42:20, 119:4
**discretionary** [1] -
118:24
**discriminate** [5] -
71:23, 72:17, 77:19,
96:19, 99:2
**discriminated** [3] -
23:15, 98:6, 100:18
**discriminating** [2] -
79:10, 94:22
**discrimination** [18] -
41:6, 96:12, 96:17,
111:20, 112:9,
112:11, 113:23,
113:25, 114:4,
118:10, 118:14,
118:21, 121:24,
125:10, 125:17,
139:5, 140:18, 142:15
**discriminatory** [3] -
4:23, 99:20, 112:13
**discuss** [6] - 48:1,
82:25, 119:3, 127:3,
127:4, 136:1
**discussed** [7] - 14:6,
39:13, 70:17, 119:6,
129:1, 134:10, 135:7
**discussing** [1] -
39:20
**discussion** [1] -
133:10
**disinclined** [1] - 6:2
**disk** [1] - 68:22
**dispute** [2] - 34:22,
128:6
**disregard** [3] -
88:10, 118:15, 119:10
**disregarded** [1] -
88:22
**distinct** [1] - 114:5
**distinction** [4] -
16:13, 28:7, 28:18,
90:16
**distinguished** [1] -
112:6

**distract** [1] - 84:18
**distracting** [1] - 43:11
**distribute** [1] - 85:11
**distributed** [2] - 85:15, 85:16
**DISTRICT** [3] - 1:1, 1:1, 1:8
**District** [2] - 143:13, 143:14
**distrust** [1] - 92:15
**disturbed** [1] - 45:1
**DIVISION** [1] - 1:2
**Doc** [1] - 57:3
**doctor** [12] - 5:17, 48:17, 50:20, 60:23, 74:5, 74:6, 77:14, 77:15, 77:16, 77:17, 82:25
**doctor's** [1] - 72:11
**doctors** [3] - 51:19, 67:12, 67:14
**document** [10] - 5:7, 5:9, 5:24, 48:20, 60:3, 61:16, 61:21, 83:17, 83:19
**documents** [2] - 79:4, 88:2
**dollar** [2] - 121:10, 121:14
**dollars** [1] - 62:8
**done** [16] - 49:19, 52:20, 53:14, 63:4, 70:12, 72:9, 80:5, 82:12, 82:25, 92:10, 92:18, 92:19, 117:21, 118:8, 118:11, 124:1
**door** [4] - 60:22, 64:24, 68:5, 82:10
**double** [2] - 11:3, 49:15
**doubt** [2] - 49:17, 96:5
**down** [13] - 47:7, 51:25, 53:14, 56:4, 57:3, 66:24, 67:17, 69:1, 69:2, 69:3, 69:16, 69:24, 84:14
**dozen** [1] - 66:19
**Dr** [50] - 2:7, 3:8, 3:19, 3:21, 4:5, 5:23, 50:3, 50:4, 50:8, 50:9, 50:11, 50:21, 51:15, 51:20, 54:3, 54:6, 54:7, 55:8, 55:15, 55:16, 55:17, 55:19, 55:20, 55:25, 56:6, 56:8, 56:12, 56:19, 56:20, 56:21, 56:24, 57:2, 57:17, 59:7,

59:9, 59:11, 62:25, 63:2, 66:12, 70:17, 73:8, 73:10, 74:2, 74:10, 79:19, 79:25, 84:1
**draft** [7] - 29:8, 32:4, 38:14, 38:25, 39:6, 39:7, 39:8
**dramatically** [3] - 59:22, 59:23, 62:10
**draw** [1] - 89:5
**drawing** [1] - 112:18
**drawn** [1] - 12:18
**Drexel** [4] - 26:9, 26:10, 28:5, 33:21
**drive** [1] - 76:10
**drop** [1] - 76:12
**dropped** [1] - 71:12
**drops** [3] - 71:15, 76:12, 90:11
**drum** [1] - 68:18
**due** [3] - 20:9, 104:4, 134:25
**duly** [2] - 139:10, 142:20
**during** [17] - 4:12, 15:24, 20:16, 43:19, 56:19, 84:17, 86:21, 115:25, 116:21, 122:24, 123:12, 124:2, 124:8, 126:19, 129:2, 130:22, 143:5
**duties** [20] - 45:15, 45:16, 45:17, 49:13, 49:22, 49:25, 52:16, 52:17, 52:22, 55:7, 58:18, 68:12, 68:13, 70:11, 70:13, 75:5, 75:16, 85:20, 103:3, 123:2
**duty** [16] - 48:11, 49:17, 72:13, 85:9, 85:20, 85:23, 86:7, 86:11, 86:24, 87:1, 114:15, 116:4, 122:11, 122:14, 123:5, 124:5

# E

**e.g** [1] - 137:25
**Eagle** [1] - 1:20
**earn** [3] - 117:5, 117:13, 117:18
**earned** [7] - 113:11, 114:3, 114:6, 116:11, 116:15, 117:12, 117:15
**earnings** [11] - 116:20, 116:25,

117:3, 117:9, 117:17, 133:15, 133:16, 134:5, 134:8, 134:16
**easier** [2] - 22:9, 134:20
**East** [1] - 1:16
**easy** [1] - 70:20
**eat** [1] - 69:2
**economist** [1] - 93:15
**economists** [1] - 93:14
**editing** [1] - 32:4
**education** [1] - 101:21
**EEOC** [1] - 15:6
**effect** [6] - 16:22, 70:22, 70:25, 91:23, 109:12, 109:13
**effort** [3] - 38:23, 120:24, 121:5
**efforts** [1] - 131:3
**eight** [5] - 68:22, 68:25, 69:4, 74:23, 74:24
**eighty** [1] - 66:20
**either** [15] - 19:14, 24:11, 26:6, 27:15, 40:24, 42:22, 47:4, 47:9, 90:17, 101:24, 105:1, 110:14, 112:2, 113:11, 141:15
**elected** [1] - 124:7
**element** [11] - 23:14, 24:2, 24:12, 36:4, 95:8, 106:7, 108:9, 108:14, 108:19, 114:4, 134:19
**elements** [8] - 8:23, 72:16, 83:9, 109:21, 113:5, 113:13, 119:5, 120:22
**eleven** [1] - 14:4
**eliminate** [4] - 13:9, 35:15, 96:17, 106:24
**eliminated** [6] - 10:24, 13:5, 13:25, 33:2, 110:2, 110:8
**eliminating** [1] - 35:25
**elsewhere** [3] - 11:5, 28:25, 42:10
**emotional** [2] - 120:17, 120:19
**emphasize** [1] - 8:17
**employ** [1] - 112:7
**employed** [1] - 114:1
**employee** [26] - 26:7, 27:16, 31:7, 44:16, 46:21, 47:6, 61:20,

63:5, 73:15, 75:4, 75:6, 75:7, 76:2, 76:3, 77:7, 78:18, 79:18, 103:13, 103:18, 106:19, 107:2, 107:5, 107:7, 107:8
**employee's** [6] - 26:5, 27:14, 28:1, 31:4, 31:5, 107:11
**employees** [6] - 67:1, 67:5, 87:18, 103:10, 103:21, 107:1
**employer** [29] - 26:5, 26:7, 27:13, 27:16, 27:25, 28:15, 29:13, 31:4, 31:7, 31:13, 51:19, 60:18, 62:1, 75:2, 75:4, 76:5, 96:19, 97:1, 98:17, 100:3, 102:9, 105:16, 105:19, 106:23, 107:4, 107:8, 107:10, 113:24, 113:25
**employment** [28] - 23:18, 25:11, 26:8, 27:18, 31:9, 45:21, 60:6, 71:25, 78:13, 78:14, 79:12, 97:11, 98:9, 98:25, 99:17, 99:18, 105:17, 108:4, 108:7, 108:16, 109:12, 109:15, 111:7, 113:12, 115:24, 116:21, 137:11, 138:5
**enabled** [1] - 105:8
**encourage** [1] - 135:24
**end** [10] - 14:13, 21:24, 26:2, 33:15, 34:17, 35:8, 59:14, 65:25, 75:14, 80:23
**engage** [8] - 7:20, 38:5, 60:20, 98:9, 98:24, 99:17, 109:15, 137:11
**engaged** [5] - 4:22, 107:20, 107:25, 137:24, 138:4
**engaging** [6] - 23:16, 23:18, 97:11, 108:18, 109:9, 111:10
**enjoyment** [1] - 112:23
**ensuring** [1] - 29:21
**entailed** [1] - 68:20
**enter** [1] - 157:11
**entered** [1] - 113:18
**entire** [3] - 53:24, 54:4, 142:1

**entirely** [1] - 88:22
**entitle** [1] - 38:2
**entitled** [16] - 16:14, 25:8, 32:2, 87:22, 93:5, 93:6, 99:22, 112:11, 116:24, 121:9, 121:12, 122:3, 124:15, 128:24, 134:4, 158:2
**entrance** [1] - 43:19
**envelope** [7] - 126:7, 126:10, 126:12, 126:16, 136:17, 141:3, 142:4
**epitome** [1] - 55:1
**equal** [2] - 87:21, 116:13
**equally** [2] - 128:23, 158:2
**Equipment** [7] - 2:1, 16:3, 81:22, 94:22, 95:2, 143:15, 160:1
**EQUIPMENT** [1] - 1:5
**equivalent** [1] - 116:7
**error** [3] - 92:2, 139:12, 140:13
**escort** [7] - 7:19, 42:25, 84:25, 130:13, 135:2, 136:4, 158:14
**especially** [1] - 21:5
**Esq** [3] - 1:12, 1:15, 1:19
**essence** [3] - 46:20, 62:7, 134:18
**essential** [54] - 4:18, 15:3, 16:25, 17:4, 17:23, 19:3, 19:5, 19:12, 21:9, 22:20, 34:1, 34:14, 35:5, 35:20, 48:21, 48:25, 49:8, 50:1, 69:17, 69:23, 70:10, 70:12, 71:19, 72:16, 76:4, 80:14, 95:7, 96:21, 97:21, 98:19, 101:23, 102:2, 102:13, 102:17, 102:20, 102:23, 102:25, 103:2, 103:4, 103:16, 104:2, 104:3, 104:18, 104:25, 105:4, 105:9, 106:2, 106:25, 107:7, 110:12, 121:2, 137:7
**essentially** [1] - 11:1
**establish** [6] - 21:22, 33:9, 33:16, 33:25, 95:7, 101:25
**established** [3] -

33:18, 95:10, 122:17
**estoppel** [5] - 16:10, 18:3, 18:9, 18:16, 18:20
**evaluate** [1] - 93:12
**evaluating** [2] - 89:16, 107:16
**evaluation** [18] - 45:18, 45:19, 45:21, 50:2, 50:20, 52:9, 56:18, 56:19, 56:25, 66:13, 73:3, 73:4, 78:3, 80:21, 82:21, 82:23, 83:1, 83:23
**evaluations** [5] - 5:12, 58:19, 58:20, 66:14, 78:5
**evening** [1] - 8:5
**event** [2] - 91:22, 121:23
**eventually** [2] - 55:13, 56:3
**everyday** [1] - 101:16
**evidence** [113] - 3:25, 12:22, 14:3, 14:24, 25:9, 32:19, 36:15, 51:12, 64:18, 65:1, 78:14, 81:2, 85:7, 85:21, 85:25, 86:12, 87:7, 87:24, 88:5, 88:7, 88:15, 88:20, 88:21, 88:23, 88:24, 89:11, 89:15, 89:16, 89:17, 89:19, 89:23, 89:25, 90:1, 90:7, 90:8, 90:13, 90:15, 90:18, 90:19, 91:13, 91:15, 92:9, 93:24, 94:4, 94:16, 95:6, 95:9, 95:11, 95:13, 95:14, 95:19, 95:22, 95:24, 96:3, 98:7, 98:13, 100:6, 102:16, 103:25, 104:7, 105:23, 107:25, 109:22, 110:17, 111:5, 111:22, 112:19, 112:25, 113:3, 113:6, 114:10, 114:23, 116:6, 116:23, 118:5, 118:18, 120:21, 121:25, 122:7, 122:13, 123:10, 123:14, 123:16, 123:22, 123:24, 124:11, 124:13, 127:19, 128:5, 128:10, 128:18,

128:20, 133:13, 134:12, 134:17, 137:1, 137:5, 137:9, 137:15, 137:20, 137:24, 138:2, 138:8, 138:11, 138:22, 139:1, 139:2, 140:15, 142:12, 160:9
**evolve** [1] - 45:15
**evolved** [2] - 52:15, 58:5
**evolving** [1] - 52:18
**exact** [4] - 37:3, 37:9, 37:15, 113:3
**exactly** [4] - 5:23, 10:1, 14:1, 25:12
**exam** [6] - 50:10, 53:6, 60:23, 60:25, 64:11
**examination** [5] - 18:15, 67:22, 70:17, 76:21
**examine** [1] - 77:18
**examined** [1] - 70:15
**examining** [1] - 89:14
**example** [3] - 90:1, 108:21, 109:2
**examples** [2] - 47:1
**exceeded** [1] - 106:13
**except** [2] - 79:16, 130:1
**exclusive** [1] - 124:5
**excuse** [2] - 41:2, 150:4
**excused** [3] - 157:20, 158:13, 158:16
**exercise** [2] - 42:20, 119:4
**exercised** [1] - 143:5
**exhibit** [4] - 5:20, 6:14, 62:7, 131:22
**Exhibit** [2] - 4:11, 6:19
**exhibited** [1] - 130:22
**exhibits** [12] - 4:2, 4:4, 43:2, 75:13, 80:24, 88:3, 89:2, 89:4, 96:3, 122:6, 130:11, 131:8
**exist** [4] - 53:8, 62:23, 107:18
**existed** [3] - 15:3, 104:6, 114:18
**existence** [1] - 88:17
**exists** [2] - 103:8, 110:9

**expect** [2] - 53:13, 87:5
**expected** [1] - 89:15
**expense** [1] - 133:15
**expenses** [10] - 117:1, 132:25, 133:1, 133:12, 133:13, 133:25, 134:6, 134:13, 134:14, 134:18
**experience** [3] - 89:8, 101:21, 103:21
**experienced** [1] - 112:24
**experiences** [1] - 68:6
**expert** [7] - 14:10, 38:17, 38:18, 38:19, 40:20, 62:6, 131:16
**expertise** [1] - 103:14
**explain** [4] - 50:11, 51:18, 97:5, 105:11
**explained** [3] - 60:3, 116:4, 134:21
**explains** [2] - 54:1, 54:22
**explicit** [1] - 98:20
**expressed** [1] - 24:3
**extend** [1] - 157:13
**extended** [2] - 109:1, 131:3
**extent** [6] - 104:20, 120:7, 120:9, 129:16, 130:23, 135:10
**extra** [1] - 141:11
**extremely** [1] - 5:19
**extricate** [2] - 11:1, 14:17
**eye** [2] - 72:1, 76:5
**eyes** [1] - 87:20

**F**

**facility** [4] - 67:21, 70:3, 71:3, 73:16
**facing** [1] - 43:2
**fact** [34] - 5:10, 10:11, 13:1, 15:21, 18:24, 26:4, 27:13, 27:25, 28:11, 28:15, 29:13, 31:3, 32:20, 45:10, 45:17, 45:22, 59:25, 65:16, 82:6, 87:18, 88:4, 88:14, 88:15, 88:17, 88:19, 90:10, 94:10, 95:20, 95:21, 95:23, 104:10, 111:1, 127:6, 159:4
**factor** [7] - 24:18,

