# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICKY A. SHAW**, | : | **CIVIL ACTION NO. 1:09-CV-359** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CUMBERLAND TRUCK** | : | |
| **EQUIPMENT CO.**, | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Ricky Shaw ("Shaw") brought this action against defendant Cumberland Truck Equipment Company ("CTE") pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Presently before the court are the following motions.  CTE moves for entry of judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, or in the alternative, CTE seeks a new trial pursuant to Rule 59, or alteration of the verdict pursuant to Rule 59(e) and a stay of judgment pursuant to Rule 62(b).  (<u>See</u> Doc. 82).  In addition, Shaw moves for prejudgment interest pursuant to Rule 59(e).  (<u>See</u> Doc. 87).  For the reasons that follow, the court will grant in part and deny in part CTE's motion and grant Shaw's motion.

I.      **Factual Background and Procedural History**

1.      **Factual Background**[1]

In July, 2010, CTE hired Shaw as a warehouse worker in CTE's heavy duty truck parts warehouse ("Warehouse B") in Carlisle, Pennsylvania.  (T1 at 82:21; T2 at 11:23-25; Doc. 1 ¶ 9).  Shaw's position involved, *inter alia*, unloading trucks and putting away stock.  (T2 at 97:25-98:4, 106:25-107:22).  Tim Kline ("Kline") served as Shaw's immediate supervisor in Warehouse B.  (Pl.'s Ex. 17 at 5:24-61; T1 at 82:24-83:1).  From 2004 until Shaw's termination, Pat Whitmyer ("Whitmyer"), served as Parts Logistics Manager for CTE, and supervised Kline and the operations in Warehouse B.  (T1 at 80:8-81:17, 83:4-10).

Kline provided Shaw with positive yearly performance reviews, and Shaw testified that he satisfactorily performed all duties required of his position.  (See Pl's Exs. 1-5; T2 at 99:12-13; 144:7-10).   Whitmyer approved Kline's complimentary performance evaluations for Shaw.  (See Pl's Exs. 3, 5).  Shaw received his last exemplary performance review on January 10, 2007.  (Pl's Ex. 5).  The review scored Shaw's job performance on eleven different factors including productivity.  (Id.) Kline gave Shaw a score of "79," on the top end of the "good" performance rating

---

[1] This factual background derives from the evidence presented at the trial in the above-captioned matter.  The trial transcript consists of four volumes designated by day of the trial.  Citations to the trial transcript are abbreviated as "T1, T2, T3, T4" to referring to Day 1, Day 2, Day 3, and Day 4, of the trial respectively, followed by the transcript page and lines.

category for productivity.  The review defined good as "competent and dependable level of performance. Meets performance standards of the job."  (Id.)

In 2006, Shaw began experiencing increased pain in his arthritic knees.  (T2 at 121:25-122:2).  Shaw testified that the condition caused him to walk slowly, but that he did not struggle to walk.  (T2 at 150:16-17).  Shaw occasionally used a cane at work with Kline's approval.  (T2 19:10-20; Pl's Ex. 17 at 27:6-8).  On a few occasions in early 2007, Chuck Hoffman ("Mr. Hoffman"), CTE's Director of Parts Operations, observed Shaw struggling to walk across the parking lot with a limp.[2]  (T1 at 52:23-53:19-20).  Hoffman worried that Shaw had diminished reflexes and therefore might be a danger to himself or others in Warehouse B.  (T1 at 53:16-18; 54:15-18).  Hoffman reported his perceptions to Bryan Sheldon, CTE's corporate controller; Brenda Hoffman ("Ms. Hoffman"), CTE's director of human resources; and Whitmyer, but he did not speak to Shaw.  (T1 at 53:25-54:2, 55:23-25, 111:3-112:6; T2 25:17-19).  Sheldon also had concerns that Shaw could pose a danger to himself or others.  (T1 at 180-10-14).  CTE's management decided to continue to observe Shaw, because they did not know whether Shaw's difficulties were temporary or permanent.  (T1 at 53:21-24, 66:17-25; T2 at 15:11-16, 24:18-25).  After a couple of weeks, CTE's management concluded that Shaw's condition was not improving.  (T2 at 18:17-19:3).

---

[2]  Other CTE management officials also perceived Shaw's difficulties walking.  (See, e.g., T1 at 93:8-10; T2 at 13:18-14:13; Pl's Ex. 17 at 26:5-26:17).

Ms. Hoffman and Sheldon contacted CTE's legal counsel to receive guidance on how to handle Shaw's situation.  (T1 at 163:25-164:6; T2 at 31:12).  After conferring with counsel, Hoffman and Sheldon determined that Shaw needed to be evaluated at Concentra Medical Center (Concentra"), an independent medical facility.  (T1 at 165:12-14).   On February 26, 2007, Ms. Hoffman sent Shaw to Concentra, with an authorization form and a job analysis form outlining the physical requirements of Shaw's warehouse position.  (T2 at 35:58, 37:12-16, 38:8-11, 152:7-16).  CTE requested that Concentra conduct a fitness-for-duty exam on Shaw. (Pl's Ex. 7).