98:9, 98:24, 99:7, 99:15, 103:24, 137:10
**factors** [6] - 91:3, 91:16, 93:20, 99:13, 103:5, 110:20
**facts** [23] - 13:20, 29:22, 34:22, 35:10, 42:9, 64:18, 65:2, 85:21, 85:24, 86:11, 86:23, 86:25, 89:6, 89:14, 90:9, 90:20, 94:6, 94:15, 94:20, 112:19, 122:12, 122:15, 123:21
**fail** [1] - 95:7
**failed** [13] - 22:5, 38:5, 92:11, 97:15, 97:24, 105:14, 106:14, 114:21, 114:24, 116:7, 121:8, 137:17, 138:12
**failing** [2] - 94:24, 111:9
**fails** [1] - 95:17
**failure** [5] - 38:1, 41:7, 125:13, 125:17, 129:3
**fair** [8] - 31:18, 32:1, 64:25, 89:19, 111:16, 113:6, 128:24, 157:17
**fairly** [5] - 3:5, 9:9, 11:17, 111:14, 123:2
**fairness** [4] - 62:4, 63:9, 63:10, 87:23
**faith** [10] - 38:23, 107:10, 107:16, 108:12, 118:18, 120:24, 121:5, 139:3, 140:16, 142:12
**falls** [2] - 29:25, 40:5
**falsehood** [1] - 92:2
**falsely** [1] - 92:14
**Family** [1] - 77:21
**far** [4] - 16:20, 35:23, 51:5, 51:6
**fashion** [4] - 19:18, 20:20, 41:2, 42:18
**favor** [2] - 121:23, 128:22
**favorable** [2] - 95:13, 95:14
**favoritism** [1] - 87:10
**fear** [3] - 58:24, 58:25, 128:21
**February** [4] - 4:19, 12:13, 15:4, 19:2, 65:6, 104:6
**Federal** [1] - 158:21
**federal** [7] - 96:12, 99:5, 118:9, 118:16,

119:10, 121:11, 121:15
**federally** [2] - 117:22, 118:7
**fees** [4] - 115:6, 115:7, 115:9, 159:1
**feet** [4] - 66:20, 68:25, 69:4, 69:25
**fellow** [2] - 123:10, 123:17
**felt** [2] - 4:25, 90:4
**few** [1] - 130:10
**fidget** [1] - 42:1
**fifth** [1] - 106:13
**fights** [1] - 55:11
**figure** [5] - 18:20, 31:21, 56:17, 115:23, 116:19
**filed** [3] - 59:3, 80:8, 158:20
**filing** [4] - 17:15, 17:19, 19:21, 104:8
**fill** [1] - 70:16
**filled** [2] - 55:15, 69:9
**fills** [4] - 56:9, 56:12, 56:14, 59:19
**final** [3] - 56:25, 79:11, 140:23
**finally** [3] - 44:5, 101:19, 119:18
**financial** [2] - 120:11, 120:14
**findings** [2] - 73:23, 74:2
**fine** [5] - 6:4, 28:7, 36:1, 43:4, 79:22
**finish** [1] - 65:4
**fire** [1] - 77:11
**first** [39] - 4:17, 10:25, 11:21, 12:1, 12:4, 14:25, 15:14, 18:22, 27:24, 33:3, 35:17, 35:25, 36:21, 38:22, 39:8, 41:6, 41:11, 44:3, 49:14, 53:12, 66:24, 82:23, 85:20, 98:1, 98:13, 105:24, 107:25, 108:8, 109:22, 120:22, 122:12, 125:8, 125:11, 125:16, 125:19, 127:3, 136:11, 136:25, 141:1
**fit** [4] - 13:1, 15:10, 47:21, 54:12
**fitness** [1] - 48:11
**fits** [3] - 18:18, 25:12, 45:4

**five** [3] - 41:11, 41:19, 132:8
**fixing** [4] - 39:8, 112:18, 113:4, 120:15
**fly** [1] - 69:10
**FMLA** [4] - 15:25, 47:17, 47:18, 52:4
**focus** [1] - 30:25
**focused** [1] - 45:22
**folks** [5] - 49:24, 54:17, 57:19, 61:15, 83:17
**follow** [6] - 34:17, 50:5, 85:11, 86:4, 87:7, 122:20
**follow-up** [1] - 50:5
**followed** [2] - 3:14, 108:23
**following** [14] - 87:25, 88:6, 98:12, 100:5, 103:6, 105:22, 106:18, 106:24, 107:24, 109:21, 110:20, 120:21, 157:24, 159:9
**follows** [1] - 134:3
**FOR** [1] - 1:1
**forbidden** [1] - 128:3
**foregoing** [1] - 160:22
**foreperson** [9] - 122:8, 126:2, 126:6, 126:12, 126:21, 136:8, 139:11, 141:4, 142:20
**FOREPERSON** [5] - 136:9, 136:13, 136:15, 141:24, 142:2
**forget** [1] - 68:5
**forklift** [5] - 45:24, 52:23, 70:6, 76:10
**form** [37] - 8:18, 9:11, 40:23, 41:12, 50:12, 52:5, 59:20, 70:16, 92:23, 113:19, 124:22, 124:24, 125:2, 125:5, 126:7, 126:15, 129:12, 135:20, 136:20, 136:21, 139:7, 139:19, 140:3, 140:4, 140:12, 140:24, 141:3, 141:5, 142:1, 142:6, 142:20, 142:22, 143:11, 143:19, 157:8, 159:15
**forms** [2] - 72:24, 77:15
**forth** [5] - 8:24, 24:6, 67:24, 143:10

**forty** [2] - 42:2, 70:2
**forward** [1] - 129:21
**four** [4] - 51:3, 52:16, 70:4, 82:15
**fourth** [3] - 36:4, 106:8, 125:12
**frame** [2] - 8:16, 15:25
**frankly** [2] - 14:25, 27:21
**free** [5] - 8:3, 62:1, 108:12, 117:6, 123:13
**frequently** [3] - 35:6, 49:19, 58:3
**front** [21] - 42:15, 42:17, 80:24, 113:15, 113:18, 114:5, 115:12, 120:17, 120:19, 133:1, 134:1, 138:14, 138:19, 145:7, 147:5, 149:4, 151:4, 153:1, 154:22, 156:18
**fruit** [1] - 5:3
**frustrated** [1] - 53:21
**fulfill** [4] - 105:4, 105:8, 105:10, 121:2
**full** [5] - 38:22, 72:12, 123:9, 128:8, 129:14
**fully** [2] - 105:12, 160:9
**function** [15] - 35:21, 49:1, 73:11, 103:4, 103:7, 103:9, 103:11, 103:12, 103:14, 103:19, 103:20, 104:1, 106:21, 106:25, 107:1
**functional** [1] - 59:20
**functioning** [1] - 101:2
**functions** [48] - 4:18, 15:3, 16:25, 17:4, 17:23, 19:3, 19:5, 19:13, 21:9, 22:20, 34:1, 34:14, 35:5, 48:21, 49:8, 69:17, 69:24, 71:19, 72:8, 73:17, 76:4, 80:14, 96:21, 97:21, 98:19, 101:24, 102:2, 102:13, 102:17, 102:18, 102:20, 102:23, 102:25, 103:1, 103:2, 103:15, 104:4, 104:18, 104:25, 105:4, 105:9, 106:2, 106:19, 107:7, 110:12, 121:2, 137:7

**fundamental** [2] - 103:3, 157:16
**funny** [1] - 37:1
**furthermore** [1] - 4:21
**future** [19] - 56:2, 113:12, 113:21, 114:1, 114:7, 116:13, 116:18, 116:24, 117:9, 117:11, 117:17, 117:18, 118:3, 119:12, 120:6, 120:10, 133:14, 134:4, 134:16

**G**

**gained** [1] - 59:21
**gap** [1] - 18:16
**general** [2] - 19:18, 101:8
**gentleman** [2] - 3:5, 141:9
**gentlemen** [24] - 3:23, 6:18, 7:10, 43:24, 44:11, 60:17, 61:2, 63:11, 63:17, 84:13, 84:20, 85:6, 85:19, 121:20, 125:1, 129:8, 130:7, 133:23, 135:1, 135:5, 136:7, 136:22, 140:11, 143:4
**gigantic** [1] - 45:8
**given** [12] - 52:1, 53:11, 81:24, 86:9, 86:19, 87:8, 90:17, 93:10, 93:12, 93:24, 121:22, 122:15
**giver** [1] - 131:14
**Goldberg** [1] - 1:12
**governed** [1] - 86:19
**governing** [1] - 86:15
**gown** [1] - 59:5
**great** [9] - 45:25, 66:14, 79:18, 80:1, 80:6, 81:25, 145:19, 155:9
**greater** [1] - 124:10
**ground** [2] - 50:25, 51:1
**guaranteed** [1] - 16:1
**guard** [1] - 11:12
**guess** [2] - 21:19, 112:21
**guidance** [2] - 36:14, 121:22
**guide** [1] - 119:4
**guided** [2] - 112:16,

128:18
**guy** [3] - 18:11, 45:9, 74:3
**guys** [4] - 48:5, 48:15, 55:18, 56:15

**H**

**half** [7] - 3:10, 7:12, 50:14, 52:15, 58:13, 66:19, 82:15
**hallmark** [1] - 158:8
**hamburger** [1] - 53:9
**hand** [4] - 52:3, 129:22, 136:16, 142:4
**handle** [1] - 71:14
**handled** [1] - 131:18
**hands** [8] - 3:17, 39:21, 39:23, 52:3, 54:19, 69:10, 77:5, 128:25
**handwrite** [1] - 140:2
**happy** [1] - 159:6
**hard** [5] - 44:16, 63:24, 64:22, 70:8, 81:5
**hardship** [8] - 9:4, 9:14, 9:19, 9:25, 10:8, 11:1, 121:4, 137:21
**hardworking** [1] - 47:7
**harm** [7] - 109:19, 110:6, 110:19, 110:22, 110:23, 110:24, 110:25
**harmless** [1] - 36:17
**HARRISBURG** [1] - 1:2
**Harrisburg** [3] - 1:5, 1:13, 1:25
**heads** [1] - 8:15
**health** [2] - 109:24, 110:6
**hear** [11] - 9:2, 11:8, 11:21, 51:8, 65:13, 77:2, 81:9, 88:11, 89:3, 91:5, 91:22
**heard** [32] - 9:6, 29:23, 45:10, 46:8, 50:2, 57:10, 57:14, 59:7, 60:12, 63:22, 65:21, 66:10, 67:12, 67:13, 69:8, 70:1, 70:5, 73:10, 75:12, 78:9, 78:22, 79:1, 79:15, 79:19, 79:25, 83:22, 85:6, 90:4, 93:13, 96:4, 122:13, 143:16
**heart** [1] - 64:6

**heavy** [3] - 70:1, 70:24, 71:12
**held** [4] - 103:19, 103:22, 111:4, 133:10
**help** [2] - 74:8, 75:7
**hence** [1] - 105:2
**hereby** [1] - 160:8
**highly** [1] - 103:12
**himself** [16] - 18:25, 22:18, 22:21, 46:25, 47:1, 51:9, 58:7, 66:7, 66:9, 71:8, 71:12, 79:5, 80:16, 97:22, 109:19, 109:25
**hire** [1] - 102:10
**hired** [2] - 72:4, 103:13
**hit** [1] - 76:10
**hmm** [1] - 56:12
**Hoffman** [17] - 8:4, 46:1, 46:2, 46:8, 47:25, 48:9, 50:3, 50:16, 52:22, 53:23, 60:19, 61:7, 66:18, 66:23, 67:13, 72:20, 82:4
**hold** [3] - 22:24, 26:12, 103:22
**home** [9] - 14:5, 44:17, 50:7, 50:13, 50:16, 53:18, 53:20, 53:22, 58:21
**honest** [3] - 36:25, 47:6, 123:15
**honestly** [1] - 81:7
**Honor** [63] - 3:3, 3:20, 4:1, 4:11, 4:16, 6:9, 6:22, 7:4, 7:8, 10:14, 11:7, 11:25, 12:18, 14:21, 15:13, 18:2, 18:21, 18:22, 20:8, 22:13, 24:3, 25:5, 27:11, 27:19, 29:3, 29:18, 29:20, 30:11, 30:22, 31:18, 32:14, 36:1, 36:15, 36:20, 37:13, 40:7, 40:11, 41:13, 41:14, 41:21, 41:24, 43:1, 43:5, 44:10, 63:21, 84:12, 84:15, 129:5, 129:6, 131:6, 132:16, 133:7, 135:14, 135:15, 135:16, 140:1, 141:7, 141:17, 142:25, 143:1, 158:25, 159:19, 159:22
**HONORABLE** [1] - 1:8

**hopefully** [1] - 43:20
**hour** [2] - 3:11, 7:12
**hours** [6] - 49:23,
68:23, 68:25, 69:4,
74:23, 74:24
**housekeeping** [1] -
6:21
**human** [4] - 49:7,
64:8, 64:13, 89:22
**hurt** [3] - 71:8, 80:16
**hurts** [1] - 71:15
**hybrid** [1] - 40:25

**I**

**idea** [4] - 5:24, 55:12,
71:1, 84:5
**identify** [1] - 120:25
**immediate** [1] -
126:25
**immediately** [1] -
159:7
**impairment** [16] -
12:7, 12:8, 26:5,
27:14, 28:1, 29:16,
31:6, 100:7, 100:10,
100:12, 100:13,
100:19, 101:1, 101:3,
101:8
**impartial** [5] - 65:1,
87:12, 123:9, 128:24,
157:17
**impartiality** [1] -
87:23
**impartially** [1] - 87:6
**impeached** [1] - 92:8
**importance** [2] -
91:25, 101:16
**important** [6] -
20:12, 55:17, 57:6,
89:13, 94:13, 122:25
**impression** [1] -
124:16
**improbabilities** [1] -
128:12
**IN** [1] - 1:1
**inaccurate** [2] - 55:3,
60:24
**inapplicable** [3] -
25:21, 60:24, 134:19
**inappropriate** [2] -
29:11, 34:21
**inches** [1] - 51:3
**incident** [3] - 14:4,
71:17, 82:15
**inclinations** [1] -
89:21
**include** [3] - 103:1,
103:6, 106:17
**included** [2] - 26:3,

38:22
**includes** [3] - 96:23,
98:16, 122:22
**including** [5] - 51:18,
91:3, 94:3, 97:4,
115:16
**inconsistencies** [1] -
91:18
**inconsistent** [2] -
10:6, 92:12
**inconvenience** [1] -
112:22
**incorporate** [8] -
11:10, 11:12, 11:16,
31:2, 35:16, 40:16,
42:7, 42:12
**incorporated** [1] -
39:4
**increases** [1] -
115:15
**incurred** [4] - 117:2,
133:16, 134:7, 134:15
**independent** [4] -
67:21, 124:10, 124:12
**indicate** [2] - 14:22,
86:22
**indicated** [14] - 7:11,
8:23, 18:14, 137:3,
137:12, 137:22,
138:1, 138:10,
138:13, 138:16,
138:18, 138:20,
138:25, 140:12
**indicating** [2] - 15:1,
43:18
**indication** [1] - 122:2
**indifference** [4] -
117:21, 118:7,
118:11, 138:24
**individual** [19] -
9:15, 16:20, 17:18,
17:22, 19:23, 20:6,
34:3, 41:5, 49:12,
98:18, 101:20, 102:5,
102:10, 104:14,
104:24, 104:25,
105:18, 106:1, 125:9
**individual's** [1] -
105:21
**individually** [1] -
143:7
**individuals** [6] -
16:5, 87:15, 87:21,
96:18, 100:1, 100:2
**ineffective** [3] - 58:8,
58:12, 58:14
**infer** [2] - 17:17,
56:15
**inference** [1] -
112:19