A physician's assistant, Jeffrey Hollenbach ("Hollenbach"), conducted a physical examination of Shaw at Concentra.  (T3 at 18:23-19:17).  Dr. Andrew Walker ("Dr. Walker") reviewed Hollenbach's findings and concluded that Shaw was unable to perform his job duties.  (Pl's Ex. 7).  After speaking with Dr. Walker, CTE management placed Shaw on medical leave.  (T2 at 38:18-39:19, 55:21:22)  Ms. Hoffman informed Shaw that he had failed his physical examination and therefore could not return to work.  (T2 at 160:1-17).  Ms. Hoffman provided Shaw with paperwork for leave pursuant to the Family Medical Leave Act ("FMLA") and told him to apply for short-term disability benefits.  (T2 at 19 21:25, 20:6-10 160:1-17).

These developments shocked Shaw.  (T2 160:4-5).  Shaw had not been informed of any concerns about his job performance or health and testified that he had been working without significant problems.  ( T1 178:15-179:18; T2 at 160:3-11; 168:18-23; Pl's Ex. 11).  On February 28, 2007, Shaw returned to work and provided

4

Ms. Hoffman a letter outlining his position. (T2 at 162:16-23; Pl's Ex. 11). Sheldon ordered Shaw to stop working. (T1 158:16-19). Sheldon and Ms Hoffman met with Shaw in CTE's corporate office. (T1 at 169:2-6; T2 at 166:1-9). Shaw informed Ms. Hoffman and Sheldon that he could perform his job. (T1 at 158:24-159:8). Shaw explained that the job analysis form did not reflect his actual responsibilities in Warehouse B, and he testified that Sheldon and Hoffman refused to modify his job description. (T2 at 166:1-19). Ms. Hoffman and Sheldon stated that they believed Shaw posed a danger to himself and others in Warehouse B. (T3 at 119-20-25). Ms. Hoffman and Sheldon advised Shaw to apply for short-term benefits and informed him that he could request another physical examination. (T1 at 174:10-15; T2 at 166:1-9). Shaw's wage records indicate that CTE terminated his employment on February 28, 2007.[3]

### 2. **Procedural History**

Shaw commenced this action on February 26, 2009. (Doc. 1). The court held a trial in the above-captioned matter from May 16, 2011 through May 19, 2011. (Docs. 67, 68, 71, 72). The jury unanimously returned a verdict in favor of Shaw finding by preponderance of the evidence that: (1) Shaw had a "disability" within the meaning of the ADA; (2) Shaw, with or without reasonable accommodation, could perform the essential functions of his job; (3) Shaw's "disability" was a

---

[3] CTE contends that it intended for Shaw to return to work if his condition improved, and that it did not terminate his employment until September 17, 2007. (Doc. 100 at 16).

motivating in CTE's decision to engage in an adverse employment action against

Mr. Shaw; (4) CTE was aware of the need for an accommodation for Shaw and CTE

failed to provide a reasonable accommodation for Shaw; (5) providing an

accommodation to Shaw would not cause an undue hardship on CTE's business;

(6) Shaw engaged in conduct protected by the ADA by requesting an

accommodation; and (7) at the time the protected conduct took place, or thereafter,

CTE engaged in an adverse employment action against Shaw because of the

protected conduct.  (Doc. 74).  The jury awarded Shaw compensatory damages in

the amount of $30,000, back pay damages in the amount of $98,500, front pay

damages in the amount of $175,000, and punitive damages in the amount of $50,000.

(Id.)  On June 17, 2011, CTE filed a motion (Doc. 82) for judgment as a matter of law,

or in the alternative, a new trial,  alteration of the verdict or a stay of judgment.

The motion has been fully brief and is ripe for disposition.   (Docs. 100, 103, 104).

## II.    Standards of Review

### 1.    Judgment as a Matter of Law

In considering a motion for judgment as a matter of law pursuant to Federal

Rule of Procedure 50(b), the court must determine whether, "viewing the evidence

in the light most favorable to the nonmovant and giving it the advantage of every

fair and reasonable inference, there is insufficient evidence from which a jury

reasonably could find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153,

1166 (3d Cir. 1993) (citation omitted).  The relevant inquiry "is not whether there is

literally no evidence supporting the unsuccessful party, but whether there is

evidence upon which a reasonable jury could properly have found its verdict."

Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995) (citations

omitted).  The court must "refrain from weighing the evidence, determining the

credibility of witnesses, or substituting our own version of the facts for that of the

jury."  Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007) (citation

omitted).