**inferences** [2] - 89:7,
128:19
**influence** [1] - 123:4
**influenced** [2] -
124:14, 128:21
**inform** [1] - 126:8
**information** [2] -
93:19, 132:3
**informed** [3] - 106:3,
106:7, 107:10
**initial** [1] - 37:13
**injury** [12] - 53:9,
111:14, 111:23,
112:1, 112:2, 112:6,
112:12, 112:14,
121:8, 121:13,
121:16, 121:17
**innocent** [2] - 92:2,
92:21
**innocuous** [1] -
36:18
**inserted** [1] - 23:4
**insofar** [1] - 93:7
**instance** [5] - 15:19,
38:3, 72:7
**instead** [2] - 19:19,
72:10
**instruct** [10] - 33:4,
48:23, 85:9, 101:17,
111:1, 113:8, 115:11,
117:19, 122:18,
133:20
**instructed** [9] -
87:24, 88:18, 95:25,
114:8, 114:15,
115:22, 120:16,
121:18, 135:6
**instructing** [1] -
111:2
**instruction** [38] -
10:8, 11:2, 11:11,
11:13, 11:15, 16:21,
17:12, 17:20, 17:25,
23:21, 24:7, 24:9,
24:10, 24:14, 26:2,
26:14, 26:25, 27:4,
27:23, 27:25, 28:9,
30:23, 31:19, 34:21,
38:12, 38:16, 38:19,
38:21, 40:3, 40:6,
42:8, 53:1, 86:1,
99:14, 119:6, 134:8,
140:23
**instructions** [73] -
3:15, 7:13, 7:20, 7:22,
9:6, 9:11, 10:9, 11:6,
11:20, 11:24, 15:11,
21:3, 21:15, 21:20,
24:1, 24:25, 26:16,
26:24, 27:21, 28:25,

29:8, 30:7, 30:10,
30:12, 30:20, 30:24,
31:16, 32:6, 34:9,
37:6, 37:21, 39:2,
40:8, 40:21, 41:9,
42:11, 48:24, 62:14,
65:14, 84:22, 85:10,
85:13, 85:15, 85:16,
86:2, 86:9, 86:18,
86:19, 86:20, 97:2,
98:1, 98:21, 99:24,
104:21, 105:12,
113:16, 121:21,
122:1, 122:5, 122:21,
122:23, 122:24,
122:25, 125:5, 126:2,
128:20, 132:5, 133:2,
133:5, 133:17, 134:2,
135:11
**insufficient** [3] -
26:6, 27:15, 31:6
**intangible** [1] - 113:1
**intended** [4] - 8:18,
35:12, 124:2, 129:12
**intent** [4] - 24:21,
99:2, 99:5, 107:3
**intention** [1] - 123:7
**intentional** [1] - 92:2
**intentionally** [2] -
92:19, 98:5
**interactive** [6] - 37:4,
38:2, 38:5, 107:4,
107:9, 107:14
**interest** [5] - 91:9,
117:4, 117:13,
117:17, 123:22
**interesting** [3] -
14:15, 58:6, 59:17
**interestingly** [4] -
46:16, 57:5, 61:2,
82:18
**interference** [1] -
75:23
**internal** [4] - 61:16,
61:21, 83:19, 158:11
**interrupted** [1] -
130:24
**interruption** [1] -
43:21
**introduced** [1] -
113:3
**introductory** [1] -
11:5
**investment** [1] -
117:6
**invite** [2] - 79:13,
130:7
**invited** [1] - 80:23
**involved** [1] - 69:7
**involvement** [3] -

48:8, 48:9, 48:10
**involves** [1] - 17:1
**issue** [22] - 9:1,
12:19, 13:13, 18:3,
18:6, 18:10, 18:16,
18:20, 20:10, 20:12,
20:14, 20:17, 25:14,
36:5, 53:4, 106:9,
111:12, 125:25,
131:15, 132:23, 159:4
**issues** [9] - 9:13,
15:20, 56:13, 59:14,
128:10, 129:15,
133:18, 136:2, 158:2

**J**

**January** [5] - 14:3,
14:7, 52:9, 59:19,
66:17
**job** [137] - 15:25,
16:15, 16:19, 16:24,
16:25, 17:3, 17:8,
17:11, 17:23, 18:25,
19:4, 19:11, 21:10,
22:20, 35:5, 36:6,
45:3, 45:6, 45:7,
45:13, 47:20, 47:21,
47:22, 48:3, 48:5,
48:21, 48:25, 49:8,
49:17, 49:22, 49:25,
50:14, 50:23, 52:8,
52:14, 52:15, 52:17,
52:20, 53:2, 53:7,
53:13, 53:14, 53:17,
54:2, 54:11, 55:7,
56:23, 57:1, 57:5,
57:25, 58:1, 58:17,
60:9, 60:10, 63:25,
64:1, 64:10, 65:5,
66:8, 66:9, 66:16,
66:18, 67:23, 68:8,
68:14, 68:15, 68:20,
68:21, 68:24, 69:17,
69:24, 69:25, 70:9,
71:3, 71:7, 71:20,
71:21, 72:16, 74:5,
74:8, 74:16, 75:1,
75:4, 75:7, 75:13,
75:21, 75:24, 76:4,
77:20, 77:24, 78:22,
79:6, 80:14, 80:21,
82:12, 82:13, 83:24,
84:6, 85:22, 96:22,
97:21, 98:20, 101:12,
102:11, 102:17,
102:24, 103:8, 103:9,
103:13, 103:16,
103:17, 104:2,
104:18, 105:1, 105:5,
106:2, 106:10,

106:19, 106:21, 106:25, 107:1, 107:8, 110:12, 114:2, 114:7, 116:7, 122:18, 137:7

**job's** [2] - 101:23, 103:3

**jobs** [2] - 60:14, 101:11

**Judge** [1] - 64:19

**judge** [7] - 20:1, 48:22, 62:14, 65:3, 65:8, 65:11, 83:6

**JUDGE** [1] - 1:8

**judged** [2] - 87:22, 93:7

**judgement** [1] - 157:11

**judges** [5] - 86:11, 90:23, 94:20, 123:21

**judgment** [10] - 27:22, 72:15, 76:6, 78:20, 92:3, 103:15, 110:15, 112:17, 124:19, 158:19

**judicial** [3] - 16:10, 18:3, 157:19

**July** [1] - 80:6

**jumped** [1] - 45:3

**juncture** [1] - 141:6

**June** [1] - 59:16

**juror** [11] - 89:10, 124:17, 124:19, 124:20, 143:18, 145:19, 147:21, 149:16, 151:17, 153:13, 155:10

**JUROR** [106] - 143:23, 144:1, 144:4, 144:10, 144:13, 144:16, 144:19, 144:22, 144:25, 145:3, 145:6, 145:9, 145:13, 145:15, 145:18, 145:22, 145:25, 146:3, 146:6, 146:9, 146:12, 146:15, 146:18, 146:21, 146:25, 147:3, 147:6, 147:11, 147:15, 147:19, 147:23, 148:1, 148:4, 148:7, 148:10, 148:13, 148:16, 148:19, 148:22, 148:25, 149:3, 149:6, 149:9, 149:12, 149:15, 149:19, 149:22, 149:25, 150:3, 150:6, 150:9, 150:12, 150:15,

150:18, 150:21, 150:24, 151:2, 151:6, 151:9, 151:12, 151:16, 151:20, 151:23, 152:1, 152:4, 152:7, 152:10, 152:13, 152:16, 152:19, 152:22, 152:25, 153:3, 153:6, 153:9, 153:12, 153:16, 153:19, 153:22, 153:25, 154:3, 154:6, 154:9, 154:12, 154:15, 154:18, 154:21, 154:24, 155:2, 155:5, 155:8, 155:12, 155:15, 155:18, 155:21, 155:24, 156:2, 156:5, 156:8, 156:11, 156:14, 156:17, 156:20, 156:23, 157:1, 157:5

**jurors** [11] - 64:17, 68:4, 87:1, 122:11, 123:5, 123:10, 123:17, 124:15, 157:9, 158:6, 158:10

**Jury** [5] - 2:2, 2:12, 141:12, 141:19, 160:3

**JURY** [6] - 1:7, 136:9, 136:13, 136:15, 141:24, 142:2

**jury** [117] - 2:13, 3:5, 5:22, 6:3, 6:12, 7:18, 7:19, 7:24, 8:8, 8:16, 9:11, 12:14, 12:24, 14:13, 14:23, 15:1, 17:20, 18:7, 18:8, 18:19, 21:5, 24:1, 25:23, 27:20, 27:23, 29:23, 30:8, 30:9, 30:14, 31:24, 32:3, 34:23, 35:10, 35:14, 36:8, 36:15, 42:6, 42:14, 42:16, 42:25, 43:23, 44:9, 44:12, 48:18, 63:20, 81:4, 81:5, 85:1, 85:4, 85:17, 85:20, 94:19, 115:8, 117:24, 122:4, 122:8, 124:6, 124:20, 125:8, 126:3, 126:22, 127:15, 127:18, 127:23, 128:4, 129:23, 130:8, 130:13, 130:14, 131:9, 131:20, 131:24, 132:10, 132:20, 132:22, 133:19, 133:20,

133:22, 135:2, 135:6, 135:12, 135:19, 135:23, 136:4, 136:5, 136:12, 136:25, 137:3, 137:7, 137:12, 137:18, 137:22, 138:1, 138:6, 138:10, 138:13, 138:16, 138:18, 138:20, 138:24, 139:10, 139:17, 140:4, 141:4, 141:10, 141:16, 142:16, 142:24, 143:4, 143:5, 157:13, 157:18, 157:21, 158:9, 158:12, 158:15, 158:16

**jury's** [2] - 42:19, 158:11

**justice** [4] - 62:4, 63:8, 63:10, 95:15

**justified** [1] - 89:7

## K

**Katzman** [1] - 1:12

**keep** [16] - 10:7, 21:2, 21:7, 37:21, 38:10, 73:24, 76:7, 77:7, 77:23, 85:1, 97:2, 102:24, 126:24, 128:6, 129:23

**Kelly** [5] - 26:9, 26:10, 26:23, 28:5, 33:20

**kept** [5] - 66:6, 66:8, 77:20, 77:24, 80:21

**kern** [3] - 93:15, 93:22, 94:1

**kind** [6] - 44:25, 66:6, 76:2, 76:19, 83:1, 84:4

**kinds** [1] - 90:15

**Kline** [10] - 46:12, 47:13, 48:7, 52:20, 57:11, 57:21, 57:24, 58:6, 58:12, 79:16

**Kline's** [1] - 57:14

**knee** [11] - 56:2, 59:10, 59:16, 60:1, 65:23, 66:10, 70:18, 71:14, 74:20, 79:8, 79:20

**knees** [1] - 55:22

**knocked** [1] - 47:24

**knowingly** [2] - 92:14, 92:18

**knowledge** [2] - 89:20, 110:16

**known** [2] - 67:6, 96:13

**knows** [6] - 55:1, 55:2, 80:16, 90:2, 118:9, 118:12

## L

**laboring** [1] - 46:1

**lack** [1] - 124:13

**lacking** [1] - 11:19

**Ladies** [1] - 3:4

**ladies** [25] - 3:23, 6:18, 7:10, 43:24, 44:11, 60:17, 61:2, 63:10, 63:17, 84:13, 84:19, 85:5, 85:19, 121:20, 125:1, 129:7, 130:7, 133:23, 135:1, 135:4, 136:6, 136:21, 140:11, 141:9, 143:4

**language** [1] - 11:5, 20:15, 29:17, 32:7

**larger** [1] - 94:11

**last** [28] - 6:21, 8:5, 10:15, 12:1, 13:9, 13:12, 14:5, 15:7, 17:14, 20:2, 22:3, 25:7, 25:25, 26:19, 26:23, 32:17, 32:20, 33:1, 35:7, 35:15, 38:16, 49:9, 49:10, 57:5, 61:11, 66:13, 66:15, 82:14

**lasted** [1] - 110:21

**late** [1] - 26:18

**Law** [1] - 1:15

**law** [44] - 3:15, 7:13, 7:23, 15:6, 21:4, 48:15, 62:3, 63:8, 64:19, 65:2, 65:9, 65:11, 65:12, 84:23, 85:9, 85:23, 86:1, 86:3, 86:5, 86:6, 86:8, 86:15, 86:17, 87:3, 87:7, 87:9, 87:20, 90:16, 96:13, 114:10, 114:16, 118:9, 118:12, 118:19, 122:14, 122:19, 128:21, 129:4, 132:5, 139:3, 140:17, 142:13, 158:19

**lawful** [1] - 99:20

**laws** [1] - 67:4

**lawsuit** [4] - 13:18, 79:18, 80:8, 88:5

**lawyers** [6] - 60:14, 86:17, 88:8, 88:9, 93:1, 127:9

**lay** [2] - 21:5, 77:11

**learns** [1] - 60:7

**least** [2] - 46:14, 47:5

**Leave** [1] - 77:22

**leave** [16] - 15:5, 15:25, 19:16, 37:17, 54:12, 68:4, 71:20, 72:5, 72:11, 72:24, 77:12, 82:10, 84:3, 104:7, 130:1, 140:24

**left** [2] - 72:1, 75:22

**leg** [1] - 53:9

**legal** [3] - 4:17, 18:9, 118:25

**legs** [1] - 70:19

**leisure** [1] - 8:4

**length** [1] - 8:19

**lengthy** [1] - 159:9

**less** [2] - 111:17, 114:2

**letter** [9] - 53:22, 53:23, 54:1, 54:19, 56:6, 75:12, 77:25, 79:11, 83:19

**letters** [1] - 61:4

**liability** [1] - 59:1

**liable** [2] - 88:6, 111:4

**life** [12] - 33:5, 59:22, 59:23, 68:6, 100:9, 100:14, 100:20, 101:4, 101:15, 101:16, 101:18, 112:23

**lift** [10] - 34:16, 35:2, 51:20, 55:4, 55:8, 60:5, 69:21, 69:22, 73:9, 74:11

**lifted** [1] - 70:24

**lifting** [7] - 60:4, 69:7, 69:19, 69:20, 70:21, 71:13, 71:16

**light** [5] - 32:20, 89:8, 89:20, 91:15, 113:6

**likelihood** [1] - 110:23

**likely** [4] - 95:12, 95:20, 110:25, 119:20

**limit** [4] - 100:8, 100:11, 100:20, 129:13

**limitation** [2] - 28:20, 41:25

**limitations** [1] - 80:13

**limited** [6] - 62:11, 88:25, 89:3, 100:14, 103:10, 106:17

**limits** [3] - 17:16, 101:3, 101:9

**limp** [3] - 28:13,

28:21, 65:18
**lines** [2] - 10:4, 39:11
**list** [3] - 49:2, 49:17, 55:6
**listen** [4] - 48:24, 85:13, 97:2, 123:11
**listened** [1] - 73:21
**literally** [2] - 16:2, 55:5
**litigating** [1] - 115:6
**lived** [1] - 63:25
**logical** [2] - 38:10, 41:2
**look** [14] - 14:25, 16:20, 30:11, 40:15, 48:15, 48:19, 49:3, 49:9, 57:8, 61:9, 66:15, 68:7, 70:2, 79:4
**looked** [1] - 25:6
**looking** [5] - 14:9, 24:18, 26:15, 26:23, 79:20
**looks** [1] - 72:22
**lose** [1] - 71:21
**loss** [4] - 112:23, 114:20, 117:9, 117:16
**losses** [2] - 113:20, 114:11
**lost** [8] - 17:7, 18:25, 19:11, 26:18, 62:5, 62:8, 79:6, 115:14
**loved** [2] - 47:21, 64:10
**low** [1] - 74:4
**lower** [1] - 49:18
**lunch** [4] - 69:2, 84:23, 130:9, 132:17
**lunchtime** [1] - 3:17

**M**

**ma'am** [1] - 143:20
**mail** [1] - 78:1
**main** [2] - 66:20, 122:11
**maintained** [1] - 61:23
**Major** [1] - 101:15
**major** [6] - 33:5, 100:9, 100:14, 100:20, 101:4, 101:18
**malice** [5] - 117:21, 118:6, 118:8, 118:15, 138:23
**malicious** [1] - 119:9
**man** [8] - 44:16, 52:11, 63:24, 63:25, 64:10, 78:5
**management** [9] -