### 2.    **New Trial**

The court may exercise its discretion to grant a new trial pursuant to Rule 59

of the Federal Procedures"when the record shows that the jury's verdict resulted in

a miscarriage of justice or where the verdict, on the record, cries out to be

overturned or shocks our conscience" because the verdict is against the great

weight of the evidence.  Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d

Cir. 1991) (citation omitted).  Although the court need not view the evidence in the

"light most favorable to the verdict winner," a court should not "replace the jury's

view of evidence for its own."  Collins v. Chandler, Civ. No. 05-739, 2009 WL

3595129, at *1 (D. Del. 2009) (citations omitted).  In addition, a new trial may be

granted when the "court commits an error of law which prejudices a substantial

right of a party." Paul Morelli Design, Inc. v. Tiffany and Co., 200 F. Supp .2d 482,

484 (E.D. Pa. 2002).  The moving party bears the burden of proof.  McMillan v.

Weeks Marine, Inc., 478 F. Supp. 2d 651, 655 (D.Del. 2007).

### 3.    **Amend or Alter Judgment**

Federal Rule of Civil Procedure 59(e) allows the court to amend or alter

judgment to correct clear errors of law or prevent manifest injustice.  North River

Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).  The court

must evaluate "whether the evidence and justifiable inferences most favorable to

the prevailing party afford any rational basis for the verdict."  Bhaya v.

Westinghouse Elec. Corp., 832 F.2d 258, 259 (3d Cir. 1987) (citation omitted).

## III.   **Discussion**

### A.    **Judgment as a Matter Of Law**

CTE contends that it is entitled to judgment as a matter of law on each of

Shaw's claims: discrimination, failure to accommodate, and retaliation.  CTE also

argues that there is no basis for the jury's award of punitive damages.  The court

will address these issues *seriatim*.

### 1.    **Discrimination Claim**

The ADA prohibits employers from discriminating against a qualified

individual with a disability on the basis of that individual's mental or physical

impairments.  See, e.g., Hohider v. UPS, 574 F.3d 169, 186 (3d Cir. 2009); Skerski v.

Time Warner Cable Co., A Division of Time Warner Entertainment Co., 257 F.3d

273, 278 (3d Cir. 2001); see also 42 U.S.C. § 12112.  To make out a *prima facie* case of

discrimination under the ADA, a plaintiff must establish the following: (1) that he or

she has a disability "within the meaning of the ADA;" (2) that he or she "is

otherwise qualified to perform the essential functions of the job, with or without

8

reasonable accommodations by the employer;" and (3) that he or she "has suffered an otherwise adverse employment decision as a result of discrimination." <u>Williams v. Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751, 761 (3d Cir. 2004) (quoting <u>Gaul v. Lucent Technologies</u>, 134 F.3d 576, 580 (3d Cir. 1998)).  CTE contends that Shaw failed to establish each element of the *prima facie* case of discrimination under the ADA as a matter of law.  (Doc. 100, at 11-30).  The court will discuss each of these elements in the subsections that follow.

a.     **Disability Within the Meaning of the ADA**

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Major life activities include, *inter alia*, seeing, walking, standing, concentrating, and working.  29 C.F.R. § 1630.2(i).  An impairment "substantially limits" a person's ability to perform a major life activity if it prevents or restricts him or her from performing that activity compared to the average person in the general population.  <u>Id.</u> § 1630(j).

In the instant action, Shaw alleged that CTE "regarded" him as disabled in the major life activities of walking and working.  (Doc. 103, at 12-21).  A plaintiff can demonstrate an employer regarded him or her as having a disability by demonstrating either that "despite having no impairment at all, [the employer] erroneously believed that [plaintiff] had an impairment that substantially limited one or more of her major life activities" or that he or she "had a non-limiting

9

impairment that [the employer] mistakenly believed substantially limited one or more of her major life activities." <u>Eshelman v. Agere Sys.</u>, 554 F.3d 426, 434 (3d Cir. 2009).  The court must focus on "the reactions and perceptions of the persons interacting or working" with the plaintiff and not on the plaintiff's "actual abilities." <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 108-09 (3d Cir. 1996).

CTE contends that Shaw failed to establish that CTE regarded him as disabled.  According to CTE, Shaw's only basis for believing that CTE regarded him as disabled was (1) that CTE encouraged him to apply for disability benefits and (2) that CTE would not permit him to work.  CTE argues that these facts are insufficient, as a matter of law, to establish that CTE regarded Shaw as disabled. Nor could Shaw show that CTE regarded him as disabled based on the fact that its managers were aware of an impairment and directed Shaw to submit to a medical examination, CTE contends.

CTE addresses each of these facts separately, and argues that none of them are sufficient to establish a "regarded as disabled" claim.  In ruling on the pending motion, however, the court does not evaluate the sufficiency of each piece of evidence in isolation.  Rather, the court reviews the entire record.