46:8, 47:25, 50:6, 54:4, 60:22, 82:24, 118:5, 138:22
**manager** [2] - 58:12
**managers** [1] - 65:17
**manner** [3] - 19:15, 91:8, 128:3
**manual** [1] - 51:14
**Manufacturing** [1] - 26:15
**Manzullo** [1] - 24:13
**manzullo** [1] - 37:5
**MANZULLO** [4] - 24:15, 24:24, 37:8, 37:24
**March** [1] - 55:19
**marginal** [2] - 103:1, 106:19
**mark** [1] - 29:5
**Market** [1] - 1:13
**massage** [1] - 20:20
**material** [1] - 92:14
**materially** [3] - 40:24, 108:3, 108:15
**math** [2] - 48:16, 49:16
**mathematical** [1] - 114:12
**matter** [13] - 6:22, 16:7, 44:14, 68:2, 91:25, 92:15, 128:7, 129:4, 129:14, 141:11, 143:12, 143:14, 158:19
**matters** [4] - 42:5, 42:22, 158:22, 159:18
**McKinney** [17] - 7:18, 7:23, 42:24, 84:25, 124:23, 130:12, 131:12, 132:2, 132:7, 135:1, 136:3, 142:4, 143:2, 143:11, 157:7, 157:9, 158:14
**mean** [12] - 13:18, 15:16, 26:20, 28:16, 65:18, 76:25, 77:6, 97:9, 100:25, 104:13, 111:3, 134:14
**meaning** [11] - 33:6, 33:10, 33:19, 98:14, 98:21, 100:4, 101:18, 105:25, 106:11, 109:6, 137:2
**meanings** [1] - 97:5
**means** [14] - 20:9, 48:23, 90:24, 95:11, 98:6, 101:1, 101:20, 108:15, 109:13, 110:5, 114:17,

127:16, 136:23, 160:24
**meant** [2] - 86:21, 111:18
**measure** [1] - 121:21
**Mechanicsburg** [1] - 1:16
**Medical** [1] - 77:22
**medical** [12] - 67:13, 67:21, 70:16, 71:3, 72:5, 72:11, 72:15, 72:24, 73:16, 76:5, 110:14, 110:15
**medication** [2] - 65:24, 65:25
**meet** [9] - 3:11, 32:10, 56:20, 64:11, 73:16, 95:17, 100:16, 132:2, 158:12
**meeting** [1] - 39:19
**meetings** [2] - 46:7, 50:17
**member** [4] - 122:8, 127:15, 127:18, 128:4
**members** [4] - 85:16, 126:22, 157:12, 158:11
**memory** [3] - 91:7, 124:9, 124:16
**men** [1] - 52:19
**mental** [2] - 100:7, 112:23
**mentioned** [1] - 93:20
**mere** [7] - 26:4, 27:13, 27:25, 28:15, 31:3, 82:6, 88:4
**merely** [2] - 29:15, 108:10
**Merit** [1] - 160:18
**merits** [2] - 107:16, 108:9
**met** [1] - 60:22
**Michael** [3] - 1:12, 44:13, 63:13
**Middle** [1] - 143:13
**MIDDLE** [1] - 1:1
**middle** [3] - 33:24, 59:18
**might** [4] - 26:17, 58:25, 59:10, 108:17
**mind** [10] - 62:24, 73:24, 83:12, 84:14, 97:2, 102:24, 126:24, 127:21, 128:6, 140:23
**minds** [3] - 61:25, 96:9, 123:18
**minimize** [1] - 114:19
**minor** [4] - 11:17,

12:7, 12:9, 12:25
**minute** [2] - 52:19, 73:22
**minutes** [4] - 41:19, 42:2, 130:10, 132:8
**miscellaneous** [1] - 69:9
**misconduct** [1] - 120:10
**missing** [1] - 49:4
**mistake** [1] - 92:20
**mitigate** [5] - 97:24, 114:16, 114:22, 116:5, 138:12
**mitigated** [1] - 80:10
**mitigation** [6] - 14:8, 14:18, 15:10, 18:10, 18:18, 133:18
**model** [14] - 17:20, 21:15, 23:21, 24:1, 24:7, 24:13, 24:25, 25:6, 27:20, 32:6, 34:8, 37:6, 37:20, 38:19
**modified** [2] - 34:15, 102:14
**modify** [4] - 54:11, 75:13, 75:16, 75:18
**modifying** [2] - 36:6, 106:10
**moment** [4] - 37:10, 68:7, 77:9, 98:22
**Monday** [1] - 44:15
**monetary** [3] - 113:1, 113:20, 116:12
**money** [5] - 55:14, 62:6, 62:13, 117:15, 120:8
**months** [11] - 14:4, 18:12, 46:13, 47:14, 61:22, 77:21, 77:24, 80:22, 83:23
**morning** [10] - 3:2, 3:3, 3:4, 3:6, 8:14, 44:12, 59:7, 63:22, 73:11, 129:18
**mornings** [1] - 66:2
**most** [3] - 110:15, 128:7, 157:16
**motion** [4] - 27:22, 159:1, 159:10, 159:15
**motions** [1] - 158:19
**motivated** [4] - 99:14, 99:20, 112:8, 112:10
**motivating** [7] - 24:17, 99:8, 98:23, 99:7, 99:12, 99:15, 137:10
**motivation** [2] - 99:9,

99:10
**motive** [1] - 91:10
**move** [11] - 4:2, 6:15, 40:14, 40:18, 43:9, 43:12, 51:22, 55:5, 63:16, 68:24, 84:17
**moving** [1] - 69:25
**MR** [62] - 4:10, 4:16, 7:1, 7:8, 10:21, 11:25, 12:4, 12:10, 13:6, 13:10, 13:12, 14:1, 14:19, 14:21, 18:2, 19:25, 20:7, 20:12, 20:23, 23:10, 25:1, 25:22, 27:19, 29:10, 29:17, 30:4, 31:11, 32:24, 36:13, 37:23, 38:25, 39:3, 39:6, 40:2, 40:7, 40:12, 41:13, 41:21, 41:24, 42:3, 42:23, 43:1, 43:5, 43:14, 43:17, 44:10, 56:11, 82:3, 84:12, 84:15, 129:5, 131:12, 131:21, 131:25, 133:7, 135:14, 135:15, 141:8, 142:25, 158:25, 159:13, 159:17
**MS** [93] - 3:3, 3:20, 4:1, 4:4, 5:6, 6:4, 6:9, 6:14, 6:21, 7:4, 9:17, 9:21, 10:2, 10:14, 10:20, 10:22, 11:7, 12:18, 15:13, 16:4, 18:21, 19:24, 21:1, 21:17, 21:19, 22:12, 22:15, 22:23, 22:25, 23:3, 23:7, 23:11, 23:24, 24:15, 24:20, 24:24, 25:4, 26:1, 26:17, 26:22, 27:2, 27:6, 27:10, 27:13, 28:3, 29:3, 29:20, 30:21, 32:14, 32:16, 33:3, 34:11, 34:20, 35:19, 35:23, 36:1, 36:4, 36:20, 36:23, 37:8, 37:11, 37:17, 37:24, 38:11, 38:15, 38:20, 39:1, 39:5, 39:7, 39:18, 39:22, 39:25, 40:4, 40:10, 40:20, 41:14, 63:21, 129:6, 131:6, 131:10, 131:13, 131:19, 131:23, 132:16, 135:16, 140:1, 140:6, 140:8, 141:7, 141:17,

143:1, 159:19, 159:22
**must** [52] - 24:20,
34:5, 86:4, 86:25,
88:17, 88:21, 89:13,
95:18, 98:5, 98:7,
98:11, 99:1, 99:21,
101:20, 102:6, 105:5,
105:22, 107:8,
107:23, 108:15,
109:10, 109:20,
110:9, 110:13,
111:11, 111:13,
111:16, 111:23,
111:25, 112:7,
112:17, 114:17,
114:25, 115:5, 116:9,
116:19, 116:25,
117:3, 117:7, 121:10,
121:17, 123:8,
123:23, 124:18,
124:20, 124:21,
125:7, 125:21, 134:5,
134:13, 158:9, 158:20

**N**

**national** [1] - 96:16
**natural** [1] - 89:21
**nature** [3] - 4:15,
110:22, 132:5
**necessarily** [9] -
28:22, 38:22, 55:6,
59:1, 60:1, 103:24,
104:13, 108:25, 159:4
**necessary** [3] -
21:11, 96:22, 126:19
**need** [41] - 6:7, 6:15,
8:11, 15:2, 20:13,
20:16, 27:4, 31:18,
35:15, 38:16, 40:14,
40:18, 40:20, 42:20,
43:13, 46:18, 54:23,
56:2, 58:2, 59:10,
59:16, 60:1, 63:11,
69:12, 69:13, 69:14,
69:15, 73:19, 74:16,
74:18, 77:14, 97:3,
99:11, 105:19, 106:3,
106:8, 108:9, 113:2,
137:16
**needed** [8] - 47:22,
47:23, 57:16, 66:1,
66:2, 66:3, 71:6,
120:23
**needs** [8] - 31:9,
34:23, 45:25, 46:12,
62:4, 62:10, 63:9,
108:11
**never** [19] - 9:23,
15:18, 52:21, 52:25,
53:16, 54:6, 54:8,

54:16, 65:21, 65:22,
66:4, 66:5, 67:3,
74:10, 74:11, 80:19,
127:17, 127:22
**new** [5] - 26:22,
39:20, 45:16, 107:1,
158:20
**next** [7] - 13:9,
20:22, 32:15, 32:16,
75:8, 75:9
**nice** [1] - 11:18
**night** [3] - 10:15,
26:19, 26:23
**nine** [1] - 58:13
**NO** [1] - 1:3
**nobody** [4] - 48:6,
54:5, 57:21, 79:2
**nominal** [3] - 121:10,
121:13, 121:19
**none** [1] - 91:1
**nonetheless** [2] -
53:14, 56:16
**normally** [1] - 101:2
**Norman** [3] - 44:25,
47:20, 47:24
**note** [7] - 34:11,
106:22, 115:25,
125:18, 126:21,
126:23, 127:25
**notes** [10] - 56:21,
57:4, 122:6, 124:7,
124:8, 124:9, 124:15,
160:10
**nothing** [10] - 37:12,
44:20, 53:1, 60:15,
75:15, 86:20, 86:21,
89:9, 123:24, 124:1
**notice** [2] - 75:10,
82:17
**noticeable** [1] -
82:17
**November** [1] - 14:2
**number** [80] - 26:3,
29:4, 37:9, 57:10,
62:10, 62:11, 91:3,
94:7, 94:10, 94:11,
103:10, 125:23,
132:7, 132:14,
143:16, 143:18,
143:19, 143:21,
145:10, 145:20,
145:21, 145:24,
146:2, 146:5, 146:8,
146:11, 146:14,
146:17, 146:20,
147:8, 147:9, 147:13,
147:21, 147:24,
148:2, 148:11,
148:14, 148:18,
148:20, 148:23,

149:16, 149:17,
149:20, 149:23,
150:1, 150:10,
150:13, 150:16,
150:19, 150:22,
150:25, 151:7,
151:10, 151:13,
151:17, 151:18,
153:13, 153:14,
153:17, 153:20,
153:23, 154:1, 154:4,
154:7, 154:10,
154:13, 155:10,
155:13, 155:16,
155:19, 155:22,
155:25, 156:3, 156:6,
156:9, 156:12, 156:21
**numerically** [1] -
127:23

**O**

**oath** [5] - 64:16,
64:17, 92:25, 122:19,
129:21
**object** [2] - 14:5,
20:14
**objection** [8] - 4:10,
4:15, 6:25, 7:1, 20:8,
32:24, 34:11, 88:20
**objections** [5] - 4:9,
6:19, 20:18, 23:9,
88:9
**objective** [1] -
110:16
**obligation** [2] -
76:15, 76:16
**observation** [4] -
31:8, 31:14, 31:20,
65:20
**observe** [1] - 28:21
**observed** [7] - 28:12,
28:15, 29:18, 29:19,
30:17, 65:17, 65:18
**observes** [3] - 31:4,
31:5
**obtain** [1] - 116:7
**obtained** [3] - 115:2,
115:24, 116:11
**obtaining** [1] -
123:19
**obvious** [3] - 129:8,
139:16, 139:23
**obviously** [6] - 7:15,
30:22, 42:18, 72:23,
76:1, 133:17
**occasional** [1] -
49:14
**occasionally** [3] -
34:16, 57:10, 69:1
**occupied** [1] -

111:19
**occur** [1] - 15:24
**occurred** [8] - 16:1,
36:16, 110:23,
110:24, 111:21,
111:24, 114:4, 121:16
**October** [2] - 59:8,
66:10
**odd** [1] - 56:16
**OF** [2] - 1:1, 1:7
**offense** [1] - 24:3
**offer** [2] - 47:17,
76:20
**offered** [1] - 47:18
**office** [2] - 66:21,
159:14
**officers** [1] - 87:17
**Offices** [1] - 1:15
**official** [2] - 118:6,
138:22
**Official** [1] - 1:23
**Old** [1] - 1:20
**omission** [1] - 92:18
**once** [3] - 43:6,
46:14, 107:10
**one** [50] - 3:7, 4:10,
5:6, 6:14, 6:21, 7:12,
9:1, 11:9, 12:1, 15:14,
15:15, 20:13, 22:24,
26:4, 26:22, 31:12,
37:17, 38:16, 42:7,
44:17, 47:6, 51:12,
57:10, 64:5, 64:10,
65:6, 66:15, 68:2,
68:17, 68:18, 73:24,
75:4, 76:8, 81:11,
85:25, 90:8, 101:12,
103:24, 120:4,
121:10, 121:14,
122:7, 122:12, 123:4,
126:15, 126:16,
126:21, 131:21,
132:4, 157:16
**one's** [1] - 98:17
**ones** [2] - 50:1
**open** [9] - 60:10,
77:21, 77:23, 80:22,
82:16, 84:6, 122:10,
126:13, 127:21
**opened** [1] - 60:9
**opening** [2] - 46:17
**operation** [1] - 121:4
**opinion** [11] - 19:7,
26:10, 76:6, 86:5,
86:8, 86:22, 87:5,
93:16, 97:8, 111:3,
123:14
**opinions** [10] -
89:14, 93:14, 93:18,
93:19, 93:22, 94:1,

100:24, 123:17,
127:19, 128:5
**oplinger** [6] - 55:25,
56:10, 56:11, 56:12,
59:11, 84:1
**Oplinger** [17] - 2:7,
3:8, 3:21, 4:5, 5:23,
55:17, 55:19, 55:20,
59:9, 66:12, 73:8,
73:10, 74:2, 74:10,
79:19, 79:25
**oplinger's** [1] - 3:19
**Oplinger's** [1] - 59:7
**opponent** [1] - 38:3
**opportunities** [5] -
61:4, 71:24, 105:17,
116:8, 116:11
**opportunity** [4] -
8:22, 10:10, 41:18,
44:5, 52:2, 60:9, 91:4,
114:18, 114:24,
115:4, 133:3, 135:12,
139:24, 159:8
**opposed** [2] - 22:1,
24:6
**opposite** [1] - 95:15
**orally** [1] - 127:20
**order** [10] - 4:6, 33:7,
63:9, 98:4, 107:5,
124:19, 125:3,
136:21, 142:7, 142:22
**ordered** [1] - 88:21
**orders** [1] - 84:23
**organized** [1] - 64:2
**original** [1] - 157:8
**originals** [1] - 131:14
**OSHA** [10] - 17:8,
19:13, 51:9, 51:13,
51:17, 62:22, 62:24,
79:1, 79:2, 79:6
**otherwise** [7] - 45:5,
87:24, 88:18, 95:25,
105:3, 105:9, 127:24
**ought** [1] - 86:6
**outburst** [2] - 76:24,
77:1
**outcome** [1] - 91:10
**outside** [4] - 88:11,
90:6, 123:25, 136:3
**overruled** [1] - 6:19
**overview** [1] - 11:18
**own** [14] - 5:17,
61:16, 61:21, 76:6,
81:1, 81:21, 83:17,
90:3, 92:3, 97:8,
100:24, 123:13,
124:12, 130:24