The evidence in this case included, in pertinent part, all of the following. First, CTE's managers made repeated observations about Shaw's ability to walk. They believed that his ability to walk and his reflexes were impaired, at least to some extent, and they were concerned that his ability to perform his job duties was also impaired.  Indeed, they considered him a palpable danger—to himself and to

other employees—in the workplace.  Second, they required him to submit to a

comprehensive fitness-for-duty examination.  Third, they refused his requests to

return to work as well as his requests to clarify his job description to reflect more

accurately his actual job duties.  Finally, they encouraged him to take FMLA leave

and short-term disability leave.  Considering this full sequence of events, and

viewing the evidence in the light most favorable to Shaw, the court concludes that a

reasonable jury could properly have found that CTE regarded Shaw as disabled

with respect to the major life activity of walking.[4]

### b.   Qualified to Perform the Essential Functions of the Job

In order to receive the anti-discrimination protections of the ADA, an

individual must prove that he or she is qualified to perform the essential functions

of the job at issue, either with or without reasonable accommodation.  See 42 U.S.C.

§ 12111(8) (defining "qualified individual"); 42 U.S.C. § 12112 (providing that "[n]o

---

[4] CTE correctly observes that not all of the evidence of record supports this
conclusion.  For instance, CTE notes that its managers held Shaw's position open,
provided him with opportunities to be re-examined by a physician, and, after
terminating his employment, invited him to reapply when his condition improved.
Admittedly, a reasonable jury could have relied on CTE's evidence to conclude that
CTE regarded Shaw's impairment as temporary, rather than a disability.  However,
the existence of such evidence does not compel us to disturb the jury's findings, or
grant judgment as a matter of law in CTE's favor.  As noted above, the court need
not inquire "whether there is literally no evidence supporting the unsuccessful
party," but rather, "whether there is evidence upon which a reasonable jury could
properly have found its verdict."  Gomez v. Allegheny Health Servs., Inc., 71 F.3d
1079, 1083 (3d Cir. 1995) (citations omitted).  Furthermore, neither CTE nor the
court can "substitut[e] [its] own version of the facts for that of the jury."  Marra v.
Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

covered entity shall discriminate against a qualified individual on the basis of disability . . .").

CTE argues that Shaw failed to show that he was a "qualified individual." Specifically, CTE cites the opinions of two doctors that Shaw could not perform the duties required of a warehouse worker.  CTE also notes that, although Shaw disagreed with the doctors' opinions, he did not expect his condition to improve. CTE also contends that judicial estoppel[5] prevents Shaw from alleging that he was "qualified," because, on his application for Social Security Disability ("SSD") benefits, he averred that he was totally disabled, and he has not reconciled this with his assertion in the instant case that he was a "qualified" individual.  The undersigned does not find either of these arguments persuasive.

CTE has not convinced the court that Shaw's SSD and ADA claims are incompatible, such that judicial estoppel applies.  An assertion that one is disabled for purposes of receiving SSD benefits may, in some cases, conflict with a claim that one is "qualified" under the ADA, but such claims do not necessarily conflict. There are various differences between the meaning of "disabled" in the context of the Social Security Act ("SSA") and the ADA.  For instance, the ADA takes into account the possibility that, *with reasonable accommodation*, an employee may be able to work, but the SSA does not.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803 (1999); see also Turner v. Hershey Chocolate USA, 440 F.3d 604, 608 (3d Cir.

---

[5] The doctrine of judicial estoppel prevents litigants from pursuing incompatible legal theories in order to gain inconsistent advantages in litigation.

2006).  Thus, if an individual could show that, with reasonable accommodation, he could have performed a job, then he might be able to maintain a viable ADA claim and qualify for SSD benefits.

In this case, Shaw's evidence was sufficient to support a finding that, with reasonable accommodation, he could have continued working.  Significantly, there was no dispute that Shaw performed his job well, up to the day he was placed on medical leave.  Not only were Shaw's performance reviews positive, but also, his supervisors praised his performance in their testimony.  Whitmeyer, for example, testified that Shaw "could lift a house" and that he was able to perform his duties (T1 at 86:12, 92:4-11, 97:5-16).  Such evidence strongly supports a finding that Shaw was able to perform the functions of his job that were truly essential.

Furthermore, various witnesses at trial, including Shaw, called into question the accuracy of CTE's job description.  Their testimony indicated that certain functions listed in the job description were inaccurate or overstated the essential functions of the job.  (See, e.g. T1 at 90, T2 at 164-65).  The evidence also showed that Shaw asked for the job description of a warehouse receiver to be modified, to reflect the work that he actually did in his position as a lead receiver.  (T2 at 164:3-4).  Hence, a reasonable jury could properly conclude that, if CTE had acceded to Shaw's request for a more accurate description of his job, then Shaw could have continued performing the true essential duties of the job.[6]

---

[6] The fact that CTE obtained a medical opinion declaring Shaw to be unfit for duty does not compel a different result.  It stands to reason that, with a more

c.    **Adverse Decision as a Result of Discrimination**

The third and final element of a *prima facie* case of discrimination under the ADA requires Shaw to show that he "suffered an otherwise adverse employment decision as a result of discrimination." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004). CTE contends that Shaw presented no evidence that it subjected him to an adverse employment action because of disability-based discrimination.