# P

**P.C** [3] - 1:12, 1:15, 1:19
**p.m** [15] - 85:3, 85:4, 130:14, 132:19, 132:20, 133:22, 135:3, 135:21, 136:5, 139:21, 140:10, 141:12, 141:19, 158:16, 159:24
**PA** [8] - 1:5, 1:13, 1:16, 1:20, 1:25, 50:22, 51:20, 54:8
**paced** [1] - 110:10
**page** [45] - 2:5, 8:25, 9:5, 10:20, 10:25, 11:14, 12:1, 13:9, 13:10, 15:1, 21:2, 21:9, 21:17, 22:15, 23:7, 23:25, 24:14, 25:5, 26:1, 26:20, 31:3, 32:20, 33:2, 33:3, 33:23, 35:8, 35:16, 35:25, 36:4, 36:20, 38:15, 38:20, 39:1, 39:5, 49:9, 49:10, 57:6, 61:8, 85:12, 133:2, 134:2
**pages** [3] - 8:25, 11:3, 24:15
**paid** [1] - 94:4
**pain** [5] - 59:12, 65:24, 70:19, 112:22, 113:2
**painful** [1] - 59:11
**paint** [1] - 44:22
**pallet** [7] - 68:18, 68:19, 70:7, 70:8, 71:15, 76:11, 76:12
**paperwork** [2] - 56:9, 56:12
**paragraph** [19] - 10:25, 12:2, 13:5, 13:9, 14:25, 22:3, 22:23, 23:3, 23:12, 24:18, 24:22, 32:17, 32:20, 33:1, 33:24, 35:17, 36:21, 38:22, 39:8
**parentheses** [1] - 23:17
**parking** [5] - 29:25, 46:2, 48:14, 60:20, 72:21
**part** [28] - 19:1, 19:14, 27:24, 29:6, 30:24, 37:6, 37:20, 40:22, 63:1, 64:8, 75:8, 75:9, 86:7,

86:22, 91:1, 92:7, 92:18, 93:4, 99:12, 99:16, 112:1, 112:5, 112:14, 115:10, 131:19, 135:9, 139:13
**participate** [1] - 38:1
**participating** [1] - 157:15
**particular** [6] - 19:10, 99:4, 101:12, 104:1, 120:7, 120:9
**particularly** [1] - 89:9
**parties** [12] - 8:1, 87:5, 87:10, 88:8, 122:17, 128:7, 128:23, 129:14, 135:24, 158:17, 158:18, 158:23
**partisans** [1] - 123:20
**parts** [5] - 45:9, 45:11, 68:9, 69:10, 69:13
**party** [9] - 24:11, 44:1, 87:2, 93:2, 93:5, 94:9, 107:12, 107:15, 122:3
**party's** [2] - 38:1, 107:17
**pass** [2] - 60:25, 124:24
**Pass** [1] - 54:24
**passage** [1] - 109:1
**passed** [1] - 47:19
**passes** [1] - 53:23
**past** [2] - 42:2, 113:11
**Pat** [4] - 46:11, 52:21, 58:10, 83:15
**pat** [2] - 48:8, 57:23
**patient** [1] - 56:22
**pattern** [1] - 13:1
**pause** [7] - 10:23, 23:1, 85:18, 124:25, 133:21, 136:19, 142:5
**pay** [40] - 42:15, 42:17, 42:18, 113:15, 113:18, 114:5, 115:11, 115:12, 115:18, 115:22, 115:23, 116:3, 120:17, 120:19, 121:6, 133:1, 134:1, 138:14, 138:17, 138:19, 145:4, 145:7, 147:1, 147:5, 149:1, 149:4, 151:1, 151:4, 152:23, 153:1, 154:19, 154:23,

156:15, 156:18
**pays** [1] - 114:2
**PENNSYLVANIA** [1] - 1:1
**Pennsylvania** [1] - 143:14
**pension** [2] - 115:16, 116:2
**people** [4] - 76:14, 76:17, 81:10, 81:12
**per** [6] - 17:8, 19:13, 51:9, 51:13, 51:17, 79:6
**perceive** [2] - 29:15, 30:16
**perceived** [24] - 12:6, 12:8, 12:10, 21:23, 21:24, 21:25, 22:10, 22:11, 23:5, 29:18, 32:10, 60:18, 72:3, 82:7, 94:23, 94:25, 97:15, 97:17, 98:8, 98:23, 99:15, 100:19, 100:20, 105:16
**percent** [5] - 49:15, 49:20, 49:21, 49:24
**percentages** [1] - 49:11
**perception** [5] - 12:12, 26:8, 27:17, 46:5, 72:2
**perform** [42] - 15:3, 16:15, 16:19, 16:24, 17:3, 17:10, 17:22, 19:3, 19:12, 21:9, 22:19, 33:25, 34:13, 35:20, 51:21, 72:7, 72:15, 80:14, 87:1, 96:21, 97:20, 98:19, 100:8, 100:14, 101:4, 102:2, 102:10, 102:13, 102:16, 102:18, 102:23, 103:14, 103:18, 104:3, 104:18, 104:25, 106:1, 106:20, 107:7, 110:12, 123:2, 137:6
**performance** [4] - 66:13, 66:14, 103:7, 158:1
**performed** [6] - 19:5, 35:6, 103:20, 106:22, 119:18, 130:18
**performing** [5] - 101:6, 101:11, 103:9, 119:17, 119:20
**perhaps** [1] - 66:13
**period** [8] - 39:9, 60:16, 80:4, 115:25,

116:17, 116:18, 117:13, 159:7
**periods** [2] - 73:10, 74:12
**permanent** [1] - 29:16
**permissible** [1] - 118:4
**permit** [2] - 87:3, 114:14
**permitted** [1] - 89:5
**permitting** [1] - 119:5
**person** [15] - 58:7, 71:15, 89:12, 96:20, 101:7, 101:13, 104:11, 104:17, 110:7, 118:9, 118:12, 121:11, 122:9, 127:22
**person's** [2] - 101:3, 101:9
**personal** [2] - 62:24, 110:10
**personally** [3] - 118:6, 122:22, 138:23
**persons** [4] - 91:22, 96:24, 110:7, 128:2
**persuades** [2] - 114:22, 116:5
**pertains** [1] - 91:24
**pertinent** [1] - 42:9
**Peter** [3] - 1:15, 1:15, 44:7
**phone** [3] - 132:7, 132:12, 135:18
**phones** [1] - 43:22
**phrase** [1] - 5:2
**phrased** [1] - 37:25
**physical** [20] - 17:10, 50:18, 50:19, 50:24, 64:8, 64:12, 66:16, 67:22, 67:24, 67:25, 68:13, 68:14, 70:10, 71:4, 71:19, 74:15, 75:3, 75:17, 100:7, 100:25
**physically** [4] - 66:9, 71:10
**physician** [1] - 5:10
**physician's** [1] - 50:19
**pick** [6] - 51:22, 52:1, 55:5, 68:17, 69:12, 69:22
**picked** [1] - 81:7
**picture** [2] - 44:23, 44:24
**piece** [1] - 51:12
**place** [11] - 26:18, 54:8, 57:19, 96:17,

97:23, 108:5, 109:20, 109:25, 129:24, 132:14, 138:4
**placed** [5] - 15:4, 84:24, 92:25, 104:6
**PLAINTIFF** [1] - 56:10
**Plaintiff** [2] - 1:3, 1:11
**plaintiff** [5] - 13:17, 13:20, 38:6, 44:2, 88:4
**plaintiffs** [3] - 11:23, 38:4, 128:1
**plan** [1] - 61:17
**play** [1] - 115:10
**played** [8] - 3:21, 25:11, 57:2, 99:12, 99:16, 111:25, 112:13
**pleasure** [2] - 130:17, 130:25
**plug** [2] - 14:17, 22:9
**plus** [2] - 59:21, 68:18
**point** [31] - 5:1, 5:13, 10:12, 11:17, 14:9, 14:14, 14:16, 30:13, 32:22, 45:23, 46:2, 46:25, 47:4, 52:7, 52:8, 53:3, 55:18, 55:20, 56:1, 56:4, 59:4, 59:5, 59:9, 59:15, 59:20, 59:22, 59:25, 67:18, 75:18, 83:12, 157:23
**poisonous** [1] - 5:3
**policies** [4] - 118:19, 139:4, 140:17, 142:13
**policy** [1] - 96:16
**Polisher** [1] - 1:19
**poll** [5] - 141:15, 142:23, 143:3, 143:5, 143:6
**population** [1] - 101:8
**portion** [1] - 139:19
**posed** [5] - 22:18, 22:21, 46:19, 97:22, 109:24
**position** [23] - 9:22, 12:19, 13:25, 34:2, 34:14, 35:1, 35:9, 39:20, 48:22, 58:5, 76:23, 101:22, 102:3, 102:14, 102:21, 103:2, 103:5, 103:20, 104:4, 107:2, 111:19, 121:2, 140:25
**positions** [2] - 20:21, 103:23

**possible** [2] - 85:2, 93:8

**possibly** [1] - 39:20

**post** [2] - 158:18, 159:20

**potential** [2] - 16:12, 110:22

**pound** [1] - 68:18

**pounds** [14] - 34:17, 35:2, 35:3, 45:7, 51:21, 52:1, 55:4, 57:9, 57:13, 57:15, 59:21, 68:1, 69:20

**power** [1] - 66:7

**practicing** [1] - 81:3

**precision** [1] - 114:12

**preclude** [1] - 6:7

**prefer** [1] - 84:16

**preference** [2] - 43:5, 159:16

**prejudice** [5] - 87:2, 87:4, 91:11, 123:3, 128:22

**preliminary** [1] - 125:16

**prepared** [1] - 124:22

**preponderance** [37] - 25:9, 95:6, 95:8, 95:10, 95:22, 95:24, 98:7, 98:12, 100:6, 102:15, 105:23, 107:24, 109:22, 111:5, 111:22, 114:9, 114:23, 116:6, 116:23, 118:5, 118:17, 120:21, 121:25, 137:1, 137:4, 137:9, 137:15, 137:19, 137:23, 138:2, 138:8, 138:11, 138:21, 138:25, 139:2, 140:15, 142:11

**present** [12] - 3:18, 32:6, 43:15, 44:3, 44:4, 92:12, 93:3, 93:9, 116:13, 117:4, 127:2, 159:10

**presented** [10] - 3:14, 8:5, 9:10, 10:12, 90:16, 92:23, 113:7, 128:19, 129:15, 133:24

**presenting** [1] - 26:25

**preservation** [7] - 61:25, 62:2, 62:3, 63:7, 63:8, 82:22, 84:7

**preserved** [2] - 20:18, 32:12

**preside** [1] - 122:9

**pretrial** [1] - 93:4

**pretty** [3] - 83:25, 135:20, 139:22

**prevail** [6] - 62:4, 63:9, 63:10, 98:11, 105:21, 107:23

**prevent** [7] - 67:4, 118:20, 119:16, 120:10, 139:5, 140:18, 142:14

**prevented** [4] - 98:2, 109:17, 109:23, 116:16

**prevents** [3] - 101:1, 101:5, 101:10

**previously** [3] - 93:20, 110:3, 114:8

**primarily** [1] - 76:14

**primary** [1] - 99:9

**private** [2] - 87:14, 129:24

**probabilities** [1] - 128:12

**probable** [1] - 112:3

**problem** [15] - 9:22, 13:4, 16:4, 25:19, 25:20, 31:15, 35:11, 35:14, 36:3, 43:8, 52:21, 55:21, 65:22, 72:23, 84:16

**problems** [3] - 14:11, 56:13, 65:23

**Procedure** [1] - 158:22

**procedures** [5] - 5:3, 118:20, 139:4, 140:17, 142:14

**proceed** [3] - 125:19, 140:19, 140:22

**proceeding** [3] - 87:11, 131:5, 157:24

**PROCEEDINGS** [1] - 2:5

**proceedings** [4] - 130:23, 130:24, 158:8, 160:8

**Proceedings** [1] - 160:3

**process** [11] - 4:21, 19:25, 37:4, 38:2, 38:6, 107:4, 107:9, 107:14, 107:15, 157:15, 158:7

**produced** [3] - 12:22, 88:3, 96:4

**product** [1] - 69:6

**products** [1] - 69:7

**professionalism** [1] - 130:21

**progressed** [1] - 66:12

**prohibiting** [1] - 118:10

**prolonged** [2] - 73:10, 74:12

**proof** [5] - 33:12, 44:2, 90:8, 96:5, 122:17

**properly** [1] - 86:14

**proposed** [11] - 8:6, 8:22, 9:5, 10:8, 11:15, 11:23, 26:16, 40:3, 40:4, 42:8, 133:5

**protected** [15] - 107:21, 108:1, 108:5, 108:8, 108:18, 108:24, 109:10, 109:11, 109:14, 111:11, 117:22, 118:8, 137:25, 138:3, 138:6

**protection** [1] - 16:14

**protections** [1] - 157:16

**proud** [1] - 63:23

**prove** [23] - 24:21, 33:18, 35:20, 65:7, 65:16, 95:5, 95:11, 98:5, 98:7, 98:11, 99:1, 99:4, 99:8, 99:11, 101:19, 102:15, 105:22, 107:23, 108:9, 108:11, 114:11, 114:21, 121:8

**proved** [4] - 88:19, 89:6, 95:21, 95:24

**proven** [2] - 109:2, 109:21

**proves** [4] - 25:8, 100:5, 118:17, 120:20

**provide** [6] - 96:15, 97:25, 98:20, 99:23, 105:14, 106:14, 127:6, 137:17

**provided** [8] - 11:17, 40:25, 125:4, 126:4, 126:8, 136:24, 141:3, 142:16

**provides** [3] - 36:14, 36:18, 105:16

**providing** [6] - 36:5, 36:11, 106:9, 110:2, 137:20, 142:8

**proving** [4] - 32:10, 111:21, 114:9, 116:22

**public** [1] - 87:4

**publish** [1] - 136:22

**published** [1] - 143:17

**pumping** [1] - 49:5

**punish** [4] - 117:25, 119:9, 119:14, 120:8

**punished** [1] - 120:3

**punitive** [32] - 117:19, 117:24, 117:25, 118:3, 118:16, 118:23, 118:25, 119:11, 119:5, 119:7, 119:8, 119:14, 119:19, 119:22, 119:24, 119:25, 120:1, 120:12, 120:18, 120:20, 139:8, 140:20, 142:18, 145:12, 145:16, 147:12, 147:17, 149:14, 151:14, 153:11, 155:7, 157:3

**purported** [3] - 23:4, 23:11, 23:12

**purportedly** [3] - 22:9, 22:10, 97:15

**purpose** [13] - 11:13, 11:18, 15:22, 17:20, 17:25, 26:11, 31:25, 75:6, 78:5, 96:14, 119:24, 123:18

**purposes** [7] - 6:6, 20:18, 44:7, 89:18, 104:11, 119:7, 119:8

**push** [4] - 71:9, 80:15

**pushing** [1] - 66:8

**put** [21] - 4:23, 27:7, 29:4, 37:19, 38:18, 40:11, 43:6, 48:4, 60:21, 61:20, 62:5, 64:24, 69:15, 69:23, 70:7, 85:12, 95:13, 96:8, 111:18, 126:15, 135:12

**putting** [3] - 64:20, 69:6, 78:4

**Q**

**qualifications** [1] - 93:17

**qualified** [25] - 9:15, 15:2, 17:18, 17:22, 19:23, 20:6, 33:25, 34:3, 34:6, 41:4, 98:18, 98:22, 101:19, 102:1, 102:4, 102:7, 104:3, 104:14,