CTE notes that the instant case involves three employment decisions: (1) the decision to place Shaw on medical leave, (2) the decision to deny Shaw's request to return to work, and (3) the decision to terminate Shaw's employment. CTE insists that the "uncontroverted evidence" shows that these decisions were made solely on the basis of an independent medical opinion that Shaw could not perform the functions of his job. CTE argues that there is no evidence showing that any of these actions was motivated by discrimination.

The court reiterates that, at this juncture, it must view the evidence in the light most favorable to Shaw. As noted above, the evidence included testimony, from Shaw and other witnesses, that could lead a reasonable jury to doubt the accuracy of the job description that CTE provided to the medical examiner, and, by extension, discredit the medical opinion that Shaw could not perform his job

_____

accurate description of the job (which, at the time, Shaw was performing to the satisfaction of his supervisors), the outcome of Shaw's fitness-for-duty examination could have been different. Jurors are permitted to apply their common sense and draw reasonable inferences of this nature from the facts in evidence.

duties.  Shaw made CTE aware of his belief that the job description did not accurately reflect the work that he actually did, but CTE did not modify the job description.  Nor did CTE amend or modify any of the information that it gave to the medical examiner when Shaw was re-examined, despite a reasonable basis (based on Shaw's evidence) to clarify the nature of Shaw's position and the work environment.

In light of this evidence, a reasonable jury could easily conclude that CTE obtained an unreliable medical opinion, which was informed by an inaccurate job description, overstating the essential functions of Shaw's job.  A reasonable jury could further conclude that, as a result of disability-based discrimination, CTE proceeded to make an employment decision adverse to Shaw, instead of modifying the job description per Shaw's request, or exploring other ways for Shaw's physical abilities to be evaluated more accurately.

Although the evidence is not conclusive, it is, when viewed in the light most favorable to Shaw, sufficient to support the jury's finding that Shaw's perceived "disability" was a motivating factor in one of CTE's adverse employment decisions. Therefore, the court will not disturb this finding.

### 2.   Failure to Accommodate Claim

As an alternative to the above-described discrimination cause of action, a disabled employee can also make out a *prima facie* case under the ADA by showing that he can perform the job's essential function with accommodation and that his

employer failed to make such accommodation.[7]  Skerski v. Time Warner Cable Co.,

257 F.3d 273, 284 (3d Cir. 2001).  Shaw raised such a claim in the instant case.

CTE argues that Shaw cannot maintain his "failure to accommodate" claim

because he has no actual disability as defined by the ADA.  The court disagrees.

As discussed *supra*, Part III.A.1.a, Shaw's evidence is sufficient to support a finding

that CTE regarded him as disabled.  Under the ADA, employees who are regarded

as disabled are entitled to reasonable accommodation.  Williams v. Phila. Hous.

Auth. Police Dep't, 380 F.3d 751, 775 (3d Cir. 2004).

CTE asserts that Shaw sought "only one accommodation: to return to work

against medical opinion," which would not be reasonable (Doc. 100 at 39).  CTE also

contends that "by the time [Shaw] sought an accommodation, he was not a

'qualified' employee[,]" because the independent medical examiner opined that he

was unable to perform his job duties.  (Id.)  The court rejects these arguments for

the reasons discussed above.  As set forth *supra*, Part III.A.1.b, a reasonable jury

---

[7] One way for an employee to demonstrate that his or her employer breached
its duty to provide reasonable accommodations is to show that the employer failed
to engage in good faith in an interactive process.  Under this method of proof, the
employee should show the following: "(1) the employer knew about the employee's
disability, (2) the employee requested accommodations . . . [for the] disability, (3) the
employer did not make a good faith effort to assist the employee in seeking
accommodations, and (4) the employee could have been reasonably accommodated
but for the employer's lack of good faith."  Taylor v. Phoenixville Sch. Dist., 184
F.3d 296, 312 (3d Cir. 1999).

However, failure to engage in an interactive process is not dispositive.  See,
e.g., Hohider v. United Parcel Service, Inc., 574 F.3d 169, 193 (3d Cir. 2009)
("[F]ailure to engage in the interactive process, in itself, does not constitute . . . a
violation [of the ADA].").  Nor is it the sole avenue through which an employee can
establish a failure to accommodate claim.  See Skerski, 257 F.3d at 284.

could conclude that Shaw is a "qualified individual" who could have performed the essential functions of his job if CTE had simply provided a more accurate job description, particularly in light of Shaw's favorable performance evaluations. Furthermore, as explained in Parts III.A.1.b-c and in footnote 6, the opinion of the medical examiner is not dispositive. Therefore, the court will not disturb the jury's verdict on Shaw's failure to accommodate claim.

### 3.   Retaliation Claim

In order to prevail on a retaliation claim under the ADA, a plaintiff must show that he engaged in a protected activity, that he was subjected to a materially adverse action, either at that time or subsequently, and that a causal connection exists between the protected activity and the adverse action. See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003). A retaliation claim does not require the plaintiff to show that he has an actual disability. Id. at 190-91. However, the plaintiff must prove that he acted under a good faith belief that the ADA was violated. Id. at 191. In other words, in this case, Shaw's retaliation claim required him to prove that he acted under a good faith belief that CTE violated his right to request an accommodation for a disability.