104:23, 104:24, 105:3, 105:18, 106:1, 125:9

**quality** [1] - 91:6

**questioned** [2] - 51:4, 54:5

**questions** [25] - 41:11, 42:21, 72:19, 81:8, 88:8, 93:2, 93:3, 125:2, 125:3, 125:4, 125:16, 125:24, 126:1, 127:1, 127:7, 132:6, 136:11, 141:21, 141:22, 142:10, 143:10, 157:25, 158:3, 158:6, 158:9

**quick** [3] - 42:5, 82:4, 84:9

**quickly** [5] - 7:16, 7:17, 131:11, 131:13, 132:9

**quite** [3] - 36:24, 45:4, 86:14

**R**

**raincoat** [1] - 90:11

**raining** [3] - 90:5, 90:7, 90:14

**raise** [1] - 129:22

**raised** [1] - 4:12

**raises** [4] - 46:3, 53:15, 95:4

**range** [3] - 49:19, 101:11, 135:18

**rather** [10] - 16:8, 18:7, 18:19, 27:23, 29:18, 30:8, 35:3, 44:23, 97:8, 121:18

**reach** [7] - 20:10, 69:15, 87:8, 126:1, 128:14, 129:16, 132:15

**reached** [7] - 126:5, 126:9, 127:25, 132:8, 136:12, 141:23, 157:10

**reaching** [3] - 89:24, 123:7, 128:17

**reaction** [3] - 37:3, 37:13, 37:15

**read** [12] - 12:5, 15:7, 20:2, 27:7, 27:10, 30:6, 33:13, 36:11, 37:2, 37:13, 123:25, 136:23

**reading** [5] - 13:13, 18:4, 19:7, 21:3, 140:12

**reads** [5] - 21:10, 40:6, 132:24, 134:3, 140:14
**real** [3] - 48:9, 48:10, 83:2
**reality** [1] - 69:12
**realized** [1] - 10:16
**reallocating** [1] - 106:18
**really** [24] - 8:24, 9:7, 9:14, 9:24, 12:21, 16:7, 47:4, 47:12, 48:6, 49:7, 54:8, 54:12, 55:24, 56:22, 57:6, 64:6, 66:11, 74:19, 75:14, 81:3, 130:21, 134:11
**reapply** [2] - 79:13, 80:23
**reason** [14] - 5:15, 5:16, 27:2, 27:3, 34:6, 34:21, 37:25, 51:19, 62:17, 62:25, 92:21, 102:7, 103:7, 117:7
**reasonable** [48] - 21:10, 21:12, 34:2, 36:7, 36:12, 38:23, 40:9, 42:11, 55:2, 67:9, 67:19, 67:20, 77:11, 77:13, 83:7, 89:7, 89:12, 89:19, 91:14, 96:5, 96:22, 101:24, 102:3, 104:19, 105:1, 105:6, 105:11, 105:14, 105:20, 106:11, 106:15, 106:16, 106:22, 107:6, 107:11, 107:17, 108:18, 110:2, 110:8, 110:14, 112:18, 114:18, 116:18, 120:25, 137:6, 137:17, 159:7
**reasonably** [9] - 112:3, 114:25, 115:2, 115:13, 116:8, 116:10, 116:15, 135:5
**reasons** [4] - 32:11, 93:18, 99:21, 133:19
**reassign** [1] - 75:5
**Rebuttal** [1] - 2:11
**rebuttal** [4] - 7:7, 41:18, 41:20, 44:6
**receipt** [1] - 19:15
**receive** [2] - 93:23, 116:21
**received** [12] - 7:21, 85:7, 86:13, 88:2, 88:23, 88:25, 89:18,

96:3, 113:14, 115:17, 117:11, 123:24
**receiver** [1] - 54:12
**receives** [1] - 117:10
**receiving** [1] - 104:12
**Recess** [2] - 42:4, 132:19
**recess** [7] - 7:11, 7:17, 41:23, 84:25, 85:3, 132:18, 135:20
**recessed** [1] - 7:24, 135:21, 141:12
**reckless** [6] - 117:21, 118:7, 118:11, 118:15, 119:10, 138:23
**recognition** [1] - 121:12
**recognize** [1] - 127:12
**recognizes** [2] - 44:7, 63:19
**recognizing** [1] - 8:16
**recollection** [2] - 124:11, 124:13
**recommend** [1] - 84:5
**recommended** [1] - 84:2
**reconvene** [2] - 41:16, 84:22
**record** [20] - 6:6, 6:24, 7:1, 7:2, 7:9, 9:20, 10:12, 20:19, 32:13, 34:12, 83:25, 131:19, 133:9, 133:10, 133:11, 133:13, 134:12, 134:17, 134:22, 135:13
**records** [1] - 93:3
**recover** [2] - 98:4, 109:4
**recovery** [3] - 113:13, 116:24, 134:4
**recur** [1] - 110:25
**redistributing** [1] - 106:18
**reduce** [7] - 114:19, 115:1, 116:9, 116:25, 117:3, 134:5, 134:13
**reduced** [2] - 62:11, 62:12
**reducing** [2] - 132:25, 134:1
**reduction** [2] - 117:7, 134:18
**reexamine** [1] -

123:13
**refer** [3] - 6:7, 19:17, 47:11
**reference** [4] - 12:25, 62:23, 133:2, 134:1
**referenced** [2] - 4:5, 11:4
**references** [1] - 11:2
**referred** [1] - 86:14
**reflexes** [1] - 76:11
**refuse** [1] - 158:3
**regard** [10] - 9:25, 12:21, 23:24, 26:1, 28:22, 29:14, 30:15, 32:17, 34:23, 88:19
**regarded** [33] - 12:6, 12:11, 12:16, 12:23, 21:21, 21:22, 22:1, 22:5, 25:15, 27:16, 28:2, 28:4, 28:6, 28:16, 29:1, 30:2, 31:7, 32:11, 32:21, 33:17, 65:8, 65:15, 65:19, 73:2, 80:19, 96:25, 97:12, 98:3, 98:16, 100:2, 100:4, 100:17, 111:8
**regarding** [3] - 5:11, 13:12, 28:19
**regardless** [8] - 86:5, 87:9, 88:1, 88:3, 96:2, 96:3, 125:21, 125:22
**regards** [1] - 26:7
**Registered** [1] - 160:18
**regulation** [1] - 33:20
**regulations** [1] - 15:6
**reiterate** [1] - 121:20
**reject** [3] - 23:22, 92:6, 92:17
**rejected** [4] - 33:22, 34:10, 36:19, 39:15
**related** [1] - 9:13
**relatively** [1] - 117:6
**release** [1] - 72:11
**relevance** [1] - 4:17
**relevancy** [2] - 4:11, 4:16
**relevant** [5] - 5:9, 5:10, 5:19, 104:20, 115:7
**reliability** [1] - 93:18
**relied** [5] - 50:13, 71:2, 72:14, 82:24, 110:15
**rely** [4] - 52:19, 94:1, 124:11, 128:8
**relying** [2] - 9:8, 26:9

**remain** [2] - 43:12, 136:10
**remainder** [1] - 23:25
**remember** [20] - 19:13, 37:9, 46:16, 47:3, 48:3, 48:5, 52:9, 53:6, 54:7, 56:21, 57:1, 57:2, 58:10, 62:16, 82:22, 82:23, 84:1, 97:7, 123:19, 124:7
**remind** [4] - 98:14, 100:23, 104:24, 116:3
**removed** [1] - 35:9
**render** [1] - 42:17
**rendered** [1] - 157:14
**repetitive** [2] - 40:18, 73:11
**rephrase** [1] - 39:11
**replacement** [5] - 56:3, 59:10, 59:16, 60:1, 79:20
**report** [2] - 6:24, 71:18
**reported** [1] - 33:11
**Reporter** [3] - 1:22, 1:23, 160:18
**reporter** [3] - 20:3, 93:2, 160:25
**reports** [1] - 131:16
**represent** [2] - 124:18, 158:8
**representation** [3] - 14:14, 16:9, 16:22
**representations** [3] - 14:2, 14:8, 19:11
**represented** [2] - 104:9, 131:4
**representing** [1] - 117:8
**reproduction** [1] - 160:23
**request** [13] - 24:8, 32:12, 34:9, 35:7, 36:19, 38:21, 39:10, 42:12, 106:5, 107:11, 108:10, 108:13
**requested** [4] - 24:11, 34:24, 36:9, 143:3
**requesting** [5] - 22:6, 95:1, 97:18, 108:1, 137:25
**require** [3] - 102:9, 106:23, 114:10
**required** [7] - 17:17, 35:6, 57:12, 77:22, 99:3, 99:8, 158:21

**requirement** [5] - 37:5, 51:16, 57:20, 100:16, 106:5
**requirements** [18] - 17:9, 17:10, 17:11, 58:17, 64:12, 67:22, 67:25, 68:1, 68:14, 68:15, 70:10, 71:4, 74:15, 75:3, 75:17, 79:7, 101:22, 118:25
**requires** [1] - 114:12
**requiring** [1] - 103:18
**reserve** [1] - 41:19
**resolved** [1] - 89:14
**resources** [2] - 120:12, 120:14
**respect** [5] - 5:22, 11:22, 20:9, 23:23, 24:11, 38:14, 41:12, 109:7, 135:6, 136:25, 139:13, 139:25, 143:10
**respected** [1] - 73:15
**respective** [2] - 20:21, 130:19
**respond** [6] - 82:18, 82:19, 125:22, 126:24, 139:17, 139:24
**responded** [1] - 134:22
**response** [4] - 127:1, 127:6, 133:6, 139:14
**responses** [1] - 41:10
**responsibility** [2] - 73:20, 124:5
**responsible** [2] - 132:25, 133:25
**rest** [2] - 18:5, 131:25
**rested** [1] - 66:25
**restored** [1] - 81:14
**restriction** [1] - 8:19
**restrictions** [1] - 5:8
**restricts** [2] - 101:5, 101:10
**restroom** [1] - 84:21
**result** [8] - 34:7, 102:8, 111:15, 112:2, 113:21, 117:23, 129:10, 138:9
**results** [3] - 78:25, 92:1
**retain** [2] - 102:10, 126:10
**retained** [1] - 114:7
**retaliated** [6] - 22:6, 78:11, 84:9, 97:17,

107:20, 109:9
**retaliating** [2] - 95:1,
111:10
**retaliation** [10] -
41:8, 78:8, 78:9,
78:10, 109:5, 109:7,
111:20, 121:24,
125:14, 125:20
**retire** [2] - 122:4,
141:10
**retired** [1] - 45:2
**Return** [1] - 2:14
**return** [11] - 3:13,
5:12, 34:5, 50:18,
102:6, 121:7, 124:20,
126:11, 129:17,
134:23, 141:2
**returning** [1] - 135:7
**reveal** [1] - 127:22
**review** [3] - 7:12,
8:22, 133:4
**reviewed** [1] - 28:6
**reviewing** [2] -
10:15, 94:5
**Ricky** [95] - 2:1,
44:12, 44:19, 45:1,
45:6, 46:15, 46:16,
46:18, 46:23, 47:1,
47:8, 47:18, 47:21,
48:1, 48:13, 48:21,
49:21, 49:25, 50:7,
50:13, 50:23, 50:24,
51:1, 51:8, 51:13,
51:17, 51:22, 51:24,
52:2, 52:7, 52:11,
52:13, 52:19, 53:11,
53:18, 54:10, 54:16,
54:22, 55:9, 55:20,
55:21, 55:22, 55:23,
55:25, 56:6, 56:16,
56:22, 57:16, 58:4,
58:16, 58:25, 59:2,
59:3, 59:5, 59:8,
59:14, 59:15, 59:16,
59:19, 60:5, 60:8,
60:15, 60:17, 60:21,
61:4, 61:19, 62:4,
62:5, 62:6, 62:8,
62:13, 62:20, 63:1,
63:3, 63:12, 63:13,
64:5, 67:8, 67:12,
71:20, 71:23, 72:10,
76:7, 77:20, 82:4,
82:5, 82:8, 82:13,
83:3, 83:13, 83:24,
84:3, 143:14, 160:1
**RICKY** [1] - 1:3
**Ricky's** [4] - 57:11,
61:6, 61:11, 61:15
**rid** [6] - 58:15, 61:18,

61:23, 61:24, 72:22,
78:6
**rights** [8] - 99:5,
111:6, 117:22, 118:8,
118:16, 119:10,
121:11, 138:24
**risk** [5] - 109:18,
110:5, 110:19,
110:21, 117:6
**RMR** [1] - 1:23
**Road** [2] - 1:16, 1:20
**Rockwell** [3] - 44:25,
47:20, 47:24
**role** [3] - 25:11, 57:3,
99:16
**room** [6] - 48:18,
122:4, 130:8, 134:24,
141:10, 157:22
**rule** [2] - 86:3,
135:25
**ruled** [1] - 108:25
**Rules** [1] - 158:21
**rules** [1] - 86:15
**run** [2] - 61:9, 131:13
**running** [1] - 55:14
**RUSSO** [12] - 10:21,
41:21, 41:24, 42:3,
42:23, 43:5, 43:14,
43:17, 44:10, 56:11,
82:3, 135:15
**russo** [3] - 2:11,
84:12, 84:15
**Russo** [12] - 1:15,
1:15, 2:9, 41:18, 44:5,
44:7, 44:8, 63:15,
73:21, 79:1, 84:11,
130:16

# S

**safely** [1] - 110:11
**safety** [4] - 47:10,
47:11, 109:24, 110:6
**salary** [1] - 115:15
**SALTZ** [89] - 3:3,
3:20, 4:1, 4:4, 5:6,
6:4, 6:9, 6:14, 6:21,
7:4, 9:17, 9:21, 10:2,
10:14, 10:20, 10:22,
11:7, 12:18, 15:13,
16:4, 18:21, 19:24,
21:1, 21:17, 21:19,
22:12, 22:15, 22:23,
22:25, 23:3, 23:7,
23:11, 23:24, 24:20,
25:4, 26:1, 26:17,
26:22, 27:2, 27:6,
27:10, 27:13, 28:3,
29:3, 29:20, 30:21,
32:14, 32:16, 33:3,

34:11, 34:20, 35:19,
35:23, 36:1, 36:4,
36:20, 36:23, 37:11,
37:17, 38:11, 38:15,
38:20, 39:1, 39:5,
39:7, 39:18, 39:22,
39:25, 40:4, 40:10,
40:20, 41:14, 63:21,
129:6, 131:6, 131:10,
131:13, 131:19,
131:23, 132:16,
135:16, 140:1, 140:6,
140:8, 141:7, 141:17,
143:1, 159:19, 159:22
**saltz** [3] - 9:5, 43:8,
48:19
**Saltz** [28] - 1:19,
1:19, 2:10, 3:18, 3:25,
5:5, 7:3, 12:17, 14:12,
15:12, 18:3, 19:9,
20:14, 30:14, 31:23,
37:2, 40:19, 42:7,
44:17, 46:19, 51:10,
54:15, 62:9, 63:20,
82:2, 82:9, 130:16
**sat** [1] - 68:11
**satisfied** [1] - 119:1
**satisfy** [1] - 106:6
**save** [14] - 11:20,
29:24, 45:18, 46:9,
50:17, 60:19, 66:23,
72:20, 75:12, 78:18,
82:4, 83:15, 90:5,
122:13
**scale** [1] - 49:18
**scales** [2] - 95:15,
95:16
**schedule** [3] - 3:6,
159:6, 159:12
**Schoffstall** [2] -
136:7, 141:20
**School** [1] - 1:20
**school** [1] - 48:16
**seal** [1] - 126:7
**sealed** [2] - 126:10,
126:12
**seated** [20] - 3:2,
7:25, 43:12, 43:16,
43:23, 43:25, 85:5,
130:15, 132:21,
133:22, 133:24,
135:4, 135:22, 136:5,
136:7, 136:18,
141:13, 141:19,
147:21, 158:18
**second** [27] - 15:21,
22:23, 22:24, 23:3,
23:12, 23:13, 26:17,
33:4, 33:24, 42:13,