When a plaintiff makes the showings described above, the defendant may rebut the retaliation claim by producing a "legitimate, non-retaliatory reason for its adverse employment action." Id. at 187 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)). If this occurs, then the plaintiff must prove that retaliation had a "determinative effect" on the employer's decision. Id.

17

CTE argues that Shaw did not show that he had a good faith belief that he was entitled to request a reasonable accommodation, and therefore, his retaliation claim must fail as a matter of law.  In support of this point, CTE notes that Shaw attempted to return to work without initially requesting accommodations, and that Shaw never claimed to have a disability.

The court does not endorse CTE's characterization of the evidence, particularly not at this juncture, where the court must view the evidence in the light most favorable to Shaw.  As discussed above, the evidence supports a finding that CTE regarded Shaw as disabled.  Thus, neither Shaw's attempt to return to work, nor his opinion that he was not *truly* disabled (but rather, simply *regarded as* disabled by CTE), cause his retaliation claim to fail.  An employee who is regarded as disabled is entitled to request a reasonable accommodation under the ADA, and a reasonable jury could conclude that Shaw believed this in good faith.  Moreover, the evidence indicates that, after CTE prohibited Shaw from returning to work, he requested a reasonable accommodation—specifically, a revised job description that reflected the work he actually performed.  The fact that Shaw made this request strongly suggests that he believed in good faith that he was entitled to do so.

CTE also contends that Shaw failed to show a causal link between his protected activity and CTE's employment decision that was adverse to him.  Furthermore, CTE insists that it had a legitimate reason for terminating Shaw's employment—specifically, a medical opinion that Shaw was unable to perform the

duties of a warehouse worker. CTE argues that Shaw failed to present evidence that this was a pretextual reason for terminating his employment.

The court rejects this argument. The evidence, when viewed in the light most favorable to Shaw, could lead a reasonable juror to find a causal link between Shaw's request for an accommodation and the termination of his employment with CTE. According to the wage records, both of these events occurred on February 28, 2007.[8]  See Williams v, Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (noting that "temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link[,]" provided that "the timing . . . must be unusually suggestive"). Furthermore, as noted above, other evidence of record suggests that CTE regarded Shaw as disabled, and made an employment decision that was adverse to Shaw on that basis, and that CTE failed to make a reasonable accommodation for Shaw. In light of all this evidence, which the court views in the light most favorable to Shaw, a reasonable juror could be persuaded that CTE retaliated against Shaw. Therefore, CTE is not entitled to judgment as a matter of law on Shaw's retaliation claim.

### 4.    Claim for Punitive Damages

If an ADA claimant proves that his employer acted "with malice or reckless indifference to [his] federally protected rights[,]" then he may recover punitive

---

[8] CTE points out various evidence undercutting the notion that Shaw's employment was terminated on February 28. (See Doc. 104 at 12). At this juncture, however, the court must view the evidence in the light most favorable to Shaw, rather than crediting CTE's version of the events.

damages.  See 42 U.S.C. § 1981a(b)(1).  CTE contends that there was no evidence

showing that any of CTE's managers acted with malice or reckless indifference to

Shaw's rights.  CTE also argues that it proved, by a preponderance of the evidence,

that it attempted in good faith to comply with the law, and Shaw did not rebut

CTE's evidence on this point.  The court agrees that the evidence does not support

the jury's award of punitive damages.

The evidence of record does not establish malice or reckless indifference.

Shaw argues that a jury could have concluded that CTE's managers knowingly or

recklessly violated Shaw's rights, based on the fact that they were experienced

professionals in the field of human resources, and familiar with employee rights,

and they consulted with an attorney.  (Doc. 103 at 38).  The court concludes,

however, that this evidence fails to show reckless indifference.  To the contrary, the

fact that CTE's managers sought and followed an attorney's legal advice reflects

their intent to *avoid* violating Shaw's rights.  A employer's good faith attempt to

comply with the law is inconsistent with a finding of reckless indifference to its

employee's rights.  See Kolstad v. ADA, 527 U.S. 526, 544 (1999).  Furthermore, the

record is utterly devoid of evidence of malice.  Finding no sufficient evidence to

support an award of punitive damages, the court will enter judgment as a matter of

law in CTE's favor on this claim.

**B.    New Trial**

CTE presents the following three reasons why the court should grant its

motion for a new trial: (1) the jury's verdict is against the great weight of the

evidence, constitutes a miscarriage of justice, and shocks the conscience, (2) the court failed to properly instruct the jury on the meaning of "regarded as" disabled, and (3) the court failed to properly instruct the jury on the law concerning retaliation and awarding compensatory damages.  The court will address these arguments in turn.