56:18, 56:19, 82:21,
83:1, 85:22, 98:18,
105:13, 105:25,
108:2, 108:14, 110:1,
120:23, 122:14,
125:9, 125:12, 125:13
**secondly** [1] - 18:10
**secrecy** [1] - 158:7
**section** [5] - 14:20,
15:10, 28:4, 40:9,
140:21
**security** [22] - 6:1,
13:13, 13:16, 14:11,
15:8, 15:20, 15:23,
16:9, 16:11, 16:17,
17:15, 19:20, 59:3,
59:18, 62:12, 62:18,
68:16, 79:4, 104:8,
104:12, 104:16, 116:1
**Security** [1] - 16:23
**sedentary** [2] -
68:20, 68:21
**see** [20] - 27:4, 29:7,
35:15, 40:17, 43:16,
44:25, 46:21, 49:10,
50:21, 59:8, 61:8,
66:12, 75:13, 76:16,
77:1, 88:11, 89:3,
91:4, 91:22, 159:11
**seeing** [3] - 47:13,
66:22, 91:22
**seek** [5] - 5:16, 9:24,
123:22
**seeking** [1] - 120:16
**seem** [2] - 13:1, 29:8
**sees** [7] - 46:1, 46:2,
46:5, 48:13, 54:4,
55:19, 66:18
**select** [1] - 122:7
**self** [7] - 61:25, 62:1,
62:3, 63:7, 63:8,
82:22, 84:6
**sen** [1] - 48:2
**send** [12] - 5:12, 6:2,
6:12, 47:19, 48:2,
53:5, 67:20, 73:2,
73:4, 74:3, 77:25,
126:20
**sending** [1] - 48:12
**sense** [11] - 14:23,
23:13, 60:23, 68:5,
69:11, 78:7, 78:8,
82:10, 89:8, 89:16,
112:17
**senses** [1] - 90:3
**sent** [8] - 50:17,
53:18, 60:22, 78:20,
79:11, 80:20, 82:20,
83:18
**sentence** [17] - 12:5,

13:12, 14:6, 14:17,
15:7, 17:14, 20:2,
25:7, 25:18, 25:25,
31:10, 33:4, 34:18,
35:16, 35:17, 35:25
**sentences** [1] - 35:8
**separated** [1] - 45:20
**separately** [3] -
113:16, 113:18,
116:12
**September** [3] -
61:10, 78:2, 78:3
**series** [1] - 125:2
**serious** [2] - 108:16,
128:7
**serve** [1] - 68:4
**service** [1] - 157:14
**set** [4] - 8:24, 24:5,
24:6, 143:10
**seven** [4] - 77:21,
77:24, 80:22, 126:14
**seventy** [1] - 35:3
**several** [5] - 18:12,
46:11, 47:15, 48:25,
65:17
**severe** [1] - 110:22
**shall** [1] - 124:4
**shape** [2] - 8:18,
129:12
**sharing** [1] - 64:4
**SHAW** [1] - 1:3
**shaw** [1] - 114:6
**Shaw** [186] - 2:1, 5:7,
8:3, 12:5, 12:14, 14:9,
15:4, 16:2, 17:17,
18:25, 19:10, 21:21,
22:3, 22:17, 23:12,
23:15, 23:16, 23:19,
24:20, 25:7, 25:10,
32:9, 33:7, 33:16,
33:17, 33:24, 34:3,
34:6, 34:13, 34:16,
39:13, 39:19, 44:13,
51:8, 51:13, 62:5,
63:22, 64:5, 65:6,
65:21, 67:3, 67:6,
67:11, 68:9, 68:11,
70:2, 71:1, 71:5,
71:20, 71:23, 72:22,
73:5, 73:12, 73:13,
73:25, 74:8, 74:14,
75:10, 75:15, 75:20,
76:24, 77:20, 78:10,
79:5, 79:9, 80:3,
80:12, 94:21, 95:5,
95:7, 95:14, 95:16,
95:17, 96:11, 97:10,
97:13, 97:20, 97:24,
98:4, 98:10, 98:11,
98:25, 99:1, 99:3,

99:7, 99:11, 99:18,
99:19, 99:21, 100:3,
100:6, 100:11,
100:16, 101:20,
101:25, 102:4, 102:7,
102:12, 102:17,
102:22, 103:21,
104:3, 104:7, 104:9,
105:3, 105:8, 105:22,
106:4, 107:23,
107:25, 108:3, 108:9,
108:15, 109:3, 109:4,
109:16, 109:17,
109:23, 110:18,
111:13, 111:18,
111:21, 111:23,
111:24, 112:11,
112:24, 113:10,
113:14, 113:20,
114:8, 114:11,
114:15, 114:17,
114:21, 114:23,
115:13, 115:16,
115:20, 115:24,
116:4, 116:6, 116:14,
116:20, 116:22,
116:24, 117:2, 117:5,
117:10, 117:13,
117:18, 117:20,
118:22, 120:16,
120:19, 120:25,
121:1, 121:7, 121:23,
133:15, 134:4, 134:7,
134:15, 137:2, 137:5,
137:12, 137:16,
137:18, 137:21,
137:24, 138:5, 138:8,
138:12, 138:16,
138:18, 138:20,
139:6, 139:9, 140:19,
142:16, 142:19,
143:15, 160:1

**Shaw's** [38] - 5:10,
12:13, 19:20, 19:21,
20:4, 22:16, 35:18,
35:19, 36:6, 62:6,
69:17, 73:20, 79:21,
95:3, 97:19, 98:1,
98:23, 102:14,
102:19, 104:5,
104:21, 105:13,
106:7, 106:10,
107:19, 108:7,
108:24, 109:11,
109:14, 110:11,
110:13, 111:6, 115:1,
118:7, 118:15, 137:9,
138:24

**sheet** [1] - 61:18
**Sheldon** [6] - 39:18,
60:12, 75:18, 76:19,

77:2, 77:3
**shelf** [4] - 69:14,
69:15, 69:16, 69:23
**shelves** [2] - 64:5,
69:6
**shift** [1] - 106:25
**shine** [1] - 45:14
**shocked** [1] - 53:20
**shop** [2] - 45:12,
45:13
**short** [12] - 4:21, 5:1,
6:1, 41:16, 52:5,
53:19, 55:12, 62:18,
84:20, 92:6, 96:14,
131:22
**short-term** [8] - 4:21,
5:1, 6:1, 52:5, 53:19,
55:12, 62:18, 131:22
**shortly** [2] - 108:23,
130:12
**show** [9] - 51:11,
52:7, 61:6, 62:22,
101:20, 102:19,
108:16, 111:23,
111:25
**showed** [4] - 48:20,
51:14, 62:6, 62:7
**showing** [3] - 24:17,
33:10, 99:6
**shown** [4] - 44:20,
92:13, 108:20, 109:3
**shows** [1] - 87:9
**shut** [1] - 64:24
**side** [9] - 4:14, 14:7,
32:9, 40:24, 63:16,
85:13, 95:17, 123:4,
135:8
**Side** [3] - 6:17,
139:21, 140:10
**sides** [2] - 88:16,
95:15
**sign** [2] - 43:18,
126:6
**signed** [5] - 126:15,
126:21, 127:17,
139:10, 142:20
**significant** [3] -
109:18, 110:5, 110:19
**significantly** [1] -
101:10
**signs** [1] - 50:20
**similar** [5] - 103:22,
118:2, 119:12,
119:21, 120:5
**simply** [12] - 11:10,
22:8, 29:12, 82:13,
107:13, 127:8,
129:17, 134:17,
134:23, 136:22,
136:23, 158:5

**single** [4] - 51:12,
53:15, 85:25
**sit** [10] - 47:7, 66:24,
68:3, 68:21, 68:22,
69:1, 69:2, 69:3,
69:24, 70:6
**sits** [2] - 53:21, 55:9
**sitting** [1] - 81:6
**situation** [5] - 54:13,
55:1, 75:22, 77:12,
82:11
**six** [4] - 46:13, 47:14,
50:14, 52:14
**sixteen** [1] - 49:2
**sixty** [1] - 59:21
**skill** [1] - 101:21
**skills** [1] - 101:13
**skipping** [1] - 125:4
**slow** [1] - 67:17
**slower** [4] - 27:8,
66:22, 76:11
**slowing** [1] - 56:4
**slowly** [2] - 28:14,
82:5
**small** [1] - 94:10
**smaller** [1] - 45:11
**social** [22] - 6:1,
13:13, 13:15, 14:10,
15:8, 15:20, 15:23,
16:9, 16:11, 16:17,
17:14, 19:20, 59:3,
59:17, 62:12, 62:17,
68:16, 79:3, 104:8,
104:12, 104:16, 116:1
**Social** [1] - 16:23
**sole** [4] - 90:22,
94:20, 99:9, 123:21
**solely** [7] - 34:6,
57:1, 57:4, 89:3,
102:8, 123:23, 128:18
**solitary** [1] - 51:12
**solution** [1] - 128:15
**someone** [10] -
16:13, 28:21, 47:2,
71:8, 71:13, 73:11,
76:10, 78:21, 80:16,
90:10
**sometimes** [6] -
66:2, 66:3, 70:2, 70:3,
70:4, 77:1
**somewhat** [1] -
95:17
**somewhere** [1] -
54:24
**soon** [2] - 113:17,
126:24
**sooner** [2] - 58:15,
79:23
**sorry** [9] - 22:25,
29:10, 46:18, 56:11,

84:15, 133:7, 143:20,
147:8, 151:3
**sought** [3] - 5:14,
9:23, 78:20
**soul** [1] - 64:7
**sound** [1] - 112:17
**sounds** [1] - 21:24
**space** [5] - 126:3,
139:6, 139:15,
140:13, 142:8
**span** [1] - 66:19
**special** [1] - 97:4
**specialized** [1] -
103:12
**specific** [4] - 97:7,
100:23, 106:6, 110:10
**specifically** [5] -
30:9, 97:13, 107:22,
132:24, 134:14
**Specifically** [1] -
22:3
**speculation** [1] -
112:21
**speed** [1] - 134:19
**spelled** [1] - 30:9
**spend** [1] - 129:13
**spent** [3] - 49:12,
52:22, 103:8
**spirit** [1] - 64:7
**squat** [9] - 35:4,
51:5, 51:25, 53:13,
69:13, 69:22, 70:19,
74:4
**squats** [1] - 51:2
**squatted** [1] - 51:2
**squatting** [5] - 57:23,
57:25, 58:2, 69:18,
75:1
**staff** [1] - 53:24
**stage** [1] - 59:14
**stairs** [3] - 69:7,
74:19, 80:2
**Staller** [1] - 93:16
**staller** [2] - 93:22,
94:2
**staller's** [1] - 6:22
**stance** [1] - 51:25
**stand** [14] - 20:8,
35:4, 51:6, 55:3, 58:3,
60:13, 73:9, 74:12,
128:23, 143:8,
143:20, 145:20,
151:18
**standard** [6] - 4:18,
9:9, 12:11, 27:22,
96:6, 113:3
**standards** [5] - 51:9,
51:13, 51:17, 87:22,
93:11
**standing** [4] - 45:6,

69:4, 69:18, 74:24,
119:15, 136:11
**stands** [2] - 17:13,
127:23
**start** [8] - 31:15,
42:1, 43:6, 45:15,
45:16, 46:7, 60:21,
126:16
**started** [4] - 4:22,
53:12, 66:11, 81:3
**starts** [4] - 45:13,
45:17, 54:20, 55:9
**state** [2] - 85:23,
143:9
**statement** [12] -
15:6, 19:17, 30:5,
30:11, 30:24, 36:14,
46:17, 61:6, 61:9,
61:12, 68:16
**statements** [8] -
3:15, 17:19, 19:20,
19:21, 20:4, 88:7,
89:1, 104:22
**STATES** [2] - 1:1, 1:8
**States** [2] - 143:13,
157:19
**stating** [1] - 86:1
**stay** [4] - 8:2, 43:16,
132:12, 141:14
**step** [3] - 17:5, 68:7,
129:20
**stick** [3] - 21:16,
25:3, 66:1
**still** [10] - 20:7, 38:6,
56:16, 60:2, 61:22,
66:18, 69:21, 78:2,
133:8
**stipulate** [1] - 88:16
**stipulation** [1] -
88:18
**stop** [4] - 4:19, 53:1,
63:5, 115:20
**stopping** [1] - 82:16
**Street** [2] - 1:13, 1:24
**strenuous** [1] - 70:8
**stricken** [1] - 88:21
**stricter** [1] - 96:6
**struggle** [4] - 46:9,
46:21, 50:17, 67:17
**struggles** [1] - 55:12
**struggling** [10] -
28:13, 29:24, 46:24,
47:14, 48:13, 59:6,
65:17, 66:22, 72:20,
78:19
**stubborn** [1] - 75:21
**stubbornness** [1] -
76:15
**stuff** [2] - 55:16, 70:1
**subject** [2] - 33:8,

115:18
  **subjected** [1] - 108:3
  **submit** [1] - 127:13
  **submitted** [2] - 128:16, 131:9
  **substantial** [8] - 28:20, 109:19, 110:6, 110:19, 112:1, 112:5, 112:14, 129:4
  **substantially** [5] - 100:8, 100:13, 101:3, 101:8, 116:7
  **substantive** [1] - 127:6
  **substituted** [1] - 24:8
  **subtract** [1] - 116:19
  **succumbs** [1] - 55:13
  **suddenly** [1] - 29:25
  **sued** [1] - 113:24
  **suffer** [2] - 113:20, 129:25
  **suffered** [6] - 118:21, 121:13, 138:9, 139:6, 140:19, 142:15
  **suffering** [4] - 112:22, 113:2, 120:17, 120:20
  **sufficient** [2] - 108:22, 119:16
  **suggest** [2] - 12:4, 124:3
  **suggested** [3] - 22:2, 31:2, 32:7
  **suggesting** [2] - 14:16, 33:13
  **suggestion** [1] - 23:23
  **suggestions** [1] - 10:3
  **Suite** [1] - 1:16
  **sum** [1] - 120:4
  **summary** [3] - 27:22, 35:13, 62:7
  **summer** [1] - 81:25
  **superstar** [1] - 58:10
  **supervision** [1] - 160:25
  **supervisor** [4] - 57:11, 57:15, 57:24, 58:9
  **support** [3] - 19:22, 20:4, 104:22
  **supporting** [1] - 93:19
  **supposed** [3] - 49:11, 49:22, 54:22
  **surely** [1] - 46:25
  **surrounding** [1] -

128:11
  **sustained** [2] - 88:20, 111:15
  **swear** [2] - 129:23, 130:3
  **swears** [1] - 93:1
  **swollen** [1] - 70:19
  **sworn** [3] - 86:7, 86:11, 92:24
  **sympathy** [6] - 64:20, 64:23, 87:4, 112:20, 123:3, 128:22
  **system** [8] - 81:4, 81:5, 81:15, 81:17, 83:6, 157:20, 158:9

## T

  **talks** [1] - 54:18
  **tape** [1] - 3:8
  **taped** [1] - 3:24
  **team** [4] - 46:8, 50:6, 54:4
  **team's** [1] - 47:25
  **temporary** [5] - 12:7, 12:9, 12:25, 29:16, 67:16
  **ten** [1] - 68:22
  **tendencies** [1] - 89:21
  **tenure** [1] - 40:6
  **term** [15] - 4:21, 5:1, 6:1, 52:5, 53:19, 55:12, 62:18, 96:5, 98:21, 100:25, 102:25, 105:11, 108:14, 110:4, 131:22
  **terminate** [1] - 79:12
  **terminated** [4] - 13:22, 16:2, 83:20, 113:24
  **termination** [2] - 61:15, 83:19
  **terminology** [1] - 21:3
  **terms** [10] - 7:15, 10:16, 21:7, 28:19, 65:13, 97:3, 97:6, 97:9, 100:22, 100:25
  **test** [5] - 48:12, 54:24, 55:2, 112:5, 112:7
  **testified** [10] - 5:8, 14:10, 57:21, 57:24, 61:7, 75:19, 82:5, 90:5, 91:5, 92:14
  **testifies** [1] - 90:2
  **testify** [6] - 60:12, 63:22, 70:5, 79:15, 89:4, 93:9