### 1.   The Verdict

CTE argues that, for the same reasons discussed above, the verdict is against the great weight of the evidence, constitutes a miscarriage of justice, and shocks the conscience.  CTE suggests that the jury either misunderstood or departed from the court's instructions on the law, and instead, they reached a verdict based on bias and sympathy for Shaw.  CTE contends that a new trial is therefore necessary.

As discussed above, the undersigned agrees that the evidence does not support the jury's award of punitive damages.  The remaining portions of the verdict, however, *are* well supported by sufficient evidence, and neither shock the conscience nor constitute a miscarriage of justice.  Nor has CTE convinced the court that the jury was guided by improper considerations.  The court will therefore reject CTE's contention that a new trial is warranted for these reasons.

### 2.   The Instructions on Being "Regarded As" Disabled

CTE requested an instruction that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regards the employee as disabled or that perception caused the adverse employment action."  (Doc. 100 at 50).  The court did not include this instruction in

its charge to the jury, and CTE contends that it should have, and that a new trial is

warranted as a result of this alleged error.  The court does not agree.

The court's instructions to the jury, which were based on the Third Circuit's

model instructions, properly defined the phrase "regarded as" disabled.

Specifically, the court instructed the jury as follows:

> Mr. Shaw is "regarded as" disabled within the meaning of the ADA if
> he proves any of the following by a preponderance of the evidence:
> 1.  Mr. Shaw had a physical or mental impairment that did
>     not substantially limit his ability to perform a major life
>     activity (such as walking or working), but was treated by
>     CTE as having an impairment that did so limit his ability,
>     or
> 2.  Mr. Shaw did not have any impairment, but CTE treated
>     him as having an impairment that substantially limited
>     his ability to perform a major life activity (such as walking
>     or working).

In addition, counsel for CTE was permitted to argue to the jury that an employer's

mere observation of an employee's impairment is insufficient to demonstrate that

the employer regarded the employee as disabled.

In the pending motion, CTE argues that the jury must have disregarded the

point of law argued by CTE.  The court is not persuaded that this is true, however,

because there is no inconsistency between the instruction set forth above and the

point of law argued by CTE.  Nor does the court agree with CTE's description of the

evidence—e.g., "the unrebutted evidence shows that CTE merely observed an

impairment[.]"  (Doc. 100 at 50).  The evidence discussed *supra*, Part III.A.1.a,

consists of more than a mere observation, and indeed, it is sufficient to support the

jury's verdict.  The undersigned is not convinced that it erred by rejecting CTE's proposed instruction.  CTE's request for a new trial on this basis will be denied.

### 3.   The Instructions on Retaliation and Compensatory Damages

CTE notes that the verdict sheet provided a place for the jury to award compensatory damages, but it did not distinguish whether the compensatory damages were awarded on Shaw's discrimination claim or his retaliation claim. The court's charge to the jury included the following instruction: "[t]he award of compensatory damages is meant to put Mr. Shaw in the position he would have occupied if the discrimination and/or retaliation had not occurred."  CTE argues that the award for compensatory damages should be stricken, or a new trial should be granted, because a plaintiff cannot recover compensatory damages under the anti-retaliation provisions of the ADA.

The question of whether or not compensatory damages are available in the context of an ADA retaliation claim is open to some debate.  In Baker v. PPL Corp., 2010 WL 419417 at *7-8 (M.D. Pa. Jan. 29, 2010), Magistrate Judge Carlson opined that they are not, and, in the absence of any objections from any party to that litigation, the undersigned adopted his report and recommendation.  Nevertheless, the fact remains that many other courts have ruled otherwise,[9] and there is

_____

[9] See, e.g., Foster v. Warner Entertainment Co., 250 F.3d 1189 (8th Cir. 2001); EEOC v. Walmart, 187 F.3d 1241 (10th Cir. 1999); Muller v. Costello, 187 F.3d 298 (2d Cir. 1999).

currently no binding authority from Supreme Court or the Third Circuit to guide the court in resolving this question.

CTE failed to object to the court's instruction or to the verdict form at the proper time; rather, it raised these objections for the first time in the pending motion. Hence, this alleged error has not been preserved as required by Rule 51(d)(1) of the Federal Rules of Civil Procedure. Pursuant to Rule 51(d)(2), however, the court "may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." FED. R. CIV. P. 51(d)(2). The undersigned is not persuaded that this alleged error is a plain error affecting substantial rights. In light of the unsettled nature of the law, the alleged error was not "plain." Furthermore, the court concludes that Shaw's discrimination claim and/or failure to accommodate claim would be sufficient to support the jury's award of compensatory damages, even in the absence of his retaliation claim. Therefore, the alleged error does not affect substantial rights. Accordingly, CTE's motion for a new trial will be denied.

## C. **Amend or Alter Judgment**

Both parties ask the court to alter or amend the judgment in the above-captioned case pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The undersigned will analyze CTE's motion first, and then turn to Shaw's motion.

### 1. **CTE's Motion**

CTE moves to alter or amend the judgment in three respects. CTE argues, first, that there is no basis for the jury's award of back pay or front pay, and second,

that there is no basis for the jury's award of punitive damages.  Finally, CTE asks

the court to strike the jury's award for compensatory damages.