  **testifying** [5] - 3:8, 3:9, 91:8, 94:5, 94:8
  **testimony** [48] - 3:19, 4:25, 6:23, 12:20, 18:13, 18:17, 28:12, 29:24, 36:10, 39:12, 39:17, 44:23, 50:2, 51:8, 57:10, 58:1, 59:7, 75:14, 78:23, 81:2, 83:22, 84:2, 87:25, 88:10, 90:21, 90:22, 91:14, 91:19, 91:21, 92:4, 92:7, 92:13, 92:16, 92:17, 92:22, 92:24, 93:6, 93:10, 93:12, 93:13, 93:16, 93:21, 94:2, 94:11, 94:14, 96:1, 128:13
  **THE** [153] - 1:1, 1:1, 1:8, 3:2, 3:4, 3:23, 4:3, 4:9, 4:13, 4:15, 5:5, 5:20, 6:5, 6:11, 6:16, 6:18, 6:25, 7:2, 7:6, 7:9, 7:25, 9:18, 10:1, 10:6, 10:18, 10:24, 11:8, 12:3, 12:8, 12:17, 13:3, 13:8, 13:11, 13:24, 14:15, 14:20, 15:12, 15:24, 19:8, 20:4, 20:11, 20:15, 20:24, 21:14, 21:18, 22:8, 22:14, 22:22, 22:24, 23:2, 23:6, 23:8, 23:20, 24:10, 24:22, 25:2, 25:17, 25:24, 26:12, 26:20, 27:1, 27:3, 27:9, 27:12, 27:24, 28:24, 29:7, 29:12, 29:19, 30:3, 31:1, 31:22, 32:15, 32:22, 33:1, 33:22, 34:19, 35:11, 35:22, 35:24, 36:3, 36:17, 36:22, 37:1, 37:15, 37:19, 38:9, 38:13, 38:18, 39:16, 39:21, 39:23, 40:14, 40:23, 41:15, 41:22, 42:1, 42:5, 42:24, 43:4, 43:8, 43:15, 43:18, 43:24, 56:10, 63:15, 82:2, 84:11, 84:13, 84:16, 85:5, 85:19, 125:1, 129:7, 130:6, 130:15, 131:7, 131:15, 132:1, 132:17, 132:21, 133:9, 133:11, 133:23, 135:4,

135:17, 135:22, 136:6, 136:10, 136:14, 136:16, 136:20, 139:22, 140:2, 140:7, 140:9, 140:11, 141:9, 141:13, 141:18, 141:20, 141:25, 142:3, 142:6, 143:2, 144:7, 157:7, 158:17, 159:3, 159:14, 159:18, 159:21, 159:23
  **thereafter** [1] - 138:4
  **therefore** [5] - 14:12, 96:8, 115:9, 120:12, 121:8
  **they've** [2] - 49:24, 67:6
  **thinking** [6] - 19:8, 29:3, 49:5, 55:9, 73:22, 133:8
  **thinks** [1] - 54:3
  **Third** [12] - 21:15, 23:21, 24:13, 24:25, 25:6, 26:10, 27:20, 28:4, 32:6, 34:9, 37:7, 37:20
  **third** [13] - 23:14, 24:2, 41:8, 73:4, 77:17, 98:22, 106:2, 107:19, 108:5, 108:19, 125:10, 125:15
  **thirty** [1] - 52:10
  **thoughts** [1] - 62:2
  **threat** [7] - 22:18, 22:21, 97:22, 109:24, 110:1, 110:5, 110:9
  **three** [3] - 47:15, 49:4, 70:3
  **throughout** [3] - 21:8, 23:18, 66:3
  **thumbs** [1] - 52:11
  **Tim** [11] - 46:12, 47:13, 48:7, 52:20, 57:11, 57:14, 57:21, 57:24, 58:6, 58:11, 83:14
  **timing** [2] - 7:15, 108:22
  **tip** [1] - 95:16
  **today** [4] - 79:17, 117:10, 129:10, 159:20
  **today's** [1] - 131:5
  **together** [5] - 32:1, 46:14, 48:1, 123:1, 159:11
  **tomorrow** [2] - 8:14,

129:17
  **took** [12] - 17:5, 25:16, 31:19, 48:6, 64:1, 64:16, 64:17, 70:6, 72:10, 108:5, 122:19, 138:3
  **top** [5] - 22:15, 23:25, 24:16, 49:9, 134:2
  **toss** [1] - 68:18
  **touch** [1] - 158:10
  **touched** [3] - 50:25, 51:1, 90:4
  **tough** [1] - 76:21
  **toward** [3] - 109:3, 109:4, 123:4
  **Toyota** [1] - 26:14
  **training** [1] - 101:13
  **transcript** [2] - 160:12, 160:23
  **TRANSCRIPT** [1] - 1:7
  **treated** [3] - 25:10, 100:10, 100:12
  **treatment** [2] - 99:19, 128:25
  **tree** [1] - 5:4
  **TRIAL** [1] - 1:7
  **trial** [16] - 85:7, 86:21, 89:11, 91:13, 92:25, 93:12, 113:7, 122:20, 122:24, 124:2, 124:8, 158:19, 158:20, 159:9, 159:20, 160:10
  **Trial** [3] - 2:2, 159:24, 160:3
  **tried** [2] - 51:18, 76:20
  **tries** [1] - 60:6
  **Trindle** [1] - 1:16
  **truck** [1] - 68:9
  **TRUCK** [1] - 1:4
  **Truck** [13] - 2:1, 4:22, 16:3, 45:5, 61:20, 62:20, 64:1, 71:22, 81:22, 94:22, 95:2, 143:15, 160:1
  **trucks** [4] - 45:8, 69:5, 70:2, 70:5
  **true** [2] - 56:23, 128:15
  **truly** [4] - 59:6, 64:25, 81:17
  **truth** [3] - 44:21, 93:1, 123:22
  **try** [8] - 20:20, 31:16, 31:25, 44:22, 78:6, 128:14, 130:25, 132:8
  **trying** [7] - 19:25,

20:9, 21:2, 26:24, 28:10, 49:23, 56:16
**turn** [2] - 76:5, 157:8
**turned** [1] - 53:9
**twelve** [1] - 77:23
**twenty** [2] - 8:25, 70:4
**twice** [1] - 46:15
**two** [24] - 17:13, 35:8, 41:6, 42:5, 42:20, 45:14, 47:15, 51:3, 52:19, 71:23, 81:10, 81:12, 85:20, 87:14, 89:23, 91:21, 93:14, 122:11, 125:17, 136:11, 141:20, 141:22, 145:24
**type** [2] - 48:11, 48:12
**types** [2] - 69:9, 89:23
**typewriter** [1] - 39:24

**U**

**U.S** [1] - 1:24
**ultimately** [1] - 109:10
**umbrella** [1] - 90:12
**unable** [8] - 34:16, 35:3, 57:9, 104:10, 104:11, 106:20, 126:25, 129:16
**unanimous** [9] - 124:21, 125:7, 126:3, 126:5, 126:9, 127:25, 136:14, 141:23, 157:10
**unassisted** [1] - 57:15
**unbalanced** [1] - 71:14
**unbelievable** [1] - 81:14
**uncomfortable** [1] - 24:5
**under** [27] - 5:25, 8:6, 8:7, 9:11, 17:19, 24:3, 24:6, 32:19, 34:4, 92:25, 96:12, 96:18, 97:5, 99:5, 102:5, 104:14, 106:16, 108:11, 111:6, 113:16, 114:16, 114:19, 122:16, 129:9, 146:23, 154:20, 160:24
**understood** [2] -

12:17, 63:2
**underwent** [1] - 70:16
**undue** [8] - 9:4, 9:14, 9:18, 9:25, 10:7, 11:1, 121:3, 137:21
**unduly** [1] - 124:14
**unemployment** [1] - 116:2
**unimportant** [1] - 91:25
**United** [2] - 143:13, 157:19
**UNITED** [2] - 1:1, 1:8
**unknown** [1] - 62:25
**unlawful** [6] - 112:25, 113:21, 118:20, 139:5, 140:18, 142:14
**unless** [6] - 87:23, 88:17, 95:25, 112:12, 125:5, 160:24
**unlike** [1] - 104:16
**unloading** [2] - 69:5, 70:4
**unreasonable** [1] - 83:11
**unsure** [2] - 36:23, 36:24
**up** [39] - 8:15, 14:9, 15:21, 23:8, 28:10, 30:14, 32:1, 34:17, 35:2, 43:6, 43:18, 48:4, 49:21, 50:5, 51:22, 52:1, 52:11, 54:15, 55:5, 56:4, 57:9, 62:9, 68:11, 68:17, 68:23, 69:10, 69:12, 69:15, 69:22, 72:12, 75:10, 77:16, 81:9, 81:20, 83:12, 123:15, 134:20, 159:7
**upper** [1] - 70:21

**V**

**valuable** [2] - 117:9, 117:12
**value** [3] - 113:1, 116:13, 117:4
**valued** [3] - 47:5, 73:15, 78:18
**variable** [1] - 59:12
**variants** [1] - 10:5
**various** [1] - 95:4
**verdict** [69] - 2:14, 34:5, 38:3, 40:23, 41:12, 42:14, 42:17, 42:19, 63:11, 65:1, 81:20, 86:8, 86:12,

86:23, 86:25, 87:8, 87:19, 88:23, 89:24, 95:18, 102:6, 109:20, 113:19, 115:21, 116:17, 121:7, 122:3, 123:7, 123:19, 123:23, 124:4, 124:18, 124:20, 124:21, 124:22, 124:24, 125:2, 125:5, 126:10, 126:15, 127:24, 127:25, 129:17, 130:2, 135:23, 136:1, 136:2, 136:12, 136:14, 136:21, 136:23, 139:7, 139:19, 140:3, 140:12, 141:3, 141:23, 142:6, 142:22, 143:8, 143:9, 143:11, 143:17, 143:19, 157:8, 157:10, 157:12
**verdicts** [1] - 126:5
**Veronica** [1] - 1:19
**versus** [2] - 6:1, 28:20
**veteran** [1] - 45:2
**victim** [1] - 113:23
**Video** [1] - 2:7
**video** [3] - 3:8, 3:21, 3:24
**view** [1] - 86:8
**viewed** [1] - 60:17
**views** [1] - 123:13
**violate** [2] - 99:5, 118:12
**violated** [4] - 97:10, 108:13, 111:6, 121:11
**violates** [2] - 63:3, 63:8, 118:9
**violation** [3] - 86:7, 86:10, 121:12
**vision** [1] - 72:1
**voluntarily** [1] - 92:19
**votes** [1] - 123:19
**vs** [7] - 1:4, 2:1, 26:9, 26:10, 28:5, 33:20, 160:1

**W**

**wage** [2] - 61:6, 61:8
**wages** [7] - 113:10, 113:13, 114:6, 115:14, 115:23, 116:10, 116:13
**wait** [6] - 23:13, 26:17, 52:18, 71:11,

71:16, 73:22
**waited** [2] - 60:2, 78:25
**waits** [1] - 59:16
**walk** [13] - 8:4, 28:13, 29:24, 35:4, 51:6, 60:19, 65:18, 69:14, 69:22, 72:21, 73:9, 74:12, 132:13
**walked** [4] - 50:25, 70:15, 70:18, 90:10
**walker** [27] - 50:3, 50:5, 50:8, 50:9, 50:11, 50:21, 51:15, 51:20, 54:3, 54:6, 54:7, 55:8, 55:15, 55:16, 56:6, 56:8, 56:19, 56:20, 56:21, 56:24, 57:2, 57:17, 62:25, 63:2, 70:17
**Walker** [2] - 77:16
**walking** [22] - 28:13, 28:14, 28:21, 33:5, 66:1, 66:2, 66:4, 66:19, 66:22, 66:23, 67:17, 69:5, 69:18, 74:23, 79:25, 82:5, 100:9, 100:15, 101:5, 101:6, 101:7, 101:17
**wall** [1] - 47:25
**Walnut** [1] - 1:24
**wants** [4] - 55:8, 57:8, 77:8, 131:13
**warehouse** [20] - 34:1, 34:14, 35:9, 40:1, 45:8, 45:11, 49:8, 54:11, 66:20, 68:8, 68:9, 68:24, 101:22, 102:2, 102:13, 102:20, 102:23, 103:4, 104:4
**watched** [1] - 30:16
**water** [1] - 90:11
**Wayne** [1] - 1:20
**ways** [1] - 108:21
**wearing** [1] - 90:11
**weather** [2] - 8:7, 129:9
**weekend** [1] - 81:25
**weeks** [4] - 46:10, 46:11, 47:15, 77:23
**weighing** [3] - 91:23, 93:16, 93:21
**weight** [8] - 18:23, 90:17, 90:19, 92:4, 93:23, 94:14, 124:10, 124:16
**welcome** [1] - 28:9
**Wesley** [3] - 1:23, 160:15, 160:17

**wet** [1] - 90:12
**whichever** [1] - 47:15
**Whitmire** [5] - 46:11, 48:8, 52:21, 57:23, 58:10
**whole** [11] - 5:24, 5:25, 18:15, 25:14, 31:24, 40:2, 58:4, 86:2, 92:7, 92:17, 123:1
**wife** [1] - 47:18
**willing** [1] - 77:6
**win** [2] - 55:1, 107:12
**Winter** [1] - 1:19
**wisdom** [2] - 37:18, 86:3
**wish** [2] - 81:25, 157:24
**withdrawn** [1] - 10:10
**witness** [28] - 3:7, 40:21, 79:15, 88:1, 88:13, 90:1, 90:2, 90:4, 90:5, 90:23, 90:24, 90:25, 91:4, 91:5, 91:9, 91:11, 91:12, 91:19, 92:4, 92:7, 92:8, 92:10, 92:13, 92:17, 92:24, 92:25, 93:8, 93:21
**witness's** [5] - 91:6, 91:7, 91:14, 92:12, 92:16
**witnesses** [13] - 7:3, 38:17, 38:19, 88:1, 89:1, 89:4, 91:20, 94:8, 94:10, 94:12, 94:13, 94:17, 96:1
**WITNESSES** [1] - 2:6
**wonderful** [1] - 68:10
**wondering** [2] - 81:6, 133:3
**word** [4] - 21:23, 22:9, 23:4, 57:7
**wording** [2] - 21:20, 31:21
**words** [6] - 14:16, 35:24, 89:2, 93:9, 112:9, 118:24
**worker** [7] - 34:1, 48:22, 49:9, 101:22, 102:3, 104:4, 108:18
**worker's** [4] - 48:11, 48:12, 50:18, 72:5
**works** [1] - 20:20
**world** [3] - 45:5, 49:7, 81:17
**worried** [2] - 46:23, 58:23

**worry** [2] - 43:4, 46:24
**worse** [2] - 66:11, 73:13
**worthy** [1] - 90:24
**write** [2] - 57:3, 126:2
**writes** [3] - 53:22, 53:23, 56:6
**writing** [4] - 24:4, 82:19, 127:17, 127:20
**written** [6] - 27:6, 30:20, 85:10, 85:15, 103:16, 127:1
**wrongful** [4] - 119:17, 119:20, 120:3, 120:6
**wrote** [4] - 33:15, 73:8, 79:5, 91:13

## Y

**year** [2] - 45:20, 53:16
**years** [6] - 45:14, 50:14, 52:15, 52:16, 58:13, 82:15
**yourself** [9] - 71:9, 72:18, 72:25, 74:10, 74:22, 76:18, 78:9, 123:8, 130:1