### i.  Back Pay and Front Pay

CTE contends that Shaw is not entitled to back pay, based on his

representations to the Social Security Administration ("SSA"), and based on the

medical opinions that he was physically unfit for a warehouse worker position.

CTE also argues that Shaw should not be awarded front pay, because he presented

no evidence that he was fit to be gainfully employed, or that he has sought

employment, or that he intends to do so.

CTE's argument concerning back pay is not persuasive.  Neither the

statements that Shaw made to the SSA, nor any medical opinions, are dispositive as

to Shaw's entitlement to recover back pay from his successful ADA claims.  As

noted above, the evidence of record could lead a reasonable jury to conclude that,

*with reasonable accommodation*, Shaw could have performed the essential functions

of his job, and the outcome of his medical exams could have been different.

Therefore, CTE has failed to persuade the court that to uphold the jury's award of

back pay would be manifestly unjust or a clear error of law.

Turning to the issue of front pay, the court notes that, contrary to CTE's

assertions, Shaw did present evidence that he sought gainful employment after he

stopped working for CTE.  (T2 at 188-89).  Furthermore, Shaw testified that, by the

time he applied for Social Security Disability benefits, inactivity had caused his

physical condition to deteriorate.  (T2 at 184, 187-88).  This testimony could lead a

reasonable jury to conclude that, if CTE had granted Shaw's request for a revised job description, then Shaw could have continued working, and his condition would not have deteriorated.  Accordingly, the court concludes that the evidence is sufficient to support the jury's award of front pay.

### ii.    Punitive Damages and Compensatory Damages

CTE argues that the awards of punitive damages and compensatory damages should be stricken, for the same reasons stated in its earlier arguments—specifically, that the evidence does not support an award of punitive damages, and that compensatory damages cannot be awarded for retaliation claims under the ADA.  For the reasons discussed *supra*, Part III.A, the award of punitive damages will be stricken, but the court will not disturb the award of compensatory damages.

### 2.    Shaw's Motion

Shaw's Rule 59(e) motion seeks prejudgment interest.  CTE opposes this motion only insofar as CTE posits that Shaw may not ultimately prevail on his ADA claims.  CTE argues that the court should deny Shaw's motion as premature, or alternatively, the court should stay the motion, pending a final determination of the merits of Shaw's case.  In accordance with our conclusions described above, Shaw's motion for prejudgment interest will be granted.

### D.    Stay of Judgment

Rule 62(b) of the Federal Rules of Civil Procedure permits a court to "stay the execution of a judgment—or any proceedings to enforce it—pending disposition" of various post-judgment motions, including motions for judgment as a matter of law,

and motions for a new trial or to alter or amend a judgment.  CTE invokes this rule and seeks a stay of any proceedings to enforce the judgment.

The court will deny this request for two reasons.  First, Rule 62(b) provides that a stay may be granted "[o]n appropriate terms for the opposing party's security[.]"  FED. R. CIV. P. 62(b).  CTE's request should therefore be denied on the basis that it has not pledged any security.  Second, if the undersigned assumes, *arguendo*, that CTE would accommodate appropriate terms for Shaw's security, CTE's request for a Rule 62(b) stay would nevertheless become moot upon the issuance of this opinion, because its post-judgment motions are no longer pending. Accordingly, this request will be denied.

## IV.   <u>Conclusion</u>

For the reasons set forth above, CTE's motion will be denied in large part, but granted insofar as it requests judgment as a matter of law, or to alter or amend judgment, on Shaw's claim for punitive damages.  Shaw's motion for prejudgment will be granted.

An appropriate order follows.

<u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:       March 30, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICKY A. SHAW** , | : | **CIVIL ACTION NO. 1:09-CV-359** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CUMBERLAND TRUCK** | : | |
| **EQUIPMENT CO.,** | : | |
| | : | |
| **Defendant** | : | |

**ORDER**

AND NOW, this 30th day of March, 2012, upon consideration of the motion

(Doc. 82) for entry of judgment as a matter of law, or for a new trial, or to alter or

amend and stay the judgment, and upon further consideration of the motion (Doc.

87) for prejudgment interest, and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.    CTE's motion (Doc. 82) is GRANTED in part and DENIED in part as
       follows:

       a.    The motion is GRANTED insofar as it seeks judgment as a
              matter of law, or to alter or amend judgment, on Shaw's claim
              for punitive damages.  The Clerk of Court is directed to amend
              the judgment in the above-captioned case, to remove the award
              of punitive damages, and enter judgment as a matter of law in
              CTE's favor and against Shaw on the punitive damages claim.

       b.    The motion is DENIED in all other respects.

2.      Shaw's motion (Doc. 87) is GRANTED.

3.      The Clerk of Court is directed to CLOSE this case.


                                    S/ Christopher C. Conner
                                    CHRISTOPHER C. CONNER
                                    United States District Judge